IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>U LOCK INC,<br><br>      Debtor. | Bankr. No. 22-20823-GLT<br><br>Chapter 11 |
| Christine Biros,<br><br>      Movant,<br><br>v.<br><br>Shanni Snyder,<br><br>      Respondent. | |

**EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) DISMISSING THE CASE AND FOR SANCTIONS AGAINST THE PEITIONING CREDITOR, OR IN THE ALTERNATIVE (II) MAKING A DETERMINATION THAT THE AUTOMATIC STAY IS INAPPLICABLE TO THE STATE COURT ACTION PURSUANT TO 11 U.S.C. § 362(b)(10), OR IN THE ALTERNATIVE (III) GRANTING RELIEF FROM THE AUTOMATIC STAY TO THE MOVANT IN RELATION TO THE MOVANT'S PROPERTY AND THE STATE COURT CASE, OR IN THE ALTERNATIVE (IV) ABANDONING THE MOVANT'S PROPERTY**

AND NOW COMES Christine Biros (the "Movant"), by and through her undersigned counsel, and files this *Emergency Motion for Entry of an Order (I) Dismissing the Case and for Sanctions against the Petitioning Creditor, or in the alternative (II) Making a Determination that the Automatic Stay is Inapplicable to State Court Action pursuant to 11 U.S.C. § 362(b)(10), or in the alternative (III) Granting Relief from the Automatic Stay to the Movant in relation to the Movant's Property and the State Court Case, or in the alternative (IV) Abandoning the Movant's Property* (the "Motion") and in support thereof, avers as follows:

1

## FACTUAL BACKGROUND

1. At the outset, it is important for this Court to understand the history between the Movant, U Lock Inc (the "Debtor"), and Shanni Snyder (the "Petitioner").

2. The Petitioner is the sister of Kash Snyder and George Snyder, the owners and parties in control of the Debtor.

3. The Debtor is in possession of non-residential real property owned by the Movant located at 14140 Route 30, North Huntingdon, Westmoreland County, PA with County Tax Map Number of 54-03-10-0-103 (the "Property").

4. Movant advanced the funds for Debtor to purchase the Property from the prior owners for the aggregate price of $325,316.00 on or around July 16, 2015.

5. On or around July 16, 2015, the Debtor began to operate its business as a storage facility on the Property. There was no lease governing this occupation nor did the Debtor pay the Movant for use of the Property or make any attempt to repay Movant.

6. As a result of Debtor's error, Debtor had not been incorporated on or prior to the date the deeds to the Property were delivered to Debtor, and therefore no conveyance had taken place, even though the prior owners had been paid in full.

7. In the absence of any repayment of the purchase price, on October 4, 2017, the Movant filed a *Complaint in Civil Action for Declaratory Judgment and Equitable Action to Convey Title, to Quiet Title, and for an Accounting* against the Debtor and the prior owners of the Property in the Court of Common Pleas of Westmoreland County, Pennsylvania (the "State Court") at No. #4486 of 2017 (the "State Court Case"). A true a correct copy of this Complaint is attached here to as **Exhibit A**.

8.      At the beginning of the trial, it was agreed by the parties and ordered by the Court that the prior owners, having been paid in full, would be dismissed, on the condition, *inter alia,* that the prior owners deliver two sets of deeds, one confirming title in Debtor, and one set holding all prior deeds to Debtor *void ab initio*, and evidencing transfer of title directly from the prior owners to Movant. Both sets of deeds were dated in May 2019. Counsel for the Debtor reviewed and approved the deeds, which were delivered to the State Court pending the outcome of the State Court Case.

9.      On August 23, 2019, after a trial, the State Court entered a non-jury trial opinion and order (the "August 23 Opinion") which held, in pertinent part, that (I) the Movant is the equitable owner of the Property and (II) that the imposition of an equitable trust in favor of the Movant and the conveyance of the Property to the Movant was the only equitable solution. A true and correct copy of the August 23 Opinion is attached hereto as **Exhibit B.**

10.     On December 9, 2019, the State Court issued another opinion and order (the "December 9 Opinion") to address and correct two factual matters relating to the transfer of the deeds and corrective deeds to the Debtor and to make clear that the Property was never lawfully conveyed to the Debtor. The December 9 Opinion also struck "scandalous and impertinent" allegations from the Debtor's post-trial motion. A true and correct copy of the December 9 Opinion is attached hereto as **Exhibit C.**

11.     On May 21, 2021, the Superior Court of Pennsylvania affirmed the decision of the State Court. *See Biros v. U-Lock Inc.,* 255 A.3d 489 (Pa. Super. Ct. 2021).

