FILED
6/8/22 3:46 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

```
IN RE:                      .    Case No. 22-20823-GLT
                            .
U LOCK, INC., a/k/a         .    5414 U.S. Steel Tower
U-LOCK, INC.,               .    600 Grant Street
                            .    Pittsburgh, PA 15219
          Debtor.          .
                            .    June 2, 2022
. . . . . . . . . . . . . ..     9:19 a.m.
```

TRANSCRIPT OF #14 EXPEDITED MOTION TO DISMISS CASE,
IN ADDITION TO MOTION FOR SANCTIONS AGAINST PETITIONING
CREDITOR, OR IN THE ALTERNATIVE MOTION FOR RELIEF FROM STAY FEE
AMOUNT, OR IN THE ALTERNATIVE MOTION TO ABANDON THE MOVANTS
PROPERTY FILED BY CHRISTINE BIROS

BEFORE HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            By: J. ALLEN ROTH, ESQ.
                           805 S. Alexandria Street
                           Latrobe, PA 15650

For Christine Biros:       Bernstein-Burkley, P.C.
                           By:  SARAH ELIZABETH WENRICH, ESQ.
                           707 Grant Street
                           Suite 2200 Gulf Tower
                           Pittsburgh, PA 15219

Lead Counsel in State      The Law Firm of William E. Otto
Court Action for           By:  WILLIAM E. OTTO, ESQ.
Christine Biros:           4027 Old William Penn Highway
                           Murrysville, PA 15668

Audio Operator:            Hayley Smith


 Proceedings recorded by electronic sound recording, transcript
               produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

```
TELEPHONIC APPEARANCE:

For Petitioning            SHANNI SNYDER, Pro Se
Creditor:                  14390 Route 30, Unit H
                           North Huntingdon, PA 15642

                     - - - - -
```

3

1          THE COURT:  Okay.  We are here on the matter of Case

2    Number 22-20823, U-LOCK, Inc., and I'll take appearances first

3    for the moving party, Christine Biros.

4          MS. Wenrich:  Good morning, Your Honor.  Sarah

5    Wenrich here on behalf of Christine Biros.  I also have William

6    Otto here who is lead counsel in the State Court action and Ms.

7    Biros is here as well.

8          THE COURT:  All right.  Good morning.

9          All right.  And I'll take an appearance over here.

10          MR. ROTH:  Allen Roth, I'm here on behalf of U-LOCK

11    and one of the officers of that corporation is George Snyder

12    who is here as well.

13          THE COURT:  All right.  Good morning.

14          All right.  That's the appearances here in the

15    courtroom and I'll take any appearances via Zoom.

16                    (No audible response)

17          THE COURT:  It appears that we have someone on a

18    phone that's on mute, so if you could unmute yourself please?

19          MS. SNYDER:  Can you hear me?  It's Shanni Snyder.

20          THE COURT:  Okay.  I can hear you now.

21          MS. SNYDER:  Okay, sorry.  Thank you.  It's Shanni

22    Snyder appearing for myself.

23          THE COURT:  All right.  Ms. Snyder, do you have video

24    on your phone?

25          MS. SNYDER:  I don't, it's not working.  I had

4

1   trouble getting on this, they had to give me the numbers.

2        THE COURT:  All right.  Well, I'll advise you that my

3   procedures are that when you participate by Zoom you are

4   required to have your video on.  So if you are having issues

5   with your phone, then we'll have to do one of two things if

6   there are any future hearings on this, which is to either have

7   that corrected with a different device to appear by video or to

8   personally appear here in the courtroom.

9        MS. SNYDER:  Okay.  Yes, I did call your chambers and

10  tell them I was having difficulty and they sent a number and

11  then -- yes, they said that I couldn't do it by the phone.

12       Okay, understood.  Thank you, Your Honor.

13       THE COURT:  All right.  Okay.  We are here on an

14  expedited motion to dismiss this case.  This was a case

15  commenced through an involuntary petition filed by petition

16  filed by Ms. Smith (sic).

17       So with that, we'll begin with the moving party,

18  Attorney Wenrich.

19       MS. WENRICH:  Good morning again, Your Honor.  One

20  thing I just want to note for the record at the outset, we do

21  have some concerns whether Ms. Snyder is by herself on the

22  phone, which is one reason we were hoping she would be here or

23  be on video, because we do have reason to believe that she may

24  have had assistance with her pleading and, given that she's not

25  visible, raises our concerns again.  So --

1          THE COURT:   Well, this is a non-evidentiary hearing

2    and it's set on an emergency basis so I am prepared to give

3    some leeway for today but I'm making it clear that no such

4    leeway will be extended at any other proceeding.

5          MS. WENRICH:   Understood.   Thank you, Your Honor.

6          So just to start and give you a little bit of

7    background, and I think our pleading does give some background,

8    but this is an ongoing issue.   This lawsuit in the State Court

9    action was originally filed by Ms. Biros in 2017 seeking

10   declaratory judgment that she owned the property.   Two years

11   later the Common Pleas Court wrote two different opinions

12   finding that she was the rightful owner.   U-LOCK appealed that

13   to the Superior Court, they affirmed, and it was appealed to

14   the Supreme Court, which declined to hear the matter, thereby

15   affirming the Court of the Common Pleas and the Superior Court,

16   both of which determined that Ms. Biros was the lawful owner.

17   The deeds are dated May 2019.   They were recorded January 2022,

18   as soon as the Supreme Court declined to hear the matter.

