FILED
8/15/22 3:34 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-20823-GLT |
| | . | |
| | . | |
| U LOCK INC, | . | 5414 U.S. Steel Tower |
| | . | 600 Grant Street |
| | . | Pittsburgh, PA 15219 |
| Debtor. | . | |
| | . | August 9, 2022 |
| . . . . . . . . . . . . .. | | 2:14 p.m. |

TRANSCRIPT OF [#14] CONTINUED EXPEDITED MOTION TO DISMISS CASE,
IN ADDITION TO MOTION FOR SANCTIONS AGAINST PETITIONING
CREDITOR, OR IN THE ALTERNATIVE MOTION FOR RELIEF FROM STAY, OR
IN THE ALTERNATIVE MOTION TO ABANDON THE MOVANTS PROPERTY;
[#36] ORDER GRANTING CHRISTINE BIROS LIMITED RELIEF FROM THE
STAY; [#86] NOTICE REGARDING NON-COMPLIANCE AS DIRECTED BY
PARAGRAPH 12 OF THE ORDER AT ENTRY 36; [#53] MOTION TO CONVERT
CASE FROM CHAPTER 7 TO 11; [#102] EXHIBITS TO BE REFERENCED AT
HEARING ON 8/9/22
BEFORE HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Law Office of J. Allen Roth |
| | By:  J. ALLEN ROTH, ESQ. |
| | 805 S Alexandria Street |
| | Latrobe, PA 15650 |
| | |
| For Christine Biros: | Bernstein-Burkley, P.C. |
| | By:  SARAH ELIZABETH WENRICH, ESQ. |
| | 601 Grant Street, 9th Floor |
| | Pittsburgh, PA 15219 |
| | |
| ECRO: | Hayley Smith |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

2

APPEARANCES (Cont'd):

For Christine Biros in       The Law Firm of William E. Otto
the State Court Action:      By:  WILLIAM E. OTTO, ESQ.
                             P.O. Box 701
                             Murrysville, PA 15668

For Shanni Snyder,           By:  SHANNI SNYDER, PRO SE
Petitioning Creditor:        14390 Route 30, Unit H
                             North Huntingdon, PA 15642

TELEPHONIC APPEARANCES:

Chapter 7 Trustee:           Mahady & Mahady
                             By:  ROBERT H. SLONE, Trustee
                             223 South Maple Avenue
                             Greensburg, PA 15601

Chapter 7 Trustee for        Zebley Mehalov & White, P.C.
Shanni Snyder acting as      By:  CHARLES O. ZEBLEY, JR., ESQ.
Creditor:                    P.O. Box 2124
                             Uniontown, PA 15401

- - -

1          THE COURT:  All right.  The next matter is Case

2   Number 22-20823, U LOCK INC.

3          I'm going to take appearances first here in the --

4   I'll start over here, appearances for the debtor.

5          MR. ROTH:  I'm sorry.

6          THE COURT:  Would you like to enter your appearance,

7   please?

8          MR. ROTH:  Allen Roth on behalf of debtor.  Good

9   afternoon.

10          THE COURT:  And this is Mr. Snyder?

11          MR. SNYDER:  Yes, it is.

12          THE COURT:  All right.  Good afternoon.

13          MS. SNYDER:  Shanni Snyder for myself.  Your Honor,

14   would you like us to keep masks on, or are they okay off?

15          THE COURT:  If you're comfortable, you can remove

16   them, as long as you're distant from everyone else.

17          MS. SNYDER:  Thank you, Your Honor.

18          THE COURT:  All right.  I'll take appearances over

19   here.

20          MS. WENRICH:  Hi, Your Honor.  Sarah Wenrich here on

21   behalf of Christine Biros.  I'm also here with Ms. Biros, as

22   well as William Otto.

23          THE COURT:  All right.  Good afternoon.  All right.

24   Let me take appearances by video, please.

25          MR. SLONE:  Robert Slone, Chapter 7 Trustee for

1    U LOCK.

2            THE COURT:  Good afternoon.

3            MR. ZEBLEY:  Your Honor, Charles Zebley.  I'm the

4    Chapter 7 Trustee for Shanni Snyder.  We would be here as a

5    creditor.

6            THE COURT:  All right.  Good afternoon.  Any other

7    appearances on the Zoom call?

8                        (No audible response)

9            THE COURT:  All right.  We are here on a number of

10   matters.  I have a continued hearing on the expedited motion to

11   dismiss the case, or in addition for sanctions against the

12   petitioning creditor, or a motion for relief from stay filed by

13   Christine Biros.

14           I have a notice regarding a non-compliance with my

15   order granting limited stay relief that was filed by U LOCK at

16   Docket Number 86.

17           In addition, this is also the time set for the

18   hearing on the motion to convert the case from Chapter 7 to

19   Chapter 11 filed by the debtor, U LOCK, and I have responses in

20   opposition by Christine Biros and Trustee Slone.

21           And last, but not least, I think it's worth noting

22   that I have two adversary proceedings that were filed, as well;

23   an Adversary Number 22-2048 by U LOCK against Christine Biros

24   for a stay violation, as well as an Adversary Number 22-2052,

25   which was by Shanni Snyder against U LOCK for a declaratory

1  judgment.  I also have a motion to intervene filed by Ms.

2  Snyder in Adversary 22-2048.

3         So, you have all kept yourselves quite busy since we

4  were last together, and I have a number of items to tend to,

5  and I think we will need to go through them with some care.

6  But let me first get an update from the Chapter 7 Trustee, Mr.

7  Slone, on where things are from his perspective, and then I

8  want to get into the notice of non-compliance.  Trustee Slone.

9         MR. SLONE:  Can you hear me?

10        THE COURT:  I can.

11        MR. SLONE:  Your Honor, so far I've received from the

12 debtor $1895.  That was the monies that they had from different

13 rents, et cetera, some sales.  That money has been deposited.

