FILED
8/31/22 4:56 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

```
IN RE:                        .  Case No. 22-20823-GLT
                              .
                              .
U LOCK INC,                   .  5414 U.S. Steel Tower
                              .  600 Grant Street
                              .  Pittsburgh, PA 15219
         Debtor.              .
                              .  August 25, 2022
. . . . . . . . . . . . . . . .  11:35 a.m.
```

TRANSCRIPT OF [#14] CONTINUED EXPEDITED MOTION TO DISMISS CASE,
IN ADDITION TO MOTION FOR SANCTIONS AGAINST PETITIONING
CREDITOR, OR IN THE ALTERNATIVE MOTION FOR RELIEF FROM STAY, OR
IN THE ALTERNATIVE MOTION TO ABANDON THE MOVANTS PROPERTY;[#36]
ORDER GRANTING CHRISTINE BIROS LIMITED RELIEF FROM THE STAY
BEFORE HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            Law Office of J. Allen Roth
                           By:  J. ALLEN ROTH, ESQ.
                           805 S Alexandria Street
                           Latrobe, PA 15650

For Christine Biros:       Bernstein-Burkley, P.C.
                           By:  SARAH ELIZABETH WENRICH, ESQ.
                           601 Grant Street, 9th Floor
                           Pittsburgh, PA 15219

For Christine Biros in     The Law Firm of William E. Otto
the State Court Action:    By:  WILLIAM E. OTTO, ESQ.
                           P.O. Box 701
                           Murrysville, PA 15668

ECRO:                      Hayley Smith

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311        Fax No. (609) 587-3599**

```
APPEARANCES (Cont'd):

For Shanni Snyder,        By:  SHANNI SNYDER, PRO SE
Petitioning Creditor:     14390 Route 30
                          Unit H
                          North Huntingdon, PA  15642

TELEPHONIC APPEARANCE:

Chapter 7 Trustee:        Mahady & Mahady
                          By:  ROBERT H. SLONE, Trustee
                          223 South Maple Avenue
                          Greensburg, PA 15601


                            - - -
```

1      THE COURT: All right. The next matter is Case
2 Number 22-20823, U LOCK INC. All right. This is a continued
3 hearing on the Expedited Motion to Dismiss or in the
4 alternative Motion for Sanctions and Relief From Stay. So, on
5 that basis, I'll take appearances first for the moving party
6 Christine Biros.
7      MS. WENRICH: Good morning, Your Honor. Sarah
8 Wenrich here on behalf of Christine Biros. Also here with me
9 is William Otto.
10     THE COURT: All right, good morning. Now, I'll take
11 appearances for U LOCK.
12     MR. ROTH: Allen Roth on behalf of U LOCK.
13     THE COURT: All right, good morning.
14     MR. SNYDER: George Snyder, Your Honor.
15     THE COURT: All right, good morning.
16     MR. SNYDER: Good morning.
17     THE COURT: I'll take appearance from Ms. Snyder.
18     MS. SNYDER: Shanni Snyder on behalf of myself.
19 Thank you.
20     THE COURT: All right, good morning.
21     MS. SNYDER: Good morning.
22     THE COURT: And I'll take appearances by Zoom. Do I
23 have the Chapter 7 Trustee?
24     MR. SLONE: Robert Slone, Chapter 7 Trustee, Your
25 Honor.

4

1    THE COURT: All right, good morning. And, do I have
2 anyone else on the line who wishes to enter an appearance?
3                    (No audible response)
4    THE COURT: All right, this is a continued hearing on
5 that motion to dismiss, as I referenced before. Since that
6 time, I have received a status report from the trustee
7 indicating that he has explored the potential of selling the
8 debtor's remaining assets, which would include significantly a
9 bundle of claims that debtor's estate may have and there may
10 have been a purchase offer received.
11    So, why don't I start with that, Mr. Slone. If you
12 can tell me where things are from the trustee's standpoint on
13 case administration, because that'll have a bearing on where I
14 come down on the motion and whether the case should continue.
15    MR. SLONE: Your Honor, I did receive the offer, as
16 set out in my status report, to buy my cause of action
17 regarding the property at 14140 Route 30, North Huntingdon,
18 Pennsylvania. Since I filed the status report, I've received
19 another offer, Your Honor. This is for the tangible personal
20 property. This offer was made by Christine Biros to buy up all
21 the tangible assets as outlined in her response or, I mean, in
22 her offer. So, now I have two sales to tee up, Your Honor.
23    THE COURT: All right, what's the time frame --
24    MR. SLONE: And the amount on that sale would be the
25 offer of $20,000 plus the assumption of any property or real

