IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 22-20823-GLT |
| **U LOCK INC.**, | Chapter 7 |
| *Debtor.* | |
| **ROBERT H. SLONE**, in his capacity as chapter 7 trustee of U Lock, Inc., | |
| *Movant,* | Related to Dkt. Nos. 175, 183, 184 and 185 |
| v. | |
| **CHRISTINE BIROS**, *et al.*, | |
| *Respondents.* | |

## AMENDED ORDER[1]

U Lock, Inc. operated a self-storage facility on real property located at 14140 Route 30 in North Huntington, Pennsylvania (the "Real Property").[2] The Debtor earned only a modest revenue from its business operations (less than $1,500 per month),[3] and its director and majority shareholder, George Snyder, readily admits that the primary value of the enterprise was to acquire the Real Property and develop a shopping plaza on the site.[4] The Debtor was attracted to the project because it perceived the Real Property to be "an extremely undervalued piece of real estate[.]"[5]

Snyder contends that he and his brother, Kash Snyder, formed U Lock with the assistance of Christine Biros and John Biros, who allegedly provided funding to acquire the

---

[1] This Order supersedes and amends the Order dated November 14, 2022 at Dkt. No. 210 solely for the purpose of correcting certain typographical or minor errors.
[2] See *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*, Dkt. No. 65, p. 17.
[3] Id. at Question 1 (showing gross business revenue of $13,200 for 2021 and $12,000 for 2020).
[4] Id. at p. 17.
[5] Id.

Real Property.[6] The parties dispute whether Christine Biros is an insider of U Lock, but what is relevant is that Biros was determined to be the owner of the Real Property.

For several years, the Debtor and Christine Biros were engaged in substantial litigation to determine the ownership of the Real Property. Although the Debtor claims to hold a legal interest, Christine Biros obtained the exclusive deeds to the Real Property through a state court judgment that was affirmed on appeal and constitutes a final, non-appealable order.[7]

Shanni Snyder commenced these proceedings by filing an involuntary bankruptcy petition against the alleged Debtor on April 27, 2022.[8] When the Debtor failed to respond to the petition, the Court entered an order for relief on June 17, 2022 and Robert H. Slone was appointed as chapter 7 trustee.[9]

The trustee filed a motion[10] seeking authority to sell substantially all of the Debtor's assets to Christine Biros for $31,000 plus the assumption of certain liabilities.[11] The sale is part of the trustee's efforts to expeditiously and efficiently liquidate the chapter 7 bankruptcy estate, consistent with his duties under 11 U.S.C. § 704. The trustee previously attempted to retain an auctioneer to market and sell the assets, but after touring the Debtor's location, the auctioneer suggested the assets lacked sufficient value to justify the expense of an auction. After soliciting offers from the major players in this case,[12] the trustee (in his

---

[6] Id.
[7] See Biros v. U Lock, Inc., 255 A.3d 489 (Pa. Super. Ct. 2021), reargument denied (July 28, 2021), appeal denied, 271 A.3d 875 (Pa. 2022) (affirming trial court order directing conveyance of the property to Biros). On January 20, 2022, the Court of Common Pleas of Westmoreland County, Pennsylvania issued an order directing the release of deeds to the Real Property to Biros. See Biros v. U Lock, Inc., No. 17CJ04886 (Pa. Ct. Comm. Pl. January 20, 2022).
[8] Dkt. No. 1.
[9] Dkt. No. 42.
[10] See Trustee's Motion for Sale of All Tangible and Intangible Personal Property of the Estate, Dkt. No. 175.
[11] As stated in the Motion and clarified during the November 10, 2022 hearing, the trustee is selling the Debtor's right, title, and interest in all tangible and intangible property of the estate, excluding only its cash and the estate's claims under 11 U.S.C. §§ 546 or 547 against George Snyder (as identified by the trustee, the "Excluded Assets"). Motion at ¶ 3.
[12] See Dkt. Nos. 135 (the trustee previously received an offer of $19,000 for the Debtor's claims and/or

business judgment) opted to proceed with the current offer from Ms. Biros. To ensure the estate receives optimal value for the assets, the sale is subject to higher and better offers.

