**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.  22-20823-GLT |
| | ) | |
| U LOCK INC., | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ROBERT H. SLONE, TRUSTEE, | ) | Related to Document No.: 217 |
| | ) | |
| Movant, | ) | Hearing Date:  12/01/2022 @ 10:00 am |
| | ) | Courtroom A - Pittsburgh |
| vs. | ) | |
| | ) | |
| CHRISTINE BIROS, *et al*. | ) | |
| | ) | |
| Respondents | ) | |

**SHANNI SNYDER'S OBJECTIONS TO
TRUSTEE'S AMENDED MOTION FOR SALE OF TANGIBLE AND
INTANGIBLE PERSONAL PROPERTY OF THE ESTATE UNDER 11 U.S.C. SECTION
363(f) FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

AND NOW, comes Shanni Snyder, files these Objections to the Trustee's Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and clear of All Liens, Claims and Encumbrances ("Amended Motion") and in support thereof states as follows:

1.       An Involuntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code was filed against U Lock, Inc. ("Debtor" or "U Lock") in the Bankruptcy Court for the Western District of Pennsylvania on or about April 27, 2022 ("Filing Date").

2.       Shanni Snyder ("Objector") is a party in interest under the provisions of the Bankruptcy Code as she is an unsecured creditor of U Lock as documented by Claim 1-1 filed on May 27, 2022.

3.      The Chapter 7 Trustee filed the Amended Motion on November 17, 2022, which is based on a bid submitted by Christine Biros ("Biros") to purchase the tangible and intangible property of U Lock for cash consideration of $31,000.00, a waiver of up to $10,000.00 of any administrative claim Biros may make against the U Lock Estate for rent, use and occupancy of 14140 Route 30, North Huntingdon, PA ("Real Property"), assumption of remediation obligations for any obligations and liability imposed by any regulatory authority for environmental remediation of the Real Property including the posting of a $100,000.00 bond, and waiver of any additional claims for environmental remediation Biros may have against the Estate. (Doc. 217 at ¶7).

4.      Prior to 4:00 pm on November 29, 2022, Objector submitted information and documents to the Chapter 7 Trustee in order to qualify as a Qualified Bidder and submitted a bid for purchase of intangible assets of the Estate, and her counsel was advised by the Chapter 7 Trustee that he has deemed her to be a Qualified Bidder.

5.      As a preliminary matter, Objector does not object to the occurrence of a sale pursuant to the Amended Motion as evidenced by her bid to purchase the intangible assets of U Lock.

6.      Rather, the objections are to the substance and structure of the bid of Biros for the following reasons:

    a.      the existence and extent of any alleged environmental liability to the Debtor's Estate or to the Chapter 7 Trustee on behalf of the Estate; and,

    b.      and the questionable lack of good faith of Christine Biros' bid to purchase the tangible and intangible assets of U Lock as a result of her imputed knowledge that the

majority of tangible property supposedly belonging to U Lock has been removed by Biros; and,

      c.      the fact that Biros' potential administrative claim is contingent upon notice and a motion to approve the claim, making it premature to conclude that Biros holds an allowable claim valued at $10,000.00 prior to any showing that the rent claimed is the result of something that actually benefited the U Lock Estate, especially in light of the absence of any written lease setting forth terms of a lease (including rent), that Biros has had nearly absolute possession and control of the Real Property during the last several months, and the Code places time limitations resulting in rejection of nonresidential property; and,

      d.      the fact that Biros' consummation of a purchase of the intangible assets of U Lock would be for the purpose of and result in the extinguishment of certain claims against herself.

7.      All of the purported environmental liability asserted by Biros arises from prepetition conditions of the Real Property and was caused or occurred prepetition, rendering any claim or resulting liability as unsecured prepetition claims.

8.      Yet Biros' baselessly attempts in her bid to attribute liability to the U Lock Estate without setting forth any factual or legal grounds and she endeavors to inflate the amount of any such environmental liability to exaggerate and support the supposed value of her bid, showcasing her bad faith in constructing and presenting her bid to the Chapter 7 Trustee.

9.      Specifically, the American Geoscience, Inc. attached to Biros' Claim 4-1 includes a report dated January 24, 2020 in which it is asserted that the condition of the Real Property was such that prior releases of hazardous substances or petroleum products to the environment on the

property had occurred requiring an order-of-magnitude cost estimate of $414,500.00 to remediate the Real Property.

