# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 22-20823-GLT |
| | ) | |
| U LOCK INC., | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CHRISTINE BIROS, | ) | Related to Document No.: 258 |
| | ) | |
| Movant, | ) | Hearing Date: 01/20/2023 @ 10:30 am |
| | ) | Courtroom A - Pittsburgh |
| vs. | ) | |
| | ) | |
| ROBERT SLONE, Chapter 7 Trustee for the Estate of U Lock, Inc., | ) ) | |
| | ) | |
| Respondent. | ) | |

## SHANNI SNYDER'S OBJECTIONS TO CHRISTINE BIROS' MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)

AND NOW, comes Shanni Snyder, files these Objections to Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1) ("Motion") and in support thereof states as follows:

1. An Involuntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code was filed against U Lock Inc. ("Debtor" or "U Lock") in the Bankruptcy Court for the Western District of Pennsylvania on or about April 27, 2022 ("Filing Date").

2. Shanni Snyder ("Objector") is a party in interest under the provisions of the Bankruptcy Code as she is an unsecured creditor of U Lock as documented by Claim 1-1 filed on May 27, 2022.

3. On or about December 22, 2022, Christine Biros filed a Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1) at Docket #258 ("Motion").

4. In her Motion, Biros alleges she is entitled to rent of $18,000.00 per month because the Debtor and Trustee have possessed the non-residential real property located at 14140 Route 30, North Huntington, Westmoreland County, PA ("Property') without payment of rent or any other consideration to Biros and such possession was necessary and beneficial to the bankruptcy estate. (See Motion ¶¶19-20).

5. The Motion acknowledges the Debtor and Biros do not have an actual lease for the Property. However, Biros alleges the Property is commercial investment property and the Return on Investment (ROI) for such property based upon an average of S&P 500 would be 11.82% assuming a value of $1.9 million dollars as scheduled by the Debtor. (See Motion ¶¶22-28). Based on this, the Motion seeks a total of $144,000.00 for the Debtor's use and occupancy of the Property. Notably, Biros fails provide any independent evidence of the value of the Property and ironically during this proceeding has asserted significant environmental liabilities with the Property.

6. However, the Motion conveniently fails to mention that pursuant to the June 3, 2022 Order Granting Christine Biros Limited Relief from the Stay (Doc. 36), Biros has enjoyed nearly absolute possession and control of the Property and the bankruptcy estate has only had co-possession to very limited parts of the Property.

7. Upon information and belief, Biros and/or her family members have been operating and conducting business at the Property, including a soil fill operation. Therefore, Biros has had the benefit, enjoyment and use of the Property.

8. Further, as partly documented this Court's Order to Show Cause [Doc. 249] dated December 16, 2022, its Order Denying Stipulated Order for Relief from Stay [Doc. 211] dated November 14, 2022, and by Shanni Snyder's Motion to Enforce Order Confirming Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. § 363(f) Free and Clear of All Liens, Claims and Encumbrances ("Motion to Enforce") [Doc. 274] dated January 5, 2023, throughout these proceedings Biros has displayed a pattern and practice of flouting not only procedural rules of court and provisions of the United State Bankruptcy Code, but also substantive Orders issued by this Court. Such conduct has been a significant detriment and expense to the estate as it has caused the Trustee, Shanni Snyder as a bidder and purchaser of the tangible and intangible property to expend time and expense and even caused the Court to expend time, expense and extraordinary judicial resources through a site visit.

9. Notably, without approval from the Court or Trustee, Biros orchestrated the removal of numerous items of tangible personal property equipment prior and subsequent to the submission of a bid to purchase those items, up to the date of a scheduled inspection for potential buyers to view and inspect the tangible property of the Debtor. This conduct precluded potential buyers from having an opportunity to view the tangible personal property, caused a two month delay in the sale process and even led to the Court and other parties to have to expend time and judicial resources in order to undertake site visit to ascertain the location of the personal property improperly removed by Biros in violation of the automatic stay.

10. Not only did Biros "hide the ball" (i.e. equipment assets) from potential purchasers of the assets by moving them to a lot controlled by her in McKeesport, PA,, but she submitted a bid to the Trustee with terms requiring other bidders to post a $25,000 clean-up deposit and $100,000 environmental remediation bond for alleged environmental contamination

that occurred before the bankruptcy order for relief. These terms were designed to preclude other parties from bidding so only she could purchase the tangible and intangible property. Such conduct by Biros resulted in further cost and expense to the estate and caused delay in the sale process.

