IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 22-20823-GLT |
| | Chapter 7 |
| **U LOCK, INC.**, | |
| Debtor. | Related to Dkt. Nos. 258, 277, 285, 291 |

| | |
|---|---|
| Robert S. Bernstein, Esq. | John B. Joyce, Esq. |
| Lara S. Martin, Esq. | Jeremy J. Kobeski, Esq. |
| Bernstein Berkley, P.C. | Grenen & Birsic, P.C. |
| Pittsburgh, PA | Pittsburgh, PA |
| *Attorneys for Christine Biros* | *Attorneys for Shanni Snyder* |
| | |
| Robert H. Slone, Esq. | J. Allen Roth, Esq. |
| Mahady & Mahady | J. Allen Roth, Attorney at Law |
| Greensburg, PA | Latrobe, PA |
| *Chapter 7 trustee* | *Attorney for the Debtor* |

## MEMORANDUM OPINION

"Pigs get fat, hogs get slaughtered." Clichéd as it is, the adage thrives in bankruptcy circles precisely because it is a stark warning against the perils of overreach. Case in point: creditor Christine Biros filed a motion ("*Motion*") requesting an allowed administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code[1] arising from the chapter 7 estate's use and occupancy of her commercial property in North Huntingdon, Pennsylvania ("Property").[2] An expected and conceptually appropriate request. But the *Motion* obscenely demands a payment of $144,000—an amount more than twice the present value of the entire estate. Unsurprisingly, the *Motion* elicited universal derision from the parties in interest.[3]

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[2] *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258.

[3] See *Trustee's Response to Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant To 11 U.S.C. § 503(b)(1)*, Dkt. No. 277; *Shanni Snyder's Objections to Christine Biros' Motion*

Because the administrative expense claim as asserted is a fanciful nonstarter, the Court will deny the *Motion* without prejudice and cancel the self-scheduled hearing. Still, for the reasons below, the *Motion* is so plainly frivolous that the Court will require both Ms. Biros and her counsel, Attorney Robert S. Bernstein, to show cause why the Court should not impose sanctions under Bankruptcy Rule 9011.

## I. BACKGROUND

The Property is essentially a junkyard on Route 30, littered with construction debris, scrap piles, tire mounds, collapsed trailers, and inoperable vehicles. It contains two structures: a large, free-standing garage/warehouse and a rundown, single-story self-storage building. The Property is also subject to environmental contamination and was the site of a literal garbage fire post-petition.[4] Despite its present condition, the parties believe the Property is a "diamond in the rough" given its potential for commercial development. Indeed, the Debtor estimated the Property's value in 2022 as $1.9 million.[5] Frankly, the intense desire to reap those unrealized rewards has often driven the parties towards vitriol and litigation beyond all sense and reason for nominal, if not Pyrrhic, victories.

The Property was once owned by the Debtor and was its principal place of business. The Debtor purchased it in 2015 for $325,316 with funds advanced by Ms. Biros.[6] Though the Debtor operated a self-storage facility on the Property, the business and its minimal revenue (less than $1,500 per month) was incidental to the Debtor's aim to develop a retail plaza

---

*for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 285; *Objections of George Snyder to Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b)(1)*, Dkt. No. 291.

[4] See, e.g., Claim No. 4.

[5] See *Schedule A/B: Assets – Real and Personal Property*, Dkt. No. 60 at 6. Notably, no one has ever offered evidence in support of that valuation.

[6] *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258 at ¶ 14.

2

on the site.[7] Yet, after years of litigation, Ms. Biros obtained the exclusive deeds to the Property through a final, non-appealable state court judgment in her favor.[8] Then, creditor Shanni Snyder[9] filed an involuntary chapter 7 petition against the Debtor in April 2022,[10] and a default order for relief entered on June 17, 2022.[11] As a result, the Debtor occupied the Property without a lease agreement at the commencement of this case.

