# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Bankruptcy No. 22-20823-GLT |
| U LOCK INC., | Chapter 7 |
| Debtor. | Related Doc. No. 278 |
| | Response Deadline: Jan. 20, 2023<br>Hearing Date: Jan. 27, 2023 @ 10:00 a.m. |

## CHRISTINE BIROS' RESPONSE TO AMENDED ORDER TO SHOW CAUSE

Christine Biros ("Biros"), the legal and equitable owner of fee simple title to the real property (the "Route 30 Site") which is at the center of this case, by her counsel, responds to the Amended Order to Show Cause (Doc. No. 278), as follows:

## Introduction

Biros is a creditor of U Lock, Inc. (the "Debtor") and one of two bidders on the Debtor's personal property sold by the Trustee. Biros understands the Court's concern with the fairness and openness of the sale process and the need to protect the assets of the Estate, and facilitate the Trustee's control of the Estate assets, as well as the bankruptcy process in general. Biros also understands that the actions of Biros and George Snyder in moving equipment led to the Court's inconvenience and effort in making the visit to the three sites in question.

To the extent Biros' moving of equipment from the Route 30 Site to the McKeesport property owned by the Biros family (the "McKeesport Property") interfered with those, or other, aims of the Court and to the extent Biros' action contributed to inconveniencing the Court, Biros apologizes to the Court and wants to assure the Court that her actions and intentions in moving the equipment were intended to protect the Estate from what she perceived were threats to the safety

of the equipment on the Route 30 Site.

Biros does not believe that sanctions are necessary or appropriate for Biros' moving the equipment from the Route 30 Site to the McKeesport Property because:

   a. Biros acted reasonably, based on the authority granted in the Court's Order of June 3, 2022.

   b. Biros did not act to harm the estate, but to protect it, and Biros acted reasonably and on the express or implied authority of the trustee.

   c. No bidders were deterred by the relocation of the equipment; the sale was not negatively impacted.

   d. There was no cost to the estate and Biros has not (and will not) seek a claim against the estate for any expense of moving and protecting the equipment.

   e. 7 of the 8 pieces of equipment moved appear to belong to Glenn Mowry and are, therefore, not property of the Estate.

   f. The failure to include the 8th piece of equipment in the Biros Verification (Doc No. 231) was inadvertent and caused by the urgency of completing the task late in the day.

**Background**

1.     After a multi-year fight in the Court of Common Pleas of Westmoreland County, upheld on appeal to the Pennsylvania Supreme Court, Biros has a final order that she is the sole owner of the Route 30 Site, has been the beneficial owner of the Route 30 Site since July, 2015 and that U Lock has never been the owner of fee simple title to the Route 30 Site.  If that order from the Pennsylvania Supreme Court had been the end of the dispute among the parties, that would have been just fine with Biros.  She would like nothing better than to be able to take her property and live her life.  But the Snyders continue to drag Biros into unwanted litigation (e.g. (1)

the *lis pendens* filed by Shanni Snyder in Westmoreland County against the Route 30 Site at a time during which her only claim was against U Lock, and U Lock had no right, title, or interest in the Route 30 Property, and (2) the Involuntary Petition against U Lock based on a default judgment which appears to have been fraudulently obtained in collusion with her brother, George Snyder, which arguably belonged to Shanni Snyder's own bankruptcy estate). The continuing onslaught of pleadings, proceedings, and other aggressive actions by the Snyder have required Biros to react and defend against them in order to protect herself and her property. Biros has incurred hundreds of thousands of dollars in attorneys' fees and expenses in the state court litigation and in trying to fend off the continuing barrage from the Snyders in the Federal Courts.

