# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>U LOCK INC.,<br><br>      Debtor. | Bankruptcy No. 22-20823-GLT<br><br>Chapter 7<br><br>Related Doc Nos.: 258, 293 and 294<br><br>Response Deadline: January 25, 2023 @4pm<br>Hearing: January 27, 2023, at 10:00 a.m. |

## RESPONSE OF CHRISTINE BIROS AND ROBERT S. BERNSTEIN, ESQ. TO ORDER TO SHOW CAUSE

Christine Biros ("Biros") and her counsel in this case, Robert S. Bernstein, Esq. ("Bernstein"), hereby respond to the *Order to Show Cause* dated January 17, 2023 [Doc. No. 294], and related *Memorandum Opinion* [Doc. No. 293] with respect to Biros' . . . *Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)* [Doc. No. 258] (the "Motion"), which the Court denied without prejudice. In support, Biros and Bernstein state as follows:[1]

### BACKGROUND

1. Since shortly after the date upon which Shanni Snyder commenced an involuntary bankruptcy case against her brother's company, U Lock, Inc. (the "Debtor"), Biros has been trying to extricate her commercial real property from the grip of the Debtor and its bankruptcy. Shanni Snyder and others in the Snyder family, who control the Debtor, have blocked Biros' way at every turn. Throughout its bankruptcy, the Estate has continued to use and benefit from Biros' premises,

---

[1] In its *Order to Show Cause*, the Court directed that Biros and Bernstein "shall each file a response." Because the circumstances and their positions overlap, and to minimize repetition, Biros and Bernstein respectfully submit these combined responses.

1

thus far rent-free. As a result, Biros "is likely entitled to a reasonable administrative expense claim for the estate's post-petition use of" those premises. *Memorandum Opinion* at p. 7.

2. Biros' Motion for allowance and payment of an administrative expense claim for post-petition rent is merely one aspect of a much larger drama that has been unfolding for years between Biros and the Snyder family in Pennsylvania state and federal courts. Because the disputes and claims in those proceedings (including this bankruptcy) are interrelated, filings, events and decisions in one forum may affect rights, claims and defenses in the others.[2]

3. This Response, however, focuses on this case and the Court's *Order to Show Cause*. Because the Court dismissed Biros' Motion without notice or a hearing, this Response is Biros' and Bernstein's first opportunity to address the Court's concerns and to explain why the Motion comports with Fed. R. Bankr. P. 9011. They also welcome the opportunity to expand on the following explanation at the hearing presently set for January 27, 2023.

4. For the reasons set forth below and to be discussed during that hearing, sanctions are not appropriate in this instance. The *Order to Show Cause* therefore should be discharged or vacated without sanctions.

**ARGUMENT**

I. **Sanctions under Fed. R. Bankr. P. 9011 can be imposed only in exceptional and egregious circumstances, which are not present here.**

5. Sanctions may be imposed "'in the exceptional circumstance' where the claim or motion is patently unmeritorious or frivolous." *Dura Systems, Inc. v. Rothbury Invest., Ltd.*, 886

---

[2] The history of Biros' and the Snyder family's litigation has been summarized in various filings in this case. Therefore, Biros and Bernstein will refrain from repeating them here; instead, they incorporates those descriptions by reference. *See, e.g., Christine Biros' Response to Amended Order to Show Cause* [Doc. No. 298]; *Objection [of Christine Biros] to Shanni Snyder's Motion to Enforce Order Confirming Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. § 363(f), Free and Clear of All Liens, Claims and Encumbrances* [Doc. No. 302].

2

F.2d 551, 556 (3d Cir. 1989) (quoting from *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (citation omitted)).  Although Rule 9011 (which is based upon Fed. R. Civ. P. 11) requires a reasonable inquiry as to law and facts, it is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id.* (quoting from Advisory Comm. Notes to Fed. R. Civ. P. 11).  "Consequently, the test for Rule 9011 sanctions is a stringent one."  *Sante Fe Minerals, Inc. v. BEPCO L.P. (In re 15375 Mem'l Corp.)*, 430 B.R. 142, 150 (Bankr. D. Del. 2010).  This ensures that litigants can diligently defend or enforce their rights and remedies and that their counsel can zealously represent those litigants' interests.

