OF
## WILLIAM E. OTTO, ESQ.

P.O. BOX 701
MURRYSVILLE, PA 15668
PHONE: (724) 519-8778 (OFFICE)    (412) 973-5837 (CELL)
WEO@OTTOLAWFIRM.COM

May 24, 2022

Via Email Only (KWIATROW@co.westmoreland.pa.us)
The Honorable Harry F. Smail, Jr.
Westmoreland County Courthouse
2 N Main St
Greensburg, PA 15601

RE:    **Christine Biros v. U Lock, Inc.**
       **Westmoreland County Court of Common Pleas Case No. 17CJ04886**

Dear Judge Smail:

In connection with the hearing in the above matter on May 20, 2022, you requested that counsel provide you with a brief memorandum and identification of various cases or statutes which support each party's belief as to the applicability of the automatic stay resulting the involuntary Chapter 7 bankruptcy petition against U Lock, Inc.

Briefly stated, the issue for consideration is whether U Lock's bare possession, without more, is "property of the estate" as defined by the Federal Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Code"), and thereby subject to the automatic stay provisions of the Code.

Section 362(a) of the Code applies broadly to stay any action against "property of the estate", subject to exceptions set forth in Section 362(b), and specifically Section 362(b)(10).

Even though the Court's intent in its prior Orders to end the ownership and possession dispute is clear, Code Section 362(b)(10) also allows for that action to occur "during a case under this title," in the case of a non-residential real property. Courts have held that Section 362(b)(10) also renders the automatic stay inapplicable to eviction procedures if a lease expires even post-petition, when the Debtor does not assume the lease within the requisite time period.

Further, Section 541 of the Code identifies exclusions to "property of the estate", specifically Section 541(b)(2) which excludes from the stay any interest of the debtor in a terminated lease. In summary, the Code and Bankruptcy Courts have not allowed parties to use the bankruptcy process to create agreements that simply do not exist.

The following facts are relevant. After a bench trial, you awarded title to Plaintiff Christine Biros in 2019. After appeals, the Pennsylvania Supreme Court denied U Lock's Petition to Appeal on January 19, 2022. Thereafter, by Order dated January 20, 2022, four Deeds

The Honorable Harry F. Smail, Jr.
May 24, 2022
Page 2

conveying title from the four Estates to Christine Biros were delivered to counsel for Christine Biros. These deeds were dated in May, 2019 but were recorded on January 25, 2022.

Arguably, U Lock was in wrongful possession beginning in May, 2019, as extended by U Lock's appeals, but in any event, any right to possession ended, at the latest, on the date of the Pennsylvania Supreme Court's denial of U Lock's Petition.  At this time, U Lock is in possession of the property without a legal right to do so.  This is analogous to an expired or terminated lease situation in which the tenant has no further right to possession.  The only difference in the two situations is how possession began, and that issue is now irrelevant.

The following cases are provided for your consideration.  I have highlighted those portions of each case which seem most relevant:

1.  *In re Neville, 118 B.R. 14, US Bankr.E.D.N.Y. 1990 Bankr. LEXIS 2465, Bankr. L. Rep.  (CCH) P73, 598* (deference of a bankruptcy court to state court decisions);

2.  *Truong v. 325 Broadway Assocs. LLC (In re Truong), 557 B.R. 326, US Bankr.D.N.J., 2016 Bankr. LEXIS3205* (holdover tenant's possessory interest is not the property of the estate, so an eviction action is not stayed);

3.  *In re Damianopoulos, 93 B.R. 3, US Bankr.N.D.N.Y. 1988 Bankr. LEXIS 1922* (upon termination of a lease, either pre-petition or post-petition, the automatic stay no longer applies); and

4.  *In re West Pine Constr. Co., 80B.R. 315, US Bankr.E.D.PA.,1987 Bankr. LEXIS 1886* (the filing of a bankruptcy petition does not resurrect a lease which has terminated by its terms).

Thank you for your consideration of this matter.

If you need any further information, please contact me.

Respectfully submitted,

William E. Otto, Esq.

Attachments

WEO/dlj

cc:   J. Allen Roth, Esq. (via email only - lawmatters@yahoo.com) (W/Attachments)

## *In re Neville*

United States Bankruptcy Court for the Eastern District of New York

August 24, 1990, Decided

Case No. 890-81352-478 Chapter 11

**Reporter**

118 B.R. 14 *; 1990 Bankr. LEXIS 2465 **; Bankr. L. Rep. (CCH) P73,598

In re Gene J. NEVILLE d/b/a Brush Hollow Arms, Debtor

# Case Summary

**Procedural Posture**

Pursuant to an order to show cause, debtor sought to have a landlord and a sheriff held in contempt for ***evicting*** debtor from his place of business, allegedly in violation of the automatic ***stay*** provisions of *11 U.S.C.S. § 362*. The landlord and the sheriff opposed the order, arguing that their actions fell within an exception in *11 U.S.C.S. § 362(b)(10)* because debtor had no rights under an expired ***lease***.

**Overview**

The ***lease*** in issue had terminated prior to the commencement of the bankruptcy action. After the ***lease*** terminated, the landlord had commenced an action ***evict*** debtor as a holdover tenant. That proceeding was settled, and debtor had consented to relinquishment of possession. The court found that the show cause order was without basis. The court noted that *§ 362(b)(10)* applied to the actions of a landlord seeking to regain possession of property that was not within debtor's estate. In this case, the leasehold was not a part of debtor's estate because the ***lease*** terminated prior to the bankruptcy and was subject to a separate state action. The court indicated that it had no jurisdiction to challenge the subject matter jurisdiction of the state court that presided over the leasehold dispute. The court held that it must proceed on the basis that the state court judgment of possession and warrant of ***eviction*** were valid. The court added that debtor had ample opportunity to attack the judgment of possession and warrant of ***eviction*** in state court system.

**Outcome**

The court denied debtor's request.

**Counsel:** **[**1]** Philip D. Miller, Esq., Attorney for the Debtor, Westbury, New York.

Bogut Chetkof & O'Brien, Attorneys for Tivoli Motel, Landlord, by: James F. O'Brien, Esq., Jericho, New York.

Robert W. Schmidt, County Attorney of Nassau County, by: Judith L. Cashman, Esq., Mineola, New York.

**Judges:** Dorothy Eisenberg, United States Bankruptcy Judge.

**Opinion by:** EISENBERG

# Opinion

**[*15]** DECISION AND ORDER

This matter comes before this Court pursuant to an Order to Show Cause brought by the Debtor seeking an order (1) holding the Tivoli Motel (hereinafter the "Landlord") and the Sheriff of Nassau County (hereinafter the "Sheriff") in contempt for *evicting* the Debtor from his place of business in violation of the Automatic *Stay*, and [*16] (2) directing those entities to restore the Debtor to his place of business. The Landlord and the Sheriff opposed the order to show cause arguing that their actions did not violate the automatic *stay* because of the exception contained in section 362(b)(10) for actions by the lessor of the Debtor under a *lease* of nonresidential real property [**2] that has expired by its own terms prior to the filing of the bankruptcy petition to obtain possession of such property.

This Court finds that the Debtor's *lease* terminated pursuant to its own terms prior to the commencement of the case. Therefore, Section 362(b)(10) applies to the actions of the Landlord in seeking to regain possession of the premises and the leasehold is not property of the estate under Section 541(b)(2).

FACTS

The Debtor had operated a senior citizens residence facility under the name of Brush Hollow Arms at 3400 Brush Hollow Road, Westbury, New York and had been in possession of said premises pursuant to a *lease* that terminated by its own terms on April 30, 1989. In May 1989, the Landlord commenced a proceeding in the District Court of Nassau County seeking to *evict* the Debtor from the premises as a holdover tenant. In settlement of that litigation the Debtor and Landlord entered into a stipulation and consent agreement whereby the Debtor was to remain in possession of the premises until October 31, 1989. [1] In conjunction with that settlement and extension of possession, the Debtor consented to the entry of a final judgement of possession and issuance of a [**3] warrant of *eviction* which was to be *stayed* until October 31, 1989.

At the same time, the parties entered into a contract for the sale of the real property to the Debtor on specified terms with a closing contemplated on or about August 15, 1989. If the Debtor had not defaulted in either satisfying the stipulation of settlement or in complying with the terms of the contract of sale, the Debtor would have closed on the real property and obtained title prior to October 31, 1989. At that time the final judgment of possession and warrant of *eviction* would have become moot. The Debtor, however, defaulted on the terms of the stipulation and on October 30, 1989, the District Court of Nassau County, New York, entered a judgment of possession and issued a warrant of *eviction*. The warrant was *stayed* only until October 31, 1989. Thereafter, the Debtor received a further *stay* of the warrant of *eviction* until December 31, 1989 [**4] to provide an adequate opportunity for an orderly removal from the premises.

What then followed was several months of litigation and appeals on behalf of the Debtor in the state courts seeking to have the Warrant of *Eviction stayed* and/or vacated based on the Debtor's claim that it had been given inadequate notice of the default and termination of *lease* or Contract of Sale. Finally, on May 17, 1990 after a hearing at the First District Court for the County of Nassau, State of New York, Judge Sandra J. Feurstein determined that the Debtor had received adequate notice of default and denied the Debtor's request to vacate the judgment of possession. The Order vacated all prior *stays* granted thereby allowing the landlord to pursue whatever remedy it had under the final judgment of possession and warrant of *eviction* entered on October 30, 1989. Thereafter, the landlord served Judge Feurstein's Order on the Sheriff and on May 18, 1990, the Sheriff served the Debtor with the warrant of *eviction* and final Order. On May 23, 1990 the Debtor was *evicted* from his place of business by the Sheriff of Nassau County. The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on [**5] May 21, 1990. The Debtor had no senior citizens residing at the premises at that time.

A hearing to consider the Debtor's order to show cause was held in the Bankruptcy Court on June 1, 1990. At the hearing numerous documents were introduced into [*17] evidence, including the Debtor's *lease* for the premises, the stipulation and consent agreement as well as the transcripts and decisions in the several prior State Court proceedings. The Debtor through its counsel attempted to persuade this Court that the warrant of *eviction* issued by the District Court of Nassau County was invalid because the District Court lacked subject matter jurisdiction and

---

[1] This stipulation is an agreement to use real property pursuant to **Section 365(m) of the Bankruptcy Code**.

also that the Landlord was required to seek relief from the automatic ***stay*** before proceeding under *section 362(b)(10)*.

Based upon all the evidence and testimony presented at the hearing this Court denied the Debtor's motion from the bench. The Court's oral decision was based primarily on a decision by the District Court of the Southern District of New York.  *In re Lady Liberty Tavern Corp.,* 94 Bankr. 812 (S.D.N.Y. 1988) which involved similar facts. In that case, the District Court held on the authority of *Kelleran v. Andrijevic, 825 F.2d 692  [**6]  (2d Cir. 1987)*, that a Bankruptcy Court is required to give full faith and credit to a State Court's judgment terminating a ***lease*** and awarding possession of the premises on the basis that a judgment of the State Court has preclusive effect in the bankruptcy court; and therefore, a Bankruptcy Court should not undertake an independent review of the issues previously decided in the State Court. Accordingly, this Court held that pursuant to the prior State Court judgment the Debtor's ***lease*** had terminated pre-petition and was not property of this Debtor's estate as of the date of the filing of the petition. This Court further held that the Landlord was authorized to take any action to regain possession of the premises because the automatic ***stay*** did not apply by virtue of the exception found in *Section 362(b)(10)*.

Counsel for the Debtor requested that he be given an opportunity to persuade this Court that his attack on the validity of the warrant of ***eviction*** could be supported at law. The Court permitted the parties to submit memoranda in support of their respective positions. After reviewing and considering the Debtor's memoranda, opposing memoranda, and the Debtor's reply, this Court remains unpersuaded.

As previously stated, this Court is required to give full  [**7]  faith and credit to a State Court's judgment terminating a ***lease*** and awarding possession of the premises to the landlord. *In re Lady Liberty, 94 Bankr. at 815*; *see also, In re Cohoes Industrial Terminal, Inc.,* 70 Bankr. 214 (S.D.N.Y. 1987). In *Lady Liberty,* the Court held that a *default* judgment was entitled to preclusive effect in the Bankruptcy Court. In this case, however, the argument in support of giving the State Court judgment preclusive effect is further supported by the fact that it is a judgment on the merits. The Debtor was given ample opportunity to challenge the validity of the warrant of ***eviction*** in the State Courts and this Court will not undertake an independent review of the validity of the warrant of ***eviction*** particularly since the judgment was entered on the merits. It is clear to this Court that pursuant to the State Court's judgment, the ***lease*** between the Landlord and the Debtor terminated by its own terms on October 31, 1989.

Debtor's reliance on *Matter of Bentley,* 12 Bankr. 528 (Bankr. S.D.N.Y. 1981), for the proposition that a Bankruptcy Court has the authority to consider the validity of a State Court judgment is misplaced. In that case a pledgee  [**8]  of shares in the debtor's cooperative and appurtenant ***lease*** sought to gain possession of the debtor's cooperative through the use of summary proceeding. The Bankruptcy Court found that there was no landlord-tenant relationship between the parties and under New York Law a debtor-creditor relationship is insufficient to support a summary proceeding for dispossess and ***eviction*** of a tenant. *Id. at 531*. Therefore, the State Court did not have jurisdiction over the dispute. The facts in the instant case are in no way similar to those in *Bentley*. Here, unlike *Bentley,* there clearly is a landlord-tenant relationship. There is no legal authority to challenge the subject matter jurisdiction of the District Court of Nassau County to deal with landlord-tenant disputes such as the one in the instant case. In fact, it is  [*18]  the appropriate forum for entering final judgments of dispossess and warrants of ***eviction*** as between landlords and tenants in Nassau County. Consequently, for the reasons stated above, this Court must proceed on the basis that the State Court judgment of possession and warrant of ***eviction*** are valid.

*Section 362(b)(10)* is an exception to the automatic ***stay*** provisions  [**9]  of *Section 362* which was added to the Bankruptcy Code in 1984. That section provides in pertinent part:

The filing of a petition under section 301, 302, 303 of this title . . . . does not operate as a ***stay*** -

(10) Under subsection (a) of this section, of any act by a lessor to the debtor under a ***lease*** of non-residential real property that has terminated by the expiration of the stated term of the ***lease*** before the commencement of or during the case under this title to obtain possession of such property.

*11 U.S.C. § 362(b)(10)(1988)*.

The language of _Section 362(b)(10)_ clearly indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the automatic **_stay_** when the Debtor is operating under a **_lease_** of non-residential real property that has terminated by the expiration of the stated term of the **_lease_** before the commencement of or during a case under this title. The landlord may do whatever is necessary and appropriate under state law to obtain possession of such property. _See In re Northeastern Int'l Airways, Inc.,_ 56 Bankr. 247 (S.D. Fla. 1986); _In re Damianopoulos,_ 93 Bankr. 3 (Bankr. N.D. N.Y. 1988); _In re Hejco, Inc.,_ 87 Bankr. 80 (Bankr. D. Neb. **[\*\*10]** 1988); _In re Memphis-Friday's Associates, 88 B.R. 830,_ (Bankr. W.D. Tenn. 1988).

The Debtor's argument that his equitable possessory interests are protected by the automatic **_stay_** is totally without support. The Debtor's right to possession actually terminated on October 31, 1989. The Debtor's continued possession was as a result of **_stays_** obtained pending various appeals in the State Courts. Even if Judge Feurstein's order had not been entered on May 17, 1990 and even if the warrant of **_eviction_** had not been issued and served on the Debtor, all that the Debtor would have by operation of New York State Real Property Law was a hold-over month-to-month tenancy. _See N.Y. Real Prop. Law § 232-C_ (McKinney 1989).

The legislative history of _Section 362(b)(10)_ indicates that it was intended to permit landlords to proceed promptly in State Court to reclaim possession of the non-residential **_lease_** premises where the **_lease_** expired by its own term and to finalize landlord/tenant disputes such as the one that is the subject of this case. _See_ S. Rep. No. 98-65, 98th Congr., 1st Sess. 68 (1983). For this Court to accept the Debtor's argument that "his equitable possessory interests were protected **[\*\*11]** by the automatic **_stay_**" would result in nullifying _Section 362(b)(10)_, which was purposely placed into the Bankruptcy Code to deal with situations such as this.

