## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>U LOCK INC,<br><br>　　　　　　　Debtor.<br><br>CHRISTINE BIROS,<br><br>　　　　　　　Movant,<br><br>　　　　v.<br><br>GEORGE SNYDER,<br><br>　　　　　　　Respondent. | Bankruptcy No. 22-20823<br><br>Chapter 7<br><br>Related Doc. No.: |

### OBJECTION TO CLAIM NUMBER 5 FILED BY GEORGE SNYDER

Christine Biros, as creditor and party in interest in the above captioned chapter 7 bankruptcy case ("Biros"), by and through the undersigned counsel, files this *Objection to Claim Number 5 Filed by George Snyder* (the "Objection"), and in support thereof states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are section 502 of the Bankruptcy Code and Rules 3002 and 3007 of the Federal Rules of Bankruptcy Procedure ("FRBP").

3. Biros is a creditor and party-in-interest in this case and thus has standing to object to the claim pursuant to 11 U.S.C. § 502.

## BACKGROUND

4. U Lock Inc. ("Debtor" or "U Lock")'s case was commenced by the filing of an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on April 27, 2022 (the "Petition Date").

5. The Debtor did not file a response to the involuntary petition.

6. On June 17, 2022, the Court entered an Order for Relief.

7. George Snyder ("Snyder") and his brother Kash Snyder ("Kash") are the principals of the Debtor.

8. Robert H. Slone (the "Trustee") is the duly appointed Chapter 7 Trustee for the Debtor and is so acting.

9. On August 26, 2022, Snyder filed a proof of claim, claim number 5 on the claims docket, in the amount of $99,000.00 for "wage, fair labor standards" with no supporting documentation or other description (the "Wage Claim" or "Claim Number 5").

## CLAIM OBJECTION

10. 11 U.S.C. § 502 provides that a properly filed proof of claim is deemed allowed unless a party in interest objects. Various subsections of section 502 set forth the grounds for disallowing a claim, including section 502(b)(1), which authorizes disallowance because the claim is unenforceable under any agreement or applicable law.

11. Pursuant to 11 U.S.C. § 502(b)(1), in relevant part, if an objection to a claim is made, the court shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

12.     The burden of proof for claims filed pursuant to 11 U.S.C.S. § 502(a) is a shifting one and rests on different parties at different times. Under applicable law, the claimant must initially allege sufficient facts to support its claim and, upon meeting this standard of sufficiency, the claim is prima facie valid. Upon objection to the claim, the burden then shifts to the objecting party to produce evidence sufficient to negate the prima facie valid claim. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden then reverts back to the claimant. The claimant must then prove the validity of the claim by a preponderance of the evidence. *Benninger v. First Colony Life Ins. Co. (In re Benninger)*, 357 B.R. 337, 340 (Bankr. W.D. Pa. 2006).

13.     Snyder's Wage Claim is based on alleged wages due from the Debtor assumingly pursuant to the Fair Labor Standards Act, 28 U.S.C. §§201 to 209 (the "Fair Labor Act").  The Claim should be disallowed as not enforceable under applicable law against the Debtor for the reasons set forth herein.

14.     Snyder signed Official Form 202 Declaration Under Penalty of Perjury for Non-Individual Debtors indicating that as Director of the Debtor he has examined the information in the schedules and statement of financial affairs filed and believes it to be true and correct (the "Schedules"). *See*, Declaration, Doc. No. 66.

15.     Schedule D and E/F do not list Snyder as a creditor or having any claim, cause of action or otherwise against the Debtor.

16.     Additionally, Schedule G does not list any employment or other executory contract with Snyder.

17.     Nowhere in the Schedules is there any evidence of a debt owed to Snyder.  If Snyder had any such claim for wages from Debtor at the time he signed the Schedules under penalty of

perjury, he should and would have made it known. The fact that he did not disclose it confirms that he did not believe that he had any right to payment from the Debtor.

18. Moreover, Snyder is judicially estopped from making any such claim now by failure to disclose it in the Schedules and during the course of this case, including at the two 341 meeting of creditors.