12.     The Debtor filed a petition for allowance of appeal from the order of the Superior Court and, on January 19, 2022, the Pennsylvania Supreme Court denied the Debtor's petition. *See Biros v. U-Lock*, No. 259 WAL 2021, 2022 Pa. LEXIS 77* (Pa. Jan. 19, 2022).

13. The relevant deeds, dated May 2019, which had been held in escrow by the State Court since 2019, were released to the Movant by order of the State Court on January 24, 2022 following the Pennsylvania Supreme Court's denial of the appeal and were recorded by the Movant on January 25, 2022. A true and correct copy of this order is attached hereto as **Exhibit D**.

14. In 2019, during the pendency of the State Court Case, Kash Snyder testified that the Petitioner was not a shareholder of the Debtor and had no involvement in the Debtor's business.

15. In the State Court Case, the Movant served interrogatories and other discovery requests on the Debtor. A true and correct copy of the Debtor's amended objections and responses to the interrogatories, requests for admissions and request for production of documents is attached hereto as **Exhibit E** (the "Discovery Response"). One interrogatory asked the Debtor to "Identify all current and former employees of U Lock. …" The Debtor responded stating: "U Lock states that it does not maintain 'employees' and did not maintain 'employees' in the past. U Lock operates through officers, volunteers and contractors." *See* Discovery Response, No. 3.

16. On May 15, 2018, the Petitioner filed her own voluntary chapter 7 bankruptcy petition at case number 18-21983-CMB (the "Petitioner's Voluntary Bankruptcy"). In the Petitioner's schedule I, she indicated that she was unemployed. In the Petitioner's schedule A, the Petitioner's only claim "against third parties, whether or not [the Petitioner had] filed a lawsuit or made a demand for payment" was against North Huntington Police Officers in relation to an eviction. A true and correct copy of the Petitioner's voluntary chapter 7 petition (the "Petitioner's Voluntary Petition") is attached hereto as **Exhibit F**.

17. Notwithstanding the testimony of Kash Snyder, answers to interrogatories provided by the Debtor, and the Petitioner's Voluntary Petition asserting that she was unemployed at least in 2018 and had no potential claims against the Debtor, on July 14, 2021, the Petitioner filed a

4

lawsuit in the United States District Court for the Western District of Pennsylvania at case number 21-cv-00904 alleging that she was owed back wages totaling more than $130,000 for alleged shifts worked by the Petitioner for the Debtor's business from January 1, 2016 through February 15, 2020 for ten hours a day "each day" and for 7 days a week, mostly spent overnight, monitoring video cameras for the Debtor (the "Federal Court Suit"). The Federal Court Suit included claims for "wages" for periods prior to and including Petitioner's Voluntary Bankruptcy filing. A true and correct copy of the Petitioner's complaint in the Federal Court Suit is attached hereto as **Exhibit G**.

18. Again, even while having testified that there was no involvement of the Petitioner and that she was owed no money by the Debtor, after purported service of the Federal Court Suit and summons, the Debtor failed to respond and the Petitioner received default judgment against the Debtor in the Federal Court Suit on October 18, 2021 in the total amount of $263,104.00.

19. Based on the testimony in the State Court Case and the Petitioner's pleadings filed in the Petitioner's Voluntary Bankruptcy, it is clear that the Federal Court Action was improper and contained claims that should have been disputed by the Debtor.

20. Following the default judgment against the Debtor, the Petitioner filed a praecipe to index lis pendens on the Property – property owned by the Movant and unlawfully occupied by the Debtor. A true and correct copy of this praecipe to index lis pendens is attached hereto as **Exhibit H**.