19         The property has significant environmental concerns.

20   They need to be addressed and the debtor has failed to address

21   these concerns.   Ms. Biros has reason to believe that the

22   debtor is actually continuing to cause additional environmental

23   concerns.   The recent truck fire incident that the debtor

24   refers to, there are eyewitnesses there which --

25         THE COURT:   Garbage truck fire?

1          MS. WENRICH:  I don't believe so.

2          THE COURT:  This is a different fire?

3          MS. WENRICH:  It's referred to as the garbage truck

4  fire but there were eyewitnesses there who did not see a fire,

5  instead just saw a truck dumping soil.  That soil has been

6  tested and we don't have the full tests back yet but the

7  preliminary tests show that the soil actually contained PCBs

8  and if a fire had actually occurred with that contaminated soil

9  the situation would be much different.  There would have been

10 parties with substantial protective gear and we just have

11 reason to believe that the facts as alleged in the declaration

12 and in the motion -- or in the response are just inaccurate.

13 The code enforcement officers have been involved to inspect

14 those events and at this point it's crucial that my client be

15 able to execute the writ of possession and to dispossess the

16 debtor to prevent further harm to the property.

17         THE COURT:  Well, let's talk about the writ of

18 possession.  I'm interested in the circumstances by which that

19 was issued.  I want to understand the time frame of events here

20 because it wasn't entirely clear to me from the papers.  I

21 understand there was a hearing on April 13th, 2022 in the State

22 Court.

23         MS. WENRICH:  I believe it was April 20th --

24         MR. OTTO:  Twenty second.

25         MS. WENRICH:  -- or 22nd, sorry.

7

1          THE COURT:  Okay, April 22.  And there was no order

2   issued related to that hearing until May 13th, is that correct?

3          MS. WENRICH:  My understanding is that the order was

4   issued but not signed until May 13th so I do believe that --

5          THE COURT:  Okay, but it's not an effective order

6   until May 13th?

7          MS. WENRICH:  Correct.

8          THE COURT:  But the petition was filed on April 27th?

9          MS. WENRICH:  Yes, Your Honor.

10         THE COURT:  So how is that a valid writ of

11  possession?

12         MS. WENRICH:  So we believe it's a valid writ of

13  possession because we don't believe that the property is the

14  property of the estate in --

15         THE COURT:  That makes no difference here.  I mean,

16  whether or not the property is property of the estate the

17  debtor still has possession of the property.

18         MS. WENRICH:  That's true, Your Honor, but because we

19  believe that 362(b)(10) is applicable to the scenario here --

20         THE COURT:  Where's there a lease?

21         MS. WENRICH:  So there is no lease and --

22         THE COURT:  But how is that statute applicable here?

23         MS. WENRICH:  So we still believe it's applicable.

24  You know, looking at the case that was cited by Ms. Snyder, the

25  1990 case in the Third Circuit, that case found that mere

1  possession was sufficient to deem the debtor in possession of

2  the property and that it was property of the estate and the

3  debtor could not be evicted.  However, since then, I mean, that

4  was 32 years ago and there are cases since then that have

5  narrowed that holding significantly such that a tenant at

6  sufferance or a holdover tenant, that is not -- their

7  possession of that property and their occupancy of that

8  property is not property of the estate such that the tenant

9  would allow the rightful owner to come in.  There was a case in

10  --

11          THE COURT:  Well, does the debtor also have personal

12  property on the site?

13          MS. WENRICH:  We don't know that the debtor does but

14  that's something I know that Ms. Biros has made clear in other

15  hearings in other courts, that we're not seeking to dispossess

16  the debtor from any ownership of their personal property and it

17  would be available to --

18          THE COURT:  The writ of possession would seemingly do

19  that.

20  Let me just say this.  I was actually -- well, again, let me go

21  back to the time frame because it's not clear to me.  There was

22  a hearing on April 22nd, there was an order involving the writ

23  of possession on May 13th and then there was a subsequent

24  hearing on May 20th?

25          MS. WENRICH:  I believe that's --

9

1          MR. OTTO:  That's correct.

2          THE COURT:  And then was there another order that's

3 come out from that May 20th hearing?

4          MS. WENRICH:  I don't believe so.

5          MR. OTTO:  No.

6          THE COURT:  All right.  I can tell you that I was

7 actually somewhat surprised when I read the transcript of some

8 of these proceedings and to understand the rationale given for

9 proceeding with the writ of possession in light of knowledge of

10 a pending bankruptcy case.  So right now I'm questioning why I

11 should not just render that order void as a violation of the

12 stay?

13          MS. WENRICH:  I understand your concerns and --

14          THE COURT:  And then secondly, I have concerns with

15 what I read in the transcript about attempts to continue to

16 pursue assets or pursue remedies against the debtor with full

17 knowledge of the bankruptcy, so why don't I have a willful

18 violation of the stay here?

19          MS. WENRICH:  Your Honor, I don't think there's a

20 wilful violation of the stay because --

21          THE COURT:  Well, I certainly have knowledge, do I

22 not?

23          MS. WENRICH:  Yes.

24          THE COURT:  And then I have actions that are taken

25 that would seemingly be inconsistent with the stay?

1        MS. WENRICH:  Your Honor, could you clarify which

2  actions in particular you're talking about?

3        THE COURT:  Well, I have a creditor seeking a writ of

4  possession after the bankruptcy had commenced and asking the

5  Court to entertain additional orders that would seemingly

6  advance their rights as against the debtor or the debtor's

7  assets.

8        MS. WENRICH:  So with those in particular I think

9  that, to the extent that it is a violation of the stay, I would

10 assert that it's not a wilful violation of the stay for the

11 reasons that I explained before, which is that the property is

12 not property of the estate and the debtor does not have a legal

13 right to be on that property such that it would not be brought

14 into property of the estate to which the automatic stay would

15 apply.