14        I also got all the bank statements for the January 1,

15 2022 to June 30, 2022, and it shows the gross deposits of

16 $2,610, and that's for the six-month period, Your Honor.

17        The bankruptcy schedule said that the gross revenue

18 was $8,400.  I don't know where the other money was, or is.

19 The -- also, the Official Form 207 reports the gross revenues

20 for 2021 at 13,200, and the year 2020 at 12,000.  So, it's not

21 a lot of business being handled in this case, Your Honor.

22        I've taken Mr. Mark Ferry, an auctioneer and

23 liquidator, down to the site.  We went through with George

24 Snyder, looked at all the assets.  The amount of assets that

25 are owned, or claimed to be owned, by U LOCK at this time is

6

1  not a lot, Your Honor.  In fact, Mr. Ferry would not conduct an

2  auction down there, and he thought the best thing to do would

3  be to get a surplus guy down there to hunt for the metal.

4  There's not a lot of value there at this time, Your Honor.

5         In looking at a lot of the pleadings that were filed,

6  I've sent letters out to all the people that had rented down

7  there asking them to pay money, what monies that they owed,

8  which were according to the information I received from U LOCK.

9         Now, the one problem is, there are no leases, and

10  little or no records for me to enforce any of these.  So, I've

11  asked the people to pay.  I haven't received any monies over

12  the last three or four weeks from any of these people.  I don't

13  know how I would go about trying to prove my case, Your Honor,

14  at this point.

15        Basically, that's what's happened so far.  Also, no

16  tax returns have been filed since the company was formed in

17  2015.  So, that's another difficulty that we had.

18        THE COURT:  I received a declaration today that was

19  filed by Mr. Snyder that suggested that there was property

20  being removed from the site.  Are you aware of anything like

21  that?

22        MR. SLONE:  There may have -- I didn't receive that.

23  There was a -- I got a paper and met with George -- or Glenn

24  Mowry (phonetic) who had equipment down there.  I showed him

25  the list of what belonged to U LOCK, and he's debating whether

1  some of that is his equipment or not, Your Honor.  I told him

2  that he would have to get me some type of proof to show what

3  was his, and told him not to take anything off the property,

4  Your Honor.

5       Some of the other people who rent may have taken some

6  of their items out of their lockers, Your Honor.

7       THE COURT:  Out of the storage lockers?

8       MR. SLONE:  Yes.

9       THE COURT:  Okay.  But what about debtor assets that

10 would have some value, have those been secured, or are they --

11 I mean, I guess you're telling me there is no assets with any

12 significant value?

13      MR. SLONE:  That's what Mr. Ferry concluded, Your

14 Honor.

15      THE COURT:  So, the -- some of these assets that are

16 listed in this declaration, excavator, or trailer, these items

17 don't have --

18      MR. SLONE:  All the items that were --

19      THE COURT:  -- a fork truck?

20      MR. SLONE:  All the items that were listed in their

21 schedules, plus the additional items that we looked over, most

22 are not in any type of operating condition, Your Honor, and Mr.

23 Ferry felt that they weren't worth a lot.  All these items were

24 out in the open, basically.  There's 20 some acres there.

25      THE COURT:  Okay.

1          MR. SLONE:  And they were spread over the -- over

2    those acreage.

3          THE COURT:  All right.  Thank you.  All right.  Well,

4    let me go back to this notice of non-compliance.  You know,

5    there's an allegation that there's been destruction of

6    scheduled property and a cease and desist letter.  Is there any

7    concerns that the Trustee wishes to raise to the Court that I

8    should be aware of in terms of what's going on with the

9    property there?

10          MR. SLONE:  Well, there are -- there were some

11   limited remediation efforts being taken by the Biros people as

12   per the prior order of Court.  Apparently, they needed

13   something from the Township to go forward, and I believe

14   they've gotten that permission from the Township, but the Biros

15   attorney could further address that, Your Honor, but I don't

16   believe there's any other issues.

17          THE COURT:  All right.  Well, let me go to Mr. Roth.

18   You filed this notice regarding non-compliance.  I've got a

19   Chapter 7 Trustee who's -- has oversight over the estate assets

20   at this point, has not indicated an issue with anything that's

21   gone on at this point.  Why should I consider anything over and

22   above that at this stage?

23          MR. ROTH:  I'm sorry.  I had trouble hearing the last

24   thing you said.

25          THE COURT:  What are you attempting to raise with the

1  Court at this point with respect to the notice of non-

2  compliance?

3       MR. ROTH:  Well, Your Honor, the non-compliance I

4  think had to do with what was going on in the court

5  proceedings, and they were continuing to try to collect even

6  after the bankruptcy was filed, and we believe that they

7  violated --

8       THE COURT:  Collect what?

9       MR. ROTH:  What's that?

10      THE COURT:  Collect what?

11      MR. ROTH:  Well, they went into court proceedings

12  asking to get funds and to get transfers made to them by the

13  State Court even after we filed this.

14      THE COURT:  Okay.  You're talking about your

15  adversary proceeding.  I'm talking about you filed a notice of

16  non-compliance suggesting that Ms. Biros was violating the stay

17  relief order with respect to the Phase I testing, and you

18  referenced a cease and desist letter that was issued by North

19  Huntingdon Township.  Is there any outstanding or remaining

20  issues that pertain to that at this point?

21      MR. ROTH:  Could I ask my client that?

22      THE COURT:  Well, I mean, you're counsel for the

23  debtor, and you're the one that filed it, so I'm assuming

24  you're up to speed on this.

25      MR. ROTH:  I understand.  At this point I don't think

1 │ there's anything to argue there.

2 │       THE COURT:  All right.  All right.  Well, then I'm

3 │ going to consider the notice to be addressed and withdrawn at

4 │ this point.  If there is a further issue -- I mean, all the

5 │ issues raised in the notice of non-compliance are issues that

6 │ if they are a problem, I expect the Trustee to raise to my

7 │ attention as the estate fiduciary.