1  estate taxes owed by U LOCK to Westmoreland County on the
2  property at 14140 Route 30.
3             THE COURT: Okay. And what's the time frame by which
4  you anticipate bringing those sale motions?
5             MR. SLONE: I would probably have them in by the end
6  of next week, Your Honor.
7             THE COURT: Okay.
8             MR. SLONE: I'll try to, anyway.
9             THE COURT: All right. Anything else from the
10 trustee at this point?
11            MR. SLONE: No, sir.
12            THE COURT: All right. Let me go to Ms. Biros'
13 counsel here. In light of the fact that I've got two potential
14 sale motions, why should I not just deny the motion to dismiss
15 at this point because it seems like there's a benefit to
16 keeping the bankruptcy open and liquidating the estate at this
17 point?
18            MS. WENRICH: Your Honor, I think with regard to the
19 motion there -- as you're aware, there are a number of
20 different areas of relief that are requested. One of those is
21 relief from stay. I understand that there is an offer to
22 purchase the bundle of rights that might relate to the real
23 property. However, as far as has been made aware to the Court
24 or to us, there are no rights that relate to the property. For
25 that reason, I think relief from stay is still appropriate to

1  proceed maybe with the state court action, get another order
2  for just possession of the property.  I know the other one had
3  been entered after the bankruptcy and had been voided by Your
4  Honor, so --
5         THE COURT:  Well, I don't know that I've done that
6  yet, so I guess that's my question.  Is there any reason why I
7  should not void or enter an order deeming that May 13th order
8  as void?
9         MS. WENRICH:  Yes, Your Honor.  I think that that May
10 13 order could be modified so that it does not violate the
11 stay.  I know that one provision in the order stated that Ms.
12 Biros could also collect and sell any personal property of the
13 debtor.  We understand that that violates the stay.  We are not
14 trying to do that, which is part of the reason why Ms. Biros
15 made an offer then to purchase that property.  What we would
16 like is just to be able to obtain rightful possession of that
17 property.  This has been going on for years.
18        THE COURT:  Well, have you had any further
19 discussions with the trustee if there is a need to expand the
20 existing stay relief order at this point?
21        MS. WENRICH:  We have had discussions with the
22 trustee multiple times a week just touching base on where
23 things are.  I know with the trustee, he's between a rock and a
24 hard place with the sale of the potential interest related to
25 the property.  My understanding is that the trustee does not

1  believe that the debtor has any interest in the property.  That
2  being said, when there's an offer to purchase any rights,
3  whether or not those exist, it's hard to look the other way.
4          THE COURT:  Well, I mean, I think that's the -- from
5  your client's perspective, the trustee is selling the Brooklyn
6  Bridge here, and, you know -- but if the trustee has got
7  someone that's willing to pay value for it, and this is an as
8  is where is sale then, you know, we'll entertain that.
9          But I guess getting back to the motion that's
10 pending, given that the trustee has relayed that there's two
11 offers for value, including one from your client, I'm not
12 seeing a basis to dismiss.  And, as to the stay relief, I'm not
13 really clear on what additional stay relief Ms. Biros is asking
14 for.
15         And if there is a basis for expanded stay relief,
16 what I would prefer to see is that you discuss it with the
17 trustee, and if the trustee is acceptable to it, it can be
18 proposed through a proposed form of order.  The other parties
19 have an opportunity to object before the Court enters that, but
20 at this point I'm comfortable that the trustee has the estate's
21 interest in mind and can be in a position to consent if it's
22 appropriate.
23         MR. OTTO:  Excuse me, Your Honor, if I can speak?
24         THE COURT:  Pull a microphone in front of you.
25         MR. OTTO:  One -- one of the -- excuse me.  One of

1 the issues is the potential existence of property of renters on
2 the property.  I know the trustee has given every renter 30
3 days to take their property.  There are still lockers on the
4 property with locks on them.  We've talked to the trustee about
5 going in and emptying all of those lockers and all of the
6 facilities and saving the -- those -- any property we find on
7 the site in a garage that exists on the site.  I know the
8 trustee was reluctant to do that without some authorization or
9 blessing from the Court.