The motion has drawn objections from the Debtor and two insiders, George Snyder and Shanni Snyder,[13] arguing that, among other things, the sale notice is defective and competing bidders lack sufficient information to form a competing bid.[14] After a lengthy hearing on November 10, 2022, the Court sustained the objections in part and denied the objections in part as provided by this Order. It determined that additional clarity was required in the sale documents to ensure that all relevant parties are on notice of the trustee's efforts to sell the assets free and clear of all liens, that suitable prospective purchasers are advised of the opportunity to bid, and that clear guidelines are established to govern the submission and evaluation of competing bids for the assets. Accordingly, for the reasons stated on the record, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1. **Amended Sale Documents**. The trustee is directed to file an amended sale motion and notice of sale to (a) clarify that the sale will be free and clear of any liens, claims, and encumbrances under 11 U.S.C. § 363(f), (b) specify that assets will be conveyed on an "as is, where is" basis, with no representations and warranties of any kind, (c) provide additional detail on the assets he intends to convey; (d) identify the terms of the initial bid; and (e) invite interested parties to offer competing bids that surpass the initial bid, provide for a closing no later than December 16, 2022, and requires buyer to remove the acquired assets within 30 days of entry of an order approving the sale. The Court concludes that due to

---

causes of action from USAAG Systems Co.), 137.

[13] George Snyder is a director of the Debtor and its majority shareholder. Dkt. No. 66, 108. He also verified the accuracy of its bankruptcy schedules. See Dkt. No. 65. Shanni Snyder is the sister of George and Kash Snyder, who were involved with the Debtor's formation. Dkt. Nos. 66, 198 ("U Lock operated through Shanni Snyder's brothers and members of the Biros family as silent partners"). Accordingly, the Court finds that both constitute "insiders" as defined under 11 U.S.C. §101(31)(B).

[14] The Court has not yet ruled on the Debtor's standing to object to the sale pending completion of any auction process.

inconsistencies in the Debtor's records and ongoing disputes as to whether assets are owned by the Debtor or a third party, it is impractical for the trustee to produce a comprehensive listing of the Debtor's assets without engaging in expensive and time-consuming litigation. Accordingly, the trustee is directed to compile a schedule of assets subject to the sale from the best available information and to attach the schedule to the sale notice and provide copies to any interested bidders. The *Schedule of Assets* shall include: (a) the assets listed on Schedule A/B; (b) the assets acknowledged by George Snyder to be estate assets (as shown on Exhibit A to Dkt. No. 108)); (c) a "catch-all" provision identifying the Debtor's right, title, and interest in all other assets with the exception of the Excluded Assets; and (d) a listing of the Excluded Assets.

    2.    **<u>Service of Amended Sale Documents</u>**. On or before **November 17, 2022**, the trustee shall:

    (a)    Serve the amended sale motion and this Order upon all respondents, including all parties claiming a lien or other interest in the assets, as well as any other party required to receive notice as required by the Federal Rules of Bankruptcy Procedure or the Local Rules of this Court. Given the allegation of environmental liabilities on the Real Property and the potential assumption and assignment of the same as part of the proposed sale transaction, the Court requires service upon all environmental regulatory authorities, government agencies, and political subdivisions having jurisdiction over the Debtor's operations, assets, or the Real Property, including but not limited to the U.S. Environmental Protection Agency, the Pennsylvania Department of Environmental Protection, Westmoreland County, North Huntington Township, the U.S.

Attorney for the Western District of Pennsylvania, and the Attorney General for the Commonwealth of Pennsylvania.

(b) Serve the amended sale notice upon all other creditors or parties in interest, as well as any prospective buyers reasonably known to the trustee based on his past experience liquidating of assets of this type. For the avoidance of doubt, the Court requires the amended sale notice to be served upon any scrap or salvage buyers/dealers known to the trustee or reasonably recommended by any parties.

(c) File an updated notice of sale with the Court's *Electronic Access to Sale Information* ("EASI") system.

The trustee shall further file a corresponding certificate of service within three (3) business days of service.