10.    The September 23, 2022 report of American Geosciences, Inc. purports to quantify the required cleanup of PCBs in soil on the Real Property at $250,000.00 to $300,000.00, which Biros baselessly attributes to the May 23, 2022 Big's Sanitation incident involving a garbage truck fire.

11.    All of the purported environmental issues, which Biros asserts to be in existence at the Real Property, were in existence prior to the June 17, 2022 Order for Relief (Doc. 42).

12.    Monetary claims for past or future cleanups stemming from prepetition environmental contamination are typically unsecured, dischargeable claims entitled to no priorities.

13.    Even the May 23, 2022 incident, having occurred in the gap period between the April, 27, 2022 Involuntary Petition (Doc. 1) and the June 17, 2022 Order for Relief (Doc. 42), would at most result in general unsecured claims pursuant to 11 U.S.C. § 502(f), as the garbage truck incident was unrelated to U Lock's operation and was not in the ordinary course of business for U Lock.

14.    Gap claims that arose not incurred in the ordinary course of business are not entitled to priority status, but are to be treated as prepetition, nonpriority claims.[1]

_____

[1] 11 U.S.C. § 501(a) of the Code states that "A creditor … may file a proof of claim." Among other things, a "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Section 502(a) provides that a proof of claim "is deemed allowed" unless a party interest objects to the claim, while section 502(b) enumerates the grounds for disallowance. None of these grounds would cause the disallowance of the proof of claim solely on the ground that it arose during the involuntary gap and not in the ordinary course of business. The conclusion reached, therefore, is that a gap claim incurred in the ordinary course of business is entitled to a third priority, while a gap claim not incurred in the ordinary course of business is treated as a plain vanilla prepetition claim.

15.    Further, as the purported owner of the Real Property, Biros' is most certainly separately individually liable for any environmental remediation required, and to the extent she is liable together with U Lock, the disallowance of contingent claims for reimbursement or contribution would result. 11 U.S.C. § 502(e)(1)(B).

16.    The environmental liability assumption and bond components of Biros' bid are illusory and provide no actual value to the U Lock Estate, and should be discounted entirely from the Biros bid.

17.    As the asserted owner of the Real Property, any environmental liability due to contaminants already rests with Biros and not the U Lock Estate.

18.    Pursuant to the June 3, 2022 Order Granting Christine Biros Limited Relief from the Stay (Doc. 36), Biros has enjoyed access to and possession of the Real Property, including the right to remove certain tangible property from the Real Property.[2]

19.    Despite having orchestrated the removal of numerous items of tangible personal property prior and subsequent to the submission of a bid to purchase those items, up to the date of a scheduled site inspection for potential buyers to view and inspect the tangible property of U Lock, Biros' bid includes the purchase of numerous items of tangible personal property that is of zero value to any other potential buyer based on its removal from the Real Property by Biros.

20.    This results in the fact that the tangible assets sale component of Biros' bid is of little consequence and can be of no actual value to the Estate.

---

[2] Additionally, Biros was specifically granted relief to "commence environmental remediation activities" and to "conduct ground tests, take photographs, lodge an insurance claim with the waste management company that caused the accident". Notably however, as documented by Biros' AGI report dated September 23, 2022, Biros caused ground testing to be conducted at the Real Property on May 25, 2022 prior to obtaining relie from the stay in the June 3, 2022 Order (Doc. .

21.     The waiver of up to $10,000.00 of any administrative claim Biros may have is illusory and contingent, at best, meaning that is offers no actual value to the U Lock Estate as a component of Biros' bid.

22.     In order for a determination to be made regarding the extent, if any, of Biros' administrative claim based on rents for the Real Property, Biros would need to file a motion to approve the claim, making it premature to conclude that Biros holds an allowed claim valued at $10,000.00 prior to any showing that the rent claimed is the result of something that actually benefited the U Lock Estate.

23.     Biros' attempt to establish an administrative claim will also need to overcome the facts that there is no written lease setting forth terms of a lease (including rent) and that Biros has had nearly absolute possession and control of the Real Property during the last several months.

24.     Accordingly, the waiver of up to $10,000.00 of any administrative claim component of Biros' bid is of no actual value to the U Lock Estate.