11. Self-interest is also as an aspect to be considered under § 503(b)(1)(A) when the facts at hand present a situation which contemplates such an analysis. For cases which have recognized this principle in some form or another, See, *Wolf Creek Colliers Co. v. GEX Kentucky, Inc.* 127 B.R. 374, 379-80 (Bankr. N.D. OH 1991)*; In re Jartran, Inc.,* 886 F.2d 859, 871 (7th Cir. 1989), *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988); *In re Woodstock Associates I, Inc.*, 120 Bankr. 436, 451 (Bkrtcy. N.D. Ill. 1990*); In re Philadelphia Mortgage Trust,* 117 Bankr. 820, 828 (Bkrtcy. E.D. Pa. 1990).

12. Throughout these proceedings while Biros controlled the majority of the Property, she acted in her own self-interest by preventing access to the tenants, the Debtor and the public, which provided no benefit to estate, but rather prolonged the need for the Trustee to have his limited possession.

13. Despite Biros' improper conduct which was no benefit to the estate, even assuming *arguendo* Biros could establish the estate actually benefitted from the use of the Property, the court must quantify the administrative expense. In re Jas Enters., 180 B.R. 210, 217 (Bankr. D. Neb. 1995); In re Carmichael, 109 B.R. 849, 851 (Bankr. N.D. Ill. 1990); *In re Jeans.com*, 491 B.R. 16, 2013 Bankr. LEXIS 1548 (Bankr. D.P.R. 2013).

14. The Motion cites to *In re: Cardinal Export Corp.* 30 B.R. 682 (Bankr. E.D.N.Y. 1983), but fails to include an important part of the citation qualifying that administrative liability arises only to the extent and period the trustee actually uses and occupies the premises based

upon the principle of unjust enrichment rather than the compensation of the creditor for the loss to him. Specifically, the full quote from *In re: Cardinal Export,* is as follows:

> Occupancy by the trustee of the premises from which the debtor was operating gives rise to administrative liability only to the extent and for the period that the trustee actually uses and occupies the premises. 3 *Collier on Bankruptcy* para. 503.04[1][a], at p. 503-15 (15th ed. 1983). **This is because "the purpose of according priority is fulfillment of the equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him."** *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 126 (2d Cir. 1960); *In re United Cigar Stores Co. of America,* 69 F.2d 513 (2d Cir.), *cert. denied sub nom. Reisenwebers, Inc. v. Irving Trust Co.,* 293 U.S. 566, 79 L. Ed. 665, 55 S. Ct. 76 (1934). The reasonable value of such use and occupancy is ordinarily, but not necessarily, determined by an allocation of the rent reserved in the lease on a *pro rata* basis. *Green v. Finnigan Realty Co.,* 70 F.2d 465 (5th Cir. 1934); *In re Chase Commissary Corp.,* 11 F. Supp. 288 (S.D.N.Y. 1935). (Emphasis added.)

*Wolf Creek Collieries Co. v. GEX Kentucky, Inc.*, 127 B.R. 374, 379. Here, there is no rent reserved in the lease because there is no lease. However, under the circumstances of this instant case, using the S&P 500 metric is not appropriate, especially since no value to the Property has been independenly established and Biros claims the Property has considerable environmental contamination.

15. When Biros bid on the personal property assets, she sought a credit toward the purchase price based upon her alleged administrative rent claim. At the December 15, 2022 sale hearing, the Court determined rent of $1,500.00 per month was appropriate for a total credit bid for administrative rent of $10,000.00.

16. Finally, any grant of an administrative claim to Biros should be specifically contingent on the outcome of the adversary claims for avoidance, etc., that Shanni Snyder will be filing as assignee of the Trustee. Alternatively, in the event the Court allows Biros any

administrative claim at this point, it must include terms enabling the allowance of such claim to be reversed if Ms. Snyder is successful in the adversary claims for relief.

**WHEREFORE**, for the reasons set forth above, Shanni Snyder respectfully requests that this Court deny the Motion and requests any other relief the Court deems appropriate.

Grenen & Birsic, P.C.

Dated: January 9, 2023    By:    /s/ John B. Joyce
John B. Joyce, Esquire
Pa. I.D. #68242
Jeremy J. Kobeski, Esquire
Pa. I.D. #94503
One Gateway Center, 9th Floor
Pittsburgh, PA 15222
(412) 281-7650
Email: jjoyce@grenenbirsic.com
jkobeski@grenenbirsic.com

*Attorneys for Shanni Snyder*