On the petition date, the Property housed the estate's tangible assets, which consisted mostly of scrap of inconsequential value.[12] For the last eight months, the estate remained in possession of the Property pending a sale of those assets. The process was frustratingly protracted for two main reasons. First, the sale of the tangibles became intwined with the estate's far more alluring intangible assets, including the right to bring a speculative avoidance action against Ms. Biros to recover the Property. Second, many of the tangible assets had disappeared from the Property by the initial sale hearing, prompting an investigation.

The estate's possession of the Property has been constant but not exclusive. In June 2022, Ms. Biros was granted limited stay relief to start environmental remediation activities and has had effective control of the Property ever since.[13] Her exercise of control has raised concerns throughout this case. For example, Ms. Biros allegedly barred the Debtor's tenants

---

[7] See *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*, Dkt. No. 65 at 17.

[8] See Biros v. U Lock, Inc., 255 A.3d 489 (Pa. Super. Ct. 2021), reargument denied (July 28, 2021), appeal denied, 271 A.3d 875 (Pa. 2022) (affirming trial court order directing conveyance of the property to Biros). On January 20, 2022, the Court of Common Pleas of Westmoreland County, Pennsylvania issued an order directing the release of deeds to the Real Property to Biros. See Biros v. U Lock, Inc., No. 17CJ04886 (Pa. Ct. Comm. Pl. January 20, 2022).

[9] In addition to being a creditor, Shanni Snyder is the sister of the Debtor's director and majority shareholder, George Snyder.

[10] *Involuntary Petition Against a Non-Individual*, Dkt. No. 1.

[11] *Order for Relief under Chapter 7*, Dkt. No. 42.

[12] See *Schedule A/B: Assets – Real and Personal Property*, Dkt. No. 60 at 1-10.

[13] See *Order Granting Christine Biros Limited Relief from the Stay*, Dkt. No. 36.

3

from removing their personal property from the storage facility as directed by the trustee.[14] It is undisputed, however, that she removed estate assets from the Property to an undisclosed location before the sale without informing the chapter 7 trustee.[15] Whether her conduct violated the automatic stay or improperly interfered with the sale of estate assets is the subject of a separate *Order to Show Cause*.[16] The point here is twofold: (1) the extent of the estate's possession of the Property has been limited; and (2) Ms. Biros has seemingly extended the estate's possession by delaying the expeditious resolution of this case.

A sale of the tangible and intangible assets for $70,000 closed on December 28, 2022.[17] As a practical matter, the tangible assets—which again, consisted largely of scrap—seemingly had only a modest impact on the ultimate sale price, as the prevailing bidder's initial bid of $63,500 excluded them.[18] This conclusion is also supported by the assessment of a professional auctioneer who surveyed the tangible assets and declined to market them, as well as the lack of interest from salvage dealers. In any event, the sale proceeds currently represent the only substantial asset of the estate, though the trustee collected some de minimis storage fees and is examining potential avoidance actions against the Debtor's principle, George Snyder.[19]

Days after the sale order entered, Attorney Bernstein filed the *Motion* on behalf of Ms. Biros. As previewed, Ms. Biros asserts an administrative expense claim in the amount of $144,000, arguing that the estate's benefit from the post-petition use of the Property is beyond

---

[14] See, e.g., *Objections of George Snyder to Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 504(b)(1)*, Dkt. No. 291.

[15] See *Verification of Christine Biros*, Dkt. No. 231.

[16] See *Order to Show Cause*, Dkt. No. 249; *Amended Order to Show Cause*, Dkt. No. 278.

[17] See *Report of Sale Regarding Tangible and Intangible Personal Property of the Estate*, Dkt. No. 266.

[18] *Notice of Qualified Bids Regarding Sale of Tangible and Intangible Personal Property of the Estate under 11 U.S.C. Section 363(f) Free and Clear of All Liens, Claims and Encumbrances*, Dkt. No. 224 at Ex. A.