2. Biros believes this is a conspiracy by Shanni Snyder, her family members, and others yet to be named, to deprive Christine Biros of the Route 30 Site, by means of a seemingly never-ending series of spurious legal actions and pleadings, with enough truth sprinkled in to make them seem colorable. In fact, all these actions are built on a set of lies and misstatements that, when viewed together, show them for what they really are. Biros has a final order from the Westmoreland County Court of Common Pleas, affirmed on appeal to the highest appellate court of the Commonwealth of Pennsylvania, determining that she is the sole owner of the Route 30 Site, has been the beneficial owner since 2015, and that U Lock has never held fee simple title to the Route 30 Site. Nevertheless, the Snyder's and their co-conspirators continue to proffer pleadings in multiple courts that claim that U Lock and Shanni Snyder have some viable claim to the Route 30 Site. Biros has been forced to defend her ownership in multiple actions in state court, Bankruptcy Court and District Court as part of the conspiracy to deprive her of her property.

3. There is, therefore, considerable history between Biros and the Snyders, causing Biros to be wary of the actions and motivations of the Snyders. The Court is aware of some of this

history, has seen it recounted in various pleadings in the case, and has seen the mistrust play out in this case.

4. From early in the case, Biros and her counsel William Otto, Esq., believed that the Trustee conceded Biros' ownership of the Route 30 Site and appreciated her good will in attempting to help the Trustee move the case forward toward a quick conclusion and the evacuation of the Route 30 Site.

5. Biros' counsel was frequently in touch with the Trustee about issues with the Route 30 Site and the personal property thereon. In part, Biros and her counsel were familiar with what they suspected were unauthorized acts of George Snyder (both before and after the bankruptcy filing) to remove assets of U Lock (or U Lock customers) from the Route 30 Site to the detriment of U Lock and its creditors.

6. From his first direct contact with the Trustee, Attorney Otto urged the Trustee to secure the Route 30 Site and prevent George Snyder's access. Had the Trustee acted upon these warnings about protection of the assets, the Trustee and the estate would have incurred the expense of guarding and securing the Route 30 Site and the subject equipment, but it would still be available for purchase. Since the Trustee's first visit in July, 2022, almost all of the trailers and containers have been moved, at least some of them by George Snyder to a nearby trailer park which he controls. Nevertheless, Biros is unaware of any effort either to compel George Snyder to account for his actions, or to provide proof of his ownership of the items he removed. Although post-petition causes of action were not purchased by her, Shanni Snyder's purchase of the estate's rights to those trailers and containers will likely insulate George Snyder from being called to account for that improper control of estate assets.

7. During the case, the Snyders appeared to orchestrate an offer by USAAG to purchase the intangible assets in furtherance of their efforts to take control of Biros' property, despite the final order of the State Courts. Once aware of the USAAG offer, Biros made multiple offers to purchase the physical personal property of the Estate. In these offers, Biros made reference to a 2014 arial photograph of the Route 30 Site, the time shortly before U Lock's initial possession of the business operations and personal property from the prior owners. See *Sale Motion, Doc No. 217, as described in the "Catch All provision" and Assignment of personal property from former owners to U Lock contained in Doc. No.108 filed by George Snyder.* Biros was concerned that the personal property had been, and continued to be, removed by George Snyder (or others) and that the value of the Estate and the benefit of her future purchase of the tangible personal property would be diminished by that unauthorized removal.

8. During many conversations and written communications with the Trustee, Biros, through Attorney Otto, conveyed her concerns and offered to take steps to protect the assets. Otto regularly protested to the Trustee concerning George Snyder's continued entry to the Route 30 Site, despite the Trustee's direction that George Snyder not be present on the Route 30 Site without the Trustee's permission. These interactions with the Trustee raised ever-increasing concerns about tangible property disappearing. Based on the communications with the Trustee, the Trustee's frequent deferral to the advice of Biros about the status of the site, and the Order of June 3, 2022, Biros believed that she was permitted to protect the vehicles and equipment still on the site by removing them to a protected location.

9. Between November 5 and November 11, 2022, Biros moved the 8 vehicles from the Route 30 Site to the McKeesport Property. This was after the Trustee filed his Motion For Sale of Property under Section 363(b) Tangible and Intangible Personal Property of the Estate

(Doc. No. 175) pursuant to Biros' offer of September 22, 2022, and based on Biros' fear of the "disappearance" of these assets prior to the Sale hearing. Biros felt that the Trustee was deferring to her as the only bidder for the tangible personal property and that the Trustee was taking no action to protect those assets himself.