6. In the Third Circuit, policy considerations direct that courts must exercise restraint in evaluating whether to impose sanctions – including because doing so can "increase tensions among the litigation bar and between the bench and the bar." *Id.* (quoting from *In re Aphton Corp.*, 423 B.R. 76, 96 (Bankr. D. Del. 2010) (Third Circuit citations omitted)).  "Therefore, a court should impose Rule 9011 sanctions only in egregious circumstances." *Id.*

7. The court must assess the reasonableness of a filing under the circumstances, taking into account "a variety of factors, including 'whether the pleading, motion or other paper was based on a plausible view of the law.'" *Id.* (citing Advisory Comm. Note).  All doubts must be resolved in favor of the signor of the filed document.  *See, e.g., In re Freeman*, 540 B.R. 129, 144 (Bankr. E.D. Pa. 2015) (citing *Ohio Cas. Grp. v. McClinton*, 1991 U.S. Dist. LEXIS 8891 (E.D. Pa. June 27, 1991)).

8. As explained more fully below, the Motion is a legitimate, typical Motion and represents a plausible view of the law – an argument which Biros would have developed further at an evidentiary hearing, if she had been given the opportunity to do so.

3

9. Because the Court entered its *Memorandum Opinion* and *Order to Show Cause* (and simultaneously dismissed the Motion) *sua sponte*, however, she did not have the opportunity to present argument or evidence to support her Motion.

10. Furthermore, where, as here, a court enters a "show cause" order on its own initiative under Rule 9011(c)(1)(B), Rule 9011(c)(1)(A)'s "safe harbor" is not available. That safe harbor provision ordinarily gives a litigant or its counsel 21 days within which to withdraw or "appropriately correct" a challenged submission. As a result, several federal circuits and lower courts elsewhere require a *higher* standard – *i.e.*, "akin to contempt" – for court-initiated sanctions than for party-initiated sanctions. *See, e.g., Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998).

11. Some courts within the Third Circuit also follow this heightened, "akin to contempt" standard for purposes of Rule 9011. *See, e.g., Sante Fe Minerals, Inc. v. BEPCO L.P. (In re 15375 Mem'l Corp.)*, 430 B.R. 142, 150 (Bankr. D. Del. 2010) (courts apply *sua sponte* sanctions only in situations that are "akin to contempt") (citations omitted).

12. Court-initiated sanctions must be reviewed with "particular stringency." *Kaplan, supra,* 331 F.3d at 1256 (citing *In re Pennie & Edmonds, LLP*, 323 F.3d 86, 90 (2d Cir. 2003); *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003); *Hunter, supra*, 281 F.3d at 153; *United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001)).

13. In this instance, whether or not this Court applies the higher "akin to contempt" standard, Biros and Bernstein should not be sanctioned under Rule 9011 or otherwise.

## II. The Motion was filed for a proper purpose – *not* an improper one under Rule 9011(b)(1).

14. Biros filed her Motion for a proper purpose. She sought allowance of a rent claim for the estate's continued post-petition use and occupancy after the Court denied Biros' initial request for possession of the property, the claim being in an amount that the Court would determine, after consideration of the facts of the case. Biros sought to share in the sale proceeds (and other assets) to the extent of whatever the final allowed amount of her administrative expense claim may be. In the *Memorandum Opinion*, the Court acknowledged that, typically, seeking allowance and payment of an administrative expense in this context is "[a]n accepted and conceptually appropriate request." *Id*. at p. 1.

15. Obviously, though, the Court took exception to the *amount* that Biros requested. While Biros and Bernstein are mindful of the Court's displeasure, Biros is entitled to vindicate her rights as a landlord. A party's effort to vindicate its rights is a quintessential example of a "proper purpose" under Rule 9011. *See, e.g., Nicholson v. Wells Fargo Bank, N.A. (In re Nicholson)*, 579 B.R. 640, 650 (Bankr. S.D. Ga. 2017) ("To determine whether a pleading is filed for an improper purpose, the court must inquire whether the pleading was filed to *vindicate the party's rights or for some other proper purpose*." (emphasis added)).

16. In bankruptcy cases, the process for vindicating a creditor's rights ordinarily follows a standard trajectory: The creditor files its pleading, motion or other request for relief; if other parties in interest disagree, they can object; negotiations often ensue in an effort to narrow or resolve those objections; if the parties do not reach an agreement, the matter is heard; and the court decides the proper outcome.

17. Biros filed her Motion to maximize her recovery, as any creditor is entitled to do, anticipating that it would follow this trajectory.