Pursuant to _Section 365(c)(3)_, the Debtor retained no leasehold interest that could be assigned. There was no possibility of remaining in possession for any considerable length of time. The Debtor's naked possessory interest, if any, has no value to this Debtor's estate, and to reimpose a **_stay_** against the Landlord would not benefit this Debtor's estate. Once a **_lease_** has been terminated, the Bankruptcy Court does not have the power to revive it even through its equitable powers. _In re Erie Builders Concrete Co., 98 Bankr. 737_ (Bankr. W.D. Pa., 1989); _In re West Pine Const. Co.,_ 80 Bankr. 315 (Bankr. E.D. Pa. 1987); _In re Darwin,_ 22 Bankr. 259 (Bankr. E.D. N.Y. 1982).

Although the Debtor claims that the contract of sale has not terminated, the testimony of Mr. Neville at the hearing revealed that the Debtor had not made the payment pursuant to the contract of sale and the contract was clearly in default. Even if the contract had not terminated, it has no bearing on the termination of the leasehold and the tenancy that had **[\*\*12]** been terminated. If the Debtor believes that it has a cause of action against the landlord or other parties for breach of a contract of sale or for fraud or any other cause of **[\*19]** action founded in law, it may bring a separate action for damages against the appropriate parties. These unproven allegations do not affect this Court's decision in the matter before it.

CONCLUSION

Upon considering the memoranda of law submitted by the parties this Court remains unpersuaded. The Bankruptcy Court must give preclusive effect to the judgments of the State Courts to the same extent that the state courts would. The Debtor had ample opportunity to attack the judgment of possession and warrant of **_eviction_** in the State Courts and cannot now come to the Bankruptcy Court and attempt to re-litigate what was already decided in the State Courts.

It is clear to the Court from the documents presented at the hearing on June 1, 1990, those included in the pleadings and the transcripts of the prior state court proceedings, that the Debtor's **_lease_** for its non-residential premises terminated by its own terms on October 31, 1989 and any prohibition against Landlord's acts to remove the Debtor from possession were **[\*\*13]** vacated by the District Court's Order on May 17, 1990. Therefore pursuant to the provisions of _section 362(b)(10)_ the actions of the Landlord were not **_stayed_** by the Automatic **_Stay_**.

The debtor's motion is denied.

So ordered.

**End of Document**

# *Truong v. 325 Broadway Assocs. LLC (In re Truong)*

United States Bankruptcy Court for the District of New Jersey

August 30, 2016, Decided; August 30, 2016, Filed

Case No.: 16-19929 VFP, Chapter 7, Adv. Pro. No.: 16-1380 VFP

**Reporter**
557 B.R. 326 *; 2016 Bankr. LEXIS 3205 **

In re: MAC TRUONG, Debtor.

**Subsequent History:** Reconsideration denied by, Stay denied by *Truong v. 325 Broadway Assocs., LLC (In re Truong), 2016 Bankr. LEXIS 3874 (Bankr. D.N.J., Oct. 31, 2016)*

**Related proceeding at** *Mergenthaler v. Barnard (In re Mergenthaler), 2017 U.S. Dist. LEXIS 113386 (E.D.N.Y., July 20, 2017)*

**Prior History:** *In re Truong, 2015 Bankr. LEXIS 54 (Bankr. S.D.N.Y., Jan. 9, 2015)*

# Case Summary

**Overview**
HOLDINGS: [1]-Proceeding with an eviction action against a bankruptcy debtor did not violate the automatic bankruptcy stay since the nonresidential lease was properly terminated by the landlord prior to the debtor's bankruptcy petition, and thus the debtor's possessory interest as a holdover tenant was not property of the bankruptcy estate; [2]-The bankruptcy trustee properly abandoned real property scheduled as property of the debtor since prior state-court orders established that the debtor had no interest in the property under a deed which was null and void, and the property was over-encumbered; [3]-The debtor's tort claims against the landlord were precluded since the claims were based on conduct occurring prior to the debtor's bankruptcy petition, and the claims were thus property of the bankruptcy estate which could only be asserted by the trustee.

**Outcome**
Motion for injunction denied, objection to abandonment overruled, and motion to dismiss granted.

**Counsel:  [**1]** MAC TRUONG, Debtor-Plaintiff, Pro se, Jersey City, NJ.

CHARLES M. FORMAN, ESQ., Trustee, LeClairRyan, Newark, NJ.

For Defendants: DAVID A. KAMINSKY, ESQ., David A. Kaminsky Associates, PC, New York, NY.

R. Kenneth Barnard, Esq., R. Kenneth Barnard, Esq., Chapter 7 Trustee for the Estate of Rosemary Ida Mergenthaler, Wantaugh, NY.

**Judges:** VINCENT F. PAPALIA, United States Bankruptcy Judge.

**Opinion by:** VINCENT F. PAPALIA

# Opinion

**[*328]  VINCENT F. PAPALIA, Bankruptcy Judge**

## I. <u>INTRODUCTION</u>

This matter is before the Court on three applications filed in the captioned bankruptcy case:

1. The Debtor's motion (the "Stay Motion") in the associated adversary proceeding, *Truong v. 325 Broadway Associates, LLC*, Adv. Dkt. No. 16-1380 (VFP), to obtain an injunction and money damages against his commercial landlord, landlord's counsel, and landlord's officer (the "Defendants") for continuing the eviction proceeding which the Defendants undertook in the Civil Court of the City of New York with respect to premises leased by the Debtor at 325 Broadway, New York, New York 10007, Unit #200 (Dkt. No. 5);

2. The Defendants' motion to dismiss the Adversary Complaint under *FED. R. CIV. P. 12(b)(6)* / *FED. R. BANKR. P. 7012(b)* for failure to state a claim upon which relief can be granted and other related reasons **[\*\*2]** (Dkt. No. 10); and

3. The contested Notice of Proposed Abandonment (the "Notice") filed by Chapter 7 Trustee Charles M. Forman (the "Trustee") with respect to 3 Wood Edge Court, Water Mill (Suffolk County), New York 11976 (the "Property") (Dkt. No. 11). The Debtor filed opposition and a reply in the adversary proceeding matter (Dkt. Nos. 11 and 12). Debtor filed an objection and supplemental objection to the Trustee's **[\*329]** Notice of Proposed Abandonment (Main Dkt. Nos. 16 and 20), and the Trustee filed a reply thereto (Main Dkt. No. 22). A Statement in support of abandonment was also filed by R. Kenneth Barnard, Esq. ("Barnard"), who serves as Chapter 7 Trustee in *In re (Rosemary) Mergenthaler*, Case No. 15-72040 (REG), filed in the United States Bankruptcy Court for the Eastern District of New York under the Honorable Robert E. Grossman (Main Dkt. No. 23). Debtor was active in the *In re Mergenthaler* case, where he also claimed, but was found not to have, an interest in the Property which is property of the Mergenthaler bankruptcy estate.

Also scheduled was a hearing on the application for admission *pro hac vice* filed by David A. Kaminsky, Esq., on June 28, 2016 in the adversary proceeding **[\*\*3]** (Dkt. No. 6). Although Debtor filed an objection on July 14, 2016 (Dkt. No. 9), and Kaminsky filed a reply (Dkt. No. 14), the Court properly entered the Order for *pro hac vice* admission on July 13, 2016 (Dkt. No. 8), as the deadline for objections had passed. Nonetheless, and as set forth below, the Court reviewed Debtor's objection and Kaminsky's reply and finds that the objection states no grounds for not entering (or for vacating) the Order permitting Kaminsky to appear *pro hac vice* (Dkt. No. 8).

## II. <u>STATEMENT OF FACTS</u>

### A. <u>The State Court Proceedings and the Bankruptcy Filing</u>

The following facts are largely undisputed. Defendant 325 Broadway Associates, LLC, ("Broadway"), as Landlord and Debtor as Tenant, entered a commercial lease (the "Lease") on September 19, 1994 for premises at 325 Broadway, New York, New York, Unit #200 (the "Leased Premises") (Dkt. No. 10, Kaminsky Cert., ¶ 5 and Ex. A, Lease). Kaminsky's law firm, David A. Kaminsky & Associates, P.C., represents Broadway in its landlord-tenant action against the Debtor in Civil Court of the City of New York (the "Civil Court") and in Debtor's appeals therefrom. When the last extension of the Lease term ended on December 31, **[\*\*4]** 2014, the Debtor became a month-to-month tenant (Dkt. No. 10, Kaminsky Cert., ¶ 6 and Ex. B, last extension through Dec. 31, 2014). Kaminsky certifies and the Debtor does not dispute that Debtor sublet a portion of the Leased Premises to a subtenant in 2012 and began to collect rent from the subtenant (Dkt. No. 10, Kaminsky Cert., ¶ 7).

By "30 Day Notice" dated February 9, 2016 (the "Termination Notice"), Broadway advised Debtor that his month-to-month tenancy would terminate on March 31, 2016 and that he would have to vacate the Leased Premises by that date. (Dkt. No. 10, Kaminsky Cert., ¶ 8 and Ex. C). The Debtor thereafter stopped paying the rent and did not

557 B.R. 326, *329; 2016 Bankr. LEXIS 3205, **4

vacate the Leased Premises (Dkt. No. 10, Kaminsky Cert., ¶ 9).[1] The Debtor, however, continued to collect rent from a subtenant after the Termination Notice. See Amended Complaint (Dkt. No. 3 at ¶¶ 22-26 and Count One).

On April 1, 2016, Broadway (through Kaminsky's law firm) filed a "Holdover Notice **[**5]** of Petition" in Civil Court for a judgment for possession and rent payment. Debtor answered and filed a counterclaim on May 16, 2016 (Dkt. No. 10, Kaminsky Cert., ¶¶ 10-11 and Exs. D and E). Trial began on May 19, 2016, but was adjourned to May 25, 2016, when the Debtor indicated after a lunch break that he **[*330]** was not feeling well and was seeking the attention of a doctor (Dkt. No. 10, Kaminsky Cert., ¶¶ 12-16). According to Kaminsky, the Civil Court Judge advised the Debtor to appear in court on May 25, 2016 and the Debtor acknowledged that he was advised of the new date. *Id.* at ¶ 16.

The Debtor filed the instant bankruptcy petition on May 23, 2016 and sent Kaminsky and the Civil Court Judge a "Notice of Proceeding Being Stayed" under *11 U.S.C. § 362(a)* (Dkt. No. 10, Kaminsky Cert., ¶ 18 and Ex. J). On the May 25, 2016 Civil Court return date at which the Debtor did not appear, Kaminsky briefed and argued to the Court that the Leased Premises were not subject to the stay because the commercial lease had terminated prepetition (Dkt. No. 10, Kaminsky Cert., ¶ 19 and Ex. 1). Kaminsky indicates that Debtor was served with this memorandum and was instructed by the Civil Court to appear on May 26, 2016 to address **[**6]** the issue of whether the Civil Court Action was stayed. Debtor (per Kaminsky) told the Civil Court that he would not appear (Dkt. No. 10, Kaminsky Cert., ¶¶ 19-25).

On May 31, 2016, the Civil Court, by the Hon. Erika M. Edwards, issued a Decision and Order, which found that the stay did not apply to the Leased Premises pursuant to *11 U.S.C. § 362(b)(10)* and that the Debtor's asserted interest in the Lease was not ***property of the estate*** pursuant to *11 U.S.C. § 541(b)(2)*. As a result, the Civil Court granted Broadway both a Judgment for Possession and a Warrant of Eviction (Dkt. No. 10, Kaminsky Cert., ¶ 26 and Ex. L). The Civil Court also held that the stay did apply to any action by the Landlord to collect rent from the Debtor (Dkt. No. 10, Kaminsky Cert., Ex. L at 5, 7).

Kaminsky stated in his reply to Debtor's objection to Kaminsky's *pro hac vice* retention on May 30, 2016, that Debtor filed a Complaint against Judge Edwards; and that, on June 6, 2016, he filed a Motion for Reconsideration of her Decision and Order; and on June 21, 2016 filed an Order to Show Cause to vacate her "Inquest Judgment" (Dkt. No. 14, Kaminsky Reply, ¶ 36). Both the Order to Show Cause and Motion for Reconsideration were denied by Judge Edwards and **[**7]** appealed by Debtor to New York's Appellate Division, which issued a temporary stay pending that Court's decision on Debtor's Motion to Vacate the Warrant for Eviction (Dkt. No. 15, Debtor's Motion filed Aug. 17, 2016, Orders entered on July 14, 2016 by Civil Court, Exs. 5 and 6; Order entered on July 22, 2016 by the Appellate Division, Ex. 8). However, based on subsequent pleadings filed by the Debtor, the Appellate Division denied the Motion to Vacate by Order entered on August 12, 2016 (Dkt. No. 15, Debtor's Motion filed Aug. 17, 2016, Ex. 1, Order entered Aug. 12, 2016 by the Appellate Term, Supreme Court of New York, denying Debtor's Motion to Vacate Warrant of Eviction).[2] Debtor's new pleadings also ask this Court to stay the State Court eviction proceedings.


## B. The Adversary Proceeding

---

[1] The May 31, 2016 Decision of the Hon. Erika M. Edwards, Civil Court of New York, indicates that the tenancy was terminated after Broadway and Debtor could not agree to new terms (Dkt. No. 10, Kaminsky Cert., Ex. L, Edwards Decision).

[2] On August 16, 2016, the Debtor submitted a request for entry of an Order to Show Cause why the State Court eviction proceedings should not be stayed and declaring that plaintiff is violating the automatic stay by continuing those proceedings and thereby preventing the Debtor from collecting rent from his subtenant. This is essentially the same relief sought by Debtor in the Stay Motion. Shortly thereafter, on August 17, 2016, **[**8]** Debtor filed a Notice of Motion seeking virtually identical relief. Because the Notice of Motion was the later-filed document, the similarity of the relief requested by these pleadings, and for the other reasons noted below, the Court declined to enter the Order to Show Cause and will address the Notice of Motion on its scheduled return date (September 20, 2016).

On May 31, 2016, the Debtor filed an Adversary Complaint (Adv. Pro. No. 16- [*331] 1380), against Broadway, Kaminsky and Alexis Feldman ("Feldman") and an Amended Complaint on June 6, 2016 (Dkt. No. 3) with a jury demand. The Amended Complaint identifies Feldman as an officer of Broadway (Dkt. No. 3, ¶ 7). The six-count Amended Complaint alleges the following claims:

Count 1. Tortious interference against Broadway with respect to the subtenancy and a demand for $84,000 in actual damages, plus $168,000 in punitive damages ($252,000 total demand).

Count 2. Defamation against Broadway and Feldman for calling Debtor a "thief" during a hallway discussion at the courthouse on May 19, 2016, with a demand for $100,000 in actual damages, plus $200,000 in punitive damages ($300,000 total demand).

Count 3. Libel against [**9] Broadway and Kaminsky for referring to Debtor as "a disbarred attorney and known on Court records to be a liar and a fraud," with a demand for $100,000 in actual damages, plus $200,000 in punitive damages ($300,000 total demand).

Count 4. Libel against Broadway and Kaminsky for allegedly violating the May 12, 2005 Order of the Third Circuit in *Truong v. Baker*, which Debtor states enjoined parties from referring to certain findings of forgery,[3] with a demand for $1,000,000 in actual damages, plus $2,000,000 in punitive damages ($3,000,000 total demand).

Count 5. Stay violation against Broadway for proceeding with the eviction action, with a demand for $50,000 in actual damages plus $100,000 in punitive damages ($150,000 total demand).

Count 6. Declaratory judgment stating that the Judgment of Possession entered by the Civil Court is null and void.


## III. CONCLUSIONS OF LAW

These applications require the Court to decide the [**10] following legal issues:

(1) Whether the Debtor on the petition date had any interest in the Lease and/or the Leased Premises subject to the automatic stay and, more specifically, whether the February 9, 2016 termination notice under *N.Y. REAL PROP. LAW § 232-a* (McKinney 2016) cut off all Debtor's interest in the Leased Premises or whether the Debtor's continued possession was ***property of the estate***.
(2) Whether Kaminsky is prohibited from serving as counsel in this case on the basis that he may be called as a witness.