19. Judicial estoppel is a discretionary doctrine recognized by the Third Circuit that prevents injury to the courts and the justice system by dismissing claims — regardless of their merit — when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts. The doctrine is applied only to avoid a miscarriage of justice and only when the party to be estopped (1) took a position during litigation that is irreconcilably inconsistent with his or her present position, (2) the party changed his or her position in bad faith, and (3) no lesser sanction would adequately remedy the damage done by the litigant's misconduct. The Third Circuit and district courts have invoked the doctrine to dismiss claims where plaintiffs who are in bankruptcy (or were in bankruptcy) failed to disclose to creditors pending or potential causes of action as contingent assets in bankruptcy filings. Judicial estoppel remains a fact-specific, equitable doctrine, applied at the courts' discretion. *Coles v. Carlini*, 2013 U.S. Dist. LEXIS 101873, *1

20. Snyder, as principal of the Debtor, has testified extensively that the Debtor has no employees.

21. In fact, both Snyder and Kash, the principals of the Debtor testified that the Debtor had no employees when the bankruptcy was filed and never had any. *See*, September 9, 2022 341 Transcript ("September 341 Transcript"), Page 15:3-13); Page 16:1-2; Page 29:5. A true and correct copy of the September 341 Transcript is attached hereto and incorporated herein as Exhibit "A'.

22. *See also*, 341 Transcript January 6, 2023 ("January 341 Transcript"), Page 8-9. A True and correct copy of the January 341 Transcript is attached hereto and included herein as Exhibit "B".

23. Additionally, on October 1, 2018, U Lock responded to Biros' initial discovery requests in an action filed in Westmoreland County against U Lock (the "Discovery Responses") when asked to identify all current and former employees of Debtor, that "it does not maintain employees and did not maintain employees in the past. U Lock operates through officers, volunteers, and contractors." A true and correct copy of the relevant redacted portion of the Discovery Responses are attached hereto and incorporated herein as Exhibit "B".

24. Additionally, Snyder testified at the September 341 when asked about why his Wage Claim wasn't listed on the Debtor's Schedules as follows: "The $99,000 was what Christine would owe me. We were -- Christine was in charge. She was the -- she was the silent partner, and things changed along the way and now this lawsuit came and as, as a result, any work I've done there over the past seven years I didn't get paid. So I never got any officer compensation or anything from her, so that those -- those stem from my wages, not -- not others." Exhibit A, Page 22:24-23:11.

25. This testimony reflects that Snyder did not believe the Debtor owed him any money for employment but rather believed he was owed money (or property) from Biros relating to their ongoing dispute over the real property from which the Debtor operated. Biros was not an officer or director of the Debtor and had no control over compensation or wages- officer or employee.

26. Snyder later testified during continued questioning on his Wage Claim at the September 341 that "well either her or U Lock owes me, you know, at least minimum wage, but she controlled the company." Exhibit A, Page 24:9-11.

27. Snyder's testimony to defend his Wage Claim is that he, Kash Snyder and Shanni Snyder all worked for the Debtor but did not receive any pay. Yet, Kash Snyder has not filed a claim nor was any claim listed for Kash Snyder on the Schedules. In fact, there are no employee claims listed on the Schedules (excluding Shanni Snyder's claim based on her fraudulent Default Judgment arising from alleged unpaid wages).

28. Likewise, Snyder signed the attached Declaration to the Trustee under penalty of perjury (the "Declaration") regarding employees and the nonissuance of any W2s or 1099s that there were no salaried employees and no 1099s were filed because any persons who did work did not receive cash compensation in excess of $550.00. A true and correct copy of the Declaration is attached hereto and incorporated herein as Exhibit "C".

29. In the Declaration, Snyder testifies as follows: "Our executive employees such as John Biros, Kash Snyder and myself, we did not take money for salary, all hoping to advance the company until Robert Biros interfered and made Christine Biros file suit. I understand we were due minimum wage for our work because even executives are entitled to that, but we did not pay it because the company had very little revenue." *See*, Exhibit C, ¶7.

30. However, Snyder is not entitled to minimum wage under the Fair Labor Act, even if Snyder could make a claim to be an employee as it is inapplicable here.