21. The Petitioner was aware of the dispute over who owned the Property and her lis pendens was a strategy to further muddy the waters in the court system with the intent to harass the Movant.

22. The Movant has recently filed two Motions in the State Court Case: one for sanctions against the Debtor and its counsel and another for a writ of possession of the Property since the Debtor has failed to vacate the Property.

23. The State Court held a hearing on April 22, 2022 – five days before the Petitioner filed the above-captioned case (the "Bankruptcy Case") – during which the State Court criticized the position taken by the Debtor in relation to the Property, and there was discussion on the record regarding the questionable nature of the Petitioner's "claim" against the Debtor. A true and correct copy of the transcript of the April 22, 2022 hearing is attached hereto as **Exhibit I**.

24. A follow-up hearing was scheduled for May 13, 2022 but was cancelled following the Petitioner's filing of the involuntary petition in this Case and her filing of a suggestion of bankruptcy in the State Court Case on May 12, 2022.

## PRELIMINARY STATEMENT

25. As will be set forth more fully below, this involuntary petition should be dismissed on any of several different grounds. First, as an insider of the Debtor pursuant to 11 U.S.C. § 101(31)(B), the Petitioner is not an appropriate petitioning creditor under 11 U.S.C. § 303(b)(2). Further, as the basis of the Petitioner's alleged claim against the Debtor is disputed at best and fraudulent at worst, the Petitioner does not have an undisputed claim against the Debtor.

26. Separate from the fact that Petitioner does not have an undisputed claim against the Debtor nor is the Petitioner an appropriate party to file an involuntary bankruptcy case against the Debtor, this Case should also be dismissed for a bad faith filing of the Petitioner. To the extent that this Court is not inclined to dismiss the Case as a result of the Petitioner's bad faith or as a result of the Petitioner's failure to satisfy 11 U.S.C. § 303(b)(2), then the Movant requests that this Court instead either (i) find that the automatic stay is inapplicable to the State Court Case, (ii) grant the

Movant relief from the automatic stay, or (iii) abandon any interests that the Debtor claims to have in the Property so that the Movant may proceed with the State Court Case against the Debtor and obtain possession of her Property.

## ARGUMENT

**A. This Bankruptcy Case Should Be Dismissed**

An involuntary bankruptcy case should be dismissed where (1) the petitioner(s) is not an eligible petitioner under 11 U.S.C. § 303(b) *or* (2) the Petitioner filed the involuntary petition in bad faith. As set forth more fully below, the Petitioner is an ineligible petitioner for various reasons and dismissal is appropriate on that basis alone. Further, the Petitioner filed the Petition in bad faith, creating an independent basis to dismiss this Bankruptcy Case.

**1. Petitioner is Ineligible for filing an Involuntary Petition against the Debtor**

27. 11 U.S.C. § 303 governs involuntary bankruptcy cases.

28. 11 U.S.C. § 303(b) provides that in cases where there are fewer than twelve creditors, ***excluding any employee or insider***, a case may be filed by a creditor whose claim is not contingent or subject to a bona fide dispute and whose claim is at least $16,750.00 in value.

*i. There is a bona fide dispute regarding the Petitioner's Claim*

29. As set forth above, it is clear that the Petitioner's claim is subject to a bona fide dispute and it is certain that a trustee (or Movant, as a creditor) would formally object to the asserted claim based upon the questionable foundation of the alleged claim. *See In re Mylotte, David & Fitzpatrick*, No. 07-11861bif, 2007 Bankr. LEXIS 2375 (Bankr. E.D. Pa. July 12, 2007) (holding that in the context of 303(b), a bona fide dispute arises where there is substantial factual or legal contention as to the claim).