16       THE COURT:  Well, I want to be clear on two things.

17 One is we're talking about title and title is completely

18 different from possessory interests.  So from what I've seen on

19 the record and the court decisions it appears there's no

20 question at this point that Ms. Biros has title to the property

21 based on the rulings that went from the Court of Common Pleas

22 all the way up through the Superior Court and were disposed of

23 as a final order, but that does not equate to possession.  And

24 my understanding is there's no dispute that U-LOCK still has

25 possession and U-LOCK still has the potential for having assets

1  on that location that would be divested through any action that

2  would be taken through the sheriff of Westmoreland County.

3       MS. WENRICH:  Your Honor, I think with regard to

4  possession though, I still think that since that <u>Atlantic</u>

5  <u>Business and Community Corporation</u> case was decided, that just

6  mere possession on the property without good faith colorable

7  claim for possession does not equate to property of the estate.

8  I did find a --

9       THE COURT:  Why didn't you take a more proactive role

10  of seeking stay relief before going to State Court and getting

11  this relief?

12       MS. WENRICH:  Your Honor, we were involved shortly

13  after the bankruptcy was filed, after the suggestion of

14  bankruptcy was filed.  I believe that we were at a little bit

15  of a loss.  We tried to get things as quickly as possible in

16  front of Your Honor given the time required to get this all

17  together and really get a full review of what was going on

18  since this has been pending for five years.  So I think that

19  we have not acted on the writ of possession, the Court issued

20  it but there has been no further action, and I want to be very

21  clear that we have instead --

22       THE COURT:  Well, I mean, again, I come back to the

23  writ is not -- it says that such writ will authorize levy and

24  sale of any property of defendant, U-LOCK -- of U-Lock.  I

25  mean, that's fairly sweeping and I just -- I don't know how

1 that can stand.

2        MS. WENRICH:  Then Your Honor, I think maybe my

3 suggestion would be that, again, understanding that that is

4 what the writ says and I can acknowledge that, would there be a

5 possibility for an agreement to not do that because it does

6 violate the stay and instead obtain possession of the property

7 and allow the debtor to collect any of its property that is on

8 --

9        THE COURT:  Well, if the parties can reach an

10 agreement on that I think that's perfectly fine.  The one thing

11 though I am a little more concerned about and I'd like to you

12 address now is more about this environmental issue and whether

13 there are, you know, there's reference to pending Code

14 violations.  You've included an environmental report so I am

15 interested in hearing from your client as to the nature and

16 condition of the property and any exigent circumstances that

17 requires court involvement at this time, and I'll certainly

18 want to hear from U-LOCK on this as well.

19        MS. WENRICH:  Your Honor, would I be able to pass

20 this onto my co-counsel --

21        THE COURT:  All right.

22        MS. WENRICH:  -- for that question?

23        THE COURT:  You may.

24        MR. OTTO:  Good morning, Your Honor.  First of all,

25 with respect to the environmental condition of the property,

1  regardless of any assertions as to how the property got to the

2  condition it was in at the time we initially had an engineer

3  look at it, there is still an engineer's report, which I

4  believe Ms. Wenrich has provided to the Court, that

5  demonstrates that there are -- there's extensive broken down

6  cars, tires, storage tanks, evidence of hydrocarbon

7  contamination in the soil.  All of those things were evident in

8  2019.  And so within the last month I visited the site with Ms.

9  Biros, as well as our environmental engineer and he looked at

10  the site and provided an update which basically said the

11  condition hasn't improved at all or substantially has not

12  improved.

13          THE COURT:  Are there actions at this point that your

14  client seeks to take to address the environmental issues with

15  respect to the property?

16          MR. OTTO:  Yes.

17          THE COURT:  And what are those?

18          MR. OTTO:  Our plan is to have the cars removed and

19  have them -- a car -- a junk -- a car dealer come in and take

20  the cars off the site and dispose of them.  If they're owned by

21  anybody the junk dealer will know how to deal with the title,

22  dispose of the tires and have them recycled.  Our initial plan

23  is to do a Phase 1 site assessment to make sure that we can

24  characterize the entire situation in detail, and then our long

25  range plan is to clean the site up so that it can be used as a

14

1  commercial site and not as a junkyard.

2          Now as far as --

3          THE COURT:  But your understanding is these cars are

4  not property of U-LOCK they're --

5          MR. OTTO:  I don't believe they are.  They've

6  indicated as much in their pleadings as well in the Court of

7  Common Pleas that they are not.

8          THE COURT:  Okay.

9          MR. OTTO:  As far as the PCB contamination, I believe

10 on Monday of last week one of the supervisors or commissioners

11 of North Huntingdon Township happened to drive by the site and

12 saw a truck -- a three axle truck dumping dirt on the site, and

13 he didn't -- he's an Army major and very observant.  He has

14 reason to be concerned about the site because he's got citizens

15 of his district complaining to him about it because it's such

16 an eyesore and so he's sensitive to it.  He drove by it and saw

17 the trucks.  Later the next day my client's father visited the

18 site and saw that there had been soil smoothed out and there --

19 much -- a lot of it was dark right -- dark soil right at the

20 entrance, and as a result of that I got a call and I called our

21 environmental engineer.  And I then called the North Huntingdon

22 Township code enforcement officer, didn't reach him so I called

23 the commissioner.  His name is Major Eric Gass, G-a-s-s.  I

24 called him and he and Ms. Biros went to the site and they --

25 and she -- he indicated that the soil had a chemical smell to

1  it, so on that basis I called our environmental engineer back

2  and asked him to have one of his technicians go over and take

3  soil samples.  They went over, they took the soil samples.  We

4  did what's called a broad spectrum analysis of it and indicated

5  that there is at least PCBs in the soil that was placed on the

6  site.