8 │       I'm satisfied with the report I received from Mr.

9 │ Slone today that he's on top of things, that he's examined the

10 │ property, he's found that there's nothing to secure at this

11 │ point.  But if there is something in the future, I expect him

12 │ to raise that with me at this point.  So, that's going to

13 │ address that item at this point.  Let's get into --

14 │       MS. SNYDER:  May I speak as a creditor, as well?

15 │       THE COURT:  Well, you did not file anything with

16 │ respect to the notice of non-compliance, so I don't know that

17 │ you have any standing to raise anything with that at this

18 │ point.

19 │       MS. SNYDER:  But the creditors -- there's no

20 │ transparency with the creditors because Ms. Biros is implying

21 │ that the Trustee granted her permission to destroy the

22 │ scheduled tanks, and I think a motion to abandon it should be

23 │ required first.

24 │       THE COURT:  Well, it may very well be that the

25 │ Trustee does file a motion to abandon, but at this point, if

11

1  you've got an issue with the way Mr. Slone is administering the

2  estate, you can raise that with me, but at this point I'm --

3  I've received the representation that he's examined the

4  property.  He does not find that there's anything there that is

5  worth protecting at this point, and he also -- I'm not hearing

6  anything of any substance to suggest that there is property

7  that's being destroyed to the point that that would have an

8  adverse impact on the estate.

9          MR. ROTH:  Judge, can I add something here?

10          THE COURT:  All right.  What is it?

11          MR. ROTH:  Well, under the guise of remediation, what

12  they were doing is, they were destroying things and destroying

13  items that could have some value to U LOCK, and that's what we

14  didn't want to see happening.

15          THE COURT:  All right.  Well, you heard Trustee Slone

16  say that he brought an expert onto the property.  He did not

17  find anyone -- anything there with any value, other than

18  perhaps scrap value.

19          MR. ROTH:  Okay.

20          THE COURT:  Do you have reason to believe that there

21  is an asset there that could be sold for more than what scrap

22  value would be?

23          MR. ROTH:  Well, my client tells me there is, but I'm

24  not sure what that is.  Could we have him testify?

25          THE COURT:  I'm not going to get into that today, but

1  --

2          MR. ROTH:  Okay.

3          THE COURT:  -- I just need to get an overview on some

4  of this stuff because there's a number of issues that I need to

5  address.  I'm holding back right now on where I am on some of

6  this because I just -- I -- this is not going down the path

7  that it should be going down, and I am completely surprised at

8  the actions I've been seeing some of these parties taking here

9  in light of -- well, I'll leave it at that.

10         Let me hear about the motion to convert from a 7 to

11  11.  This is your motion, Mr. Roth -- I'm sorry.  Mr. Roth.

12         MR. ROTH:  I'm sorry.  I couldn't quite hear that

13  again.  I'm sorry.

14         THE COURT:  You can begin the presentation of your

15  motion to convert from Chapter 7 to Chapter 11.

16         MR. ROTH:  Motion to what?  I'm sorry.

17         THE COURT:  You filed a motion to convert.

18         MR. ROTH:  Right.  This property was purchased by

19  U LOCK in good faith because the company was reliant on -- and

20  because the company was reliant on Ms. Biros for its funding,

21  when the disputes arose it never had the opportunity to

22  develop.

23         So, we filed a motion to convert from Chapter 7 to

24  Chapter 11.  This allows for the Trustee to be in a limited

25  role to assist, but provides a small business entity to be in

1  possession.

2          We believe that as a basis for the constructive trust

3  to Ms. Biros on her unsecured loan was U LOCK's insolvency.

4  Now, we believe that the constructive trusts are voidable under

5  the Pennsylvania constructive trust voidable law and under

6  bankruptcy law.  And we believe we have bankruptcy cases which

7  says that constructive trusts can be held to be voidable, and

8  what that does is, makes those people become unsecured

9  creditors that get constructive trust.

10          Our plan would be to invoke those laws and then allow

11  there to be an infusion of $850,000 to pay off all the

12  creditors in this case.  That would pay off Shanni Snyder, and

13  that would pay off Ms. Biros, and give them interest -- all

14  pre-judgment interest on all those items, and if we could have

15  that happen we believe that we could make this a viable

16  concern.

17          We have insurance on the property currently, and in

18  addition to that, we have an individual named John Michael

19  Levesque who is willing to become the president of the entity,

20  and to run this operation.

21          Now, Mr. Levesque is -- has extensive government and

22  business consulting in his history.  He was the mayor of a town

23  in Rhode Island, and that town was about the same size as North

24  Huntingdon, which is where U LOCK is located.

25          With regard to the taxes that are owed, we believe

14

1  that those taxes will all be cleaned up within 90 days, and we

2  can file a plan within 45 days and initiate the adversary to

3  reverse the 20 -- January '22 judgment, which is giving us the

4  problem here.

5          So, we believe -- and the other thing that will

6  happen then is that the investors in U LOCK would retain about

7  20 percent of U LOCK, but the rest of it would then be

8  distributed to the people who are helping them do all these

9  things.

10         So, we believe that this could be an ongoing and a

11 thriving concern, especially with the help of the individual,

12 and we therefore are asking that the case be transferred.

13         THE COURT:  All right.  Have you discussed with

14 Trustee Slone any cause of action that you claim might exist on

15 behalf of U LOCK to somehow void the constructive trust?

16         MR. ROTH:  Again, I don't believe we have discussed

17 that with him at this point.

18         THE COURT:  Is there a reason why you haven't?

19         MR. ROTH:  Well, I've had discussions with him, but

20 we never got to the point where we were discussing that

21 particular issue.

22         THE COURT:  And you believe that there is case law

23 that would suggest that you can collaterally attack the State

24 Court judgments?

25         MR. ROTH:  I believe, yes, we -- I believe we can do

15

1  that, yes.

2        THE COURT:  That does not run afoul of <u>Rooker-Feldman</u>

3  or res judicata?