10 But, one of the concerns that my client has is that
11 whatever we do is going to open her up for claims by those
12 renters that property was damaged and so forth.  So, that's one
13 concern that we have that would allow -- or that would be
14 furthered by the interest -- or by the continuing of the
15 bankruptcy for at least --

16 THE COURT:  Well, here's what my question is, and I'm
17 happy to have all parties weigh in on this.  The trustee
18 initially said he didn't see a lot of value here and had
19 previously indicated that he might have actually supported
20 dismissal.  That has changed based on these offers.

21 Nevertheless, he's indicated to me he's prepared to
22 do a sale motion for both properties in the next week.  We can
23 get those teed up and have those heard in 30 to 45 days.  Once
24 those sales are consummated, I'm not seeing any other reason to
25 have any further administration in this case, unless someone

1  tells me otherwise.  So, is there any reason to rush
2  disposition of third-party property at this point when it
3  actually may sort itself out once these sales are completed and
4  the case is able to close?
5         MR. OTTO:  I think it would facilitate the --
6  resolving any claims by -- as third-party renters.  I mean,
7  they've had notice to get their stuff out.  They haven't done
8  that.  But, in any landlord-tenant action, if you take the
9  property of the tenant, then you expose yourself to claims of
10 property damage unless you safeguard the property, and there's
11 a period of time in which a tenant can still come back and
12 claim their property.  My client's concern, quite frankly, Your
13 Honor, especially with regards to this offer for, quote,
14 whatever rights U LOCK may have in the property, is that it is
15 only -- it -- only devised by some unnamed party to expose my
16 client to further senseless litigation.
17        Every time something has been filed in this case, she
18 has had to respond to it with a net result that this has just
19 driven the cost of this for her up and up with no clear
20 justification from either U LOCK or Mr. Snyder.  The two
21 actions that were filed, adversary actions, that were filed by
22 Shanni Snyder and U LOCK, which this Court dismissed the last
23 time we were here, were done in violation of the stay.  There
24 have been actions appealed in the state court action.  There
25 are four appeals in the original case that were filed in

1 violation of the stay by both U LOCK and Ms. Snyder.

2 It's just -- that's the objection we have to the sale 3 of the rights. I understand it's a Brooklyn Bridge situation, 4 but the problem is, somebody is going to go out and try and 5 enforce the sale of the Brooklyn Bridge.

6 THE COURT: Well, but I mean, you know, your client 7 is free to purchase the claims, as well, and foreclose that 8 alternative if your client's the highest bidder for that 9 property. So, I mean, what I'm left with is, if I've got 10 someone who's willing to pay money for a bundle of rights that 11 the trustee is holding, I have to make sure the trustee is 12 maximizing the value of the estate, no matter what it contains.

13 MS. WENRICH: Your Honor, related to that, I 14 understand that the trustee is trying to sell a bundle of 15 rights regardless of what that contains, but I think that there 16 does need to be some clarification and potentially limitation 17 of that, particularly with regard to any causes of action that 18 are barred by res judicata. I think that's our big concern. 19 This issue has been appealed up to the Pennsylvania Supreme 20 Court. It was -- I think the record was stayed in the 21 Pennsylvania Supreme Court because the debtor wanted to appeal 22 to the Supreme Court of the United States. That was not done 23 within the requisite time period.