3. **Published Notice of Sale**. The Court finds that the notice published in the *Tribune-Review*, a paper of general circulation, references the incorrect sale hearing date.[15] Accordingly, the trustee shall publish an amended notice of sale on or before **November 17, 2022**. For the avoidance of doubt, the published sale notice need not include a comprehensive listing of the assets, but it must identify the November 29, 2022 Bid Deadline (defined herein). Rather, it is enough for the notice to direct interested buyers to the Court's website or elsewhere for additional information. The trustee shall file a supplemental proof of publication upon receipt from the publisher.

4. **Due Diligence**. Parties deemed to be bona fide potential bidders for the assets (as reasonably determined by the trustee) shall have the ability to conduct on-site due diligence from 9 a.m. through noon on November 21, 2022 (or such other time prior to November 29, 2022 as the trustee may reasonably agree). The trustee shall also make available

---

[15] See Dkt. No. 181 (referencing a hearing date of October 6, 2022).

any environmental assessments or analysis that he may have in his possession regarding the May 2022 "garbage fire" and any related aftermath.

5. **Bidding Procedures**. The trustee reported that he received expressions of interest from multiple parties (primarily the main parties to this case) to acquire the assets. To the extent it is necessary to conduct an auction for the assets, the Court adopts the following bidding procedures to establish a fair and equitable process for the receipt of higher and better offers for the assets.

(a) <u>Qualified Bidders; Qualified Bids</u>. In order to be eligible to bid on the assets at the sale hearing, each bidder must be a "<u>Qualified Bidder</u>," which is a bidder that has submitted a Qualified Bid (as defined herein). A "<u>Qualified Bid</u>" is a binding, irrevocable offer to acquire the assets that is submitted to the trustee in writing on or before **4 p.m.** on **November 29, 2022** (the "<u>Bid Deadline</u>") and contains the following components:

(i) An earnest money deposit of $4,000 ("<u>Qualified Bidder Deposit</u>") by cashier's or certified check (made payable to the trustee and to be held by trustee's counsel pending further Court Order) or wire transfer of immediately available funds;

(ii) An executed, binding letter of intent to acquire the assets which contains the following:

    (1) identifies the consideration offered for the acquisition (including a cash consideration component of no less than $32,000) and assumption of liabilities equivalent to the value provided in the Biros Bid (as defined herein);

    (2) provides that all consideration shall be tendered to the trustee at a closing which shall occur within ten

days of entry of the sale order, but no later than December 16, 2022; and

(3) agrees to remove all acquired personalty from the Real Property within 30 days after entry of the sale order or risk abandonment of any remaining assets unless such deadline is extended by agreement of the parties.

(iii) A verified statement under 28 U.S.C. § 1746 disclosing: (a) the identity of each individual or entity that will be bidding for the assets or otherwise participating in connection with the transaction (and the terms of any such participation), (b) the identity of the parties that will bear liability for the obligations of any entity formed for the purpose of acquiring the assets; and (c) any contacts or connections (if any) between any individual or entity and the Debtor, its creditors, or other parties in interest in this bankruptcy estate;

(iv) proof, in a form satisfactory to the trustee, of the bidder's financial ability to consummate its offer to purchase the assets by December 16, 2022. Subject to the discretion of the trustee, such evidence may include either proof of sufficient cash on hand, a letter of credit, or an irrevocable loan commitment from a bank or other recognized lender sufficient to pay the amount of the bid in cash at closing; and

(v) A written acknowledgement by such Qualified Bidder that it agrees to the terms of the bidding procedures.

To the extent there is any question as to bidder eligibility, the Court will make the final determination as to which parties qualify as a Qualified Bidder.

(b) <u>Biros Bid</u>. The trustee represents that he already received a bid from Christine Biros (the "<u>Biros Bid</u>") which he deemed to be a Qualified Bid with the following components:

(i) Cash consideration of $31,000 (inclusive of a $4,000 deposit previously paid to the trustee);

(ii) Waiver of up to $10,000 of any administrative claim Biros may assert against the bankruptcy estate for rent and use and occupancy of the Real Property;

(iii) The assumption of "<u>Remediation Obligations</u>" consisting of all "obligations and liabilities imposed by any regulatory authority or political subdivision to engage in any environmental remediation of the [Real Property], whether that remediation is ultimately determined to be the responsibility of the owner or party in possession of the [Real Property] pursuant to the estate's disputed claim of possession to the [Real Property]." To backstop her assumption of the Remediation Obligations, Biros shall post a bond or other equivalent financial security in the amount of $100,000 within 10 days of entry of a sale order;

(iv) Waiver of any additional claims for environmental remediation that Biros may have against the estate; and

(v) Sale to close within ten days of entry of the sale order.