25.     Biros' consummation of a purchase of the intangible assets of U Lock would be for the purpose of and result in the extinguishment of certain claims against herself, resulting in an implication of bad faith.

26.     Specifically, Biros seeking to purchase the intangible property of the Estate, at least insofar as the Estate's Chapter 5 claims regarding the transfer of the Real Property to Biros, for the purpose of not prosecuting the avoidance claims implicates the reality that such a transaction would amount to a settlement of such a claim between the Estate and Biros, requiring the Court to "independently evaluate the transaction as a settlement under the prevailing 'fair and equitable' test and consider the possibility of authorizing the objecting creditors to prosecute the

cause of action for the benefit of the estate, as permitted by § 503(b)(3)(B)." See *Simantob v. Claims Prosecutor, LLC (In re Lahijani),* 325 B.R. 282, 288 (9th Cir. BAP 2005).

27.     Since the sale of the Estate's Chapter 5 rights to Biros would constitute a settlement, the Court would necessarily be required to review it for fairness and while settlements are favored, the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them. *In re Martin,* 91 F.3d 389, 393 (3d Cir. 1996).

28.     In this case, a sale of the Estate's Chapter 5 rights to Biros would result in a windfall to Biros to the detriment of the Estate's other creditors without a prior determination of the value of the claim or even the Real Property that would be the subject of the claim.

29.     A fairer result would be to grant derivative standing to Shanni Snyder, as creditor, to prosecute the avoidance and other claims in the name of the Trustee and Estate with the carve-out of funds set forth in her offer to purchase intangible assets of the Estate reverting to the Estate less reimbursement of expenses. See *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003).

30.     Based on the above, a sale of the intangible assets of the U Lock Estate to Biros would result in a necessary determination by the Court of the fairness of the settlement that would result by implication from the sale.

31.     For the reasons stated above, Objector, requests that this Honorable Court deny the Motion and proposed Order.

32.     Objector further objects to the proposed Order of Court (Doc. 217-1) to approve the sale in the Amended Motion to Sell. The proposed Order is materially different from the

Trustee's prior proposed Order (Dco. 175-2) and fails to comply with the Court's Amended Order on the sale entered November 15, 2022 (Doc. 213).

33. The Court's Amended Order required the sale to close within the earlier of 10 days of the entry of an Order approving the sale or December 16, 2022. Contrary to the Court's Amended Order the proposed provides for a closing within 30 days.

34. More importantly, the new proposed Order provides for a release of any and all claims against the Trustee and Estate. In light of the purpose of the sale of the general intangibles, such provision is objectionable. Objector requests that this provision be stricken and the following provisions consistent with the prior proposed Order be added:

a. For the avoidance of doubt, the Sale includes all claims and causes of action that the Estate has with regard to any right regarding the Real Property.

b. Any proceeds related to the claims or causes of action transferred to the Purchaser pursuant to the Sale shall be property of the Purchaser and neither the Trustee nor the Estate shall have any rights to such proceeds.

c. The Purchaser shall be permitted to bring any claims or causes of action included in the Purchased Property in the Bankruptcy Court and shall have standing to bring such claims or causes of action.

d. The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Order, regardless of whether this Chapter 7 case is closed.

e. The Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. §158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no reason for delay in the implementation of this Order. This Order shall be effective immediately upon its entry, and the parties may consummate the transaction pursuant to the terms and conditions set forth in the Motion and Order. To the extent that there are any discrepancies between the Motion and this Order, this Order controls.

f. This Order shall survive any dismissal or conversion of the within case.

g. Within ten (10) business days following the consummation of the Sale, the Trustee shall file a Report of Sale.

h.  Closing of the Sale shall occur within ten (10) days of the entry of this Order.

**WHEREFORE**, for the reasons set forth above, Shanni Snyder respectfully requests that this Court deny the Motion and proposed sale.

Grenen & Birsic, P.C.

Dated:  November 30, 2022

By:  /s/ John B. Joyce
John B. Joyce, Esquire
Pa. I.D. #68242
Jeremy J. Kobeski, Esquire
Pa. I.D. #94503
One Gateway Center, 9th Floor
Pittsburgh, PA 15222
(412) 281-7650
Email: jjoyce@grenenbirsic.com
       jkobeski@grenenbirsic.com

*Attorneys for Shanni Snyder*