[19] The winning bid also provided a carve-out for the estate to share in any chapter 5 recovery. Id. While such a recovery is possible, it remains speculative as no avoidance actions have been filed or even articulated with any specificity.

dispute.[20] Employing a return-on-investment metric absent any lease, she contends that a reasonable value for the use of the Property is $18,000 per month.[21] Although the *Motion* does not walk the Court through the arithmetic, it appears Ms. Biros assumes a return rate of 11.82% on a capital investment of $1.9 million.[22]

The *Motion* is particularly striking considering the Court's comments at the sale hearing. As part of Ms. Biros' bid, the Court authorized a $10,000 administrative claim waiver, finding that roughly $1,500 a month was reasonable commercial rent.[23] The Court subsequently refused to increase the credit bid, admonishing all parties for their "lack of common sense" in litigating without "any cognizable appreciation of what the value is of these assets."[24] While the Court left determination of Ms. Biros' administrative claim for another day, the Court specifically cautioned her against making any hoggish demands.[25]

## II.   JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B).

---

[20]   *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258 at ¶¶ 39-42.

[21]   Id. at ¶¶ 20-22.

[22]   Id. at ¶¶ 23-30.

[23]   *Transcript of December 15, 2022 Hearing*, Dkt. No. 264 at 21:5-11.

[24]   Id. at 21:12-23:9.

[25]   Id. at 21:15-16.

5

## III.  DISCUSSION

Section 503(b)(1)(A) of the Bankruptcy Code allows a first priority administrative expense claim for "the actual, necessary costs and expenses of preserving the estate . . . ."[26] To qualify for priority treatment under this subsection, the expense must arise from a "post-petition transaction between the claimant and the estate" and have "yielded a benefit to the estate."[27] Requiring a benefit to the estate is "merely a way of testing whether a particular expense was truly 'necessary.'"[28] Although the benefit need not be "readily calculable" in dollars and cents, it "must be *actual*, not hypothetical."[29]  Additionally, the "requested claims must be reasonable—as it is 'axiomatic that *unreasonable expenses . . . would never be necessary.*'"[30] Claimants "carry the heavy burden" of proving their entitlement to an administrative expense priority.[31]

The United States Court of Appeals for the Third Circuit has recognized that "the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled."[32]  But this comes with an important caveat: "a debtor is generally required to pay only a *reasonable value* for the use and

---

[26]  11 U.S.C. § 503(b)(1)(A).

[27]  In re Energy Future Holdings Corp., 990 F.3d 728, 741 (3d Cir. 2021).

[28]  Id. (quoting Nabors Offshore Corp. v. Whistler Energy II, LLC (In re Whistler Energy II, LLC), 931 F.3d 432, 443 (5th Cir. 2019)) (internal quotation marks omitted).

[29]  Id. at 742 (emphasis in original); see also In re Marcal Paper Mills, Inc., 650 F.3d 311, 315 (3d Cir. 2011) ("By limiting priority to those claims that are actual and necessary, the Code prevents the estate from being consumed by administrative expenses, and preserves the estate for the benefit of the creditors.").

[30]  In re Energy Future Holdings Corp., 990 F.3d at 742 (quoting In re Express One Int'l, Inc., 217 B.R. 207, 211 (Bankr. E.D. Tex. 1998)) (emphasis added).

[31]  See In re Marcal Paper Mills, Inc., 650 F.3d at 315; In re Goody's Fam. Clothing Inc., 610 F.3d 812, 818 (3d Cir. 2010); Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999).

[32]  Zagata Fabricators, Inc. v. Superior Air Prods., 893 F.2d 624, 627 (3d Cir. 1990).

occupancy of the landlord's property."[33] After all, an administrative expense is measured by the "benefit to the estate, *not* the loss to the creditor."[34]

From the outset, the Court notes that Ms. Biros is likely entitled to a reasonable administrative expense claim for the estate's post-petition use of the Property. The tangible assets were (or at least should have been) kept at the Property while awaiting the sale. They needed to be stored somewhere, and the estate enjoyed the added benefit of not having to move them. This would appear to be a prototypical actual and necessary administrative expense under Third Circuit precedent. Indeed, the Court authorized a $10,000 credit bid on account of Ms. Biros' prospective claim. That said, an administrative expense claim in the amount of $144,000 is patently absurd.