I. **Defenses and Explanations for Biros' Exercise of Control Over Property of the Estate and Interference with the Sale of Estate Assets pursuant to 11 U.S.C. § 363 and Failure to Disclose All Estate Assets In Her Sworn Affidavit.**

    A.    <u>Biros acted reasonably, based on the authority granted in the Court's Order of June 3, 2022</u>

10. The Court's June 3, 2022 Order Granting Christine Biros Limited Relief From the Stay (Doc No. 36), provided:

> a. U Lock shall remove all vehicles and trailers from the Property on or before the earlier of: (a) June 24, 2022, or (b) ten (10) days after the date the police place "tags" on the subject vehicles. To the extent U Lock requires additional time, it may make a reasonable request for an extension from Ms. Biros that shall not be unreasonably denied.
>
> b. <u>Any vehicles or trailers remaining on the Property after June 24, 2022 (or such additional time as agreed by Ms. Biros) may be removed and disposed of by Ms. Biros at her convenience. Notwithstanding the foregoing, the trailers pictured on Exhibit "A" hereto are disclaimed by U Lock and may be removed by Ms. Biros upon no less than 48-hours notice. (Emphasis added)</u>
>
> c. The equipment moved by Biros were vehicles and trailers and were moved by Biros on or after November 1, 2022. Under the June 3 Order, Biros had authority to remove and dispose of the vehicles and trailers.

6

Notwithstanding this authority, Biros protected and preserved these assets for the Estate.

   B. <u>Biros did not act to harm the estate, but to protect it and Biros acted reasonably and on the express or implied authority of the trustee.</u>

11. Early in the case, Biros believed she had evidence that George Snyder caused assets to be removed from the Route 30 Site for his own purposes and without permission of the Trustee or the Court. Just a few examples of this are:

    a. Between June 8 and June 29, 2022, Biros believed that George Snyder had improperly removed assets and equipment from the site. On June 8, Biros observed a tow truck lifting a car from the site and she photographed the truck and car from across the road. The tow truck driver confronted her about taking photographs. When she asked what he was doing on the property, he said that he had permission from the owner, George Snyder. A copy of a photograph taken on June 8 is attached as Exhibit A and made a part hereof.

    b. During that same period, members of the Biros family observed people engaged in what appeared to be disassembling and cutting up cars and taking the pieces away. Biros has been advised by Glen Mowry that he is the owner and title holder of some of the cars in question. One such photo is attached as Exhibit B and made a part hereof.

    c. On October 9, 2022 Biros' father, Robert Biros, observed George Snyder moving a trailer from the Route 30 Site across to Snyder's trailer park. When Mr. Biros suggested that George Snyder cease what he was doing, Snyder refused and took the trailer anyway.

12. Biros wanted to prevent further similar acts by George Snyder and others. She brought the concerns to the attention of the Trustee on multiple occasions. Attached hereto, marked Exhibit "C" and made a part hereof is a timeline of some of the interactions with the Trustee prepared by Biros' counsel, William Otto, for the purposes of this Response. Biros points to these interactions and the above examples to support her belief that she was authorized to remove the 8 pieces of equipment which she moved to the McKeesport Property.

13. Based on this activity, Biros, or her counsel, communicated concerns to Trustee Slone and discussed ways to protect the Route 30 Site which appeared to be at risk. Biros informed the Trustee that certain personal property was being relocated to a Biros family site for protection from unauthorized movement by George Snyder.

   C.   <u>No bidders were deterred by the relocation of the equipment and the sale was not negatively impacted.</u>

14. Comments in court on December 15 lead to the conclusion that no bidders were deterred or impaired by Biros' relocating the equipment to the McKeesport Property.

15. Even after the site visits and the identification of the items that were moved by Biros and by George Snyder, Shanni Snyder's actions to include the tangible personal property did not increase the amount of her bid. It was only after bidding by Biros that the Shanni Snyder's bid increased.

16. Further, in the Sale Order (Doc. No. 254), the Court found that sufficient notice of the sale was given, that the sale was properly advertised, that the equipment was in poor condition and that the equipment likely had no value beyond salvage value. The Court also found that the trustee used reasonable efforts to attract interested parties into making offers for the Assets, but there were none other than Biros and the Purchaser. Biros believes it is fair to say that there was

8

no credible evidence at the December 15 sale hearing that Biros moving the equipment had any negative impact on prospective buyers and on the bids.