18. For a while, it did. The fact that other parties in interest – basically, the Snyders – expressed "derision" in response to the Motion is neither surprising nor dispositive. As noted above, it is not atypical for other parties to object. Indeed, in this case the Snyders have objected to essentially every request Biros has made. The Snyders (and/or the Debtor they control) also have filed Replies to Biros' Responses or Objections to the Snyders' motions.[3] Therefore, it is reasonable to assume the Snyders would have objected to the Motion *regardless* of the rent amount Biros proposed, no matter how large or small.

19. The Trustee's response is more revealing [Doc. No. 277]. He did not agree with the monthly rent amount Biros requested, but he did request "that an administrative claim for rent for Christine Biros in a lesser amount be set by the Court." *Id*. at p. 3 of 4. In fact, the Trustee attached a proposed form of order providing that Biros "is awarded an allowance of administrative claim for rent pursuant to 11 U.S.C. Section 503(b)(1) in the amount of $_____ per month." [Doc. No. 277-1]. Thus, the Trustee anticipated, as Biros did, that negotiation regarding the Motion would ensue, that a hearing would take place, and that, if no agreement was reached and approved by the Court, the Court would hear the evidence and decide how much to allow for the administrative claim.

20. Negotiation did occur. After filing the Motion and before the Court dismissed it, Bernstein spoke with the Trustee to discuss a mutually acceptable rental amount. They did not reach a resolution at that time, but had a productive discussion. Before any further discussion

---

[3] *See, e.g.,* Debtor's *Reply to Response to the Statement of Non-Objection* [Doc. No. 32]; *Debtor U Lock's Reply to the Response of Christine Biros (Entry 298) to the Amended Order to Show Cause* [Doc. No. 299]; George Snyder's *Reply to the Response of Christine Biros (Entry 298) Re: Show Cause* [Doc. No. 303]; and Shanni Snyder's *Reply to the Response of Non-Party Christine Biros to the Trustee's Motion to Approve Settlement of the Exemption of Debtor's Assets* [in Case No. 18-21983-CMB, at Doc. No. 76].

could occur and before any hearing was convened to adduce evidence and submit argument, though, the Court dismissed the Motion.

21. Finally, the fact that Biros seeks a larger administrative rent claim than the Court believes is justified does not mean her request is inherently frivolous or wholly meritless. The Bankruptcy Code does not limit the dollar amount of administrative claims based upon how much money is available in the estate to pay them or what the total value of the estate is. If it did, then no estate would ever become administratively insolvent. But they do. Nor does the value of the equipment at the premises create an automatic limitation on her claim. The extent to which the estate benefits from its use of Biros' premises will affect the allowable amount of her claim, but that has yet to be determined.

22. In short, Biros filed the Motion in an effort to quantify her administrative claim and to receive a just distribution of whatever the estate can ratably pay on that claim. Those are legitimate, proper purposes for the relief she sought.

### III. The administrative rent metric Biros advocated in the Motion is warranted by existing law or by a non-frivolous argument for the extension of existing law, pursuant to Rule 9011(b)(2).[4]

23. In order to quantify her administrative rent claim, Biros advocated starting with a "return on investment" ("ROI") approach. Commercial property investors and developers often start with the cost of a project and the expected return on their investment when setting expectations of rent and cash flow. Using ROI to estimate reasonable rent may not be the ultimate measure the Court would adopt to determine "commercially reasonable rent," but it is a measure of value that an investor or developer could use to predict the amount of its payment from tenants.

---

[4] Pursuant to Bankruptcy Rule 9011(c)(2)(A), Biros (as a "represented party") cannot be sanctioned monetarily for any violation of Rule 9011(b)(2). As explained in this section, however, no violation of Rule 9011(b)(2) occurred.

Outside of bankruptcy, that amount is adjusted by multiple factors, such as supply and demand, anticipated tenant improvements, length of the lease and the tenant's creditworthiness.

24. In bankruptcy, the amount Biros proposed would be adjusted by, among other factors, the extent of "benefit to the estate" (such as what percentage of the commercial real estate the Trustee actually used).

25. Even if the Motion pointed to a "market rent" for the property, it would only be a starting point for determination of the "actual and necessary" expense that could be allowed.

26. Although the Court expressed its view the ROI is not the proper measure for administrative rent, *see Memorandum Opinion* at p. 7, Respondents are unaware of any Third Circuit authority proclaiming that ROI is a patently *unacceptable* measure, and none has been found.

27. On the other hand, authority *does* exist outside of this Circuit for the proposition that ROI can be a proper measure for determining reasonable rent.