(3) Whether the Trustee exercised proper business judgment under *11 U.S.C. § 554(a)* in abandoning the property at 3 Wood Edge Court, Water Mill (Suffolk County), New York 11976 (Dkt. No. 11) (the "Property").

(4) Whether the Adversary Proceeding should be dismissed under *Fed. R. Civ. P. 12(b)(6)* / *Fed. R. Bankr. P. 7012(b)* for failure to state a claim.


### A. Application of the Automatic Stay Under *11 U.S.C. §§ 541(b)(2)* and *362(b)(10)*

Three sections of the Bankruptcy Code are consistent in their exclusion of a nonresidential lease which expires prepetition under applicable nonbankruptcy law from being property of the bankruptcy estate or [*332] enjoying the protection of the automatic stay:

*11 U.S.C. § 541(b)(2)* states in relevant part:

---

[3] Although Debtor has filed numerous pleadings and exhibits, he has not provided the Court with a copy of the May 12, 2005 Order or properly identified the referenced Third Circuit case by docket number. Thus, the Court is not in a position to evaluate the terms of that Order.

(b) _**Property of the estate**_ does not include— . . .

(2) _any interest_ of the debtor as a lessee under **[\*\*11]** a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease . . . .

_11 U.S.C. § 541(b)(2)_ (emphasis supplied).

> _11 U.S.C. § 362(b)(10)_ provides:
> (b) The filing of a petition . . . does not operate as a stay— . . .

(10) under _subsection (a)_ of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of . . . a case under this title to obtain possession of such property . . . .

_11 U.S.C. § 362(b)(10)_.

Further, _11 U.S.C. § 365(c)(3)_ provides that the "trustee may not assume or assign any . . . unexpired lease of the debtor . . . if . . .(3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." _In re Scarsdale Tires Inc., 47 B.R. 478, 480 (S.D.N.Y. 1985)_ ("It is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under _11 U.S.C. § 362(a)_ nor may it be assumed by the debtor under _11 U.S.C. § 365_").

In the instant case, Judge Edwards, in her May 31, 2016 Decision and Order determined that the "predicate notice" issued by Broadway on February 9, 2016 cut off the Debtor's interest in the Leased Premises by operation of New York state law **[\*\*12]** without the need for further judicial action (Dkt. No. 10, Kaminsky Cert., Ex. L, at 5, 6). On that basis, the Civil Court found that, under _11 U.S.C. §§ 541(b)(2)_ and _362(b)(10)_, Debtor had no interest in the Leased Premises to qualify as _**property of the estate**_, and Debtor was afforded no protection by the stay from entry of the judgment of possession and warrant of removal (Dkt. No. 10, Kaminsky Cert., Ex. L, at 5, 7). The Civil Court found that the stay _did_ apply to the demand by Broadway for a money judgment ("for use and occupancy and attorney's fees") and denied the request of Broadway for monetary damages (Dkt. No. 10, Kaminsky Cert., Ex. L, at 5, 7).

In reaching its decision, the Civil Court relied on the case of _In re Neville, 118 B.R. 14, 17 (Bankr. E.D.N.Y. 1990)_ (Eisenberg, J.), among other authorities. There, the Court cautioned that bankruptcy courts should not independently review the issues which led a State Court to enter a judgment for possession ("A judgment of the State Court has preclusive effect in the bankruptcy context, and therefore, a Bankruptcy Court should not undertake an independent review of the issues previously decided in the State Court"). _Id._ In this regard, the _Neville_ court was generally referring to the _Rooker-Feldman_ doctrine, **[\*\*13]** discussed in more detail in the abandonment section below. This doctrine essentially holds that a federal court may not sit in review or as an appellate court with respect to a prior state court judgment. This Court agrees with that basic proposition and will not review Judge Edwards's Order, except to determine whether the stay applies to the Landlord's eviction proceedings, which the Debtor seeks to stay by its pleadings.

In _In re Neville_, landlord and debtor-tenant under a nonresidential lease were subject to a prepetition agreement, judgment of possession and warrant of eviction **[\*333]** which terminated the debtor's rights to the premises by a date certain; i.e., October 31, 1989. _In re Neville, 118 B.R. at 16_. The parties, by agreement, extended the deadline for removal conditioned on further performance which the debtor did not meet. Nine months later on May 17, 1990, the State Court entered an Order vacating all prior stays, and on May 21, 1990, the debtor filed a Chapter 11 petition to try to stay eviction. Nevertheless, the eviction went forward two days later on May 23, 1990. _In re Neville, 118 B.R. at 16_. The Bankruptcy Court found that the debtor's rights in the premises were cut off on October 31, 1989 and that _11 U.S.C. § 362(b)(10)_ applied so that there **[\*\*14]** was no stay in effect. In so holding, the court reasoned that:

> [t]he language of _Section 362(b)(10)_ clearly indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the automatic stay when the Debtor is operating under lease of non-residential real

property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title.

*In re Neville, 118 B.R. at 16*.

The court further reasoned that, even if *section 362(b)(10)* did not apply, debtor's only remaining interest under *N.Y. Real Prop. Law§ 232-c* would be a holdover tenancy which was not *assignable* under *11 U.S.C. § 365(c)(3)*, as that section prohibits assumption and assignment of a "lease . . . of nonresidential real property [which] has been terminated under applicable nonbankruptcy law prior to the order for relief." *In re Neville, 118 B.R. at 18*. As additional support for its decision, the *Neville* court noted that, if a commercial holdover tenant's "'equitable possessory interests were protected by the automatic stay,'" that "would effectively nullify *section 362(b)(10)*, which was purposely placed into the Bankruptcy Code to deal with situations such as this." *Id. at 18*.

Similarly, in *In re Policy Realty Corp., 242 B.R. 121, 127-28 (S.D.N.Y. 1999)* (reversing the Bankruptcy Court), *aff'd, 213 F.3d 626 (2d Cir. 2000)* (for substantially the reasons stated by the District Court), the debtor-tenant under **[**15]** a nonresidential lease was subject to a notice of termination which became effective nine (9) days prepetition. The District Court first observed:

> A lease may be terminated under New York law by operation of a conditional limitation. . . . [T]he landlord sends the tenant in default a notice of termination of the lease, stating that the lease will be deemed terminated upon a specified date due to tenant's default. . . . The lease is terminated when the time expires, rather than on any further act by the landlord.

*In re Policy Realty, 242 B.R. at 128* (internal citations omitted). Because the lease had been terminated prepetition by operation of state law, the *Policy Realty* court held that *11 U.S.C. § 362(b)(10)* applied and that it was not necessary for the landlord to move in the Bankruptcy Court to vacate the stay. *In re Policy Realty, 242 B.R. at 129*. The court further held that the holdover tenant's interest in the terminated lease was not ***property of the estate*** under the express language of *11 U.S.C. § 541(b)(2)*. *Id. at 128*. In so holding, the *Policy Realty* court rejected the Debtor's argument that its possessory interest in the premises was sufficient to trigger the stay and determined that such an argument "would undermine the purpose of *§§ 362(b)(10)* and *541(b)(2)*." *In re Policy Realty, 242 B.R. at 129*. In reaching its decision, the *Policy Realty* court relied on **[**16]** *In re Neville* and *In re Jarman, 118 B.R. 380, 382 (Bankr. D.S.C. 1989)*. ("'It would be chaotic if every non-residential lease **[*334]** termination could ultimately be frustrated by the last minute filing of a Chapter 11 proceeding in federal court.'") *In re Policy Realty, 242 B.R. at 129* quoting *In re Jarman, 118 B.R. at 382*). In this case, the Lease was also terminated prepetition on March 31, 2016 by the Termination Notice so the same result obtains here: the eviction proceedings against the Debtor are not stayed, and the Debtor's interest in the Lease and Leased Premises (if any) is not ***property of the estate***.

Other New York State Court cases confirm the validity of the notice to terminate to foreclose the debtor's interest in the premises without further action, sometimes in the context of a bankruptcy proceeding. *Little v. Bright Holding Corp., 155 Misc. 2d 686, 687-88, 589 N.Y.S.2d 722 (N.Y. Civ. Ct. 1992)* (a debtor-subtenant at sufferance who refused to vacate the premises had no interest which the stay could protect in bankruptcy where the primary tenant had stipulated prepetition that the lease had terminated). *See also Fitz & Pal v. Int'l Pipe Fabrication, L.L.C., 188 Misc. 2d 687, 688, 690, 729 N.Y.S.2d 373 (N.Y. Dist. Ct. 2001)*. In that case, the court held that where a short-term nonresidential lease expired prepetition and debtor-tenant filed a Chapter 11 petition some six (6) weeks later, no stay was in effect on the petition date, and the lease/premises were not ***property of the estate*** pursuant to *11 U.S.C. §§ 362(b)(10)* and *541(b)(2)*. *Id. at 690-91*. The debtor's **[**17]** mere "possession" of the premises gave rise to no right which could be protected under the Code, citing *In re Neville* and *In re Policy Realty*. *Fitz & Pal, 188 Misc. 2d at 691*.

This Court finds the reasoning of cases such as *Neville* and *Policy Realty* to be persuasive and controlling in this case as they give effect to the plain meaning and obvious intent of *sections 362(b)(10)* and *541(b)(2)*. Under *section 541(b)(2)*, ***property of the estate*** does not include "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case." Certainly, the asserted (and wrongful) continuing possessory interest of a debtor in a

Case 22-20823-GLT    Doc 324-27    Filed 02/07/23    Entered 02/07/23 16:24:10    Desc
Exhibit C-4    Page 14 of 37

Page 7 of 15
557 B.R. 326, *334; 2016 Bankr. LEXIS 3205, **17

terminated lease such as this one includes "any interest of the debtor" as a holdover tenant (which, by definition, occurs only after a lease is terminated). The same holds true as to the Debtor's claimed interest to collect rents from a subtenant in violation of the Lease.

In this Court's view, allowing a holdover tenant's asserted possessory interest to trump the plain language and intent of those sections would render them a "nullity," as virtually every holdover tenant in bankruptcy remains in actual or constructive (through a subtenant) possession of the leased premises. **[**18]** Indeed, that is typically why those debtors (and this one, in particular) file for bankruptcy in the first place; i.e., in an effort to continue their occupancy, notwithstanding termination of their lease under state law. Accordingly, this Court denies the Debtor's motion to enjoin the State Court eviction proceedings and to hold the Defendants in contempt. For the same reasons, the Court will dismiss Counts Five and Six of the Debtor's Complaint as they are based on the same actions and claims.

In so holding, this Court recognizes that other courts have reached different results in similar (though not identical) circumstances. *See In re Mad Lolo LLC, 2009 Bankr. LEXIS 1333, 2009 WL 2902567 at *1, *3 (Bankr. S.D.N.Y. May 28, 2009) (Glenn, J.)* and *In re Sweet N Sour 7th Ave. Corp., 431 B.R. 63, 67-69 (Bankr. S.D.N.Y. 2010) (Glenn, J.).* In both cases, a warrant of eviction had issued prepetition, and each debtor-tenant filed a **[*335]** Chapter 11 action to stay the eviction. In *In re Mad Lo Lo*, the court held that the warrant of eviction did not constitute "terminat[ion] by the expiration of the stated term" under *11 U.S.C. § 362(b)(10)* and further distinguished *In re Policy Realty* in which the debtor-tenant (who sublet the premises in their entirety) was not "in possession" on the bankruptcy date. *In re Mad Lo Lo, 2009 Bankr. LEXIS 1333, 2009 WL 2902567 at *3.* The court cited 3 COLLIER ON BANKRUPTCY ¶ 362.05[10] (Alan N. Resnick & Henry J. Sommer eds., 15th rev. **[**19]** ed.) (parsing *section 362(b)(10)* for the general proposition that *possession may* give the debtor an interest to which the stay may apply). *Accord In re Sweet N Sour 7th Ave. Corp., 431 B.R. at 68* (the court noted that *In re Mad Lo Lo* applied and relied on *In re Éclair Bakery, Ltd., 255 B.R. 121, 133 (Bankr. S.D.N.Y. 2000)* for the principle "that under New York Law the automatic stay applies where a court enters a warrant of eviction and stays its application").

Both *In re Mad Lo Lo* and *In re Sweet N Sour* rely on *In re 48th Street Steakhouse, Inc., 835 F.2d 427, 430 (2d Cir. 1987),* cert. denied, 485 U.S. 1035, 108 S. Ct. 1596, 99 L. Ed. 2d 910 (1988) for the proposition that "a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay." This Court respectfully disagrees with that proposition for the reasons stated above regarding the plain language and intent of *sections 362(b)(10)* and *541(b)(2)* and based on the reasoning of the *Neville* and *Policy Realty* cases.

The Court also finds the *Mad Lo Lo* and *Sweet N Sour* cases are distinguishable because they relied on the Second Circuit's decision in *In re 48th Street Steakhouse* that was itself based on a bankruptcy case filed before the 1984 effective date of *11 U.S.C. §§ 362(b)(10)* and *541(b)(2),* which clarify that a debtor has no residual interest in a nonresidential lease which expires prepetition. *11 U.S.C. §§ 362(b)(10)* and *541(b)(2)* were added simultaneously to the Code by *PL 98-353, §§ 363(b)* and **[**20]** (a), respectively, on July 10, 1984, effective for cases filed ninety days after that date (*PL 98-353, § 553(a)* for effective date) (*§ 362(b)(10)* was originally designated *§ 362(b)(9)*). Neither of those plainly applicable statutory provisions is mentioned in the *48th Street Steakhouse* case. Additionally, *Policy Realty,* which was decided after the 1984 amendments, was affirmed by the Second Circuit substantially for the reasons stated by the District Court. Thus, the Second Circuit also recognized the effect of the 1984 amendments with regard to this issue. Further, as was noted by the *Policy Realty* court, *48th Street Steakhouse* is also distinguishable because, in that case, the notice of termination was sent *after* the bankruptcy petition was filed. *In re Policy Realty, 242 B.R. at 129.* Thus, this Court respectfully declines to follow *In re Mad Lo Lo* and similar decisions and will deny Debtor's motion as noted above.[4] In this **[*336]** regard, the Court also

---

[4] In his latest submission, the Debtor also argues that the stay applies because he sublet the premises **[**21]** in violation of the Lease and collects rents from the subtenant, also in violation of the Lease. See Section 11 of the Lease. (Dkt. No. 10, Kaminsky Cert., Ex. A). In other words, the Debtor argues that the stay should apply because he breached the Lease. Because a party seeking equitable remedies (such as the extraordinary injunctive and other relief Debtor seeks here) must act equitably, this

agrees with that portion of Judge Edwards's decision which provides that, while the stay does not apply to Broadway's eviction proceedings, it does apply to any efforts to collect rents or other damages from the Debtor.

## B. Contested *Pro Hac Vice* Retention

On June 28, 2016, David A. Kaminsky, Esq. filed an application in the adversary proceeding for *pro hac vice* retention under *D.N.J. LBR 9010-1(b)*, and the Clerk's Office set an objection deadline of July 5, 2016 (Dkt. No. 6). No objections were filed by the due date of July 5, 2016. The Court entered the Order admitting Kaminsky *pro hac vice* on July 13, 2016 (Dkt. No. 8, docketed July 15, 2016). On July 14, 2016, Debtor filed a late objection which asserts that Kaminsky cannot be retained on the basis that he is a Defendant in the action and a potential eyewitness against a co-defendant, Feldman (Dkt. No. 9, Debtor Obj., ¶¶ 6-7). Kaminsky on August 1, 2016 filed a reply in which he asserts that there is no conflict of interest as Defendant Feldman and he are united in their defense against Debtor and all Defendants have signed a written waiver of any alleged conflicts (Dkt. No. 14, ¶¶ 42-43). Neither party has cited any law for its position (nor apparently was aware that the Order was entered on July 13, 2016 before the Debtor filed his objection).