31. First, as set forth above, Snyder is not an employee of the Debtor as the Debtor had no employees and thus the Fair Labor Act would not apply.

32. Second, even assuming arguendo, Snyder was somehow able to establish he was an "employee," the Fair Labor Act provides in relevant part in Section 203(2) that any establishment that has as its **only regular employees the owner thereof** or the parent, spouse, child or other members of the immediate family of such owner **shall not be considered to be an**

**enterprise engaged in commerce or in the production of goods for commerce as part of such enterprise**.

33. To receive minimum wage under the Fair Labor Act, Section 206 requires minimum wage for every employer to pay to his employees who in any workweek is engaged in commerce or in the production of goods for commerce. 29 U.S.C. Section 206.

34. Accordingly, pursuant to the Fair Labor Act, Snyder would not be eligible to receive minimum wage under the Fair Labor Standards Act as he is the owner of the Debtor and thus the Debtor would not be considered to be an enterprise engaged in commerce or in the production of goods for commerce as part of such enterprise.

35. Snyder might try to claim that he was a contractor or contract worker for U Lock during the multiple years covered by his Wage Claim.

36. There is no assertion or evidence in any of the numerous pleadings and other filings under oath by Snyder or U Lock that would support any claim that there was a contract relationship between Snyder and U Lock for the providing of the services that Snyder claims to have provided.

37. There is no contract under applicable non-bankruptcy law. There is no bankruptcy law basis for a prepetition claim by Snyder as asserted in Claim Number 5.

38. Even if Snyder could maintain a claim against U Lock under the Fair Labor Act, the Claim is deficient on its face as there is no applicable time period or calculation provided to provide support for the Wage Claim. Accordingly, it is likely that the Wage Claim could not cover the time period requested, as the statute of limitations under the Fair Labor Act is two years and arguably this Wage Claim seeks more than seven (7) years of alleged wages in Claim Number 5. 28 U.S.C.S. §255(a).

39. "Under the Fair Labor Standards Act (FLSA), the applicable statute of limitations

is three years for a willful violation, two years otherwise. 29 U.S.C.S. 255(a). *Copley v. Evolution Well Servs. Operating, LLC,* No. 2:20-CV-1442-CCW, 2022 U.S. Dist. LEXIS 17266, at *1 (W.D. Pa. Jan. 31, 2022)

40. When an employer's actions are willful, the statute of limitations is extended to three years: "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. " 29 U.S.C. § 255(a). K*elly v. Eckerd Corp*., No. 03-4087, 2004 U.S. Dist. LEXIS 4381, at *4-5 (E.D. Pa. Mar. 10, 2004)

41. Even if Snyder were to allege the doctrine of equitable tolling, for the doctrine of equitable tolling to apply to the Fair Labor Act, a defendant's misleading conduct must induce a plaintiff to delay filing notice of her intent to sue. The doctrine is not applied, however, every time a defendant makes an incorrect or even misleading statement to the Plaintiff. Likewise, the Plaintiff has the burden of proving facts necessary to invoke the equitable tolling doctrine. *See, Kelly v. Eckerd Corp*. 2004 U.S. Dist. LEXIS 4381, at *4-5.

42. Additionally, as referenced in the Declaration, the Debtor had no money to pay any officer or owner claims. Snyder is a shareholder, director and officer of the Debtor and under Pennsylvania law, corporate directors owe fiduciary duties to the corporation and its shareholders. When the corporation is insolvent, the directors also owe fiduciary duties to the corporation's creditors. *Bruno v. Beacon Sales Acquisition, Inc. (In re Bruno),* 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016).

43. Snyder's Wage Claim then would be a breach of his fiduciary duties to the Debtor as he incurred his personal employment claim during a time that the Debtor was insolvent. Snyder, as a director and officer of the Debtor, would have known that the Debtor was insolvent yet allowed

the Debtor to continue to operate and incur his alleged wages, as well as a default judgment against the company (of which he was aware and did not defend) by his sister, Shanni Snyder.