30. The burden is on the Petitioner to establish a prima facie case that that no bona fide dispute exists. *See In re Vitamin Spice,* 472 B.R. 282, 290 (Bankr. E.D. Pa. 2012); quoting *B.D.W. Assocs., Inc. v. Busy Beaver Bldg Ctrs., Inc.,* 865 F.2d 65 (3d Cir. 1989). Based upon the record and the record established in the State Court Case, the Petitioner has not yet – nor will she be able to – establish a prima facie case that there is no bona fide dispute as to her alleged claim. Even if the Petitioner is able to establish a prima facie case, then the burden shifts and the Movant must then establish that a bona fide dispute exists with respect to the Petitioner's asserted claim. *Id.*

31. The Petitioner's allegations in the complaint in the Federal Court Suit and her assertions in the Petitioner's Voluntary Bankruptcy Petition are completely contradictory. Both documents were filed in the federal court system under penalty of perjury and at least one must be false. As a result, the Bankruptcy Court should carefully consider the weight that it gives to the Petitioner's sworn statements.

32. Given the Petitioner's sworn statements alone in the Federal Court Suit and Petitioner's Voluntary Bankruptcy Petitions, her alleged claim is subject to a bona fide dispute.

33. For the reasons set forth in this Motion and the exhibits hereto, the Movant submits that the dispute of the Petitioner's claim is clearly demonstrated within.

> ***ii. The Petitioner is an Insider of the Debtor and is ineligible to file an Involuntary Petition against the Debtor***

34. In addition to the bona fide dispute surrounding the Petitioner's alleged claim, the Movant asserts that the Petitioner's status as an insider of the Debtor precludes her from being an eligible petitioning creditor under § 303.

35. For purposes of a corporation, the Bankruptcy Code defines an insider to include a "relative of a general partner, director, officer, or person in control of the debtor." 11 U.S.C. §

8

101(31)(B)(vi). Petitioner, as the sister of the person in control of the Debtor, is an insider of the Debtor.

36. Courts have held that an insider is not an eligible petitioner when there is only one petitioning creditor. *See In re Runaway II, Inc.,* 168 B.R. 193, 198 (Bankr. W.D. Mo. 1994) ("When there are less than 12 creditors, employees, insiders and creditors receiving avoidable preferences cannot file an involuntary petition"); *In re Best Home Performance of CT, LLC*, No. 19-20688, 2019 Bankr. LEXIS 3682*, at *28, n.16 (Bankr. D. Conn. Dec. 2, 2019) ("While the Court acknowledges a split of authority on this issue, the Court concludes that the more appropriate plain reading of 11 U.S.C. § 303(b)(2) is that an insider is not an eligible petitioner when there is only one petitioning creditor"). This plain reading of the code is in line with "Congress's intent to prevent collusion between a debtor and a friendly creditor as support for" this interpretation and this prohibition is intended to prevent debtor/creditor collusion. *See id.*

37. The collusion occurring in this matter between the Petitioner and the Debtor intended to harm the Movant is exactly the type of action that Congress intended to prevent in drafting the Bankruptcy Code.

38. Because of the Petitioner's status as an insider and the fact that the Petitioner's alleged claim has substantial factual and legal disputes, thus giving rise to a bona fide dispute, the Petitioner is not an eligible creditor under 11 U.S.C. § 303 and this Case must be dismissed.

**2. The Petitioner's Involuntary Petition was filed in Bad Faith**

39. In addition to the fact that the Petitioner not an eligible petitioning creditor, there are separate grounds to dismiss this Case as a result of the Petitioner's bad faith alone.

40. Just like voluntary petitions, involuntary petitions must be filed by the petitioning creditor(s) in good faith. This requirement is meant to limit the filing of involuntary petitions in

extreme circumstances, especially given the serious consequences to the debtor such as the inability to transfer assets, public embarrassment, and loss of credit standing. *See In re Forever Green Ath. Fields, Inc.,* 804 F.3d 328, 334 (3d Cir. 2015).

41. The Third Circuit has adopted the totality of the circumstances standard for determining bad faith under § 303. *See In re Forever Green*, 804 F.3d at 336.

42. In analyzing the totality of the circumstances, the Third Circuit has set forth a number of factors that the court may consider, including but not limited to whether:

   a. the creditors satisfied the statutory criteria for filing the petition;

   b. the involuntary petition was meritorious;

   c. the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing;

   d. there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets;

   e. the filing was motivated by ill will or a desire to harass;

   f. the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same;

   g. the filing was used as a tactical advantage in pending actions;

   h. the filing was used as a substitute for customary debt-collection procedures;

   i. and the filing had suspicious timing.