7          THE COURT:  Okay.

8          MR. OTTO:  Now, my client's plan is to have that

9  removed and properly disposed of, but obviously we don't know

10 how extensively it was spread.

11         THE COURT:  All right.  Thank you.

12         MR. OTTO:  Now, one other comment just so you're

13 aware, Your Honor.  All through this trial, over the last five

14 years, it has been asserted by U-LOCK that they don't have any

15 money, that there's no money in the corporation, and on that

16 basis our attitude is they're not going to clean it up.

17         THE COURT:  No, I understand.

18         MR. OTTO:  If anybody's going to clean it --

19         THE COURT:  I think I've got a good feel on the

20 environmental issue at this point --

21         MR. OTTO:  All right.

22         THE COURT:  -- so thank you.

23         MR. OTTO:  Thank you, Your Honor.

24         THE COURT:  One final question, Ms. Wenrich, is that

25 -- so at this point U-LOCK has not filed its answer to the

1 involuntary petition and suggested it possibly is considering

2 conversion to 11 --

3           MR. OTTO:  Excuse me, if I may?  One other --

4           THE COURT:  Well, you'll need to be in front of the

5 microphone.

6           MR. OTTO:  I'm sorry, one other item.  Because we had

7 contact with the supervisor, or one of the supervisors, of

8 North Huntingdon Township, we asked him to determine whether U-

9 LOCK had an occupancy permit for the site and he has informed

10 us that they do not.  So they've been on the site since 2015

11 without an occupancy permit which means, aside from our

12 ownership, they shouldn't even be on the site.

13           THE COURT:  Okay.  Well, my initial question is, you

14 know, I've got -- U-LOCK has an answer date of I think June

15 13th for this and U-LOCK is suggested as potentially -- well,

16 U-LOCK has admitted it's insolvent.  U-LOCK is contemplating

17 converting it to a 11, or perhaps considering staying in a 7,

18 but why should I not -- why should I rule now on this as

19 opposed to wait for that answer and determine whether or not

20 this case stands on its own two feet separate and apart from

21 what Ms. Smith (sic) has initiated through her involuntary

22 petition?

23           MS. WENRICH:  Respectfully, Your Honor, I think that

24 with respect to the involuntary as opposed to if U-LOCK would

25 unilaterally decide to file a petition under either under a 7

 1  or 11, there are different remedies under Section 303 of the

 2  Bankruptcy Code that at this point are very important to my

 3  client.

 4          THE COURT:  Well, I'm not saying that I'm

 5  forestalling those.  What I'm saying part of it makes sense to

 6  me is to kind of get a feel for a lay of the land after I get

 7  their answer.  Now, the reason I asked about the environmental

 8  is that that sounds like that's an exigent circumstance for

 9  which I may be inclined to grant stay relief today on that.

10  But as to some of these other issues, I think I need to let the

11  record play itself out a little bit so I'm just asking why I

12  should make a decision on the dismissal motion today given that

13  I have U-LOCK with the opportunity to file a response to

14  consent to the bankruptcy at this point?

15          MS. WENRICH:  I think first and foremost, as long as

16  we have some indication that we may be able to proceed and have

17  relief from stay to deal with some of these issues, that is our

18  biggest concern and that is why we sought the relief.  I

19  understand we asked for a number of different areas of relief,

20  part of that was just because, again, we were at a loss and we

21  do think that all of these claims for relief are valid.  But if

22  Your Honor is thinking or inclined to push off the motion to

23  dismiss and possible sanctions until a later time, I don't

24  think we would have a problem with that.  I would be willing to

25  handle that at a later date and handle that argument at a later

1  date, but it is really important for us that we be able to

2  proceed with the disposition of the property and start handling

3  those environmental issues immediately.

4          THE COURT:  Okay.  All right.  Thank you.

5          All right.  Ms. -- I'm sorry, Ms. Smith -- I'm sorry,

6  Ms. Snyder.

7          Ms. Snyder, you filed this involuntary and it's been

8  raised in the papers that your claim is based on a wage and

9  hour judgment that you obtained in District Court, is that

10 correct?

11         MS. SNYDER:  Correct.

12         THE COURT:  All right.  So that is the claim that

13 you're using to initiate this bankruptcy proceeding?

14         MS. SNYDER:  Correct.

15         THE COURT:  And my understanding from the papers is

16 that that derives from wage claims that you had against U-LOCK

17 dating back to 2016, is that correct?

18         MS. SNYDER:  Correct.  Yes, it was --

19         THE COURT:  And my understanding is that you filed

20 your own Chapter 7 bankruptcy case in 2018, is that correct?

21         MS. SNYDER:  Correct.

22         THE COURT:  It's my understanding you did not

23 disclose that claim on your Chapter 7 bankruptcy petition?

24         MS. SNYDER:  It's correct that I didn't -- I did omit

25 it under ignorance.

1                    THE COURT:  All right.

2                    MS. SNYDER:  Because I wasn't receiving any money.

3                    THE COURT:  Now that you are aware of it and you

4    became aware of it, did you inform your Chapter 7 trustee,

5    Charles Zebley, about the claim?

6                    MS. SNYDER:  No, I thought that maybe we would open

7    it today back up, that she could file a motion --

8                    THE COURT:  All right.  Is there a reason why you did

9    not inform him before you commenced the District Court action?

10                   MS. SNYDER:  No, I didn't know that --

11                   THE COURT:  Right.  And how is it that you have

12   standing to bring this claim then?

13                   MS. SNYDER:  Because I have the judgment and I filed

14   it.

15                   THE COURT:  Doesn't that claim belong to your

16   bankruptcy estate or at least the portion --

17                   MS. SNYDER:  Yes.

18                   THE COURT:  -- running up to 2018?

19                   MS. SNYDER:  Yes, and I'd be willing to open it back

20   up if that is what the remedy is here.