4        MR. ROTH:  I don't believe it does.

5        THE COURT:  Explain to me how that would work.  What

6  would be the basis to believe that there is an ability to

7  collaterally attack that?

8        MR. ROTH:  I couldn't quite hear that question again.

9        THE COURT:  What is the legal basis that you rely on

10 to suggest that there still is another method of attack on that

11 constructive trust?

12       MR. ROTH:  Well, we believe that the transfer is

13 voidable, okay, and that's what we would intend to pursue is

14 the claimant is voidable.

15       And that occurred on January 22nd, I believe, with an

16 order of court is what created the constructive trust.

17       THE COURT:  All right.  What about the business

18 itself?  Mr. Slone had suggested that at most there was $2600

19 deposited into the debtor's bank accounts in the first six

20 months of the year.

21       MR. ROTH:  Yes, we understand that.

22       THE COURT:  Are there any other funds that the debtor

23 has, or is that the sum and substance of the debtor's proceeds?

24       MR. ROTH:  Well, we understand that the company has

25 not been making a whole lot of money in the past, and we

16

1  understand that there are not big dollars there, but with the

2  infusion of $850,000, which this firm is willing to do to help

3  this company move along, I believe that then it will become a

4  thriving business, especially with the help of Mr. Levesque to

5  help that happen.

6        THE COURT:  What kind of thriving business?  I mean,

7  are you talking about a self-storage business, or are you

8  talking about development of the property?

9        MR. ROTH:  Well, I think part of what they're

10 contending to do is to develop the property in better and more,

11 and better ways than the way it's been developed so far.

12       THE COURT:  Okay.  But right now there's no --

13 there's no real business there, is there not?

14       MR. ROTH:  Just some lockers and things that people

15 store in.

16       THE COURT:  Okay.  But Mr. -- I mean, do you have any

17 reason to dispute that Mr. Slone said that there's no leases,

18 and so there's no ability to enforce payment against somebody

19 who has items stored there?

20       MR. ROTH:  That's my understanding.

21       THE COURT:  Okay.  And so as a result, $2,000 in

22 revenue over the course of six months is probably the best this

23 business can hope for?

24       MR. ROTH:  Well, that -- so far, until we make

25 further development.

1      THE COURT:  Okay.  But what I'm trying to understand

2  is what would be the reorganizational purpose of converting

3  this to an 11?  It doesn't sound like there's a business there

4  to salvage.

5      So, to the extent that there are a bundle of rights

6  that the debtor has, why should I not just let the Trustee sell

7  those rights, and then either your client or somebody else can

8  buy them and do with them what they want?

9      MR. ROTH:  Well, I would suggest this, I'm not sure

10  this quite answers your question, but the property is worth a

11  good bit of money.  It's worth a lot more than the $300,000

12  that was put into it.  It's probably worth a couple of million

13  dollars, and we believe if we develop that site, that it could

14  serve to generate a good bit of money.

15      THE COURT:  Okay.  But if there was an actual claim

16  there to the property and it's viable, why wouldn't the Chapter

17  7 Trustee be in a position to bring that claim on behalf of the

18  estate?

19      MR. ROTH:  I'm sorry.  I had trouble hearing again.

20  I'm really sorry about that.

21      THE COURT:  If there is indeed a viable claim to

22  challenge the constructive trust, why is the Chapter 7 Trustee

23  not equipped to pursue that claim on behalf of the bankruptcy

24  estate?

25      MR. ROTH:  Well, they could, but we think that if it

1  was transferred to an 11, then we could reorganize, and we

2  would have much more productive earnings in the future,

3  especially with the help of this gentleman with all the

4  experience with governmental and things.

5          THE COURT:  Okay.  Anything else at this point on the

6  motion to convert?

7          MR. ROTH:  Nothing further.

8          MS. SNYDER:  May I say something about the

9  reorganization?

10          THE COURT:  Well, again, Ms. Snyder, I don't think

11  you filed anything with respect to the motion to convert.  Did

12  you file a response to the motion to convert?

13          MS. SNYDER:  It was their motion.

14          THE COURT:  Right.  So, if you don't file a response,

15  that doesn't give you a ticket to say anything in the court.

16  You got to preserve your right.  So, that's what the response

17  is for.

18          All right.  Let me hear from the Trustee with respect

19  to the motion to convert.  Mr. Slone.  Oh, you're on mute.

20          MR. SLONE:  Okay.  Your Honor, first of all, I don't

21  believe converting will accomplish anything.  I don't even

22  think that U LOCK should be in bankruptcy at all.  I think the

23  case should be dismissed.

24          However, I had brought up the issue prior of selling

25  the right for any cause of action I might have.  If the U LOCK

1  people want to buy it and pursue those claims, that's fine.  I

2  don't think I'm going to be -- I don't think we have the

3  ability to overturn the lower court's decision, Your Honor, but

4  I'm willing to sell those rights, and they can pursue that,

5  Your Honor.

6           THE COURT:  All right.  Nothing --

7           MR. SLONE:  And if they have somebody that will fund

8  them for 800 and some thousand dollars, they should have enough

9  money to give a payment to me.

10          THE COURT:  All right.  Anything else?

11          MR. SLONE:  No, sir.

12          THE COURT:  All right.  Thank you.  All right.  Let

13 me hear from Ms. Biros with respect to the motion to convert.

14          MS. WENRICH:  Thank you, Your Honor.  So, my

15 pleadings say most of our argument, but I do want to address a

16 couple of things.

17          First off, with regard to the real property, at the

18 end of the day the real property as it stands is Ms. Biros',

19 and any claim that U LOCK has for a potential successful

20 reorganization relies on that property.  There is no lease to

21 be assumed.  They have no legal interest in the property.

22 There's just nothing there that would make a reorganization

23 make sense.