24 We just -- there's no reason to not bar or include 25 any claims that go against res judicata, and I think that would

1  need to be clear or we would request that that be clear --
2  THE COURT:  But I think that goes to making a
3  representation or warranty by the trustee that trustees do not
4  do in these types of sales.  The trustee is just there to say
5  this is what I have, this is what I'm selling, I make no
6  representation as to what you can do with it, or whether it's
7  limited, or if it's expanded.  It is what it is.  And I don't
8  think the Court has any appetite of expanding further onto that
9  either.
10  So, you know, I think that's where we are at this
11  point.  Now, I can certainly appreciate your client's concerns
12  with respect to that but you know even before the bankruptcy
13  was filed, U LOCK and its counsel were going to try to make
14  similar types of arguments anyway, so I don't know that there's
15  anything out there as far as an insurance against future
16  litigation.  That's just how it works.
17  So all I can say is that if the trustee is going to
18  put this -- these assets on the market, it's open and available
19  for anyone to make an offer for, and anyone can come in and try
20  to acquire those assets.  All right, anything further from Ms.
21  Biros at this point?
22  MS. WENRICH:  Not with regard to the sale, no.
23  THE COURT:  All right.  Let me hear from U LOCK.
24  MR. ROTH:  Well, Your Honor, we think that we should
25  not allow the Biroses to take possession at this point, because

1  all those claims that could happen need to be resolved and we
2  don't believe that transferring possession to the Biroses would
3  facilitate that, and we would like to be able to defend those
4  actions and do what we need to do there.
5        THE COURT: Okay. Before I come back to Ms. Snyder,
6  Mr. Slone, did you have any further comment on the pending stay
7  relief motion at this point and whether the Court should
8  consider an expansion beyond what's already in its order
9  granting limited stay relief?
10       MR. SLONE: I don't have any views on that, Your
11 Honor. There is a limited stay. The parties are still
12 bickering with each other over that, but I think it can work.
13 If the parties want to agree on some additional language,
14 that's fine with me.
15       THE COURT: Let me come back to the purchase offer
16 you received for the claims. So, you've received a $4,000
17 deposit at this point?
18       MR. SLONE: I did receive a $4,000 deposit and put it
19 in my trustee account, Your Honor.
20       THE COURT: And what would be the terms of closing on
21 this? How soon would the closing occur?
22       MR. SLONE: I believe it's 30 days after confirmation
23 of the sale, Your Honor.
24       THE COURT: Okay. All right, Ms. Snyder, anything
25 further from you at this point?

1            MS. SNYDER:  Just that what you said makes sense to
2 me that I still believe they're trying to get preference over
3 me, but I do have standing now.  I thought Mr. Zebley would be
4 here today, but there's really nothing more here for me today.
5            THE COURT:  Has there been a new development in that
6 case?
7            MS. SNYDER:  He just agreed with me that we would
8 work something out, that I had stand in $80,000.
9            THE COURT:  Okay.  All right, anything further from
10 the parties at this point?
11           MS. WENRICH:  Your Honor, we have I guess questions,
12 maybe comments, regarding the appeal.  I'm not sure if you want
13 to discuss that --
14           THE COURT:  No, I'm prepared to have everything on
15 the table at this point, but anything else on the pending
16 motion?
17                     (No audible response)
18           THE COURT:  Okay.  Well, on the motion as it stands,
19 I'm finding, as I indicated, there is no basis to dismiss the
20 case, as the trustee has conjured up value here based on the
21 two sale -- or the proposed sales that he intends to bring
22 within the next week, so I'm going to deny that portion of the
23 motion as it pertains to the request for dismissal.
24           As to the request for stay relief, I note that I did
25 previously enter an order at the very outset of this case

1  providing limited stay relief.  I haven't really heard a basis
2  that suggests to me that Ms. Biros is not adequately protected
3  to the extent that she needs additional stay relief beyond
4  what's been previously provided.
5         And, to the extent that there is a further request, I
6  think the best way to handle that is, as I indicated, an
7  attempt to work out something consensually with the Chapter 7
8  trustee so that, as long as it doesn't interfere with the
9  trustee's administration of the estate or the value of the
10 assets that he's attempting to liquidate, I would consider that
11 on consent, and that can be submitted without further motion.
12 We'll certainly have an opportunity for parties to be heard on
13 that.
14         But just right now, I'm not really clear on exactly
15 what it is above and beyond that would be requested, other than
16 a wholesale lifting of the stay, which I'm not prepared to do,
17 given that the trustee still has assets to liquidate.  So, I'm
18 going to deny the rest of that motion without prejudice to
19 bringing a consent motion or a consent order, I should say, in
20 the near future.
21         And then, as to the motion for sanctions, I will deny
22 that for now with prejudice -- without prejudice, pending the
23 resolution of this case because I do think that in the event
24 that that needs to be reassessed, that can better be viewed at
25 the lens of seeing how this case played itself out.  So, that

1  deals with that motion at this point.