The Biros Bid also contained a provision requiring that any successful bidder, other than Christine Biros, must remove all personal property within 30 days of entry of the sale order and provide a $25,000 bond (or other financial security) to reimburse Biros for the

cost of removal or disposal of any remaining assets. The Court does not find this provision to be a component to her bid, but rather, a demand as the purported owner of the Real Property. Accordingly, the Court will not require a bidder to post a $25,000 "clean-up" bond as a prerequisite to becoming a Qualified Bidder. It is enough for a bidder to commit to removing the acquired assets within 30 days of the sale order or have such remaining assets deemed abandoned, with any residual post-closing claims between Biros and the buyer, if any, falling outside the jurisdiction of this Court.

6. **Sale Hearing/Auction**. If the trustee receives more than one Qualified Bid for the assets, the trustee shall file a notice with the Court on or before **November 30, 2022 at 4 p.m.** identifying the competing bids. The notice will prompt the Court to conduct an auction at a sale hearing on **December 1, 2022 at 10 a.m.** in Courtroom A, 54th Floor, 600 Grant St., Pittsburgh, Pennsylvania, 15219. Parties who do not intend to participate in the auction or present evidence at the sale hearing may attend via Zoom video conference by making arrangements as directed by Chief Judge Taddonio's procedures as set forth at https://www.pawb.uscourts.gov/procedures-2 by **no later than 4 p.m.** on **November 30, 2022**.[16] Unless the Court orders otherwise, only Qualified Bidders may participate in the auction and all Qualified Bidders must be present in person at the sale hearing. Each successive incremental bid must be in an amount of no less than one thousand dollars ($1,000) greater than the prior bid.

7. **Determination of Successful Bidder.** At the conclusion of the auction, the Court will declare the highest and best bid and designate the "Successful Bidder" who may then be authorized to close on the sale of the Property. While the Court may consider the value of certain assumed liabilities in weighing competing purchase offers, significant weight will be placed on the cash consideration provided in a Qualified Bid unless it can be shown the assumed

---

[16] Zoom registration will open at least one week in advance of the hearing date.

liability will have a material impact on the administration of the bankruptcy estate. To the extent it becomes necessary to assign a monetary value to any "assumed liability" contained within a bid, the parties shall be prepared to present evidence in support of their respective positions.

8. **Closing Date.** Payment by the Successful Bidder of the purchase price must be made in immediately available funds on or before the earlier of (a) ten days of entry of the order approving the sale, or (b) December 16, 2022.

9. **Shanni Snyder Claim**. The Court is also compelled to make findings with respect to Shanni Snyder's claims to the extent she seeks to exert rights under 11 U.S.C. § 363 during the sale process. Shanni asserts a judgment lien on the Debtor's property stemming from a default judgment obtained from the U.S. District Court for the Western District of Pennsylvania on October 18, 2021 (the "Default Judgment")[17] Shanni contends she was employed by the Debtor to "[m]onitor video surveillance remotely" at the rate of $7.25 per hour for 70 hours per week from January 1, 2016 through February 15, 2020.[18]

    (a) This Court previously determined that Shanni lacks standing to assert the Default Judgment because it accrued prior to May 15, 2018, the date she initiated her own chapter 7 bankruptcy case and constitutes property of the bankruptcy estate that must be initiated by her chapter 7 trustee.[19] Shanni did not disclose the claim in her bankruptcy petition,[20] nor did she claim an exemption in any proceeds.[21]

---

| | |
|---|---|
| 17 | See Snyder v. U Lock Inc., Case No. 21-00904-RJC (the "District Court Action"), Dkt No. 15. |
| 18 | District Court Action, Dkt. No. 1. |
| 19 | See Case No. 18-21983-CMB. |
| 20 | See Case No. 18-21983-CMB, *Schedule A/B Property*, Dkt. No. 1 (No. 33 Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment); amended *Schedule A/B Property*, Dkt. No. 28. |
| 21 | See Case No. 18-21983-CMB, *Schedule C: The Property You Claim as Exempt*, Dkt. No. 1. |