The *Motion* suffers from a trifecta of problems. First, a return-on-investment metric is obviously an inappropriate standard under section 503(b)(1)(A) because it ignores the actual fair market value of the benefit granted to the estate. Instead, Ms. Biros simply demands a return on the alleged value of her investment. This leads to the second issue: her calculation lacks a factual basis. Ms. Biros' capital investment is $325,316, not the estimated $1.9 million, and the Property cannot be developed until she completes "costly" environmental remediation.[35] Finally, the claimed amount is grossly unreasonable. At $144,000, Ms. Biros' administrative expense claim is more than double the sale proceeds and likely the total value of the estate. Even a single monthly payment of $18,000 greatly exceeds the value of the tangible assets that were

---

[33] Id. (emphasis added); see also In re Goody's Fam. Clothing Inc., 610 F.3d at 819 (collecting cases recognizing that landlords are entitled to the fair market value of a debtor's use and occupation of premises).

[34] In re Energy Future Holdings Corp., 990 F.3d at 742 (quoting In re Whistler Energy II, LLC, 931 F.3d at 443) (internal quotation marks omitted, emphasis added); see also Am. Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S. A., 280 F.2d 119, 126 (2d Cir. 1960); In re C & L Country Mkt. of New Mkt., Inc., 52 B.R. 61, 63 (Bankr. E.D. Pa. 1985); In re Ram Mfg., Inc., 38 B.R. 252, 254 (Bankr. E.D. Pa. 1984).

[35] See *Claim No. 4*.

stored at the Property. In fact, the Debtor's annual revenues were less than $18,000 prepetition, to say nothing of the pittance the trustee's post-petition operation of the self-storage facility yielded to the estate. Given these numbers, neither Ms. Biros nor Attorney Bernstein could have plausibly believed that $144,000 as requested by the *Motion* was an actual, necessary cost of preserving the estate.

There lies the bigger concern. On its face, the *Motion* seemingly implicates several paragraphs of Bankruptcy Rule 9011(b).[36] There was no basis in law for the return-on-investment standard urged,[37] which should have been apparent from the authority cited in the *Motion* itself.[38] Nor was the calculation of the administrative expense well-grounded in fact.[39] And, most egregiously, the amount of the claim is so beyond the pale that the Court cannot fathom a proper, non-frivolous purpose to the *Motion*.[40]

Despite the Court's repeated warnings, the parties to these proceedings have continuously pushed the boundaries of reasonable conduct, needlessly complicating and delaying the administration of a modest estate. The Court can only conclude that they have been

---

[36] Bankruptcy Rule 9011(b) provides in relevant part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

   (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

   (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

   (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

[37] See Fed. R. Bankr. P. 9011(b)(2).

[38] *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258 at ¶¶ 33-38.

[39] See Fed. R. Bankr. P. 9011(b)(3).

[40] See Fed. R. Bankr. P. 9011(b)(1).

emboldened by the lack of real consequences to date. No more. The Court will not waste time hearing a defective motion. If Ms. Biros wants an administrative expense claim for the estate's use of the Property, she can file a reasonable request that satisfies applicable law. Meanwhile, Ms. Biros and Attorney Bernstein will have to answer for the *Motion*.

## IV. CONCLUSION

In light of the foregoing, the *Motion* will be denied without prejudice to the filing of a reasonable request for an administrative expense claim. Additionally, the Court will order Ms. Biros and Attorney Bernstein to show cause why they should not be sanctioned under Fed. R. Bankr. P. 9011(b). This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: January 17, 2023

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Christine Biros
Robert Bernstein, Esq.