    D.   <u>There was no cost to the estate and Biros has not (and will not) seek a claim against the estate for any expense of moving and protecting the equipment.</u>

    17.   Biros genuinely believed that there was a risk to the equipment if left on the U Lock premises and that the Trustee was not going to take steps to protect the property against the risks Biros perceived. Being under the impression that the protection of the equipment was authorized or permitted, Biros arranged to have the equipment transported to a safer location in McKeesport. Biros incurred out-of-pocket expense for the moving of the equipment. Under the Sale Order, Biros is asserting no rental, storage, or access fees as a result of the equipment being on the McKeesport property. In theory, Biros could seek an administrative expense for the benefit that was provided to the Estate. Under the circumstances of the Sale Process, Biros will not seek such a claim.

    E.   <u>7 of the 8 pieces of equipment moved appear to belong to Glenn Mowry and are, therefore, not property of the estate.</u>

    18.   At the site visit, Glen Mowry presented parties, including the Trustee, with copies of titles and other documents which appeared to support his claim that he owned many of the pieces of equipment. It appears that Mowry owns 7 of the 8 pieces of equipment that Biros moved to the McKeesport Property (all of the items included in the Biros Verification).

    19.   If Mowry is correct, then those 7 pieces were not property of the Estate. Biros believes Mowry's claim is undisputed, and that these items were not owned by the Estate or the Debtor. The Estate had no interest in these 7 items. Biros understands that, in the context of this sale, the trustee was offering for sale the "estate's interest, if any" in the subject equipment and, in that sense, moving the equipment could have impacted the bidders in some way, but Biros'

actions as to these 7 pieces did not violate the automatic stay and did not interfere with the sale of estate assets.

20. In addition, Biros sees that someone could argue that the moving of the equipment to the McKeesport Property could have caused a buyer to incur some additional incremental cost of removing the equipment from a second site, the McKeesport Property. However, there is no evidence of any additional cost. The bidders knew, on December 15, which equipment was located at which site and could bid accordingly. Given the relationship of the two bidders to the case (and to each other), and given the knowledge of the claims of Mowry, it seems highly unlikely that the bids were in any way affected by the 8 pieces of equipment being located at the McKeesport Property.

    F.    <u>The failure to include the 8th piece of equipment in the Biros Verification (Doc No. 231) was inadvertent and caused by the urgency of completing the task late in the day.</u>

21. On December 1, the Court ordered the filing of affidavits by Biros, George Snyder, and Shanni Snyder, Biros and her counsel immediately began the process of drafting the Verification that was filed the next morning (Doc No. 231). The process required Biros to travel to the McKeesport property that evening to take photographs of the equipment. In her haste to complete the task timely, at night, Biros neglected to recall (or notice) the Trailer that was seen on the property later on December 2 during the site visit by the Court.

22. The failure to include the Trailer was inadvertent and not intentional. There was no disrespect intended to the Court, the Bankruptcy process, or the sale process. The Trailer was discovered during the site visit and, as with the other equipment, is of inconsequential value.

**Conclusion**

23. Biros acted on her reasonable belief that she was authorized to move the trailers and vehicles prior to and during the sale process in order to protect them for the estate. Biros

caused no harm to the sale process and caused no expense to the estate by her actions in protecting the 8 pieces of equipment.

24. Biros understands that the Court may have perceived her actions as improper or violative of the automatic stay or the estate's rights at the time and Biros regrets that perception and the inconvenience to the Court. With the information outlined herein, Biros hopes the Court will see Biros' actions as assisting the Trustee in his efforts to protect the estate and will impose no sanctions or penalties beyond the expense which Biros has already incurred.

Dated: January 20, 2023                    BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
Robert S. Bernstein (PA ID No. 34308)
Lara S. Martin (PA ID No. 307272)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8101
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com
lmartin@bernsteinlaw.com

*Counsel for Christine Biros*