28. In *Geltzer v. Helen-May Holdings, LLC (In re Kollel Mateh Efraim, LLC)*, 2009 Bankr. LEXIS 2236 (Bankr. S.D.N.Y. Aug. 18, 2009) ("*Geltzer I*"), the bankruptcy court described events at, and the outcome of, an earlier evidentiary hearing in the case. At the earlier hearing, the court entered an order approving rent *in an amount that was predicated upon expert testimony regarding the premises' ROI.*

29. Pre-petition, the debtor in *Geltzer I* signed an agreement to purchase certain premises from Helen-May, LLC. In advance of the purchase, the debtor occupied the premises under a pre-petition occupancy agreement. The purchase never closed. The debtor filed bankruptcy but continued in occupancy post-petition. In 2004, Helen-May, LLC sought, alternatively, either relief from stay or payment of amounts owed under the occupancy agreement

8

pursuant to 11 U.S.C. §§ 105, 503(b) and 365(d).  The court initially denied all relief except a monthly payment of $5,000.  In a second motion, filed in mid-2005, Helen-May, LLC complained that $5,000 was woefully insufficient to reflect the market rent of the premises.  It demanded payment of amounts it alleged were owed for "use and occupancy."  The successor judge (his predecessor, Judge Blackshear, had retired) informed the parties that he would proceed to hear the second motion, characterizing it as an "adequate protection" motion.  In an opinion entered on August 18, 2009, the bankruptcy court explained what happened at the July 2005 hearing on that second motion:

> No one took issue with the [court's] reference to adequate protection, and the parties apparently ignored it; they tried the use and occupancy claim teed up by the Second Motion. ***Helen-May called Gene Barbanti, a real estate broker and consultant. The substance of his testimony was that the reasonable rental value of the Property was directly related to the expected return on the investment of $1.4 million, the value he ascribed to the Property based on the Contract price. Barbanti opined that an investor would expect at least a 10% return on his money, and concluded that the reasonable annual rental was $140,000. . . . In addition, the 10% return would represent profit after the payment of taxes. . . . In other words, the tenant would also have to pay those sums each month.*** The debtor did not cross-examine Barbanti, and neither party called any other witnesses. . . .  The debtor's counsel implied that Helen-May had failed to prove its use and occupancy claim because it did not offer evidence of rentals in the area, and he had "heard" that the rentals were not directly proportional to the carrying costs and interest. . . . I responded that I had not heard or received any other evidence, and asked the debtor's counsel whether he wanted to reopen the record, an offer he declined. . . . ***I concluded, based on Barbanti's testimony, that the reasonable monthly value of the Property was $140,000 divided by 12, or $11,667, plus the real estate taxes. I directed the debtor to make those monthly payments as "adequate protection" on a going forward basis***, . . . and told counsel to settle an order.

*Geltzer I*, 2009 Bankr. LEXIS 2236 at *6-9 (emphasis added; citations and footnote omitted).  Thus, the court heard expert testimony of "reasonable rental value" during that 2005 hearing that was predicated upon the property's "expected return on the investment."  Based upon the expert's unrebutted testimony, the court adopted the ROI calculation to determine what the "reasonable monthly value" of the premises was.  It ordered monthly payments on that basis, plus real estate

9

taxes, albeit characterizing them as adequate protection. Tellingly, the court did not find that the ROI approach is contrary to law. Nor did it decline to consider it. Instead, it heard and adopted that methodology.

30. In a complicated set of later decisions, the bankruptcy court reconsidered Helen-May, LLC's claim. In a September 2010 opinion, the court determined that, at a follow-up hearing on Helen-May, LLC's alleged administrative expense claim, Helen-May, LLC did not carry its burden. The "second time around," Helen-May, LLC did not establish that the estate benefited and it failed to adduce evidence of the premises' fair rental value. It did not offer Barbanti's testimony again, and the court gave no weight to the testimony of Helen-May, LLC's lay witness regarding rent. The court therefore concluded that Helen-May, LLC had not proved its entitlement to an administrative claim. *See In re Kollel Mateh Efraim, LLC*, 2010 Bankr. LEXIS 3197 (Bankr. S.D.N.Y. Sept. 21, 2010), *aff'd*, *Helen-May Holdings, LLC v. Geltzer (In re Kollel Mateh Efraim, LLC)*, 456 B.R. 185 (S.D.N.Y. 2011) (affirming *Geltzer I* and two 2010 rulings), *aff'd*, 582 Fed. Appx. 61 (2d Cir. 2014). Notably, however, in its September 2010 ruling the bankruptcy court did not revisit or expressly change the earlier decision to utilize ROI as a measure for calculating reasonable rental value.