To the extent that the Debtor's objection sought disqualification of Kaminsky, a motion to disqualify is **[\*\*23]** viewed with disfavor, and disqualification is a "drastic measure," which should only be used only when necessary. *Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983)*; *Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1208-09 (E.D. Pa. 1992)* (denying motion to disqualify which the court deemed filed primarily to gain a "tactical advantage"). "The burden rests on the party seeking disqualification to put forth enough evidence to show a likelihood that the attorney will be a necessary witness at trial." *United States v. Boston Scientific Neuromodulation Corp., 2013 U.S. Dist. LEXIS 76612, 2013 WL 2404816 at \*7 (D.N.J. May 31, 2013)*. *New Jersey RPC 3.7(a)* generally (but not absolutely) prohibits an attorney who may be a necessary witness from acting as an advocate *at trial*, but does not prevent representation at the pretrial stage. *Main Events Prods. v. Lacy, 220 F. Supp. 2d 353, 356-57 (D.N.J. 2002)*; *Tangible Value, LLC v. Town Sports Int'l Holding, Inc., 2012 U.S. Dist. LEXIS 141580, 2012 WL 4660865 at \*3 (D.N.J. Oct. 1, 2012)*.

*New Jersey RPC 3.7* "Lawyer as Witness" states in relevant part:

> (a) A lawyer shall not act as an advocate *at a trial* in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

*New Jersey RPC 3.7* (emphasis supplied). This restriction on representation *at trial* arises from the concern that the fact-finder **[\*337]** (particularly if a jury) may confuse testimony and advocacy, an issue which does not arise at the pretrial phase. *Main Events Prods., 220 F. Supp. 2d at 356-57*. In this case, the Complaint **[\*\*24]** is only recently filed and there is no trial that is about to commence. Based on the authorities cited above, there is no reason to disqualify Kaminsky at this early stage of the proceedings. If and when the case proceeds to trial, this issue may need to be addressed, but there is certainly no need or basis to impose this "drastic measure" now. Thus, this Court's prior Order admitting Kaminsky *pro hac vice* remains in effect, without prejudice to Debtor's right to raise this issue again, if and when the case proceeds to trial.

---

argument is rejected. *In re Jenkins, 434 B.R. 604, 610 (Bankr. D. Colo. 2010)* ("Fundamental among equitable principles is the precept that one who seeks equity must do equity"); *In re Blue Coal Corp., 166 B.R. 816, 821 (Bankr. M.D. Pa. 1993)* ("Bankruptcy Courts are essentially courts of equity and their proceedings are inherently proceedings in equity") (internal citations omitted). Further, the illegal sublease does not in any way alter this Court's analysis for the reasons described above, including *section 541(b)(2)*'s application to "any interest" of the former tenant under the terminated Lease. Indeed, the *Neville* court rejected a similar argument made by the holdover tenant in that case based upon the alleged breach of a related contract by the landlord. *118 B.R. at 18-19*. If Debtor believes he has a claim based on the sublease, he certainly knows how to assert that claim. However, that claim has no relevance to the stay issues before this Court. **[\*\*22]**

**C. Abandonment of Estate Property by the Trustee Under** *11 U.S.C. § 554(a)*

By Notice of Proposed Abandonment docketed on July 14, 2016, Chapter 7 Trustee Charles M. Forman, through counsel, seeks to abandon real property at 3 Wood Edge Court, Water Mill (Suffolk County), New York 11976 (Dkt. No. 11). The Debtor scheduled the Property on Schedule A/B with a value of $2.5 million and claimed that the value of his interest is $625,000 (25%). Debtor scheduled no encumbrances against the Property on Schedule D (Dkt. No. 1). The Notice of Proposed Abandonment indicates that the Trustee abandoned the Property on two bases:

> (1) The Property is not *property of the estate*. An Order entered in **[**25]** the Supreme Court of New York on August 6, 2015 declared null and void the Deed purporting to convey a 25% interest to the Debtor (Main Dkt. No. 22, Trustee Reply, Ex. B, Aug. 6, 2015 Order at 2) (the "August 6, 2015 Order"); and
> (2) The Property is overencumbered, the Trustee having discovered the following liens which total approximately $3.5 million and are actually in excess of these amounts based on the proofs of claim filed by these parties in the Mergenthaler case (as noted below):
> $ 400,000 to Daniel Perla Assocs.
> $1,658,528 to Dean Osekavage
> $1,437,228 to Ruediger Albrecht

(Dkt. No. 11, Notice of Proposed Abandonment). The Clerk's Office served the Notice of Proposed Abandonment on July 17, 2016 via the Bankruptcy Noticing Center (Dkt. No. 12).

The Debtor filed an objection on August 1, 2016 (Main Dkt. No. 16) and supplemental objection on August 10, 2016 (Main Dkt. No. 20). In addition to the Reply Certification filed by Chapter 7 Trustee Charles M. Forman, Esq. on August 12, 2016 (Main Dkt. No. 22), R. Kenneth Barnard, Esq., the Chapter 7 Trustee for the Estate of Rosemary Mergenthaler, filed an Affirmation in support of abandonment on August 12, 2016 (Main Dkt. No. 23). Ms. Mergenthaler **[**26]** is the Debtor who owns the subject Property, as is set forth in the August 6, 2015 Order (declaring null and void a Quitclaim Deed which purported to transfer an interest in the Property to the Debtor).

The Debtor argues: (1) that the August 6, 2015 Order is null and void because the Supreme Court of New York did not have jurisdiction to enter it; (2) that the Property is now worth $2.85 million; and (3) that the three liens identified by the Trustee  **[*338]**  are lower than the identified amounts or have no validity because the underlying judgment is void (Dkt. Nos. 16 and 20). Debtor bases his argument about these liens on the proofs of claim which these lienholders filed in *In re Mergenthaler*, Case No. 15-72040 (REG) (Bankr. E.D.N.Y.) for which the claims register indicates:

> (1) Perla claim #12-1 for $771,425 based on a mortgage recorded on February 4, 2011 in the original amount of $450,000. According to the face of the note and mortgage, Debtor was not a party to this transaction;

> (2) Albrecht claim #14-1 for $1,457,228 on a Judgment by Confession in the amount of the $600,000 face value of the note, plus $857,228 in interest. The accompanying affidavit of confession is dated March 4, 2011. **[**27]** According to the face page of the Judgment, Debtor was not a party to this action;
> (3) Dean Osekavage claim #5-2 for $2,096,976 based on an Order and Judgment entered on January 14, 2013 in the Supreme Court of New York (entered in the amount of $1,658,528) to attach to Ms. Mergenthaler's interest in the Property. Although the Judgment was entered by default, the extensive recitations therein indicate that Ms. Mergenthaler was noticed to appear and failed to do so. As a result, judgment was entered against both Mr. and Ms. Mergenthaler. Also, according to the face page of the Judgment, Debtor was not a party to this action.

Case No. 15-72040 (REG) (Bankr E.D.N.Y.) (Claims register). Debtor argues, without legal or factual support, that: (1) the Albrecht claim is for only $600,000 (because only the face amount of the loan was recorded on the face page of the proof of claim and even though the Confession of Judgment expressly includes interest); and (2) the Osekavage judgment is not *res judicata* because it was based on a default judgment (Dkt. Nos. 16 and 20, Debtor's Obj.).

557 B.R. 326, *338; 2016 Bankr. LEXIS 3205, **27

The Trustee's Reply specifies the documents on which the Trustee relied in determining to abandon the Property. These [**28] are the August 6, 2015 Order declaring Debtor's quitclaim deed null and void and an Order entered on March 25, 2014 in Supreme Court of New York in the case *Osekavage v. Mergenthaler*, Index No. 29626/11. That Order memorializes the liens against the Property and authorizes the State Court Receiver to sell it (Dkt. No. 22, Exs. A, B, C).[5]

To the extent that the Debtor's objections are based on objections to underlying Orders in the New York Supreme Court, this Court under the *Rooker-Feldman* doctrine has no jurisdiction to consider them. The *Rooker-Feldman* doctrine prevents a federal trial court from exercising appellate jurisdiction over a state court judgment. *Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923)*; *D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)*. "[T]he *Rooker-Feldman* doctrine divests a lower federal court of subject matter jurisdiction of an action if the relief requested would [**29] effectively reverse a state court decision or void its ruling." *In [*339] re Sabertooth, 443 B.R. 671, 679 (Bankr. E.D. Pa. 2011)*, *aff'd*, *In re Green Goblin, Inc., 2014 U.S. Dist. LEXIS 157899, 2014 WL 5800601 (E.D. Pa. Nov. 16, 2014)*. The Third Circuit criteria for applying the *Rooker-Feldman* doctrine are:
　(1) the federal plaintiff lost in state court;
　(2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments";
　(3) those judgments were rendered before the federal suit was filed;
　(4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010)* (quoted, internal citations omitted), *cert. denied*, *563 U.S. 904, 131 S. Ct. 1798, 179 L. Ed. 2d 655 (2011)*. The court in *Great W. Mining* parsed *Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)*, which reiterated the fundamental principle:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Exxon Mobil, 544 U.S. at 284*.

In fact, Chapter 7 Trustee Barnard in *In re Mergenthaler*, Case No. 15-72040 (REG) (Bankr. E.D.N.Y.), notes that the U.S. District Court for the Eastern District of New York has *already* held that the *Rooker-Feldman* doctrine prevented the District Court from considering the validity of the Osekavage lien [**30] (Main Dkt. No. 23, Barnard Affirm.). *And see* *Osekavage v. Mergenthaler (In re Mergenthaler), 2015 U.S. Dist. LEXIS 56257 at *11 (E.D.N.Y. April 29, 2015)* (denying Peter Mergenthaler's application to review the Osekavage State Court Judgment based on the *Rooker-Feldman* doctrine); and *2016 U.S. Dist. LEXIS 5435 at *4-*5 (E.D.N.Y. Jan. 15, 2016)* (denying reconsideration of the above). Further, this Debtor is not even a party to many of the judgments and transactions he now seeks to avoid through this particular case after having failed to do so in the Mergenthaler bankruptcy case. Thus, even without *Rooker-Feldman*, this Debtor would have no standing to avoid those claims (i.e., Perla, Albrecht and Osekavage). Further, the court that does have jurisdiction to decide those claims is the Bankruptcy Court for the Eastern District of New York. That court has already done so and approved the sale of the subject property over similar objections made by this Debtor. This Court has no reason, authority or basis to review that court's Orders or the Orders and Judgments of the State Court and will not do so here.

Having rejected the Debtor's arguments regarding the lien and judgment claims against the subject Property, the Court will now determine whether Trustee's proposed abandonment is a proper exercise of his business judgment.

---

[5] The Bankruptcy Court in *In re Mergenthaler*, Case No. 15-72040 (REG) (Bankr. E.D.N.Y.) reordered the sale of the Property on July 26, 2016 by the Chapter 7 Trustee in that case (Dkt. No. 201). Creditor Albrecht, *pro se, supra*, filed a motion on August 8, 2016, returnable on August 31, 2016, to vacate that Order (Dkt. No. 213). These matters are referenced in Main Dkt. No. 23, Barnard Affirm., Ex. E.

*11 U.S.C. § 554* ("Abandonment of **_property of_** [**31]  **_the estate_**") states in full:

(a) After notice and a hearing, the trustee may abandon any **_property of the estate_** that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any **_property of the estate_** that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

 **[*340]**  (c) Unless the court orders otherwise, any property scheduled under *section 521(a)(1)* of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of *section 350* of this title.

(d) Unless the court orders otherwise, **_property of the estate_** that is not abandoned under this section and that is not administered in the case remains **_property of the estate_**.

*11 U.S.C. § 554*. *FED. R. BANKR. P. 6007(a)* ("Abandonment or Disposition of Property") requires the Trustee to

(a) . . . . give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to *§ 705* or appointed pursuant to *§ 1102* of the Code. A party in interest may file and serve an objection within 14 days of the mailing [**32] of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

*Fed. R. Bankr. P. 6007(a)*.

In analyzing a contested abandonment, "Courts defer to the trustee's judgement [sic] and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion." *In re Slack, 290 B.R. 282, 284 (Bankr. D.N.J. 2003)*, aff'd, 112 F. App'x 868 (3d Cir. 2004). "The party opposing the abandonment must show some likely benefit to the estate, not mere speculation about possible scenarios in which there might be a benefit to the estate." *In re Slack, 290 B.R. at 284*, citing to *In re Cult Awareness Network, Inc., 205 B.R. 575, 579 (Bankr. N. D. Ill.1997)*. The Court in *In re Slack* concluded:

The court only needs to find the trustee made:
(1) a business judgment;
(2) in good faith;
(3) upon some reasonable basis; and
(4) within the trustee's scope of authority.

*In re Slack, 290 B.R. at 284*, quoting *In re Fulton, 162 B.R. 539, 540 (Bankr. W. D. Mo. 1993)*.

In this case, the Trustee, in exercising his business judgment, has abandoned the Property on two bases: (1) the Property is not **_property of the estate_**; and (2) the Property is overencumbered. Either of these grounds is sufficient to justify abandonment, and both are supported by prior judgments of other courts. The Debtor has, however, offered nothing in response [**33] except "speculation about possible scenarios," three of which would require overturning long-standing Orders that were issued by those other Courts (the Order avoiding the Property transfer, Judgment by Confession establishing the Albrecht lien, the Judgment establishing the Osekavage lien, the Order by the District Court for the Eastern District of New York referred to above and the Bankruptcy Court for the Eastern District of New York's Order approving the settlement authorizing the sale of the subject Property over the Debtor's objection) and which this Court has no jurisdiction to address. Further, three of those orders involve transactions or proceedings to which the Debtor was not a party (the Perla mortgage, the Albrecht lien, and the Osekavage lien).

These arguments are all joined in by the Chapter 7 Trustee for Ms. Mergenthaler, who also persuasively argues that the Debtor is using this objection as a means to avoid the Order of the Eastern District of New York that

prohibits Debtor "from intervening in any bankruptcy proceeding **[*341]** in the Eastern District of New York, including Rosemary Mergenthaler's bankruptcy case, absent permission of the presiding United States Bankruptcy **[**34]** Judge" (Main Dkt. No. 23, Barnard Affirm., ¶ 9, quoting *Truong v. Cuthbertson, 2016 U.S. Dist. Lexis 21621 at *8 (E.D.N.Y. Feb. 22, 2016)*.[6] The Trustee argues that this intent is further evidenced by the fact that the effect of the abandonment of the Debtor's alleged interest would be the return of that interest to him, so that he would be free to deal with that alleged property interest himself. *See generally*, 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] at 554-6 ("Property abandoned under *section 554* reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed").[7] This Court agrees. Accordingly, this Court finds that the Debtor's objection to the abandonment is improper, without legal or factual basis and plainly designed to further delay the Mergenthaler Trustee's efforts to sell the subject Property as well as to avoid the restrictions and effects of various prior judgments of other courts. The Trustee is acting well within his business judgment in determining to abandon the Property and is authorized to do so. The Debtor's objection is overruled.

### D. Dismissal of the Adversary Complaint

Defendants have filed a cross-motion to dismiss the six-count Adversary Complaint under *FED. R CIV. P. 12(b)(6)* / *FED. R. BANKR. P. 7012(b)* for failure to state a claim upon which relief can be granted (Dkt. No. 10). Debtor has filed an objection/reply (Dkt. No. 12). The Counts of the Amended Complaint are summarized as follows:

Count 1. Tortious interference against **[**36]** Broadway and a demand for $84,000 in actual damages, plus $168,000 in punitive damages ($252,000 total demand).

Count 2. Defamation against Broadway and Feldman and a demand for $100,000 in actual damages, plus $200,000 in punitive damages ($300,000 total demand).

Count 3. Libel against Broadway and Kaminsky and a demand for $100,000 in actual damages, plus $200,000 in punitive damages ($300,000 total demand).

Count 4. Libel against Broadway and Kaminsky for allegedly violating the May 12, 2005 Order of the Third Circuit in *Truong v. Baker*, which Debtor states enjoined parties from referring to certain findings of forgery[8] and therefore a demand **[*342]** for $1,000,000 in actual damages, plus $2,000,000 in punitive damages ($3,000,000 total demand).

Count 5. Stay violation against Broadway on or about May 23, 2016, with a demand for $50,000 in actual damages, plus $100,000 in punitive damages **[**37]** ($150,000 total demand).