44. Moreover, Claim Number 5 should be disallowed by this Honorable Court pursuant to 11 U.S.C. § 105.

45. The United States Supreme Court has recognized that by filing a claim against the bankruptcy estate, a creditor triggers the process of "allowance and disallowance of claims," thereby subjecting the creditor to the bankruptcy court's equitable power. *See*, *Langenkamp v. Culp,* 498 US 41, 44-45 (1990).

46. The bankruptcy court has the power to look behind and reduce claims based on judgments issued by other courts, both state and federal. *In Margolis v. Nazareth Fair Grounds*, 249 F.2d 221 (2nd Cir. 1957), the Second Circuit held that a bankruptcy court may inquire into the validity of any claim asserted against the bankrupt and may disallow it if it is found to be without lawful existence and the mere fact that a claim has been reduced to a judgment does not prevent such an inquiry. As the merger of a claim into a judgment does not change its nature so far as provability is concerned so the court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance. *Margolis v. Nazareth Fair Grounds,* 294 F.2d at *223-224 (internal citations omitted).

47. A claim should be rejected and disallowed when it has no basis in fact or law, is non-existent or illegal." *Diasonics, Inc. v. Ingalls*, 121 B.R. 626, 630 (Bankr. N.D. Fla. 1990) (citation omitted).

48. In *Benninger v. First Colony Life Ins. Co. (In re Benninger)*, 357 B.R. 337, 350-51 (Bankr. W.D. Pa. 2006), Judge Deller applied Supreme Court precedent to disallow claims in that case as the judgments confessed against the Debtor were unlawful, referencing *Pepper v.*

*Litton*, 308 U.S. 295, 301-303, 60 S. Ct. 238, 84 L. Ed. 281 (1939), where the United States Supreme Court allowed a debtor to challenge a state court judgment in bankruptcy court on the ground that a confessed judgment obtained by fraud was void *ab initio* for procedural reasons.

49. In *Benninger*, the objection to proofs of claim filed by the creditor were sustained and the claims disallowed for grounds including but not limited to the unclean hands of the creditor. Judge Deller acknowledged, "It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." *Benninger* at 350.

50. Additionally, the Court held that it also found "equally troubling" the fact that the underlying basis of the creditor's claims were "dubious at best." Thus, Judge Deller ruled that even if the claims had some basis, he would nonetheless disallow them under the clean hands doctrine and for public policy reasons. *Benninger* at 360.

51. It is clear from the face of Claim Number 5, the complete lack of support for the Wage Claim, including even a simple calculation of wages incurred, and the sworn testimony of the officers of the Debtor that they had no employees, the failure to schedule the Wage Claim or otherwise disclose it, despite being the Officer who prepared and signed the Schedules under penalty of perjury, the Wage Claim should also be denied for public policy reasons.

52. Finally, 11 U.S.C. §502(d) provides in relevant part that a court shall disallow any claim of any entity that is a transferee of a transfer avoidable under 11 U.S.C. §§547 or 548 unless such entity or transferee has paid the amount or turned over any such property.

53. At the September and January 341 hearings, Snyder testified that he received the proceeds from the sale of a 2021 Kubota. See Exhibit A Page 12:18-13:3; Exhibit B, Page 37:1-

13; Page 67:18.69:17. Snyder testified that the Kubota was sold in November 2021 and he paid himself back for an outstanding loan from the sale.

54. Biros believes and therefore avers, the Trustee will be filing a Complaint to Avoid and Recover the proceeds Snyder received from the Kubota pursuant to 11 U.S.C. § 547 and accordingly, the claim should also be disallowed pursuant to 11 U.S.C. § 502(d).

WHEREFORE, Christine Biros respectfully requests that this Honorable Court enter an order substantially in the form attached hereto granting this Objection and disallowing the Snyder Claim.

Dated: February 24, 2023

BERNSTEIN-BURKLEY, P.C.

By: /s/ Robert S. Bernstein
Robert S. Bernstein (PA ID No. 34308)
Lara S. Martin (PA ID No. 307272)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8100
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com
lmartin@bernsteinlaw.com

*Counsel for Christine Biros*