*In re Forever Green*, 804 F.3d at 336.

43. In considering the facts at hand, each of these factors weigh against the Petitioner or are inapplicable to the facts and are indicative of the Petitioner's bad faith filing.

44. As previously set forth above, the Petitioner did not satisfy the statutory criteria for filing the petition, nor was the involuntary petition meritorious. As a result, it is apparent that the Petitioner did not make a reasonably inquiry into the relevant facts and pertinent law before filing.

45. That the feud between the Movant and the Petitioner's family business (which Petitioner claims to have been involved in) has been going on for more than five years evidences the intent of the petition to harass the Movant and to further stall the possession action in which the Movant is seeking to evict the Debtor from her Property, after the Debtor has occupied it for more than five years without paying anything to the Movant while also unlawfully asserting an ownership interest in the Property.

46. Filed only five days after the State Court Case indicated its displeasure with the Debtor's actions and questioned the actions of the Petitioner in relation to the Federal Court Suit, this involuntary petition had very suspicious and calculated timing intended to disrupt the Movant's ability to retake possession of the Property. This filing was used by the Petitioner to gain a tactical advantage over the Movant in the pending actions and to delay or avoid the eviction of the Debtor from the Property.

47. This motivation of the Petitioner to delay the Debtor's eviction from the Property is perhaps best understood upon review of the Petitioner's involuntary chapter 7 bankruptcy case that was filed against her on February 11, 2013 [Case No. 13-bk-22125-CMB] (the "<u>Petitioner's Involuntary Case</u>")[1]. The similarities between the Petitioner's Involuntary Case and this Bankruptcy Case are uncanny.

48. The Petitioner's Involuntary Case was commenced by a single creditor, Michael Sussman, who had an alleged business debt against the Petitioner. Prior to the filing of the Petitioner's Involuntary Case, the Petitioner was wrapped up in an eviction action brought by Robert Biros – the Movant's father. Robert Biros sought relief from stay in the Petitioner's

---

[1] The involuntary case was originally filed in the United States Bankruptcy Court for the District of South Carolina, but was transferred to the United States Bankruptcy Court for the Western District of Pennsylvania on May 15, 2013.

11

Involuntary Case to proceed with the state court eviction action. A true and correct copy of Robert Biros' motion for relief from stay is attached hereto as **Exhibit J.** Robert Biros' motion for relief was eventually granted by way of a consent order entered on October 16, 2013. A true and correct copy of this consent order is attached hereto as **Exhibit K.** On November 5, the Petitioner and Michael Sussman filed a stipulation to dismiss the case. A true and correct copy of this stipulation is attached hereto as **Exhibit L.** The Petitioner's Involuntary Case was dismissed on November 5, 2023.

49. While the case was eventually dismissed, it was not dismissed without first causing harm to Mr. Robert Biros by staying the eviction case against the Petitioner more than eight months.

50. Here, much like the Petitioner's Involuntary Case, the Movant was proceeding with the eviction of the Debtor from her Property. A single creditor filed the involuntary petition. As the Petitioner learned through her own experience, filing an involuntary bankruptcy petition can pause or slow such actions against the involuntary debtor and provide the party in possession of property with additional time to stay at the property while the owner's actions may be limited by the automatic stay.[2] As a result of the soured history between the Petitioner's family and the Movant's family, it is reasonable to infer that ill-will played a role in the Petitioner's decision to file this Petition against the Debtor.

51. It is also possible that the Petition was filed to get these issues regarding the dispute of the Property's ownership in front of a judge other than the judge who already determined that the Movant is the equitable and lawful owner of the Property.

---

[2] Petitioner's previous exposure to the process of an involuntary petition brought by a single creditor is notable given how infrequently involuntary petitions are filed.

52. While the Petitioner is currently pro se, the Movant asserts that she should not be given extra leeway. The Petitioner has filed multiple lawsuits pro se, including her Voluntary Bankruptcy Petition and the District Court Suit. Petitioner has been involved in her own Involuntary Case, filed this Petition pro se, and seems capable of the necessary legal reasoning and research.