21                   THE COURT:  Well, the problem that we have here is

22   this is not your claim, at least the substantial portion of it

23   is not your claim.  It belongs to your bankruptcy estate so

24   therefore --

25                   MS. SNYDER:  Okay.

20

1          THE COURT:  -- your Chapter 7 trustee is the one that

2   has to proceed on this claim.

3          MS. SNYDER:  Okay.

4          THE COURT:  So part of the reason why I'm thinking

5   I'm not able to proceed with this today is that I am missing an

6   indispensable party, which would be Trustee Zebley.

7          MS. SNYDER:  Okay.

8          THE COURT:  But just because you have a claim does

9   not mean you are able to run into court yourself and prosecute

10  that claim if it belongs to your bankruptcy estate, I want to

11  make sure we're clear on that.

12         MS. SNYDER:  Okay.

13         THE COURT:  So there is a question about the validity

14  of that judgment and obviously the estate has an interest in it

15  and perhaps the estate wishes to ratify the actions that you've

16  taken but at this point I'm hearing that Mr. Zebley is

17  completely unaware of this claim.

18         MS. SNYDER:  Okay.  Well, like I said, I did omit it

19  just because I didn't consider it income at the time because it

20  wasn't income, so I didn't have --

21         THE COURT:  Well, you made a claim for lost income.

22         MS. SNYDER:  Yes, but that was after the fact that I

23  -- I mean, I filed my bankruptcy in 2018.  I didn't even

24  consider it because there was no money there, I didn't receive

25  money so I understand it has to be opened back up and then I

21

1   have to let him know.  I didn't know if he would have filed a

2   motion today or she would file a motion to open it back up?

3          THE COURT:  Well, I'm going to direct that you inform

4   Trustee Zebley and I will have a copy of my order sent to him

5   so that he is aware of this and has an opportunity to appear at

6   the next hearing that we have on this matter.

7          MS. SNYDER:  Okay.  Thank you, Your Honor.

8          THE COURT:  But I'd also like to know at this point,

9   just preliminarily, how it is that you do not qualify as an

10  insider of U-LOCK based on your relationship with Mr. Snyder?

11         MS. SNYDER:  Well, because -- just because we're

12  family doesn't mean I don't qualify.

13         THE COURT:  Well, are you suggesting --

14         MS. SNYDER:  I have --

15         THE COURT:  -- a different reading of the Bankruptcy

16  Code in terms of what the term relative means?

17         MS. SNYDER:  No.

18         THE COURT:  All right.  Anything else you wish to

19  raise in connection with this motion to dismiss at this stage?

20  As I indicate, I'm not ready to make a final ruling on it at

21  this point but anything else you wish the Court to consider?

22         MS. SNYDER:  Well, they did do this as an emergency

23  motion which is very difficult, you know, that she makes all

24  these arguments after arguments, nothing simple, and then I had

25  to rush for the response.  So you know, it would be better if

1  there were timelines --

2          THE COURT:  Well, I can tell you your response was

3  very thorough and very comprehensive, and contained significant

4  amount of legal authority.  I'm assuming you have the ability

5  to conduct legal research based on what's in your written

6  response?

7          MS. SNYDER:  Yeah, but it's still very difficult for

8  me.  And I tried to get two attorneys to go to this hearing

9  with me today and everybody needs time.  And it just -- they've

10 done this since -- they're saying the environmental issue,

11 they've done this since 2018, this is an emergency today, and I

12 just I would like things to run on schedule how they would so I

13 can get my attorney.

14         THE COURT:  Well, I mean, do you have a reason to

15 dispute the environmental issues that have been raised in the

16 papers and in the hearing today?

17         MS. SNYDER:  Well, they've been saying that since

18 2018 and if they had possession, you know, it's Christina Biros

19 that is a creditor, it's me, it's -- there's other tenants on

20 there, just the more liability the less chances I would be able

21 to collect on my judgment.  So you know, they have been saying

22 that in State Court since 2018, what's the difference between

23 now and then that this was an emergency?  She's just trying to

24 get preference to be the only creditor.  Once they lock all the

25 other tenants out, then there would be more creditors, so that

1  will be, you know, more liability.  So, yeah, I think this is

2  just an old, you know, excuse about the environmental.  You

3  know, the possession doesn't affect me but it will affect my

4  judgment.

5          THE COURT:  All right.  Thank you.  Mr. Roth --

6          MR. ROTH:  Yes.

7          THE COURT:  -- do you wish to be heard?  And if so,

8  you can either come to the podium or you can stand there and

9  just have a microphone next to you, whatever you prefer.

10          MR. ROTH:  If I could first address Your Honor about

11  the truck that was there apparently putting things on the

12  property.  What happened with that truck is it was carrying old

13  cartons, cardboard cartons, okay.  Somebody had flipped a

14  cigarette butt into the cartons and it caught on fire and what

15  happened was the police and the fire department were both

16  called because there was a fire going on there.  And so what

17  happened was they dumped all the materials out onto the

18  property and then they came back the next day to pick up all

19  the materials that had fallen out.  So that's what happened

20  there, so I don't know anything about any dirt or anything like

21  that being put out there.  It was all from the cardboard

22  cartons burning.

23          THE COURT:  All right.  The vehicles that are on the

24  property, are those the debtor's assets or are they third party

25  assets?

24

1          MR. ROTH:  They are third party asset.  They don't

2    own any of those vehicles.

3          THE COURT:  So there's no issues with the removal of

4    those items?