24          Additionally, with regard to the constructive trust,

25 it was actually created in 2019.  It goes back to the Court of

1  Common Pleas opinion where they said that the property was held

2  in constructive trust for the benefit of Ms. Biros at that

3  point, so it's, you know, January 2022 is just the date that

4  the deeds were released from escrow, but the constructive trust

5  happened way back in 2019.

6       As to the proposed exhibits that were filed by the

7  debtor in support of their motion, there's a big concern with

8  regard to authenticity of some of those documents.  We have no

9  one here to testify to authenticate them, and in particular the

10 entity with the alleged funding, the USAAG, done some research,

11 I cannot find any trace of this company in Connecticut, in

12 Pennsylvania, I can't find any evidence of -- I think that one

13 was maybe Dave Carter -- related to USAAG, I just -- I can't

14 find anything.  I'd like to think that I'm good at doing

15 research after three years of law school, but I came up empty.

16      And I just think right now there are so many

17 questions based upon items that have been in the pleading and

18 there has been truly utter lack of candor with the Court in

19 many of these pleadings.  And I don't think that putting the

20 debtor back in a position where they are running the company

21 will benefit any party in interest.

22      THE COURT:  All right.  Thank you.

23      All right, Mr. Roth, anything further from you?

24      MR. ROTH:  Nothing further.

25      THE COURT:  All right.  Well, presently before the

21

1  Court is the U LOCK motion to convert the case from Chapter 7

2  to Chapter 11 relying on Section 706(a) of the Bankruptcy Code.

3      I would note that this is not a mandatory provision.

4  The right to convert is not absolute, and despite that motions

5  under 706(a) are to be granted liberally with the presumption

6  that they are filed in good faith, but that is subject to

7  706(d) which provides that, quote, a case may not be converted

8  to a case under another chapter of this title unless the debtor

9  may be a debtor under such chapter.  And that was a provision

10 that the Supreme Court relied upon quite extensively when it

11 rendered its decision in <u>Marrama v. Citizens Bank of</u>

12 <u>Massachusetts</u>, 549 U.S. 365.  It's a Supreme Court case from

13 2007, where it found that debtor could not convert from a 7 to

14 a 13 as a matter of right when the debtor was not eligible to

15 be a Chapter 13 debtor due to actions that had occurred

16 previously.

17     So, I do find that the Court has discretion to deny a

18 Section 706(a) motion if there is a showing of bad faith, an

19 illegitimate purpose, or it would not further the best

20 interests of creditors of the estate.

21     And here I look at the record that I have in front of

22 me, I first note the debtor did not timely bring a motion to

23 convert, and the timing is somewhat prejudicial.  The

24 involuntary was filed on April 27th, 2022, the initial hearing

25 on Ms. Biros' motion to dismiss was on June 2nd, 2022, and the

1  answer to the involuntary petition was due on June 13th.  And

2  in the absence of an answer, I issued an order for relief on

3  June 17th, 2022.

4         This motion to convert was not filed until July 1st,

5  17 days after the answer date, and after a Trustee was already

6  appointed.

7         There's no reason given for this delay and

8  furthermore, I note after looking at the motion to convert and

9  after listening to argument here today, I'm still not getting a

10 real substantive reason given for conversion.

11        This business is admittedly, quote, strapped

12 financially.  That's based on Mr. Snyder's testimony in the

13 July 6th hearing, Docket Number 88 at Page 23.  And I had no

14 explanation as to how the debtor will reorganize or what funds

15 it will utilize.  I have representations of apparently some

16 additional funding that will come in if the debtor is given a

17 chance to reorganize, but as my questioning has alluded to and

18 I think Mr. Slone has also hit upon, it's not clear to me why

19 the debtor if it wished to go down that road could use that

20 funding to acquire assets from this bankruptcy estate through a

21 liquidation sale and then be on its way, and why there would be

22 a need to convert the case to an 11 and go through the cost,

23 expense and delay of doing a plan just to achieve the same

24 result.  It would be much more efficient and better for all

25 involved, including creditors of the estate, to keep this in a

1  7 for that basis.

2  It also seems to me based on the discussions here

3  today and at previous hearings that U LOCK's true purpose is to

4  develop the property, not to engage in a self-storage business,

5  which admittedly generates little to nominal value, $2600 in

6  receipts for the first six months of the year.  Statement of

7  financial affairs suggests revenues of no more then $1,000 a

8  month, and as a result, I'm not convinced that there is a

9  business to reorganize around.

10  The Trustee only has $2,000 on hand.  Certainly not

11  worthy of the expense necessary to do a Chapter 11 and the

12  retention of all professionals that are necessary to get a

13  Chapter 11 case up and running, and that's separate and apart

14  from U.S. Trustee fees that would be accrued on that -- in that

15  case while it's running.

16  Furthermore, I think there are reasons to keep this

17  in a Chapter 7.  Admittedly at the last hearing, the debtor

18  indicated there was no insurance in place as of July 6th.

19  There is a representation now in the record that there is

20  insurance.  If I accept that as true, I still find that there

21  is acknowledgment that the debtor has never filed tax returns

22  dating back to its formation in at least 2015, which is

23  problematic.  And I also have many reasons to believe and to

24  want to have a Trustee in place.

25  The docket here, the docket in the state court, is

1  replete with contentious litigation.  Parties going at it on

2  every conceivable issue, and as a result, it would be helpful

3  to have a Trustee there as a buffer to look out for the best

4  interests of the estate, not necessarily of a particular party.

5        Furthermore, those parties have raised a new issue

6  with me every week and, quite frankly, I don't have a lot of

7  faith in the debtor's ability to self-manage here in the

8  Chapter 11.

9        Assuming that the debtor indeed did get insurance,

10  the debtor did not get that insurance until compelled to do so

11  through questioning in this court.  And then I have numerous

12  irregularities with the bankruptcy expectations here.  I've got

13  U LOCK commencing an adversary proceeding on behalf of the

14  debtor even though a Trustee has been appointed and before

15  conversion has been granted.