2  One other item I do want to close the loop on is this
3  May 13th order, and, you know, we had had some prior
4  discussions about this at the last hearing. I had indicated
5  before that I had concerns about stay violations amongst all of
6  the parties here. And with respect to that, we have the
7  implication of the May 13th order issued by the State Court,
8  which from the Court's review appears to be void based on a
9  stay violation itself.

10  So, based on that, I do wish to have the trustee
11 investigate those issues and have 30 days that to the extent
12 that the trustee finds that there's, in his view, any 362(k)
13 violation by any party here, whether it be U LOCK, Ms. Snyder,
14 or Ms. Biros, that he bring an appropriate motion to address
15 that with the Court within that 30-day period. Is that
16 understood, Mr. Slone?

17  MR. SLONE: Yes, Your Honor.

18  THE COURT: All right, thank you. All right, so, Ms.
19 Wenrich, you wanted to ask a question or address something with
20 respect to the appeals?

21  MS. WENRICH: Yes. Thank you, Your Honor. With
22 regard to the appeal, I guess, we question whether the debtor
23 has any standing to bring the appeal given that the trustee is
24 in control. I think it runs afoul of <u>Weintraub</u> (phonetic), I
25 think it's problematic altogether and I think it also ignores

1  some of your comments at the last hearing that the trustee is
2  in control and  making decisions.  I'm not sure what authority
3  any officers or directors of the debtor would have to make
4  decisions to file an appeal at this time.
5           THE COURT:  Unfortunately, those issues are beyond my
6  control at this point, because once the appeal is filed, then
7  those issues are within the domain of the District Court.  So,
8  what I feel about it, and what my thoughts are, and what I'm
9  able to do about that is limited at this point.  So, unless
10 anyone else wanted to have a discussion on it, I don't know
11 that there's any further benefit to be gained by the
12 discussion.  Anything from Mr. Roth?
13          MR. ROTH:  Nothing further.  No.
14          MS. SNYDER:  Nothing furhter.
15          THE COURT:  All right, very well.  Okay, anything
16 else that the parties want to address at this point?
17                    (No audible response)
18          THE COURT:  Okay.  You know, the other thing I'm
19 going to tell the parties, I mean, you've all come down here
20 and personally appeared for all of these hearings, and I really
21 do appreciate that.  That tells me that everyone's got
22 dedication to the case,
23          But I also realize you're all coming in from
24 Westmoreland County, and as someone who does that commute every
25 day, you are welcome to participate by Zoom if you wish.  The

1  only time I'm going to have parties here in person is if we're
2  going to take evidence and we're going to have witnesses.  So,
3  I leave that open to you so that you can cut down on costs, and
4  time, and effort going forward if you wish to do so.  Now,
5  certainly, if I think things are going to get out of hand then
6  I'll want the parties to come back here.  But I just don't want
7  to continue driving up expenses for all involved in this
8  transaction in this case, so just make that note.
9         All right.  So, just in closing, I've issued my
10 ruling on the remnants of the Biros motion to dismiss.  And
11 I've also directed the trustee to have 30 days to investigate
12 any potential 362(k) action that may have occurred on behalf of
13 any of the parties to this matter at this point.
14         And last, but not least, I leave it out there as an
15 order to show cause to the parties as to why I should not just
16 render that May 13th, 2022 order void on its face.  So, with
17 that, we'll consider this matter to be concluded for now, and
18 I'll wait to see the trustee's sale motions next week.  Thank
19 you all for being here.
20         MS. WENRICH:  Thank you, Your Honor.
21         MS. SNYDER:  Thank you, Your Honor.
22         MR. ROTH:  Thank you, Your Honor.
23                   * * * * *
24
25

# **C E R T I F I C A T I O N**

I, WENDY ANTOSIEWICZ, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.

<u>/s/ Wendy Antosiewicz          </u>

WENDY ANTOSIEWICZ

J&J COURT TRANSCRIBERS, INC.          DATE:  August 31, 2022