(b) When a bankruptcy case is filed, "all legal or equitable interests of the debtor in property" belong to the bankruptcy estate.[22] A cause of action is considered property of the estate "if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law."[23] When a cause of action is property of the estate, it is properly pursued by the bankruptcy trustee because it inures to the benefit of all creditors.[24] Moreover, property of the estate remains under the control of the chapter 7 trustee until such time as the asset is administered or abandoned back to the debtor.[25] A debtor's failure to list a claim in her bankruptcy schedules is fatal to any presumption of abandonment.[26] "It is equally clear that since the bankrupt estate retains unscheduled assets, only the bankruptcy trustee has the authority to control them."[27]

(c) Here, Shanni's unpaid wage claim began to accrue in January 2016, over two years before she sought bankruptcy relief on May 15, 2018. On the petition date, the claim was undoubtedly property of the bankruptcy estate under 11 U.S.C. §541, and the right to pursue an action belonged to Charles Zebley, her chapter 7 trustee. Because she failed to seasonably disclose the asset,[28] Trustee Zebley was denied

---

[22] 11 U.S.C. §541(a)(1).
[23] In re Emoral, Inc., 740 F.3d 875, 879 (3d Cir. 2014).
[24] Id.
[25] 11 U.S.C. § 554(c)-(d).
[26] See First Nat'l Bank of Jacksboro v. Lasater, 196 U.S. 115, 119 (1905) ("It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property can, after his estate in bankruptcy has finally been closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it.").
[27] 11 U.S.C. § 554(d); Hutchins v. I.R.S., 67 F.3d 40, 43 (3d Cir. 1995) ("property ... not abandoned under this section ... remains property of the estate").
[28] Shanni has since filed amended schedules to include the wage claim as well as a substantial number of additional assets there were not previously disclosed. Strangely, the schedules omit any claim of personal liability against her brother, George Snyder, notwithstanding the allegation that wage laws were violated. Case No. 18-21983-CMB, Dkt. No. 59. As the Debtor's director and majority shareholder, he could be personally liable for any wages the Debtor lacks the resources to pay. Curiously, Shanni still reports that she was "not employed" as of the May 2018 petition date. See Case No. 18-21983-CMB, *Schedule I: Your*

the opportunity to initiate a claim on behalf of the estate and the efficacy of the Default Judgement is suspect.[29]  Trustee Zebley has since reopened the bankruptcy case with Shanni's consent, and may yet decide to administer the claim.[30]

(d) For this reason, the Court directs that Trustees Slone and Zebley to meet and confer to determine whether they can stipulate as to the nature, extent, and priority of any wage claim Shanni's bankruptcy estate may have in these proceedings.

(e) Trustee Zebley is also directed to appear at the sale hearing on December 1, 2022 to the extent Shanni Snyder asserts a continuing interest in the Default Judgement or any other estate asset.

10. **Rights Reserved**.  The rights of the parties to object to (a) the determination of the highest and best bid for the assets, (b) the language in the sale order; or (c) any other parties' compliance with the terms of this Order, are hereby preserved.  Except as otherwise provided in this Order, all other objections to the Motion or the proposed sale are **OVERRULED**.

BY THE COURT:

Dated: November 15, 2022

_____
**GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

*Income*, Dkt. No. 59.  Ostensibly, the Debtor may also have a claim against George Snyder for agreeing to pay his sister wages of more than $26,000 per year, which is more than double the Debtor's annual gross revenue.  Because this was not included in the list of Excluded Assets, the Court presumes the asset buyer will acquire any right to pursue this cause of action.

[29] The Default Judgement may also be susceptible to attack under chapter 5 of the Bankruptcy Code because it was obtained by an insider within one year of the Debtor's petition date.

[30] Case No. 18-21983-CMB, Dkt. Nos. 49, 51 (requiring Shanni to "file accurate amended schedules within twenty days" of July 7, 2022).