31. *Geltzer I* provides a plausible basis for Biros' ROI metric. *Geltzer I* also supports a non-frivolous argument for an extension of existing law – namely, that ROI can be considered as an alternative "starting point" for the process of determining reasonable rent under section 503(b)(1). In view of its pronouncements in the *Memorandum Opinion*, however, the Court presumably would not follow *Geltzer I*. Nonetheless, "[w]hen there is some plausible basis, even a weak one, supporting the litigant's position, imposition of sanctions is inappropriate." *Nicholson*

10

*v. Wells Fargo Bank, N.A. (In re Nicholson)*, 579 B.R. 640, 649-50 (Bankr. S.D. Ga. 2017) (citing *United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001)).

    **IV.**    **Biros' request for allowance of an administrative rent claim would have had adequate factual support, had she been given an opportunity to present evidence, for purposes of Rule 9011(b)(3).**

    32.    Biros and Bernstein also had an adequate factual basis upon which to seek the administrative rent claim. As explained in the preceding section, a plausible legal basis existed for Biros' ROI proposal. Biros therefore would have presented the "evidentiary support" regarding that calculation and the relief requested that Rule 9011(b)(3) contemplates. She and Bernstein anticipated having an opportunity to argue the position and preview the evidence at the hearing originally scheduled, but later canceled.

    33.    In the *Memorandum Opinion*, the Court observes that Biros' capital investment is $325,316, rather than $1.9 million, and that the property cannot be developed until "costly" environmental remediation occurs. *Id*. at 7. But, even if investment (rather than value) is a proper consideration, the Court has not received any evidence on the extent of Biros' investment, so its observations about that are understandably incomplete.

    34.    Nor did the Court's decisions about bids at the December 15, 2022 sale hearing foreclose Biros from seeking a larger administrative rent claim. At that hearing, the Court agreed to allow Biros a "credit bid" of $10,000 for unpaid post-petition rent, at $1,500 per month. *See Memorandum Opinion* at p. 5. But, while the Court heard argument before settling upon that estimated amount for Biros' "credit bid," it did not take any evidence. As the Court acknowledged, it would need to receive evidence to decide the actual amount to which she is entitled under section 503(b)(1): ". . . I have no trouble concluding that the rent waiver component of Biros' bid has some value, but anything beyond that [$10,000] is difficult to quantify without a detailed record,

11

and already exceeds the scope of what we are looking at here today in terms of the bid increments."
*Transcript of December 15, 2022 Hearing* [Doc. No. 264] at 41:17-21.

35.     Accordingly, had she been given the opportunity, Biros would have presented that "detailed record" at the evidentiary hearing on the Motion, as the Court expressly "left determination of Ms. Biros' administrative claim for another day," *Memorandum Opinion* at p. 5. The Court confirmed that the "credit bid" was not a definitive ruling about how much larger the administrative rent claim actually may be.

V.    **Biros relied upon the advice of her counsel and is not responsible for the details of the Motion.**

36.     Biros relied upon the advice of her counsel regarding preparation and prosecution of the Motion. She was not responsible for its details.

WHEREFORE, for the reasons set forth above, Biros and Bernstein respectfully requests that this Court discharge or vacate the Order to Show Cause without sanctions, and grant to them such other and further relief as is just and proper.

Dated: January 25, 2023

_____
CHRISTINE BIROS

BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
Robert S. Bernstein (PA ID No. 34308)
Lara S. Martin (PA ID No. 307272)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8108
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com
lmartin@bernsteinlaw.com

Counsel for Christine Biros

12

36. Biros relied upon the advice of her counsel regarding preparation and prosecution of the Motion. She was not responsible for its details.

WHEREFORE, for the reasons set forth above, Biros and Bernstein respectfully requests that this Court discharge or vacate the Order to Show Cause without sanctions, and grant to them such other and further relief as is just and proper.

Dated: January 25, 2023

*[signature]*
CHRISTINE BIROS

BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
Robert S. Bernstein (PA ID No. 34308)
Lara S. Martin (PA ID No. 307272)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8108
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com
lmartin@bernsteinlaw.com

Counsel for Christine Biros

14