Count 6. Declaratory judgment stating that the May 23, 2016 [sic, May 31, 2016 per Judge Edwards's Opinion] is null and void.

_____

[6] In this regard, the Court notes that Truong has also been barred from filing papers in various other Courts. *See, e.g., In re Truong, 2015 Bankr. LEXIS 54 at *5-*6 (Bankr. S.D.N.Y. Jan. 9, 2015)* (holding that Truong and his wife are permanently enjoined from **[**35]** filing any petition, motion or pleading in the Bankruptcy Court for the Southern District of New York without the court's prior approval). The Court considered the following prior to its holding: "Judge Glenn limited his injunction against the Debtor's further filings to a period of five years. In the District Court, however, Judges Oetkin and Engelmayer issued permanent injunctions prohibiting further filings by the Debtor without prior permission from the Court. The Second Circuit has entered a similar order. Under the circumstances, the Court believes it appropriate to enter the same relief in this Court as has been entered in the appellate courts."

[7] By citing this law, this Court is not implying or in any way ruling that the Debtor has any rights in the Property. As noted above, other Courts have already determined that he does not.

[8] As stated above, Debtor has not provided the Court with a copy of the May 12, 2005 Order or properly identified the referenced Third Circuit case by docket number. Thus, the Court is not able to determine how (or whether) the claims asserted in the Amended Complaint allegedly violate the May 12, 2005 Order.

Counts 1, 2, 3 and 4 of Debtor's Amended Complaint are based on prepetition conduct and events. Count 1 arises from Debtor's allegation that Broadway refused to offer Debtor a new lease on terms acceptable to the Debtor in a hallway discussion at the New York Courthouse on May 19, 2016 (Dkt. No. 3, ¶¶ 26-31). Counts 2, 3 and 4 are also based on prepetition conduct which Debtor alleges occurred on May 19, 2016 and May 20, 2016 in conjunction with the Civil Court proceeding filed by Broadway on April 1, 2016 for Judgment for Possession and Warrant of Eviction (Dkt. No. 3, ¶¶ 33-38). Debtor alleges that Feldman and Kaminsky undertook the conduct in person on May 19, 2016 and that Kaminsky libeled the Debtor to the Civil Court in a May 20, 2016 letter (Dkt. No. 3, ¶¶ 33-38).

The conduct alleged in Counts 1, 2, 3 and 4 all occurred before the Debtor filed his bankruptcy petition on May 23, 2016. Therefore, these claims and any damages arising from them are ***property of the estate***. *11 U.S.C. § 541(a)(1)*. In Chapter 7 liquidation, only the Chapter 7 Trustee has standing **[**38]** to prosecute such claims on behalf of the estate. *11 U.S.C. § 323(a)*; *In re New Era, Inc., 135 F.3d 1206, 1208-09 (7th Cir. 1998)*; *Cain v. Hyatt, 101 B.R. 440, 442 (E.D. Pa. 1989)* ("[A]fter appointment of a trustee, a Chapter 7 debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed. Only the trustee, as representative of the estate, has the authority to prosecute and/or settle such causes of action"). The Debtor may prosecute such claims only if and when they are abandoned by the Trustee, an event which has not yet occurred. *See* 5 COLLIER ON BANKRUPTCY ¶ 554.02[3], *supra*. Accordingly, Counts 1, 2, 3 and 4 of the Amended Complaint are dismissed, without prejudice, *sua sponte* by this Court, because the Debtor lacks standing to bring them. *11 U.S.C. 105(a)*; *Van Leeuwen v. United States, 868 F.2d 300, 301 (8th Cir. 1989)*, *cert. denied*, 493 U.S. 838, 110 S. Ct. 120, 107 L. Ed. 2d 81 (1989) (upholding trial court's *sua sponte* dismissal of complaint for lack of standing, failure to state a claim and other deficiencies). "Standing is a threshold issue in federal litigation because it determines 'the propriety of judicial intervention.'" *In re Stanworth, 543 B.R. 760, 769, 779 (Bankr. E.D. Va. 2016)*, quoting *Warth v. Seldin, 422 U.S. 490, 518, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*. The Court in *In re Stanworth* dismissed the remaining count of debtor's adversary proceeding *sua sponte* for lack of prudential standing when debtor attempted to enforce a contract to which he was not a party. *In re Stanworth, 543 B.R. at 779*. "The issue of standing must be addressed **[**39]** by the Court . . . and cannot be waived by the parties." *In re Indus. Commercial Elec., Inc., 2004 Bankr. LEXIS 438, 2004 WL 1354530 at *4-*5 (Bankr. D. Mass. April 7, 2004)* (dismissing *sua sponte* for lack of standing the *section 544(b)* action filed by the debtor/committee because they were unable to identify an actual creditor).

Counts 5 and 6 arise from Debtor's allegation that the Defendants violated the automatic stay by prosecuting the Judgment for Possession and Warrant of Eviction to conclusion postpetition. The Court **[*343]** has already found above that neither Debtor nor the estate had any interest in the Lease on the petition date pursuant to *11 U.S.C. §§ 362(b)(10)* and *541(b)(2)* so that no stay was violated. Accordingly, Counts 5 and 6 are dismissed with prejudice for those same reasons.


## IV. CONCLUSION

For all the foregoing reasons, the Debtor's adversary proceeding is dismissed. Counts 5 and 6 are dismissed with prejudice, while Counts 1, 2, 3 and 4 are dismissed without prejudice. Separate Orders (i) authorizing the abandonment of the Property; (ii) denying the Debtor's motion to enjoin the pending eviction action, for sanctions and other relief; and (iii) dismissing the Complaint as stated above will be entered.

Date: August 30, 2016

/s/ Vincent F. Papalia

VINCENT F. PAPALIA

United States Bankruptcy Judge


**ORDER AUTHORIZING CHAPTER 7 TRUSTEE CHARLES [**40]  M. FORMAN, ESQ., PURSUANT TO *11***

*U.S.C. § 554(a)* **TO ABANDON REAL PROPERTY AT 3 WOOD EDGE COURT, WATER MILL (SUFFOLK COUNTY), NEW YORK 11976**

The relief set forth on the following page, numbered two (2), is hereby **ORDERED**.

**DATED: August 30, 2016**

/s/ Vincent F. Papalia

**Honorable Vincent F. Papalia**

**United States Bankruptcy Judge**

This matter is before the Court on the Notice of Proposed Abandonment filed by Chapter 7 Trustee Charles M. Forman, Esq. (the "Trustee"), pursuant to *11 U.S.C. § 554(a)* with respect to real property at 3 Wood Edge Court, Water Mill (Suffolk County), New York 11976; and the Debtor having filed an objection thereto, and the Trustee, a reply; and R. Kenneth Barnard, Esq., Chapter 7 Trustee in *In re Mergenthaler*, Case No. 15-72040 (REG) in the United States Bankruptcy Court for the Eastern District of New York, having filed an *Affirmation in Support* of the Trustee's Notice; and the Court having reviewed the parties' submissions; and due notice having been given; and for good cause shown; and the matter having been scheduled for a hearing on August 16, 2016, and the parties having agreed that the Court decide this matter on the papers, it is

**ORDERED** that Charles M. Forman, Esq., Chapter 7 Trustee in the captioned **[**41]** bankruptcy case is authorized pursuant to *11 U.S.C. § 554(a)* to abandon the real property at 3 Wood Edge Court, Water Mill (Suffolk County), New York 11976 for the reasons set forth in the accompanying Opinion (the "Opinion"); and it is further

**ORDERED** that Debtor's objection is overruled for the reasons set forth in the Opinion.


**ORDER GRANTING DEFENDANTS' CROSS-MOTION TO DISMISS ADVERSARY COMPLAINT**

The relief set forth on the following page, numbered two (2), is hereby **ORDERED**.

**DATED: August 30, 2016**

/s/ Vincent F. Papalia

**Honorable Vincent F. Papalia**

**United States Bankruptcy Judge**

This matter is before the Court on the Cross-motion filed in the captioned adversary proceeding by Defendants 325 Broadway Associates LLC, Alexis Feldman and David A. Kaminsky, Esq. (collectively, the "Defendants") to dismiss the captioned adversary complaint under *Fed. R. Civ. P. 12(b)(6)* and *Fed. R. Bankr. P. 7012(b)* for failure to state a claim upon which relief can be granted, as well as other procedural bars; and the Debtor having filed opposition thereto; and the Court having reviewed the parties' submissions; and due notice having been given; and for good cause shown; and the matter having been scheduled for a hearing on August 16, 2016, and the parties having agreed **[**42]** that the Court decide this matter on the papers; and the Court having issued its Opinion of even date (the "Opinion"), it is

**ORDERED** that Counts One, Two, Three and Four of the Debtor's Complaint, as amended, are dismissed, without prejudice, for lack of standing, for the reasons set forth in the Opinion; and it is further

**ORDERED** that Counts Five and Six of the Debtor's Complaint are dismissed with prejudice for the reasons set forth in the Opinion; and it is further

557 B.R. 326, *343; 2016 Bankr. LEXIS 3205, **42

**ORDERED** that counsel for Defendants shall serve a copy of this Order and the accompanying Opinion on the Debtor and the Chapter 7 Trustee in this case within three (3) business days of the date of this Order.

**ORDER DENYING DEBTOR'S MOTION FOR AN ORDER ENJOINING EVICTION PROCEEDING**

The relief set forth on the following page, numbered two (2), is hereby **ORDERED**.

**DATED: August 30, 2016**

/s/ Vincent F. Papalia

**Honorable Vincent F. Papalia**

**United States Bankruptcy Judge**

This matter is before the Court on the Motion filed in the captioned adversary proceeding by Mac Truong, Debtor *pro se* and Plaintiff in the adversary proceeding, for an Order enjoining Defendant 325 Broadway Associates LLC, and, to the extent applicable, Defendants Alexis **[**43]** Feldman and David A. Kaminsky, Esq. (collectively, the "Defendants") from prosecuting an eviction proceeding in Civil Court of the City of New York captioned *325 Broadway Associates LLC v. Mac Truong*, Index No.: LT-060155-16/NY; and Defendants having filed opposition to Debtor's motion, and the Debtor, a reply; and the Court having reviewed the parties' submissions; and due notice having been given; and for good cause shown; and the matter having been scheduled for a hearing on August 16, 2016; and the parties having agreed that the Court decide this matter on the papers, it is

**ORDERED** that the Debtor's Motion for an Order enjoining eviction proceedings in Civil Court of the City of New York captioned *325 Broadway Associates LLC v. Mac Truong*, Index No.: LT-060155-16/NY, including any appeals arising therefrom, is **DENIED** for the reasons set forth in the accompanying Opinion.

---

**End of Document**

# *In re Damianopoulos*

United States Bankruptcy Court for the Northern District of New York

February 5, 1988, Decided

Case No. 87-01132 Chapter 13

**Reporter**
93 B.R. 3 *; 1988 Bankr. LEXIS 1922 **

In re: Ernest N. DAMIANOPOULOS, d/b/a Corinthian Cafe, Debtor

## Case Summary

**Procedural Posture**

Petitioner sought lift of the automatic stay in order to institute **_eviction_** proceedings against debtor under the Bankruptcy Code, *11 U.S.C.S. § 362(d)*.

**Overview**

Petitioner creditor sought lift of the automatic stay under the Bankruptcy Code, *11 U.S.C.S. § 362(d)*, in order to proceed with **_eviction_** proceedings to gain possession of leased property from debtor in possession. The court concluded the automatic stay did not affect the property because debtor had no possessory interest in the leased premises and the lease was not the estate's property. The court indicated this was true regardless of whether the lease terminated pre-petition or post -petition. The court found the lease was rejected by operation of law under Bankruptcy Code, *11 U.S.C.S. § 365(d)(4)*, because the debtor failed to move to assume or reject the lease within the prescribed time period under the section. The court determined the subject of pre-petition lease termination was a question of law of the jurisdiction where the property was located, local state law. The court ordered immediate surrender of debtor's leased property.

**Outcome**
The court denied petitioner's motion to lift the automatic stay as moot because the leased property was not affected by the stay when it was not the estate's property or a possessory interest of debtor; the court ordered surrender of the property by debtor in petitioner's favor.

**Counsel:** McAuliffe & McAuliffe, P.C., Attorneys for HRR Properties Company, Syracuse, New York, Robert D. McAuliffe, Esq., of counsel.

Scott, Sardano & Pomeranz, Esqs., Attorneys for Debtor, Syracuse, New York, Robert Scott, Esq., of counsel.

Warren V. Blasland, Esq., Trustee, Syracuse, New York.

**Judges:** [**1] Stephen D. Gerling, U.S. Bankruptcy Judge.

**Opinion by:** GERLING

## Opinion

 [*4] MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, U.S. Bankruptcy Judge

This contested matter comes before the Court on the motion of HRR Properties Company ("HRR"), pursuant to *§ 362(d) of the Bankruptcy Code*, *11 U.S.C.A. §§ 101-1330* (West 1979 & Supp. 1987) ("Code"), to lift the automatic stay on the non-residential real property it owns and leases to Ernest N. Damianopoulos, d/b/a Corinthian Cafe ("Debtor"). A preliminary hearing pursuant to Code *§ 362(e)* was conducted in Utica on December 7, 1987 and a final evidentiary hearing, also in Utica, took place on January 4, 1988. The final hearing was concluded on January 21, 1988, when counsel for the Debtor submitted a reply memorandum to HRR's post-trial memorandum of law. Accordingly, HRR's request for relief under Code *§ 362(d)* was submitted for decision January **[**2]** 21, 1988.

JURISDICTIONAL STATEMENT

The Court has jurisdiction by virtue of *28 U.S.C.A. §§ 1334(b)* and *157(a)* (West 1979 & Supp. 1987). This is a core proceeding, *28 U.S.C.A. §§ 157(b)(1)* and *(b)(2)(G)*, rendered in accordance with *Rules 9014*, *7052* and *4001(a) of the Federal Rules of Bankruptcy Procedure* ("Fed.R.Bankr.P.").

FACTS

Debtor filed for relief under Chapter 13 of the Code on August 10, 1987. From a review of Debtor's Petition, Statement and Schedules ("Petition"), it appears that he lives in Syracuse with his wife, who does not work, and two children, Maria and Dimitri, ages thirty and twenty-two, respectively. Over the past three years, Debtor has earned income from the Corinthian Cafe ("Cafe"), a luncheonette he has owned and operated in Syracuse, New York since 1984, research and teaching duties at a local university and room and board collected from his daughter and a boarder in his home.

Debtor's individual filing stayed a summary ***eviction*** proceeding instituted by HRR in the City Court of Syracuse, New York to gain possession of the premises on which he operates the Cafe. In his Petition, Debtor listed this action and appeared to mark June 7, 1987 as the last date **[**3]** he made a monthly rental payment of $ 250.00. The Debtor also included HRR as an unsecured creditor holding a disputed claim of $ 900.00 for rent under this business lease.

The lease in question was executed on March 6, 1984 between the Debtor and HRR for the rental of some 630 square feet at 238 Harrison Street [1] and was expressly for restaurant use only. It provided for a term of five and one-half years from March 1, 1984 to August 31, 1989 at a monthly rate of $ 200.00 for the first six months and $ 250.00 for the remaining five years with additional charges of pro rata building taxes and insurance. Rental payments not made on the first day of each calendar month were subject to a fifty dollar late charge. Debtor was obligated to provide access to and bear the costs of all work necessary to ready the premises for his Cafe and pay the cost of providing access to restrooms located on the premises and specific work that HRR was to perform. Rent abatement and liquidated damages **[*5]** were provided for in the event that the work HRR was required to perform prevented the Debtor from being open for business or was not completed within six months of the lease's execution. In addition, the lease agreement **[**4]** set out eight different categories of events which constituted default, including bankruptcy and the failure to timely pay monthly rent and cure without notice from HRR. The lease also created a month to month holdover tenancy at double the rent if the Debtor continued in possession of the premises despite lease expiration or forfeiture.

In his Petition, Debtor estimated his personal monthly expenses at $ 1,251.00 and his monthly net income at $ 1,739.00, of which $ 1,189.00 was generated by the Cafe. He indicated that the Cafe also supplied his family with food. The Debtor's original plan filed on August 27, 1987, did not list any executory contracts to be rejected, and stated the following: "The debtor shall remain in possession of all property at all times under the Plan." After a secured creditor objected to the confirmation **[**5]** of the plan, the Debtor filed an amended plan October 30, 1987 in which the only change was an increase in the amount of monthly plan payments.