53. To give additional leeway would be detrimental to the Movant who is an innocent party in this Bankruptcy Case and who has already been extremely prejudiced by the actions of both the Petitioner and the Debtor.

54. As such, the Movant asserts that this Bankruptcy Case should be dismissed as a result of the Petitioner's bad faith.

### i. *Sanctions against Petitioner for Bad Faith Filings*

55. The Bankruptcy Code allows for sanctions against a petitioning creditor.

56. If an involuntary bankruptcy is dismissed, the court may grant judgment for sanctions "against any petitioner that filed the petition in bad faith, for … (A) any damages proximately caused by such filing; or (B) punitive damages. 11 U.S.C. § 303(i)(2). Unlike § 303(i)(1), the sanctions resulting from bad faith filings are not limited to the debtor.

57. If this Bankruptcy Court finds that the Petitioner filed this Bankruptcy Case in Bad Faith, the Movant requests that this Court also enter an order against the Petitioner for the costs Movant has incurred as a result of such action. Specifically, the Movant was required to retain bankruptcy counsel and the bankruptcy counsel as well as the Movant's counsel for the State Court Case were required to spend a substantial amount of time preparing this Motion and dealing with the repercussions of this Bankruptcy Case and its impact on the State Court Case.

58. As a result, the Movant requests that the Petitioner be ordered to pay the costs of the additional and otherwise unnecessary legal fees that have been incurred since the filing of this Bankruptcy Case.

59. The Movant further requests that the Petitioner be ordered to pay punitive damages in the amount of $20,000.

60. 11 U.S.C. § 303(i)(2) specifically authorizes punitive damages in absence of or in addition to actual damages. *In re Landmark Distribs.,* 189 B.R. 290, 316 (Bankr. N.J. 1995).

61. As the Court explained in *Landmark*:

> The purpose for assessing punitive damages are to punish the wrongdoer, to deter him from repeating his misdeeds, and to set an example so that others will be dissuaded from engaging in such conduct. … Under § 303(i), the inquiry invokes a federal standard, requiring the court to exercise its discretion in a manner that will discourage misuse of the bankruptcy process, without discouraging resort to it in appropriate circumstances. …

*Id.* at 317 (quoting *In re K.P. Enterprise*, 135 B.R. 174, 183-184 (Bankr. D. Me. 1992)).

62. In *Landmark*, the Court found that punitive damages were warranted because the conduct of the petitioner "failed virtually every standard test for a finding of good faith on the part of a petitioning creditor" and "the punishment and deterrence policies of § 303(i) would be served by an award of punitive damages." *Id.* The Court awarded punitive damages of $500,000. *Id.*

63. Punitive damages are necessary and appropriate here for the same reasons. The Petitioner used this involuntary petition to harm the Movant and unless and until the Petitioner is held accountable for her actions, the Movant will continue to be harassed by both the Petitioner and the Debtor. Thus, punitive damages against the Petitioner are necessary to deter her – and her siblings – from continuing such malicious actions and delay tactics.

**B. Determination that the Automatic Stay is Inapplicable Pursuant to 11 U.S.C. § 362(b)(10) or Relief from Stay in the Absence of Dismissal**

64. If the Court does not dismiss this Bankruptcy Case, the Petitioner requests, in the alternative, that this Court either (i) make a determination that the automatic stay is inapplicable as to the Movant's attempts to evict the Debtor from the Property, or (ii) grant relief from stay to permit the Movant to proceed with the State Court Case and obtain possession of her Property.

65. 11 U.S.C. § 362(b)(10) provides in pertinent part that the filing of an involuntary petition does not operate as a stay "of any act by a lessor to the debtor under a lease of nonresidential property that has terminated by the expiration of the stated term of the lease before the commencement of …a case under this title to obtain possession of such property."

66. The rationale behind § 362(b)(10) has to do with the fact that if there is no valid lease on a property that the debtor is occupying and does not own, the estate has no interest in the debtor's occupancy of such property.