5          MR. ROTH:  And they've contacted the police several

6    times about tagging those vehicles --

7          THE COURT:  I read that.

8          MR. ROTH:  -- so that they can get them removed and

9    they're in the process of making -- I think he's going today to

10   talk to the police again to try to get those vehicles tagged

11   because he's going to get them out of there.

12         THE COURT:  All right.  So there's no issue with that

13   at this point?

14         MR. ROTH:  No, I don't believe so.

15         THE COURT:  All right.  So what I'm dealing with

16   right now is Ms. Biros has been determined by State Court to be

17   the owner of that property at this point and so my concern

18   right now immediately is what actions need to be taken in order

19   to properly protect and preserve the asset during this time

20   period and my question to you is, what is the debtor's --

21   alleged debtor's position with respect to limited stay relief

22   to afford her the opportunity to take those corrective actions

23   at this point?

24         MR. ROTH:  We believe this property is worth

25   somewhere about $2 million.

1          THE COURT:  All right.

2          MR. ROTH:  And if they would take normal collection

3  activity in this case like we'd normally do --

4          THE COURT:  All right.  But you're asking me to go

5  back and undo the State Court judgment, I'm not doing that.

6  That's a Rooker-Feldman issue and property interests are

7  determined based on state law so I am going with what is a

8  final order in State Court that says she is the owner of the

9  property.

10          MR. ROTH:  I understand that.  Well, we believe that

11  that order is one that could be overturned, okay.  Because we

12  don't think --

13          THE COURT:  Okay, but my understanding is you've

14  exhausted your appeals.

15          MR. ROTH:  We don't -- well, we believe the judge

16  took action after the automatic stay had been imposed here.

17          THE COURT:  Well, that's a separate issue.

18          MR. ROTH:  Yes.

19          THE COURT:  Actions that were taken in violation of

20  the stay are something that I'm fully capable of addressing and

21  will address here but ownership of the property seems to be a

22  settled issue at this point.

23          MR. ROTH:  Well -- and I understand that.

24          THE COURT:  I mean, you can tell me if there's

25  something I'm missing but I'm seeing that you've gone all the

1  way up through the appellate chain and there's nothing to

2  suggest that you prevailed on that so I'm understanding that

3  she's the owner of the property at this point.

4         MR. ROTH:  Well --

5         THE COURT:  So the question I'm really having is, why

6  should I not allow the owner to take protective measures to

7  protect her interest in the property?

8         MR. ROTH:  Well, my reasoning behind that would be

9  because of the value of the property.  And she can certainly --

10  if my client continued to own that property, regardless of what

11  the courts have said, if he continued to own that property --

12         THE COURT:  Regardless of what the courts have said?

13  I mean, that's why have courts.

14         MR. ROTH:  Right.

15         THE COURT:  You know, the courts make decisions and

16  unfortunately the court issued a decision that was adverse to

17  your client and you have to come to terms with that, your

18  client has to come to terms with that, and now we move on.

19  You're not going to relitigate that issue in this court.

20         MR. ROTH:  Well, I --

21         THE COURT:  I mean, if your client needs bankruptcy

22  relief, that's what I'm here for and I will deal with the

23  assets that are a part of this estate but right now I'm not

24  seeing anything that suggests that this real property that was

25  subject to Judge Smail's opinion is part of this estate.  You

27

1  may have -- your client may have a possessory interest in it,

2  your client may have personal property there but, in terms of

3  real property, based on what I've seen so far, that's a settled

4  issue.

5      MR. ROTH:  Well, if it's a settled issue, I mean, how

6  can I argue that?  If it's settled, I --

7      THE COURT:  Well, I'm just -- I'm perplexed at how

8  you're arguing to me that it's not a settled issue.  Tell me

9  why it's not a settled issue.

10     MR. ROTH:  Can I have one second?

11     THE COURT:  Mm-mm.

12     MR. SNYDER:  Your Honor?

13     THE COURT:  You can consult with your counsel but he

14 will be the one making the presentation.

15                 (Attorney/client discussion)

16     MR. ROTH:  Well, I would say, Your Honor, at the time

17 this loan was made to U-LOCK the condition of the property was

18 the same then that it is right now, okay, and --

19     THE COURT:  Why should Ms. Biros be prevented from

20 taking actions that would clean up the property and ostensibly

21 enhance its value which would benefit all involved?

22     MR. ROTH:  Well, yes.

23     THE COURT:  All right.

24     MR. ROTH:  That's why we would like -- we were

25 wanting U-LOCK to be able to do all that, because they were in

1  the process of making of all that happen.  That's why he has

2  met with the police to come out, like today, to come out and

3  get rid of all these cars because they're trying to make that

4  happen.  And they're not trying to cheat Ms. Biros, they're

5  just -- they would like to have this property be able to pay

6  itself off and to pay all the creditors and all the people that

7  do rentals from U-LOCK, okay.  None of those people have been

8  advised about any of these proceedings at all, okay, and we

9  think that would have been essential, is that all these people

10 would have been advised so that they could have had a say in

11 what actually happened in all the proceedings before the court.

12         THE COURT:  Okay.  Look, like I said, we're at the

13 very early stages of this bankruptcy case.  You have not yet

14 even filed an answer to indicate on behalf of U-LOCK whether

15 you consent to entry of an order for relief and whether we will

16 proceed as a Chapter 7 or a Chapter 11.  I don't even have --

17 and until the order for relief is entered, I won't -- don't

18 even have the listing of creditors so that they can get notice.

19 So we are not yet at that point.  But what I've said is, I'm

20 not prepared to dismiss the case today based on a number of

21 issues and we'll have an opportunity to revisit whether this

22 bankruptcy case can continue.  But right now I'm left with the

23 fact that if I've got a festering environmental issue, I don't

24 see the harm of having that remediated as soon as possible.  At

25 this point, notwithstanding whether or not it happened four

1 years ago or yesterday, it's something that obviously it would

2 seem best to continue efforts to do so, so why is that a bad

3 idea?