16        I have Shanni Snyder who seems to be acting as an

17  extension of U LOCK, and Ms. Snyder has brought her own claims

18  which seemingly would belong to her bankruptcy estate and

19  seemingly has done so without consulting her Chapter 7 Trustee

20  or seeking approval or the ability to do that on her own.

21        And, finally, I think the cost of a Chapter 11 estate

22  is just not worth the benefit that would be attained by

23  obtained by converting.  As I indicated before, my lack of

24  faith in the debtor's management at this point, in fact I think

25  I said this at a prior hearing, if I were to convert the case I

25

1  was probably going to be inclined to want to appoint a Trustee,

2  and I just don't see the benefit of having a Chapter 11 Trustee

3  and that layer of administrative expense added onto the cost of

4  what's a very modest estate.

5           So, for that reason, I think the case is best served

6  in a 7.  There's no business to be compromised while it's in a

7  7 because I'm not convinced that the self-storage business has

8  any great revenue stream and seems to be rather informal as it

9  is.  So at best, this is a debtor who has claims, tenuous that

10 they may be to the real property, but that's really the nuts

11 and bolts of what this estate asset is.  So, on that basis, I'm

12 going to deny the motion to convert.

13          So, what I want to do now go into is these adversary

14 proceedings and some of the actions of the parties.  You know,

15 I've got this adversary that was filed on behalf of U LOCK, and

16 right now -- I thought it was pretty clear at the last hearing

17 that the Trustee stands in the shoes of U LOCK.  So, it is only

18 the Trustee who can bring that adversary at this point.

19          So, Mr. Roth, what is the basis for me considering to

20 allow that adversary to proceed at this point given that the

21 Trustee is not the one bringing that action?

22          MR. ROTH:  Well, Your Honor, if the Trustee is not

23 going along with it, then I guess we're kind of stuck with it.

24          THE COURT:  Well, have you consulted with the Trustee

25 on that?

1          MR. ROTH:  Pardon me?

2          THE COURT:  Have you consulted with the Trustee about

3 bringing that action?  I mean, just so we're clear -- and Mr.

4 Slone's on here.  I mean, the allegation is that there was a

5 stay violation by what happened in state court, and if the

6 Trustee is in agreement that there's an action to be brought

7 there, then the Trustee can bring it.

8          So, have you had a conversation with Mr. Slone about

9 that?

10          MR. ROTH:  We have not talked about that, Your Honor.

11          THE COURT:  All right.  Well that's problem number

12 one.  You cannot usurp the power of a Trustee and take

13 possession of an estate asset on your own.  Do you realize

14 that?

15          MR. ROTH:  Yes, Your Honor.

16          THE COURT:  That itself is a stay violation.  All

17 right, Mr. Slone, are you aware of the allegations in the

18 adversary?

19          MR. SLONE:  (No audible response).

20          THE COURT:  I didn't -- I don't know if you're on

21 mute again.

22          MR. SLONE:  Well, I've read what he wrote and I

23 called Mr. Roth and told him to withdraw it, Your Honor.  If --

24 like I said before, if they want to pursue these claims, you

25 know, they can buy them from me.  I'm not pursuing these

1   claims, Your Honor.

2          THE COURT:   You're not pursuing a stay violation?

3          MR. SLONE:   Well, I don't know that there -- in fact

4   there was a stay violation, Your Honor.

5          THE COURT:   Well, I don't know, maybe there is a

6   difference of opinion there.   I -- based on what I've seen so

7   far, I think this is a curious case where I've got three

8   parties here, and all three of you have violated the stay.

9          I think Ms. Biros may have violated the stay by

10  asking the state court to issue a further court order while the

11  bankruptcy was pending.   I think I raised questions about that

12  the very first hearing.   I'm not sure what the explanation is

13  for that but yet, you know, again, that's my preliminary

14  observation, I'll give Ms. Biros an opportunity to be heard on

15  that.

16         Mr. Roth, I think you may have violated the stay by

17  taking possession of an asset and trying to pursue a claim on

18  behalf of U LOCK where there is a Chapter 7 Trustee involved.

19         And, Ms. Snyder, I think you did the very same thing.

20  You've got Mr. Zebley, who is the trustee of your personal

21  bankruptcy estate, who reopened the case to administer an

22  asset, and now you are trying to usurp his authority by

23  bringing an adversary action yourself.

24         MS. SNYDER:   I believe I have standing because I own

25  portion of it -- a portion of it.

1              THE COURT:  You may have an ability to receive

2       proceeds of it, but that doesn't give you the ability to

3       control the asset.

4              MS. SNYDER:  Well, I --

5              THE COURT:  It is the Trustee's asset to administer.

6              MS. SNYDER:  I believed he would -- he would, and I

7       still had --

8              THE COURT:  Well, have you had discussion with Mr.

9       Zebley about bringing this adversary case?

10             MS. SNYDER:  We e-mailed and I e-mailed Mr. Slone, as

11      well.

12             THE COURT:  All right.  But did Mr. Zebley say that

13      you could proceed with this adversary on his behalf?

14             MS. SNYDER:  I'm not sure.

15             THE COURT:  All right.  I'll take that as a no.  So,

16      what I'm telling you is this --

17             MS. SNYDER:  Could we ask --

18             THE COURT:  -- I am -- I was very close to

19      considering dismissing this case because based on what Mr.

20      Slone has indicated there is no real value here.  Now, perhaps

21      if there is some value to be gained from the sale of the claims

22      or the sale of the residual assets, perhaps there's something

23      to be gained there.  But to me, the only benefit of keeping

24      this action open is to adjudicate what I see are perhaps three

25      separate stay violations.  This is something I've never seen

1  before where every single party could have violated the stay.