---

[1] There appears to be a discrepancy as to the exact address of the leased premises. In contrast to the address on the lease agreement, HRR's moving papers state the address as 250 Harrison Street, while the Debtor lists the address as 236 Harrison Street in his Petition. The Court will treat the address on the lease agreement as bearing the correct number.

On November 23, 1987, HRR filed the instant motion seeking an order either lifting the automatic stay to allow it to proceed in City Court, or terminating the Debtor's lease rights and establishing a claim of $ 3,927.05. Affidavit of Charles W. Rich, general partner of HRR (Nov. 18, 1987). HRR alleged that the lease terminated through the Debtor's pre-petition defaults and the notice of termination it sent out on May 23, 1987. *Id.* at Exhibit B. These allegations apparently formed the basis of HRR's ***eviction*** action commenced on July 6, 1987. On his own accord, the presiding City Court Judge, the Hon. Langston C. McKinney, stayed the ***eviction*** action on September 14, 1987 due to the Debtor's bankruptcy filing. HRR also claimed the Debtor's holdover status, at double the lease's fixed monthly rent as set forth in the lease, and asserted that the Debtor's bankruptcy filing, which "terminates the estate created in tenant hereby", constituted an additional ground of default. *Id.*

At the preliminary hearing on December 7, 1987, counsel for **[**6]** the Debtor asserted that there was no contest of factual allegations, no legal cause and that the lease was improperly terminated. In response, counsel for HRR stated that there was ***no lease*** because of pre-petition defaults. At the final evidentiary hearing on January 4, 1988, both attorneys stipulated into evidence all of the papers submitted in the City Court ***eviction*** action and neither called any witnesses. The stipulated papers recited a volley of charges between the Debtor and HRR concerning the interpretation of the lease agreement and the breach of respective landlord and tenant obligations arising thereunder, dating back to August 1, 1986.

Subsequently, HRR reiterated that the lease terminated June 1, 1987 due to the Debtor's failure to timely pay the fixed monthly rent, thus precluding any lease assumption under bankruptcy law. Petitioner's (Creditor's) Memorandum of Law (received and filed Jan. 1988). In the alternative, HRR asked the Court to defer its decision until the completion of the state court action if it determined that there were issues of lease termination. *Id.*

In response, the Debtor maintained that the lease had neither expired nor been terminated. Debtor's **[**7]** Memorandum of Law (received and filed Jan. 21, 1988). Even assuming termination, he asserted that the process was not complete and immune from reversal, nor was a final decision ever issued by the City Court. *Id.* The Debtor further stated that HRR's attorney was holding its post-petition rental payments, contrary to HRR's pre-petition behavior. *Id.*

Debtor's second amended plan was denied confirmation in this Court's Memorandum-Decision dated January 21, 1988.

ISSUE

Whether HRR is entitled to a vacating of the automatic stay, pursuant to Code *§ 362(d)*, to enable it to obtain possession **[*6]** of the non-residential real property it leases to the Debtor?

DISCUSSION

The automatic stay is triggered by the filing of a bankruptcy petition and continues until certain property is no longer ***property of the estate*** and the earlier occurrence of the closing or dismissal of the case or the denial or granting of a discharge. Code *§§ 362(a)* and *(c)* and ***541***. Subject to certain exceptions, Code *§ 362(b)*, the stay operates to protect the debtor or the ***property of the estate*** from almost any type of formal or informal action. Code *§ 362(a)*. *See also* King, 2 COLLIER ON BANKRUPTCY para. 362.04 (15th ed. 1987); *Bergman v. Meehan (In re **[**8]** Meehan), 59 B.R. 380, 382-383 (E.D.N.Y. 1986).* Thus, if the Court concludes that the Debtor has no possessory interest in the Cafe lease or that said lease is not ***property of the estate***, the automatic stay does not affect it. This would be true regardless of whether the lease terminated pre- or post-petition and would effectively render HRR's motion moot. Code *§§ **541(b)(2)*** and *362(b)(10)*. *See also Town of Islip v. Northeastern Int'l Airways, Inc. (In re Northeastern Int'l Airways, Inc.), 56 B.R. 247, 249 (S.D.Fla. 1986).*

The Court finds Code *§ 365(d)(4)*, which applies "in a case under any chapter of this title", dispositive of the instant motion. *See In re Aneiro, 72 B.R. 424 (Bankr. S.D.Cal. 1987); In re Adams, 65 B.R. 646 (Bankr. E.D.Pa. 1986); In re Dulan, 52 B.R. 739 (Bankr. C.D.Cal. 1985); In re Independence Village, Inc., 52 B.R. 715, 722 (Bankr. E.D.Mich.*

Case 22-20823-GLT    Doc 324-27    Filed 02/07/23    Entered 02/07/23 16:24:10    Desc
Exhibit C-4    Page 26 of 37

Page 4 of 6

93 B.R. 3, *6; 1988 Bankr. LEXIS 1922, **8

*1985)*. *See also* Code § 1322(b)(7); *In re Meehan, supra 59 B.R. at 382-383*; 2 COLLIER, *supra*, para. 365.03 at 365-30 to 365-32. *Contra In re Dodd, 73 B.R. 67 (Bankr. E.D.Cal. 1987)*.

At this point in time, the Cafe lease is not ***property of the estate*** nor does the Debtor have any interest  **[\*\*9]**  in it since it has been rejected by operation of law under Code *§ 365(d)(4)*. This occurred when the Debtor did not move to assume or reject it by October 9, 1987, sixty days after his Chapter 13 filing. *Fed.R.Bankr.P. 6006*. *See also In re O.P. Held, Inc., 77 B.R. 388, 390-391 (Bankr. N.D.N.Y. 1987)*.

Even if something less than a motion was required under Code *§ 365(d)(4)*, the Debtor's general statement in his original plan -- the only "action" he took regarding the lease -- did not constitute the clear, unequivocal, affirmative and specific act of assumption required. *See By-Rite Distributing, Inc. v. Brierley (In re By-Rite Distributing, Inc.), 55 B.R. 740, 742 (D.Utah 1985)*. *See e.g. In re O.P. Held, Inc., supra, 77 B.R. at 388* (lawyer's statement that debtor would assume lease does not equal assumption); *In re BDM Corp., 71 B.R. 142 (Bankr. N.D.Ill. 1987)*(debtor's statement at Code § 341 meeting that he would honor all leases and the fact that he was keeping payments current does not constitute assumption); *Treat Fitness Center, Inc. v. Rainbow Investment Co. (In re Treat Fitness Center, Inc.), 60 B.R. 878 (Bankr. 9th Cir. 1986)*(ongoing discussions between debtor  **[\*\*10]**  and landlord with respect to assignment, sublease and purchase does not equal assumption); *In re Spats Restaurant & Saloon, 64 B.R. 442 (Bankr. D.Nev. 1986)*(debtor's conduct in introducing to lessor new tenant and discussing with tenant and lessor past problems, future plans and lease transfer does not equal assumption); *In re Re-Trac Corp., 59 B.R. 251 (Bankr. D.Minn. 1986)*(debtor's telephone conversation wherein he communicated intention to continue operating out of leased premises coupled with erratic rental payments does not equal assumption). *But see In re Aneiro, supra, 72 B.R. at 424* (debtor's plan, filed approximately thirty days after Chapter 13 filing, satisfied Code *§ 365(d)(4)* by providing for the assumption of non-residential lease and motion to assume lease made when notice of plan served on shopping center owner).

Hence, the issue of pre-petition termination of the Cafe lease properly remains a subject for the state court, where it was originally brought. *Intellitek Computer Corp. v. Kollmorgen Corp. (In re Nanodata Computer Corp.), 74 B.R. 766, 771 (W.D.N.Y. 1987)*(discussing *Northern Pipeline Co. v. Marathon Pipe Line Co.,  [\*7] 458 U.S. 50, 71, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1981))*.  **[\*\*11]**  This is so because the determination of pre-petition lease termination is a question of the law of the jurisdiction where the property is located -- local state law. *In re Sudler, 71 B.R. 780, 785 (Bankr. E.D.Pa. 1987)*(and cases cited therein). *See also Beauchamp v. Graham (In re Graham), 14 B.R. 246, 248 (Bankr. W.D.Ky. 1981)*(considerations of judicial economy, comity and state court expertise encourage state adjudication of state-created rights).

The debtor mentions HRR's alleged current post-petition acceptance of monthly rental payments in his Memorandum of Law presumably to raise a waiver defense to the rejection under Code *§ 365(d)(4)*. This "contention" must be dismissed on both evidentiary and statutory grounds. First, there is a complete absence of proof in the record as to the post-petition payment of rent. Second, it is clear that the lessor has no affirmative duty to seek lease rejection on the expiration of time since Code *§ 365(d)(4)* is self-executing. *See In re Re-Trac Corp., supra, 59 B.R. at 258*.

Furthermore, the "test for waiver rests on a determination of the intentions of the party waiving the right." *Id.* (citing to *28 Am. Jur.2d Estoppel and Waiver  [\*\*12] § 160* (1966)). *See also In re Spats Restaurant & Saloon, supra, 64 B.R. at 445-446*; *In re T.F.P. Resources, Inc., 56 B.R. 112, 116 (Bankr. S.D.N.Y. 1985)*. The waiver inquiry focuses "on the landlord's intent manifested by his acts." *In re Fosko Markets, Inc., 74 B.R. 384 (Bankr. S.D.N.Y. 1987)*. HRR's letters and statements to the Debtor in April and May 1987 (Creditor's Exhibits 3-7) chronicling purported defaults from August 1986, the ***eviction*** suit it commenced and the instant action clearly demonstrate its intention to remove the Debtor from the premises and not waive any of its lease rights. Moreover, while HRR's lack of

reliance on Code *§ 365(d)(4)* in its moving papers is surprising, [2] it does not dilute the manifest intention HRR indicates to eject the Debtor from the leased premises.

 **[**13]**  In addition, Code *§ 365(d)(4)* was enacted with Code *§ 365(d)(3)* as part of a statutory scheme to protect landlords. *See In re Fosko Markets, Inc., supra,* 74 B.R. at 388; *In re PCH Associates, 804 F.2d 193, 199-200 (2d Cir. 1986).* Code *§ 365(d)(3)* explicitly requires rental payments "until such lease is assumed or rejected" and states that "acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title."

There is a split of authority concerning the applicability of waiver to subsections (3) and (4) of Code *§ 365(d).* *Compare In re T.F.P. Resources, Inc., supra,* (literal interpretation of Code *§ 365(d)(3)* supports waiver demonstrated by acceptance of rent beyond sixty days with knowledge of pending bankruptcy case) *with In re Re-Trac Corp., supra,* (given purpose of 1984 amendments to Code *§ 365(d),* Code *§ 365(d)(3)* applies to state law and other Code remedies and waiver of Code *§ 365(d)(4)* is impossible once lease is deemed rejected). However, this is a conflict the Court need not resolve in the case at bar since the pleadings and the record are devoid of any possible facts that could constitute  **[**14]**  waiver.

In sum, the Court finds waiver of Code *§ 365(d)(4)* inapplicable based on the existing record.

The Court is now left to fashion the relief to which HRR is entitled. HRR had sought the termination of the automatic stay to allow it to continue its ***eviction*** action to recover possession of the premises and, in the alternative, asked for the termination of the Debtor's rights in the  **[*8]**  lease and a claim in the amount of almost $ 4,000.00.

For the reasons discussed, there is presently no automatic stay constraining HRR from proceeding with its ***eviction*** action. Code *§ 362(b)(10).* However, this Court is also authorized under Code *§ 365(d)(4)* to order the immediate surrender of the lease's non-residential real property to the lessor in the event of rejection, without resorting to state law. *See In re O.P. Held, Inc., supra,* 77 B.R. at 391; *In re Fosko Markets, Inc., supra,* 74 B.R. at 390; *Ridgeview Lincoln Mercury, Inc. v. Hurst Lincoln-Mercury, Inc. (In re Hurst Lincoln-Mercury, Inc), 70 B.R. 815, 817 (Bankr. S.D.Oh. 1987).* *Contra In re Adams, supra, 65 B.R. at 649.* Pursuant to Code *§ 365(d)(4),* the Court orders such surrender within thirty (30) days of the entry of this  **[**15]**  Order.

HRR's request regarding the setting of its claim is inconsistent with this Order inasmuch as it relates to the Debtor's post-petition liability under the lease. Code *§ 365(d)(3)* controls and provides the lessor with the payment of sixty days' rent, at the lease rate, for the sixty-day period following the filing. *Accord In re O.P. Held, Inc., supra, 77 B.R. at 391.* Since it is alleged, without dispute, that the fixed monthly rent under the lease was $ 250.00, HRR is entitled to $ 500.00, plus any applicable building charges, and HRR is also entitled to the reasonable value of the use and occupancy of the Cafe premises from the sixty-first day after the Debtor's filing to the date of the surrender of the premises. This two-fold relief, however, is only available if the Syracuse City Court determines that the lease did not terminate pre-petition. Should the City Court find the lease terminated pre-petition, HRR is then entitled to the reasonable value of the use and occupancy of the Cafe premises from the date of filing to the date of surrender. All amounts relating to the use and occupancy of the premises post-petition are to be reduced by any monies the Debtor might have  **[**16]**  paid in post-petition rent. With regard to the amounts HRR claims accrued pre-petition, that is necessarily a matter of state law and the Court defers to the expertise of Judge McKinney. HRR is entitled to file any claims arising either out of the ***eviction*** action against the Debtor or this proceeding within thirty (30) days after the date of entry of the City Court judgment. *Fedr.R.Bankr.P. 3002(c).*

---

[2] The Court notes with great unease the provisions of the lease at issue, embraced by HRR in its moving papers, setting forth bankruptcy as one category of default. Under Code *§ 541(c)(1),* "an interest of the debtor in property becomes ***property of the estate*** . . . . notwithstanding any provision in an agreement . . . . that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of a debtor's interest in property." *See also* Code ***§ 365(e)(1).*** Clearly, this kind of default is prohibited under the Code.

93 B.R. 3, *8; 1988 Bankr. LEXIS 1922, **16

CONCLUSIONS OF LAW

Accordingly, it is hereby

ORDERED:

1. HRR's motion to lift the automatic stay pursuant to Code *§ 362(d)* is denied as moot.

2. The lease entered into by and between the Debtor and HRR on March 6, 1984 is deemed rejected by virtue of Code *§ 365(d)(4)*.

3. The Debtor shall surrender possession of the leased premises to HRR, as prescribed by Code *§ 365(d)(4)*, within thirty (30) days of the date of entry of this Order.

4. Consonant with this Order and the City Court judgment, HRR is entitled to file any claim it deems appropriate under the applicable provisions of the Code within thirty (30) days after the date of entry of the City Court judgment, pursuant to *Fed.R.Bankr.P. 3002(c)*.

Dated at Utica, New York this 5th day of February, 1988.

---

# *In re West Pine Constr. Co.*

United States Bankruptcy Court for the Eastern District of Pennsylvania

December 9, 1987, Decided

No. 82-00486 T

**Reporter**

80 B.R. 315 *; 1987 Bankr. LEXIS 1886 **

In re: WEST PINE CONSTRUCTION COMPANY, Debtor

## Case Summary

**Procedural Posture**

Lessor of property that was center of debtor construction company's reorganization plan filed for relief of the automatic stay of *11 U.S.C.S. § 362*, claiming the lease had terminated due to nonpayment of royalties. Debtor argued that it retained equitable interest in the property sufficient to invoke the automatic stay.

**Overview**

Bankrupt debtor failed to make royalty payments on a lease for property used for strip mining, and lessor terminated the lease for nonpayment. Lessor filed an action under *11 U.S.C.S. § 362* for relief from the automatic stay resulting from debtor's bankruptcy. Debtor, along with interested party desiring to enter into a mining contract with debtor, objected to a lifting of the stay. The court found the lease terminated automatically in accordance with its terms and that the specific lease provision for immediate termination for nonpayment was controlling over a broader provision regarding lease violations in general. The court found that the lease constituted an exception to the automatic stay, pursuant to *11 U.S.C.S. § 362(b)(10)*, and that the debtor's filing of a petition for bankruptcy had no effect on the lease termination. The court found debtor had ceased mining operations, had no mining equipment on the site, and lacked even a scintilla of equitable possessory interest sufficient to invoke the court's equitable powers.