67. Further, in situations like this where the State Court has already determined that the Debtor has no possessory interest in the Property and that the Property is owned by the Movant, "a Bankruptcy Court is required to give full faith and credit to a State Court's judgment … awarding possession of the premises" and "a Bankruptcy Court should not undertake an independent review of the issues previously decided in the State Court." *In re Neville*, 118 B.R. 14, 17 (Bankr. E.D. N.Y. 1990).

68. Here, there is no lease that has expired prepetition as no lease has ever existed. The absence of a valid lease between the Movant and the Debtor at any time only further supports the fact that the Debtor has no rights to remain in possession of the Property such that the Debtor's possession is not property of the estate under § 541.

69. As such, the Movant avers that the automatic stay in the above-captioned case does not prevent her from moving forward with the eviction of the Debtor from her Property.

70. To the extent that the Bankruptcy Court disagrees, the Movant alternatively seeks relief from the automatic stay.

71. 11 U.S.C. § 362(d) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay … such as by terminating, annulling, modifying, or conditioning such stay" in certain circumstances. 11 U.S.C. § 362(d).

72. One of these circumstances is where (1) the debtor does not have an equity in such property and (2) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

73. As set forth above, the Property is owned by the Movant and the Debtor has no interest in the Property. The Debtor has no ownership in the Property itself, no lease for the Debtor's occupation of the Property, and no other ownership interest in the Property.

74. Further, as the Debtor indicated in the April 22, 2022 hearing in the State Court Case, the Debtor was purportedly taking action to remove certain vehicles and other items not owned by the Movant from the Property. The Debtor did not indicate any intent to continue business on the Property and the State Court Case decisions required the Debtor to leave. This is a chapter 7 case – a liquidation rather than a reorganization – and it is illogical that the Property would be necessary to an effective reorganization.

75. This Property has no benefit to the estate. The date of the valid deed for the Property is May 2019 and any allegation of the Petitioner that the Property belongs to the Debtor and that she has a lien on the Property is a fallacy and a fraudulent misrepresentation to this Court. The Petitioner was involved in the State Court Case and knew exactly what was happening.

76.     Even if the Debtor does participate in this Bankruptcy Case, there is no reason to enforce the stay as to the Movant. Movant continues to face undue expense and continued harassment from the Debtor and the Petitioner, and their behavior should not be condoned.

77.     This dispute should be decided (or more accurately, concluded, since it has already been decided and affirmed) in the State Court and this Bankruptcy Court should abstain from making any rulings on the dispute related to the Property pursuant to 28 U.S.C. § 1334 because this the State Court Case is not related to this Bankruptcy Case.

78.     On May 13, 2022, the State Court granted the Movant's writ of possession for the Property. The Movant has not taken any action with regard to this writ of possession, but to the extent that the automatic stay is applicable to the State Court Action, Movant requests that this Court annul the stay as of the petition date, April 27, 2022 (the "Petition Date") to obviate any potential concerns regarding the validity of the writ of possession.

79.     For the reasons set forth above, (i) it should be determined that the automatic stay does not prevent the Movant from proceeding with the necessary action to gain possession of her Property pursuant to 11 U.S.C. § 362(b)(10), or (ii) the Movant should be granted relief from stay pursuant to 11 U.S.C. § 362(d)(2) if this Bankruptcy Case is not dismissed and the stay should be annulled as of April 27, 2022.

C.  **Abandonment of Property in Absence of Dismissal and Relief from Stay**

80.     If the Court is not inclined to either dismiss this Bankruptcy Case or grant the Movant relief from stay, the Movant requests that this Court enter an order abandoning the Property pursuant to 11 U.S.C. § 554.

81. 11 U.S.C. § 554 provides that the court may enter an order abandoning and property of the estate that is either (1) burdensome to the estate or (2) of inconsequential value or benefit to the estate.

82. For all of the reasons set forth above in relation to the request for relief from stay, and to the extent that the Debtor's involvement with the Property in any way amounts to property of the estate, the Movant avers that the Property is of inconsequential value or benefit of the estate because the Debtor has no interest whatsoever in the Property.