4      MR. ROTH:  U-LOCK has been improving this property

5 the whole time.  When they first got the property there was 600

6 tires on the property, there's now 300 tires because they've

7 been --

8      THE COURT:  Okay.

9      MR. ROTH:  -- remedying all the issues with regard to

10 the environmental issues, so it's not like they haven't been

11 doing anything about it.  And they've been trying to work on

12 getting rid of some of the cars, like, by notifying some of the

13 owners of the cars to get them out of there but there are some

14 that are just abandoned so those are what we're trying to get

15 tags so that they can get them out.

16      THE COURT:  Okay.  But she is the property owner so

17 she should be able to be involved in that process as well.

18      All right.  Any further --

19      MR. ROTH:  My client would like to talk to me for

20 like two minutes, if we could

21      THE COURT:  All right.  You can --

22      MR. ROTH:  -- do that?

23      THE COURT:  Why don't you do that away from the

24 microphone so that it's not --

25      MR. ROTH:  Thank you.

1          (Attorney/client discussion)

2          THE COURT:  All right.  Any closing remarks, Mr.

3   Roth?

4          MR. ROTH:  Well, he wants me to let you know with

5   regard to the truck and the fire, that the truck that caused

6   that fire is the Bigs Company and --

7          THE COURT:  What company?

8          MR. ROTH:  Bigs, B-i-g-s.

9          THE COURT:  Okay.

10          MR. ROTH:  And that had nothing to do with U-LOCK,

11   they just happened to be driving by and got a fire in their

12   truck.  And their protocol is, once you get a fire, you stop

13   and dump and that's what they did.  They just happened to do it

14   on this property, okay, but he wants you to understand that.

15          In addition to that, he wants you to understand that

16   some of the vehicles that are on this property are actually

17   salvageable and are worth money, maybe 20, 30 thousand dollars,

18   and they would like to be able to have those cars in their

19   possession so that they can dispose of them and get some money

20   out of them in the future.

21          THE COURT:  So you are claiming that those are assets

22   of this estate?

23          MR. ROTH:  Some of them, not all of them but some of

24   them.

25          THE COURT:  Is there an understanding of which ones

1 are and which ones are not?

2                      (Attorney/client discussion)

3            MR. ROTH:  Well, there's actually bulldozers and

4 cranes and things of that nature there too, which would belong

5 to U-LOCK.  But not all the cars are -- belong to U-LOCK.  Some

6 of them were just abandoned there.

7            THE COURT:  All right.  Anything further you want the

8 Court to consider at this point?

9            MR. ROTH:  Well, they plan on removing the remainder

10 of the tires within a week, that's where they're at now.

11            THE COURT:  All right.  Is there any reason why the

12 parties can't consensually work out a plan to do this

13 environmental remediation?

14            MR. ROTH:  Well, let me say I would like to do that.

15 If we can find a way to make that happen we would like to do

16 that, yes.

17            THE COURT:  Okay.  All right.  Well, I mean based on

18 what I've heard though Ms. Biros is the owner of the property.

19 The property is not currently property of this bankruptcy

20 estate and there are pending environmental issues, so that's

21 enough of a basis for me to grant her limited stay relief as to

22 that.  If the parties can work out a consensual arrangement

23 where the debtor does that work, then I'm fine with that but,

24 as the owner of the property, she can, you know, have the stay

25 relief that she needs to undertake those actions herself

32

1   provided we are not talking about removal of assets that are

2   property of the estate.  If the debtor is intending to remove

3   those assets itself, it can do so or, to the extent there's

4   removal and sale and liquidation, then those proceeds need to

5   be held in escrow for the protection of this bankruptcy estate,

6   are we clear on that?

7            MR. ROTH:  Right, yes.

8            THE COURT:  All right.  So then why don't you go back

9   to counsel table and I'll tell you where I am on this then?

10           Again, I think it's too early for me to rule on the

11   motion to dismiss because, as I indicate -- well, let me just

12   say this.  I mean, this whole thing looks like the wild wild

13   west.  I mean, I've got a party here that's moving and seeking

14   remedies while the stay is in place and obtaining an order that

15   violates the stay.  I've got a petitioning creditor who

16   prosecuted a claim that she did not seemingly have standing to

17   proceed with and gave no notice to a Chapter 7 trustee, and

18   I've got a debtor who seemingly does not accept a state court

19   ruling as to the disposition of this property, so happy to have

20   this case on my docket.

21           With that being said, this is a motion that I cannot

22   dispose of until I have Trustee Zebley here to be heard with

23   respect to Ms. Snyder's claim.  I would like to also have the

24   answer from U-LOCK in terms of what he intends to do in

25   response to the involuntary petition because if I -- they

1  contest it, I'll need to have an evidentiary hearing on that.

2  If it doesn't, then perhaps the involuntary aspect may be moot,

3  although I guess the timing of the petition date may play a

4  role there.  So I am prepared to continue this to a date

5  following June 13th and, unfortunately, I don't have my

6  calendar up right now.

7          In the meantime I am going to grant Ms. Biros limited

8  stay relief for the purpose of engaging in environmental

9  remediation activities with the caveat that the parties are to

10  attempt first to work cooperatively in doing so.  It sounds to

11  me like there may be a basis for an agreement for the removal

12  of vehicles from the property, and vehicles that are not assets

13  of this bankruptcy estate can be removed by Ms. Biros without

14  further accounting.  If there are vehicles that belong to the

15  bankruptcy estate that are being removed then the parties need

16  to have an acceptable arrangement to either escrow any proceeds

17  received for that or account for them, but I don't want those

18  being removed without some sort of idea of what's going on with

19  respect to those items.  And then subsequently to that I'm

20  finding that the May 13th order from the State Court is void in

21  that it was entered after the stay was entered in this case.