2          MR. OTTO:  Pardon me, Your Honor.  May I speak?

3          THE COURT:  You may.

4          MR. OTTO:  Your Honor, I represented Ms. Biros in the

5  state court action.  If you look at the Court of Common Pleas

6  docket, what you will find is that the petition for writ of

7  possession and the issuance of the writ of possession were all

8  done prior to --

9          THE COURT:  Yes, that's a misapplication of the law.

10 I read what Judge Smail said about that and that's --

11 unfortunately I hate to disagree with a judicial colleague, but

12 once you put something --

13         MR. OTTO:  But, Your Honor, may I --

14         THE COURT:  -- in order -- just because you started

15 the process doesn't give you the ability to continue the

16 process.

17         MR. OTTO:  That's not my point, Your Honor.  My point

18 is that the notice of the bankruptcy was not filed until after

19 the writ of possession was issued, and no action was taken on

20 it.  It was mailed to me and I held it and did not take any

21 action on it.  All of that took place prior to the suggestion

22 of bankruptcy and filed in the state court action.

23         In other words, the -- Judge Smail, who issued the

24 writ of possession, did not have notice of the bankruptcy

25 filing until after that writ of possession was issued.

1          I'm not going to argue whether a stay was committed

2     -- or a violation of the stay was committed, you can look at

3     the calendar and determine that, but it was certainly not a

4     willful violation of the stay.

5          THE COURT:  All right.  Well, I have to look back and

6     I admit that it's been awhile since I looked at that

7     transcript, but I just recall that there was discussion on the

8     record in that transcript of there being a bankruptcy and what

9     actions the State Court could or could not do in light of that

10    bankruptcy.

11         MR. OTTO:  That was a motion that I filed for

12    sanctions against Mr. Roth and Mr. Snyder, not against U LOCK.

13    And the sanctions motion was related to actions that they had

14    both taken during the course of the trial and the appeal, but

15    it was not against U LOCK.  In fact, I specifically stated that

16    we were not attempting to take any action against U LOCK

17    because of the stay.

18         THE COURT:  All right.

19         MR. OTTO:  I'll be happy to provide whatever

20    information --

21         THE COURT:  Yes, I will give every party an

22    opportunity to respond to where we are at this point, so.  I'm

23    not making any determinations on that today.

24         All right.  So, again, you know, I said this the

25    first day, that I felt like this case is the wild, wild west,

1  and now it's been brought into my courtroom, where everyone's

2  just taking unilateral actions, and no one's paying attention

3  to what their obligations are, what their rights are and what

4  abilities they truly have.

5          All right.  Let me hear -- let me ask this at this

6  point.  At this point, I'm inclined to just outright deny

7  Adversary 22-2048, which is the stay violation brought by

8  U LOCK because it was not pursued by the Chapter 7 Trustee on

9  behalf of the U LOCK estate.  So, any reason why I should keep

10 that adversary on my calendar at this point, Mr. Roth?

11          MR. ROTH:  No.  No, Your Honor.

12          THE COURT:  All right.  Very well.  Then I'm going to

13 deny that adversary, and commensurate with that I will deny the

14 motion to intervene that was filed by Ms. Snyder.

15          Ms. Snyder, I'm inclined to deny your adversary on

16 the basis that you do not control the claim that belongs to

17 your bankruptcy estate, although you may have an interest in

18 the proceeds that the estate garners from that claim.  So, is

19 there any reason why I should not dismiss your adversary at

20 this point?

21          MS. SNYDER:  Because it was also post-bankruptcy.

22          THE COURT:  All right.  Because you filed the case

23 after the bankruptcy was closed?

24          MS. SNYDER:  Well, the January of 2022 dates were

25 issued, and then the bankruptcy was filed, so my lien is still

1  superior to her's -- to Ms. Biros'.

2          THE COURT:  All right.  Well, I'm not making any

3  determination on the nature and extent of priority of the lien

4  until I know that you are the one who actually possesses the

5  lien.

6          MS. SNYDER:  Okay.

7          THE COURT:  And right now I believe that that is an

8  asset of your estate --

9          MR. ZEBLEY:  Your Honor, can I speak --

10          THE COURT:  -- it wasn't disclosed.  All right, Mr.

11  Zebley.

12          MR. ZEBLEY:  Here's where we are with Ms. Snyder's

13  case.  There's a meeting of creditors on Friday.  I think Ms.

14  Snyder has a claim that arose prior to her filing of bankruptcy

15  against U LOCK for work she did for U LOCK, and that work

16  continued after she filed and after the case closed.  She

17  obtained a default judgment against U LOCK.

18          In her bankruptcy so far no creditors have filed any

19  claims, and we'll have to see what happens.  It's a Chapter 7

20  case.  I think the appropriate thing to do myself is to dismiss

21  her case now as premature.  She should in her own case file an

22  application for abandonment which would have brought the matter

23  before the Court and she could have asked the Court's

24  permission in her case to appear in the U LOCK case.

25          But that's where we are right now.  I have no intent

33

1   of -- as of today, of filing an action.  We'll see after the

2   meeting of creditors if my opinion changes.

3          THE COURT:  All right.  Ms. Snyder, anything further

4   from you?

5          MS. SNYDER:  No, thank you, Your Honor.

6          THE COURT:  All right.  Well, again, I'm going to

7   deny Adversary 22-2052 as that was commenced without the

8   requisite authority of the Chapter 7 Trustee who has control

9   over that asset at this point.

10         All right.  Well, that leaves me with the original

11  motion to dismiss and like I said, potential stay violations

12  involving the remaining parties here, so.

13         Mr. Slone, when do you intend to make a final

14  conclusion as to what you intend to do with respect to the

15  estate assets at this point?

16         MR. SLONE:  Your Honor, I will confer with Mr. Roth

17  -- Allen Roth and see if they want to purchase any causes of

18  action.  The other assets we either abandon or get a liquidator

19  in there for salvage value.  But I wanted to wait to see what

20  happened today, but I will contact Mr. Roth and see if we can

21  proceed there.  Otherwise, I'll just -- I can abandon and maybe

22  file this as a no distribution case, Your Honor.