**Outcome**

The court found that the lease constituted an exception to the automatic stay, pursuant to applicable section of statute, and that the lease had terminated automatically in accordance with its terms. The court also held that debtor lacked any equitable possessory interest sufficient to invoke the stay.

**Counsel:** Iles Cooper, Esquire, Williamson, Freidberg & Jones, for Debtor.

Robert H. Kauffman, Esquire, Rhoda, Stoudt & Bradley, for Tri County.

Earl T. Stamm, Esquire, Blank, Rome, Comisky & McCauley, for DiRenzo.

**Judges:** [**1]  Thomas M. Twardowski, Bankruptcy Judge.

**Opinion by:** TWARDOWSKI

## Opinion

**[*316] MEMORANDUM AND OPINION**

Case 22-20823-GLT    Doc 324-27    Filed 02/07/23    Entered 02/07/23 16:24:10    Desc
Exhibit C-4    Page 30 of 37
80 B.R. 315, *316; 1987 Bankr. LEXIS 1886, **1

Page 2 of 9

By THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Tri County Land & Coal Company ("Tri County") has presented a multi-faceted motion requesting relief from the automatic stay in the bankruptcy of West Pine Construction Company ("debtor"). Since we find that the lease in question has terminated automatically in accordance with its terms, the debtor no longer has any property interest in the lease, and Tri-County may proceed accordingly.

This chapter 11 bankruptcy was filed on February 5, 1982. Prior to that time, Clarence F. Renninger and Renninger Coal Company, Inc. ("Renninger") had leased [1] to debtor property ("premises") located in Schuylkill County, Pennsylvania for the purpose of strip mining anthracite coal ("lease"). Debtor's amended plan was confirmed on April 3, 1985. The lease is the centerpiece of the debtor's reorganization efforts since it is one of the only assets in the estate. [2] Under the plan, miners other than debtor **[\*\*2]** will mine the leased property **[\*317]** and the proceeds shall be applied to pay royalties to debtor's lessor (now Tri County), after which the balance shall be available for creditors. *See* Plan of Reorganization, slip op. p.7, section V; Supplemental Amendment to Creditors' Committee's Plan of Reorganization and Disclosure Statement, dated November 11, 1982, p.2.

Subsequent to the confirmation of the plan, Renninger conveyed the subject premises to Tri County. On August 28, 1985, Renninger also assigned its interest in the lease to Tri County.

The lease is the focal point of this § 362 motion. Paragraph 2 of the **[\*\*3]** lease provides that the debtor is to pay minimum monthly royalty payments of $ 200.00 per month, and that failure to do so for three consecutive months "shall be deemed a termination." Debtor paid these royalties to Tri County in August, September and October of 1985. Debtor later tendered a check for November and December (1985) royalties, and informed Tri County that it had produced no coal sales during November. That check was accepted by Tri County.

At a later date, debtor sent another check to Tri County covering "min. royalties -- 1/86, 2/86, 3/86." Tri County alleges that it did not accept or deposit that check because debtor had not produced royalties in excess of $ 200.00 as required by the lease.

Debtor halted its operations by the end of October of 1985, [3] and was not operating at the time that we took testimony on this matter. Notes of Testimony ("N.T."), September 5, 1986, p. 26 (cross-examination of Dr. Colkitt).

**[\*\*4]** As the docket indicates, the lease has not been assumed. On April 22, 1985, Tri County filed this motion for relief from the automatic stay. Both the debtor and Paul A. DiRenzo jointly with DiRenzo Coal Company (collectively "DiRenzo") [4] have responded and briefed the issues. [5]

---

[1] The original lease was dated January 9, 1981. On June 10, 1981, the lease was amended to correct an error in the description of the boundaries of the strip mining operation.

[2] *See* Plan of Reorganization, as amended, slip. op. p.5, section IV (the only significant assets are two leases to tracts of coal-bearing land); *cf.* Notes of Testimony ("N.T."), September 5, 1986, cross-examination of Dr. Douglas Colkitt, pp. 21-22 (assets as of September 5, 1986 include a creditors' escrow account for post bankruptcy funds, the Renninger tract, and several pieces of unworkable equipment).

[3] N.T. July 28, 1986, p. 28 (testimony of Dr. Colkitt, chief operating officer of debtor, that debtor ceased operations on the leased premises in late September or early October 1985); *cf.* N.T. July 28, 1986, p. 52 (testimony of Dr. Colkitt that operations ceased at the end of October, 1985) and N.T. July 28, 1986, p. 42 (testimony of Dr. Colkitt that the mining terminated in mid or late October). Debtor suggests in its brief that mining operations were "temporarily halted" in "late October, 1985." Brief of Debtor, p. 3. Debtor does not, however, suggest that mining was resumed.

[4] DiRenzo's "affiliate," Pennsylvania Anthracite Development Corporation, ". . . . desires to enter into a mining contract with the Debtor . . . ." pursuant to the arrangements outlined in the plan. DiRenzo's Brief, p. 4. Mr. DiRenzo is chairperson of the creditors' committee, but references in this memorandum refer to the position taken individually by DiRenzo, and not the committee.

Three questions emerge from this backdrop:

(i) Whether the lease has terminated automatically **[\*\*5]** in accordance with its terms, leaving debtor with no property interest;

(ii) Whether the automatic stay prevents Tri County from declaring the lease to be in default as a result of debtor's alleged post-petition violations and breaches of the lease, and

(iii) (assuming that the automatic stay applies) Whether the stay should be lifted and modified to permit Tri County to proceed in accordance with the terms of the lease.

We find that the lease has terminated automatically in accordance with its terms, and thus we do not reach the second or third questions.

Although we hesitate to reduce the parties' excellent and extensive briefs to a mere paragraph, we think that their respective positions on the first question can be broken out as follows. They disagree as to whether the language of the lease causes the lease to terminate automatically upon failure to pay the minimum royalties for **[\*318]** three consecutive months. They also disagree about the weight, if any, to be given to the body of case law discussing post-petition terminations. Finally, they review equitable analyses of forfeiture and reach different conclusions.

We must initially determine whether the lease provides for automatic **[\*\*6]** termination. Tri County urges us to review paragraph 2A, which provides:

2. Payments under the terms of this lease shall be as follows:

A. Royalties to be paid . . . . West Pine shall pay monthly and in advance the sum of $ 200.00 to be credited toward any royalties payable during said month. A failure to produce royalties above the sum of $ 200.00 for any three consecutive months shall be deemed a termination of this agreement; . . . .

Tri County argues that this language causes the lease to terminate automatically upon failure to produce royalties as described therein. Unlike the other paragraphs [6] that discuss violations of the lease, paragraph 2A states that a failure to produce royalties *"shall* be deemed a termination."  (emphasis added) If debtor violates the *other* provisions of the lease, a party seeking redress would be forced to rely on paragraph 12 to effect a cure or termination.

The debtor relies on paragraph 12 for the proposition **[\*\*7]** that debtor *always* a retains a right to cure violations of the lease:

12. It is further understood and agreed that:

(a) Any violation of the terms of this lease shall at option of Renninger constitute reason for immediate termination of the leasing relationship provided the violation is not corrected within thirty (30) days of written notice of the same; a failure to correct the default within said thirty (30) days shall cause the removal of all equipment and the cessation of all mining. As a substitute for written notice, oral notice delivered to West Pine in the presence of a witness shall suffice.

No liability shall attach to Renninger for or on account of said termination.

Debtor also notes that the lease, and paragraph 2A in particular, does not specifically refer to "automatic" termination.

---

[5] DiRenzo was not listed as an interested party on the original motion but nonetheless filed an answer. On July 16, 1986, DiRenzo's counsel made an oral motion, requesting permission to be heard, based on DiRenzo's $ 95,000 proof of claim. N.T. July 16, 1986, p. 9. We overruled Tri County's objection. N.T. July 16, 1986, p. 9. Tri County renewed its objection at a later date and we again overruled the objection. N.T. July 28, 1986, p. 76.

[6] For example, paragraph 7 requires that:

West Pine shall conduct the stripping operation in a prudent, skillful and workmanlike manner in order to remove all removal coal without disturbance to the deep mine operations of Walaitis Coal Co.

The clear conflict is between the "shall be deemed a termination" language of paragraph 2A and the reference in paragraph 12 to "any violation." In light of this conflict, we now consider certain basic tenets [7] of contract interpretation. In all cases, "the manifest intention of the parties is paramount and the court will adopt the interpretation, which under all circumstances of **[**8]** the case, ascribes the most reasonable, probable and natural conduct to the parties." *Shipping Corp. of India, Ltd. v. Sun Oil Co., 569 F. Supp. 1248, 1254 (E.D. Pa. 1983).* To achieve this goal, a contract should be evaluated as a whole and all of its provisions given effect if possible. *Id.; accord Brennan v. D.J. McNichol Co., 439 F. Supp. 499 (E.D. Pa. 1977).* We must strive to give meaning to each section of the contract and to interpret sections as compatible. *Shipping Corp. of India Ltd. v. Sun Oil Co., 107 Ct. Cl. 665, 569 F. Supp. 1248, 1254*; *accord Thermice Corp. v. Vistron Corp., 528 F. Supp. 1275, 1286 (E.D. Pa. 1981)* (Interpreting Pennsylvania and Ohio law and citing Pennsylvania precedent on this point). Of course, specific references control over general references. *Brennan v. D.J. McNichol Co., 439 F. Supp. 499, 503, citing Capitol Bus Co. v. Blue Bird Coach Lines, Inc., 478 F.2d 556, 560 (3d Cir. 1973)* **[*319]** And, ". . . . if there appear to be repugnant clauses they must be reconciled if possible and an interpretation of one part will not be given which will annul another part." *Kingston Dodge, Inc. v. Chrysler Corp., 449 F. Supp. 52, 54 (M.D. Pa. 1978)*, **[**9]** *citing* P.L.E. *Contracts* § 159.

We do not think that it was the intent of the parties that a failure to pay royalties be treated similarly to other breaches. Paragraph 12 penalizes debtor for uncured violations by allowing the lesser to ". . . . cause the removal of all equipment and the *cessation of mining."* (emphasis added) It is illogical to suggest that the parties would have intended this to be the penalty for debtor's *failure to mine* and the concomitant failure to produce royalties. The failure to mine and produce royalties bears **[**10]** a stiffer, more immediate penalty -- termination without the right to cure.

It is difficult to reconcile the commanding "shall" language of paragraph 2A and the expansive "any violation" language of paragraph 12. But the language in paragraph 12 is general, while the language in paragraph 2A focuses on a specific type of violation. Under the rules enunciated above, we must find that the language in paragraph 2A is controlling. The failure to produce royalties triggers the ***termination*** provision in paragraph 2A, leaving for judicial interpretation the question of whether the ***termination*** can occur ***after*** the defaulting party has filed a bankruptcy petition.

Tri County argues that a contract may ***terminate*** under ordinary principles of contract law when a default occurs, even if the defaulting party is in bankruptcy. In support of this proposition, Tri County cites a series of cases which the debtor and DiRenzo attempt to distinguish. The Tenth Circuit has issued a significant opinion in this area. *Trigg v. United States of America, Dept. of the Interior, Bureau of Land Management (In re Trigg), 630 F.2d 1370, 6 B.C.D. 1061 (10th Cir. 1980)*. The *Trigg* debtors leased oil and gas **[**11]** lands. The leases provided that debtors could pursue production *or* pay an annual advance rental of $.50/acre. Absent production, the leases provided that failure to pay the advance rental on or before the anniversary dates would automatically terminate the leases. *Id. at 1371*. Debtors did not drill wells during the pre-petition period, but did pay the annual advance rentals. They filed a Chapter XI petition, and then failed to tender any subsequent advance rentals. *Id. at 1372*. Instead, ***after*** the anniversary date for payment of advance rentals, they filed adversary actions requesting injunctions to prevent ***termination*** of the leases. *Id.* The court held that "(a) contract that provides for termination on the default of one party may terminate under ordinary principles of contract law even if the defaulting party has filed a petition under the Bankruptcy Act." *Id. at 1374*.

DiRenzo argues that this case can be distinguished because it involved pre-petition leases which simply expired on their termination dates. We disagree because we find the *Trigg* facts highly analogous. *Trigg* involved *annual*

---

[7] Indeed, Pennsylvania cases interpreting mining leases raise these same rules of contract interpretation. *See e.g., In re Essex Coal Co., 192 A.2d 675, 678, 411 Pa. 618 (1963)* (Each mining agreement must be judged sui generis and construed by its own terms); *Greenough v. Colonial Colliery Co., 1 A.2d 174, 176, 132 Pa.Super. 270 (1938)* (Court must give effect to the intention of the parties); *Simmons v. Nastas,* 23 Law. L.J. 401, 407 (Pa. Com. Pl. 1972) (Mining leases are to be construed as though they are ordinary leases, the court must look at the entire instrument, the subject matter and the surrounding circumstances).

80 B.R. 315, *319; 1987 Bankr. LEXIS 1886, **11

advance rentals payable on *annual* anniversary dates. The **[\*\*12]** West Pine -- Tri County lease involves minimum *monthly* royalty payments payable on the fifteenth day of each *month*. Lease, para. 2A.

As an extension of this argument, DiRenzo suggests that this case does not fall within the exceptions to the automatic stay outlined in *11 U.S.C. § 362(b)(10)*, [8] **[\*\*13]** because the lease terminated *prematurely,* and not at the expiration of its *stated term*. Thus, reasons DiRenzo, the automatic stay does apply. The phrase "stated term," of course, is not defined in the Code. We do not accept DiRenzo's facile analysis that "stated term" excludes from its scope all leases that have been terminated as a result of defaults. We believe that the floor **[\*320]** statements [9] from the Senate suggest that a broader definition was intended, one which would clearly include in the category of cases *not* covered by the stay leases terminated as a result of default. We note parenthetically that our analysis may [10] be supported by the fact that none of the cases cited by the parties and decided subsequent to the effective date of the 1984 amendments has applied DiRenzo's *§ 362(b)(10)* analysis.

**[\*\*14]** We also reject DiRenzo's argument that *Trigg* is "irrelevant" because it was decided under the Act, which had no provision similar to *§ 362(a)(3)*. [11] DiRenzo ignores a decision from this district on a similar issue in which the Court cites *Trigg* and its predecessors.

---

[8] *Section 362(b)(10)* states that the Code does not create a stay:

> (10) . . . . of any act by a lessor or the debtor under a lease of non-residential real property *that has terminated by the expiration of the stated term* of the lease before the commencement of or during a case under this title to obtain possession of such property . . . .

*11 U.S.C. § 362(b)(10)*, effective October 8, 1984.

[9] Senator Hatch explained:

> The bill provides that non residential real property subject to a lease that has terminated by the expiration of its stated term is not property of the estate and that a proceeding or action by the landlord to regain possession of the property is not stayed. *A lease that has terminated at the expiration of the stated term of such lease is a lease under which the lessee no longer has any renewal or extension rights.*

130 CONG. REC. S8895 (daily ed. June 29, 1984) (statement of Senator Hatch on P.L. 98-353, H.R. 5174) (emphasis added).

[10] Of course, these cases may have involved other issues, but we find it significant that DiRenzo's *§ 362(b)(10)* analysis was not applied by any of these courts. *See e.g., In re DeSantis, 66 B.R. 998, 15 B.C.D. 229 (Bankr. E.D. Pa. 1986)* (whether the lease had been terminated by state court proceedings prior to the bankruptcy leaving debtors with no § 541 property or no assumable interest); *In re P.I.N.E., Inc., 52 B.R. 463 (Bankr. W.D. Mich. 1985)* (whether lease expired by its own terms upon failure to tender delay rentals); *In re Crabb, 48 B.R. 165, 12 C.B.C.2d 704 (Bankr. D. Mass. 1985)* (whether interest of lessee expired pursuant to lease terms post-petition). We must reject DiRenzo's argument that *§ 362(b)(10)* "codified" the pre-1984 amendment cases cited by Tri County. Indeed, these cases suggest that the *Trigg* analysis is unaffected by *§ 362(b)(10)*.