83. Further, the Property is actually a burden to the estate.

84. As discussed on the record at the State Court hearing on April 22, 2022, the Debtor has created substantial environmental hazards on the Property. David Perry, the founder and president of American Geosciences, Inc. with more than thirty years of experience investigating environmental concerns on properties and working to develop a remediation plan, has inspected the Property on two occasions. The first time was on or about January 22, 2022 for the purpose of observing then-current general and environmental conditions of the site and he prepared a report regarding the same.

85. Mr. Perry recently visited the Property again on May 11, 2022 and he concluded that very little had been done by the Debtor to remediate the Property or address concerns identified on his first visit. A true and correct copy of David's Perry's affidavit regarding his observations, including his report regarding environmental conditions and hazards dated January 24, 2020, is attached hereto as **Exhibit M**.

86. In addition to the concerns noted by Mr. Perry, the Movant has also received numerous notifications from North Huntingdon Township regarding code violations on the Property, specifically for the "accumulation of rubbish or garbage" and for the presence of

inoperable and unlicensed motor vehicles on the Property. True and correct copies of the notices of code violations related to the Property are attached hereto as **Exhibit N**.

87. The Debtor has caused the Property to be in violation of various codes at least as early as 2019 and prior notifications were directed to the Debtor. The most recent notices of violations were directed to the Movant instead as a result of the township's inability to serve the Debtor and a desire to start a dialogue to clean up the Property. Any efforts of the Movant to address these issues have been stalled by the Petitioner's filing of this Bankruptcy Case.

88. If the estate remains in possession of the Property, it will continue to accrue potential liability without any benefit from the Property. Additionally, tax obligations of the estate will continue to accrue as a result of the Debtor's continued possession of the Property.

89. As such, abandoning the Property would be beneficial to the estate if the Bankruptcy Case is not dismissed and if relief from stay is not otherwise granted.

## REQUEST FOR EMERGENCY HEARING

90. Pursuant to Local Bankruptcy Rule 9013-2, the Debtor respectfully requests that this Court schedule a hearing on the within Motion on an emergency basis.

91. Cause exists to expedite the hearing as a result of the automatic stay and the effect that such stay will have on the Movant's ability to repossess her Property.

92. If the Movant is not heard on this matter on an emergency basis, the Movant will be unable to quickly and efficiently repossess her Property as was intended by the disposition of the State Court Case. Further, as noted above an in the April 22, 2022 State Court Case transcript, the Movant and the Debtor had an agreement in which the Debtor was to pay certain taxes on the Property resulting from its possession of the same during the pendency of the State Court Case. The Debtor has not yet paid those taxes and additional taxes are likely to accrue the longer that the

Debtor continues to occupy the Property without the Movant's consent. The Property has also received notices regarding code violations from the local township which, if left unaddressed, may cause additional issues for the Movant. Further, the longer that this Bankruptcy Case is permitted to continue, the more legal fees that the Movant will continue to incur and there may be additional damage to the Property caused by the Debtor if this Motion is not heard quickly.

93. The need to expedite this hearing on the within Motion is through no fault of the Movant or her attorneys, but has been brought about by circumstances beyond her control arising from the actions of both the Debtor and the Petitioner.

WHEREFORE, the Debtor respectfully requests that this court enter an order (i) dismissing the above-captioned bankruptcy case and ordering sanctions against petitioning creditor, Shanni Snyder, for costs incurred by the Movant and for punitive sanctions, or in the alternative, (ii) determining that the automatic stay is inapplicable to the Movant's actions related to the State Court Case pursuant to 11 U.S.C. § 362(b)(10), or in the alternative (iii) granting relief from the automatic stay to the Movant in relation to the Movant's Property, or in the alternative (iv) abandoning the Movant's Property, and (v) granting such other and further relief as the Court may deem just and proper.

Dated: May 20, 2022

Respectfully submitted,
BERNSTEIN-BURKLEY, P.C.

/s/ Sarah E. Wenrich
Robert S. Bernstein (PA ID No. 34308)
rbernstein@bernsteinlaw.com
Sarah E. Wenrich (PA ID No. 325834)
swenrich@bernsteinlaw.com
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8108
Facsimile: (412) 456-8135
*Counsel for Christine Biros*