22  And then I will reserve for future determination the remainder

23  of the relief that's requested in the motion to dismiss which

24  includes the request for sanctions.  I will reserve for a later

25  time what issues may arise due to Ms. Snyder's failure to

34

1  disclose the Chapter 7 asset and I will also reserve for a

2  later time the issue of what to do if -- with respect to what

3  may appear to be a wilful violation of the stay.

4          So with that, the 13th is a Monday, I am looking at

5  maybe perhaps the afternoon of June 29th, which is a Wednesday.

6          MS. WENRICH:  Your Honor, I will not be available at

7  that time, is there anyway we can make --

8          THE COURT:  Is it just that -- is it that week or

9  that day?

10          MS. WENRICH:  It's the 29th until the 5th of July.

11          THE COURT:  I have availability on July the 6th, does

12  that work for Mr. Roth?

13          MR. ROTH:  I believe so.

14          MR. OTTO:  Your Honor, I'm not available the week of

15  July 4th.  I apologize.

16          THE COURT:  Well, this is seemingly not the emergency

17  I thought it was.  How about July 21st?

18          MS. WENRICH:  Your Honor, would I be able to attend

19  via Zoom?  I am out of town (indiscernible).

20          May I speak with co-counsel for a minute

21  (indiscernible)?

22          THE COURT:  You may.  Mr. Roth, does that date work

23  for you?

24          MR. ROTH:  July 21st works, yes.

25          MS. WENRICH:  Your Honor, Mr. Otto does not need to

1  be here, if we could go back to July 6th if that would work?

2          THE COURT:  All right.  July 6th, is that okay with

3  you, Mr. Roth?

4          MR. ROTH:  I'm sorry, I couldn't hear you.

5          THE COURT:  July 6th?

6          MR. ROTH:  July 6th?

7          THE COURT:  Yes.

8          MR. ROTH:  That's fine with me.

9          THE COURT:  All right.  Ms. Snyder, does July 6th

10  work for you?

11          MS. SNYDER:  Yes, Your Honor, it will.

12          THE COURT:  All right.  So again, for that hearing

13  you will either need to have video capability on a device, so

14  you've got time to make sure that you have a device that can

15  handle that, or otherwise you'll need to be here in the

16  courtroom for that.

17          MS. SNYDER:  Okay.  Understood, Your Honor.  Thank

18  you.

19          THE COURT:  All right.  I will set this hearing for

20  -- I'll set it for eleven o'clock on July 6th.  All right.

21          Based on my statements, are the parties in a position

22  to work out a consent order granting limited stay relief on the

23  basis that I have indicated or do you wish the Court to draft

24  the order itself?

25          MS. WENRICH:  Your Honor, could we take ten minutes

1 to talk to opposing counsel and opposing party and see if we

2 would be able to work something out?

3     THE COURT:  You're welcome to do that but I have to

4 warn you that I'm going to bring my trial back in.  So what

5 you'll have to do then is notify my chambers whether or not

6 you've reached an agreement on an order.  I don't need one

7 today.  I mean, if you need -- I'll give one or two business

8 days to work out an order and if not then I'll just do my own

9 order.  But if you want to have it wrapped up today while

10 you're both here and you're in the courtroom, that's fine.  But

11 I'm going to tell you that I'm probably going to bring them

12 back and I may not be able to have another break for -- until

13 about noon or so.

14     MS. WENRICH:  Understood, Your Honor.  I will -- Mr.

15 Roth, if it's okay with him, we'll talk and I can update

16 chambers or he can be on the call with me while I update

17 chambers as to whether we're able to work it out.

18     THE COURT:  All right.  And then since this does not

19 relate to -- this relates to stay relief, I mean, Ms. Snyder,

20 you filed a response to the motion for stay of relief but I'm

21 viewing this as an issue between Ms. Biros and U-LOCK so I will

22 require the parties to provide you with a copy of that order

23 but I'm not sure that it's necessary for you to be involved in

24 those discussions since it involves the debtor itself at this

25 point.

37

1          MS. SNYDER:  Okay.  Thank you, Your Honor.

2          THE COURT:  All right.  Anything further we need to
3    address at this point?

4          MR. ROTH:  Nothing further.

5          THE COURT:  Okay, very good.  Well, I have a fairly
6    good understanding of where things are with this case and we
7    will cut through the remaining issues once we have all the
8    necessary parties here.  In the meantime I'll give the parties
9    an opportunity to meet and confer about the terms of an
10   acceptable order and if you need additional comments from the
11   Court, like I said, you can hang around.  But otherwise, if the
12   parties have agreed on terms of a consent order, then you can
13   submit to me under a certification of counsel, what I'll say is
14   by the the end of -- by four o'clock tomorrow since this is
15   Thursday.  The week has kind of gone by.  So 4 p.m. tomorrow
16   for a COC.  Okay.

17         MS. WENRICH:  Thank you, Your Honor.

18         THE COURT:  All right.  Thank you very much everyone.

19         All right.  That concludes the matter --

20         MS. SNYDER:  Thank you, Your Honor.

21         THE COURT:  -- set before the Court at this time we
22   will take ten-minute recess and come back on the record in Pius
23   Street, and then alert the parties of Pius Street that we will
24   start at 10:30.  Thank you.

25                         *  *  *  *  *

# C E R T I F I C A T I O N

I, MYRIAM LOPEZ, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Myriam Lopez
MYRIAM LOPEZ

J&J COURT TRANSCRIBERS, INC.      DATE:  June 7, 2022