23         THE COURT:  All right.  You can also discuss whether

24  there is a resolution of any stay violation between the estate

25  and Mr. Roth for commencing the adversary, as well.

34

1        MR. SLONE:  Okay.

2        THE COURT:  Related to that, Mr. Zebley, you can have

3   a discussion with Ms. Snyder about any resolution of any stay

4   violation that may have occurred with respect to her

5   commencement of the adversary proceeding.  Since that is a

6   Judge Bohm case, that would not be something for me to decide,

7   but it would be something to address in that case, but if the

8   parties can reach a resolution of that, you're welcome to do

9   so.

10       And then last, but not least, I will also deal with

11  and address whether there has been a stay violation with

12  respect to the conduct of Ms. Biros with respect to the state

13  court proceedings and these events which transpired prior to

14  the first motion to -- first hearing on the motion to dismiss

15  after the involuntary was started.

16       But at this point, if the Trustee wishes to broker a

17  sale of assets, he's welcome to do so.  If there is an

18  inability to reach a resolution, then I will consider

19  dismissing this case, reserving solely the jurisdiction on any

20  ancillary 362 motions that might need to be addressed for

21  willful violations of the stay.

22       All right.  Anything else that the parties wish to

23  address or raise at this point in these proceedings?

24       MS. WENRICH:  Your Honor, if I may, I know my motion

25  is pending with regard to relief from stay and abandonment.  I

1 understand the way it's been teed up that it likely doesn't

2 make sense.  I know you're not inclined to abandon the property

3 at this time, but I do want to make clear that my client would

4 also like the opportunity to purchase any potential claims or

5 assets, as well, and I also just want to put on the record that

6 we reserve all rights if there is litigation commenced against

7 my client that's vexatious, we reserve the right to seek any

8 sanctions necessary.

9      THE COURT:  Well, I want everyone to think twice

10 about what they file in this court.  You know, we're not

11 shooting from the hip here.  There needs to be a sound legal

12 basis for any document that's filed with this court or any

13 request for relief, and you darn well better be sure that you

14 have the ability to bring the action that you proceed with.  It

15 does not belong to somebody else or some other estate.

16      With that said, I'm keeping the motion to dismiss

17 open because that is a vehicle upon which I will dismiss the

18 case if I find it reaches that point, but I certainly expect

19 too that if the Trustee is looking to liquidate or sell the

20 remaining assets including any bundle of rights or causes of

21 action that the estate may have, he will entertain offers from

22 all quarters and not necessarily just the parties in this room.

23 And I expect that Trustee Slone with his experience in dealing

24 with these types of estates will do that.

25      So, if there's nothing further then, I'll consider

36

1   this matter to be concluded.  I'm sorry.  Is there something

2   else?

3        MS. WENRICH:  I'm sorry, Your Honor.  One more thing.

4   I -- there was a second notice regarding the compliance with

5   the relief from stay order that Mr. Roth filed on behalf of the

6   debtor.

7        THE COURT:  You said a second notice?

8        MS. WENRICH:  Yes.  I believe it was on August 3rd.

9        No, I'm sorry, Your Honor.  It may have just been the

10  declaration regarding additional issues alleging non-

11  compliance.  I'm just -- I wasn't sure how you wanted to handle

12  that.

13       THE COURT:  No, that looks like that was just a

14  declaration that was filed.  I'm viewing that in conjunction

15  with the notice of non-compliance --

16       MS. WENRICH:  Okay.

17       THE COURT:  -- which I'm deeming to be withdrawn at

18  this point.

19       MS. WENRICH:  Okay.  Thank you, Your Honor.  Sorry

20  about that.

21       MS. SNYDER:  Your Honor, may I just say one more

22  thing?

23       THE COURT:  Good ahead.

24       MS. SNYDER:  So I did believe that in excess of

25  80,000 belonged to me, so my apologies to the Court.  I just

1  wanted to file that to preserve my rights to their respect.

2        THE COURT:  Well, I understand that but again, I

3  thought we had a clear discussion about this before, that that

4  claim is not in your control at this point.  That is a claim

5  that belongs your estate, even if you have rights to a portion

6  of the proceeds.

7        MS. SNYDER:  Okay.

8        THE COURT:  And so, it's not something that you can

9  just unilaterally proceed with without prejudicing the

10 bankruptcy estate and without getting clearance or guidance

11 from Trustee Zebley.

12       I mean, the two you should be on the same team.

13       MS. SNYDER:  Yes.

14       THE COURT:  And it's -- that's not something that

15 sits well with me when I see that there is subversive actions

16 being taken to undercut the authority of a Chapter 7 Trustee.

17       MS. SNYDER:  Okay.  I apologize, Your Honor.

18       THE COURT:  All right.  Anything further from any of

19 the parties?

20       MR. ROTH:  Nothing further.

21       THE COURT:  All right.  Well, then I expect the

22 parties to straighten up here.  I've had enough of this and

23 it's detracting from, you know, resolving this matter and

24 seeing if there's anything here to be liquidated and to

25 preserve -- or to proceed with the expeditious resolution of

1  this estate.

2          So, with that, I'll issue a bundle of orders for the

3  reasons I've stated on the record here today, and then I'll

4  wait to hear from Trustee Slone with respect to his further

5  efforts to liquidate the remaining assets of this estate.

6          With that, we'll consider this matter to be concluded

7  for now.  Thank you very much, everyone.

8          ALL ATTORNEYS:  Thank you, Your Honor.

9                      * * * * *

10

11              **C E R T I F I C A T I O N**

12          We, COLETTE MEHESKI and CINDY POST, court approved

13  transcribers, certify that the foregoing is a correct

14  transcript from the official electronic sound recording of the

15  proceedings in the above-entitled matter, and to the best of

16  our ability.

17

18  /s/ Colette Meheski

19  COLETTE MEHESKI

20

21  /s/ Cindy Post

22  CINDY POST

23  J&J COURT TRANSCRIBERS, INC.      DATE:  August 15, 2022

24

25