[11] *Section 362(a)(3)* provides that the stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *11 U.S.C. § 362(a)(3)*. *Trigg* interpreted Rule 11-44(a) of the Bankruptcy Act, which provided:

> *(a) Stay of Actions and Lien Enforcement* A petition . . . . shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter X of the Act . . . ."

Although the *Trigg* court held that Rule 11-44(a) was not broad enough to prevent the termination of the leases, *In re Trigg, 630 F.2d 1370, 1372*, DiRenzo has not shown that *§ 362(a)(3)* of the Code is broad enough to resuscitate a lease that has terminated in accordance with its terms.

Although these cases were decided under the Bankruptcy Act of 1898 and involved leases or licensing agreements, the Court finds these factors to be minor distinctions. The reasoning and authority expressed therein are most persuasive when applied to the case *subjudice.*

*Intermet Realty Partnership v. First Pennsylvania Bank, 26 B.R. 383, 388 (Bankr. E.D. Pa. 1983).*

**[\*\*15]** Other courts have chosen to apply *Trigg* in a Code setting. *See e.g., Moody and Jermoo's Inc. v. Amoco Oil Co., 734 F.2d 1200, 11 C.B.C.2d. 1, 11 B.C.D. 1310,* Bankr. L. Rep. para. 69,872 (7th Cir. 1984), *cert. den. 469 U.S. 982, 105 S. Ct. 386, 83 L.Ed 2d 321 (1984); In re P.I.N.E., Inc., 52 B.R. 463 (Bankr. W.D. Mich. 1985); cf. Jenkins v. Peet (In re Jenkins) 13 B.R. 721, 4 C.B.C.2d. 1425 (Bankr. D.C.Co. 1981), rev. and rem. 19 B.R. 105 (D. Colo. 1982)* (application of *Trigg* inappropriate when issue is extension of redemption period).

Debtor's attack on *Trigg* is similarly unpersuasive. *Trigg,* according to debtor, gives us the power to restrain cancellation of a contract in order to preserve a business. *In re Trigg, 630 F.2d 1370, 1373.* At best, this is dicta because the *Trigg* court held that since the debtors had waited until ". . . . *after* the lease had lapsed by their own terms . . . .," the leases could ***terminate*** under ordinary principles of contract law. *Id. at 1374.* Assuming, arguendo, that we do have the equitable powers to which the debtor alludes, neither *Trigg* nor debtor's analysis provides us with a rationale for applying those powers.

**[\*321]** *Trigg* **[\*\*16]** has been applied in this district. *In re Intermet Realty Partnership, 26 B.R. 383. Intermet* was a complaint to enjoin a bank from interfering with possession of debtor's real property. Debtor had signed installment sales agreements [12] calling for quarterly interest payments with a final date for the principal payment. *Id. at 385.* The agreements provided that a failure to make the principal payment would cause automatic termination. *Id.* Debtor filed its bankruptcy petition five days before the final payment date. *Id.* The court was called to determine whether Intermet retained an equitable possessory and contractual interest in the property. On the date of the petition, the court explained, debtor held an equitable interest in the property. *Id. at 387.* Finding that the agreement was an option, the court held that it expired when the final payment was missed, and that there was no interest that could be termed an "executory contract" for the debtor to assume. *Id. at 388.*

West Pine suggests, without significant analysis, that **[\*\*17]** *Intermet* cannot be precedent in the instant case because it involved an option contract. We disagree, because the attributes of option contracts are not such that they should influence our determination of when or whether a contract has terminated. Time is of the essence in option contracts. *In re Intermet Realty Partnership, 26 B.R. 383, 388; In re Roswog, 48 B.R. 689, 692 (Bankr. M.D. Pa. 1985),* this is the key characteristic [13] of option contracts relevant to an analysis of *when* an option contract terminates. Of course, time may also be of the essence in other types of contracts if it is so specified. *Bogojavlensky v. Logan, 124 A.2d 412, 415, 181 Pa. Super 312 (1956).* Debtor suggests that an option may automatically terminate. This does not prove that an option is the *only* type of agreement that can terminate automatically upon failure of performance. Both the *Intermet* "option" contract and the West Pine -- Tri County lease identify specific points in time at which they will terminate if payment is not forthcoming.

**[\*\*18]** DiRenzo distinguishes *Intermet* and the balance of Tri County's authority by arguing that:

---

[12] The original agreement had been signed by the bank as property owner and a third party, who later sold the property to Intermet.

[13] Consider the other identifying features of option contracts. According to one source, "the distinguishing characteristic of an option contract is that it imposes no binding obligation upon the person holding the option; . . . ." *17 AM. JUR. 2d Contracts § 32* pp. 370-71 (1964). The Restatement suggests that "an option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer. **RESTATEMENT (SECOND) OF CONTRACTS § 25** (1981). The offer itself must be irrevocable, and this irrevocability has been described as "the principal legal consequence of an option contract. *Id.,* Comment d.

. . . . the expiration of the lease or contract in question occurred due to the mere passage of time of the contractual term which had been set *prior* to the filing of the petition. In other words, the termination in those cases was not premature: the pre-petition contract or option term simply expired.

DiRenzo Brief at pp. 6-7. We see no reason to distinguish cases in which a specific term or performance date was set pre-petition from cases such as the instant in which the parties freely agreed [14] that certain performance (payment of royalties) would occur, absent which the lease would terminate. Indeed, a term was set in the lease, beginning in any month in which the minimum royalties were not paid and extending for two additional, consecutive months, at the expiration of which the lease would terminate if three monthly payments had been missed.

*Trigg* has not been limited to cases involving option contracts. [15] *See e.g.,* In re  [*322]  P.I.N.E., Inc.,  [**19]  52 B.R. 463, 465 (Bankr. W.D. Mich. 1985). [16]

Allowing Tri County to treat this lease as terminated would not create impermissible forfeiture. DiRenzo is correct that equity may abhor forfeiture, [17] but the overriding consideration is the sanctity of the agreement between the parties. As  [**20]  our district court noted,

> while under Pennsylvania law, a court will strive where possible to interpret a contract to avoid a forfeiture, when the parties to the contract have expressly provided therein what the effect of a default shall be, a court is not free to rewrite the contract.

Rhodes v. Superior Investigative Services, Inc., 437 F. Supp. 1012, 1017 (E.D. Pa. 1977).

Our conclusion would be the same even if we extended our analysis further to consider whether the enforcement of a forfeiture would impede the chapter 11 plan. *See e.g.,* In re Cordaro, 20 B.R. 814, 816 (Bankr. N.D. Fla. 1982). The West Pine plan was confirmed over two and a half years ago, and mining operations ceased over two  [**21]  years ago. [18] The plan as it exists now cannot be impeded because it is not being implemented.

---

[14] We realize that Tri County received its rights by assignment, but debtor was one of the original parties to the underlying lease.

[15] Tri County's reliance on In re Jenkins, 13 B.R. 721, is inappropriate. *Jenkins* was a request for injunctive relief to stop defendants from issuing deeds upon the expiration of a statutory redemption period. The *Jenkins* court noted "(a) substantial distinction must be drawn between the tolling of the statutory period of redemption and the stay of termination of a contract . . . . the termination of a right to redeem is an automatic feature of state law." Id. at 724. On appeal, the district court stated that reliance on *Trigg* in this redemption scenario was misplaced, and reversed and remanded the case. 19 B.R. 105, 110 (D. Colo. 1982).

[16] Although the *P.I.N.E.* Court cited the rule in *Trigg* as the basis for its analysis, it went on to analyze the specialized oil and gas language in the lease to determine whether termination had occurred. 52 B.R. 463, 465-68.

[17] Although none of the cases cited by DiRenzo apply Pennsylvania law, we accept the proposition that under *certain circumstances* equity may abhor forfeiture. *See e.g.,* Hotel Associates, Inc. v. Trustees of Central States (In re Hotel Associates), 3 B.R. 343, 345, 6 B.C.D. 160, Bankr. L. Dec. para. 67,597 (Bankr. E.D. Pa. 1980) (court must consider "practical realities" to determine ". . . . what is necessary, what is fair and what is workable").

[18] Aside from the fact that neither debtor nor any subcontractor is currently mining, we note that other provisions of the plan also lie fallow. The plan provides that the debtor is to amend its By-Laws to create a new three member board. See Supplemental Amendment, pp. 1-2. According to Dr. Douglas Colkitt, chief executive officer and shareholder of debtor, the new board was never created. N.T. July 28, 1986, p. 69. Section V of the plan provides that cash proceeds from mining shall be deposited in a special account known as a "Creditors' Fund," and that a disbursing agent shall disburse the funds every six months in accordance with the plan. *See* Plan, Section V, p. 7. Dr. Colkitt testified that West Pine operated for several months prior to the time in October, 1985 when operations ceased. N.T. July 28, 1985, p. 71. The resulting Creditors' Fund totalled approximately $ 30,000. *Id.* The funds have not been turned over to a disbursing agent, in spite of the fact that over two years have elapsed since their accrual. Id. at p. 72. Indeed, Dr. Colkitt testified that ". . . . the mechanism of setting up a disbursing agent and disbursement of those funds is yet to be established." *Id.*

**[\*\*22]** Assuming, arguendo, that the lease has terminated by its own terms, debtor suggests that it still retains an equitable interest in the property sufficient to invoke the automatic stay. Debtor cites a decision from this district for the proposition that "possession alone" creates "a scintilla of equitable interest" subject to the stay. Debtor's brief, p. 9, *citing Colonial Village Meat Market Leasing, Inc. v. Andorra Meat Market, Inc. (In re Andorra Meat Market), 7 B.R. 744, 746 (Bankr. E.D. Pa. 1980)*. We read *Andorra* differently. First, the premises had been destroyed by fire, *Id. at 745*, and thus Andorra could not have had physical possession of the premises. *See* Debtor's brief, p. 9 (*cf.* debtor's analysis that "possession alone" is sufficient). Second, although decisions from other districts have held that some vague "de facto" possession is sufficient to invoke the *§ 362(a)(3)* stay, the court noted that such an interest is ". . . . not to be equated with the concept of 'equity' found in *§ 362(d)(2)(A)*." *Id. at 746*. Lacking that equity, we might lift the stay if the property were *also* unnecessary for an effective reorganization. *11 U.S.C. §§ 362(d)(2)(A)* **[\*\*23]** and *(B)*. Unlike *Andorra,* in which the destroyed premises were obviously not necessary for the reorganization, access to the Tri County premises is key to the West Pine reorganization. We need not go that far in our analysis, however, because we find that West Pine lacks even a "scintilla" of equitable interest.

**[\*323]** It is undisputed that no actual mining has occurred on the premises since late October, 1985. The inspector from the Pennsylvania Department of Environmental Resources (PennDER) did note that Barren Coal Company was on the premises preparing to engage in exploration drilling on January 9, 1986, N.T. May 21, 1986, pp. 57-8, but that he never observed any actual mining. N.T. May 21, 1986, p. 77.

Most importantly, debtor's chief executive officer testified that the debtor does not have any mining equipment on the premises:

Q. But West Pine itself did not have any mining operation on the tract, Is that correct?  Since you took over West Pine.

A. West Pine did not operate the equipment on day-to-day operations. That's correct.

Q. *West Pine does not have any such equipment. Is that correct?*

A. *That's correct.*

N.T. July 28, 1986, pp. 37-38 (testimony of Dr. Colkitt) **[\*\*24]** (emphasis added).

Although the subcontractors may have had equipment on the premises, a close look at the nature of the equipment suggests that it should not be used to stake (so to speak) West Pine's claim. Dr. Colkitt noted that the major piece of equipment on the premises at the time operations ceased was the drag line, and that it was leased out for use on another site. N.T. July 28, 1986, pp. 55-56. The other equipment, according to Colkitt, was either at the site or stored near the site. *Id. at p. 56*. Szumlanski, the PennDER inspector, visited the site on May 20, 1986, and noted the equipment present. N.T. May 21, 1986, p. 76. He found a small dozer "evidently clearing a road so they could get the drag line out once they got it loaded on a flat bed." *Id.* Although he found a Bucyrus Erie Shovel, it had no engine and had not been moved since the inspector first visited the site in November of 1985. *Id. at 76-77, 55*. Thus, even the subcontractors have removed all operable equipment from the premises. We find that debtor lacks any equitable possessory interest sufficient to invoke the stay.

Although our equitable powers are extensive, *11 U.S.C. §§ 105, 108*, we will not invoke **[\*\*25]** them to revive this long dormant lease. We may not resort to equity where a lease has been validly terminated. *In re Crabb, 48 B.R. 165, 168, 12 C.B.C.2d 704, 707 (Bankr. D. Mass. 1985)*; *In re Intermet, 26 B.R. 383, 388* ("the filing of a petition for reorganization does not expand the rights of a debtor under an option agreement"). As one court explained:

The trustee contends, however, that we should consider the equities of the instant case, namely, that the property in question is important to the successful reorganization of the debtors, and thus deny the relief requested by the bank. Although such considerations are important in determining whether relief from the automatic stay should be granted, we conclude that they are irrelevant in determining whether the debtors have any interest in the property so that the protection of the automatic stay should apply.

*First Nat'l Bank of Louisville v. Fidelity American Mortgage Company, 19 B.R. 568, 573 (Bankr. E.D. Pa. 1982)*. The *Fidelity American* analysis is similarly appropriate in this post-petition termination case, because introducing equitable concerns in this equation might cause us to re-write the contract, a **[**26]** clearly impermissible result.

We reach the conclusion that our equitable powers should not be invoked after careful consideration of DiRenzo's vigorous argument that the "equities" in this case mandate a decision in its favor, because Pennsylvania Anthracite would then be able to mine and produce royalties. *See* DiRenzo brief, pp. 15-20. Numerous hurdles [19] would appear before Pennsylvania **[*324]** Anthracite could begin to mine. Our feelings about the respective equities in this case are well expressed in a quote (admittedly dicta) cited by Tri County:

> There must clearly come a point in time when the parties to a lease are entitled to a legitimate expectation of finality in connection with their business dealings. It is clearly inequitable to permit a debtor to attempt to cure and remedy a contractual obligation that has already expired. To permit a debtor to attempt to assert rights under an already expired lease by resort to the equitable provisions of the Bankruptcy Code would undermine confidence not only in the certitude of contracts, but in the judicial system itself.

*Marriot Corp. v. Chuck Wagon Bar-B-Que, Inc. (In re Chuck Wagon Bar-B-Que, Inc.), 7 B.R. 92, 95*, Bankr. L. **[**27]** Dec. para. 67,810 (Bankr. D.C. 1980). The bottom line, of course, is that we are unwilling to rewrite the lease.

**[**28]** An appropriate order is attached.

ORDER

AND NOW this 9th day of December, 1987, it is hereby ORDERED that the *§ 362* motion of Tri County Land & Coal Company is hereby GRANTED.

THOMAS M. TARDOWSKI, Bankruptcy Judge

---

**End of Document**

---

[19] First and foremost among these hurdles is that Pennsylvania Anthracite would have to obtain the consent of the landowner, Tri County, before PennDER would issue a permit. *See e.g.,* N.T. May 21, 1986, pp. 79-80, 120, 130, 140 (testimony of Gregory Szumlanski, surface mine conservation inspector, PennDER); N.T. July 28, 1986, p. 98 (testimony of Mr. Elwood F. Wirth, consulting engineer, Penn East Corporation, that landowner consent must be provided for an exploration permit). There is no guarantee that we would, upon proper motion, exercise our *§ 105(a)* power to force Tri County to provide the requisite consent. Assuming, arguendo, that we did, it would still take an additional six months until PennDER issued the permit. N.T. July 28, 1986, p. 104 (testimony of Mr. Elwood F. Wirth). We also have no assurances that West Pine would assume responsibility for those portions of the plan that it can implement itself even without the subcontractors: reconstitution of the board and creation of any appropriate disbursement systems. *Supra* n.15. West Pine's track record thus far is poor.