IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>U LOCK INC,<br><br>Debtor. | Bankruptcy No. 22-20823<br><br>Chapter 7 |
| CHRISTINE BIROS,<br><br>Movant,<br><br>v.<br><br>SHANNI SNYDER,<br><br>Respondent. | Related Doc. No.: |

**OBJECTION TO CLAIM NUMBER 1 FILED BY SHANNI SNYDER**

Christine Biros, as creditor and party in interest in the above captioned chapter 7 bankruptcy case ("Biros"), by and through the undersigned counsel, files this *Objection to Claim Number 1 Filed by Shanni Snyder* (the "Objection"), and in support thereof states as follows:

**JURISDICTION AND VENUE**

1.    The Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are section 502 of the Bankruptcy Code and Rules 3002 and 3007 of the Federal Rules of Bankruptcy Procedure ("FRBP").

3.    Biros is a creditor and party-in-interest in this case and thus has standing to object to the claim pursuant to 11 U.S.C. § 502.

## BACKGROUND

4. U Lock Inc. ("Debtor" or "U Lock")'s case was commenced by the filing of an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on April 27, 2022 (the "Petition Date").

5. Shanni Snyder ("Snyder") was the petitioning creditor and is the sister of the principals of U Lock.

6. Snyder's standing as a creditor eligible to file the case was purportedly based on debt owed by U Lock (the "Wage Claim") claimed in an action filed in the United States District Court for the Western District of Pennsylvania [Case No. 21-cv-00904] on July 14, 2021 (the "Shanni Snyder District Court Action") for an alleged failure of U Lock to pay wages to Snyder pursuant to the Fair Labor Standards Act, as codified, 29 U.S.C. § 201 to 209 (the "Fair Labor Act")[1].

7. The Debtor, controlled by brothers of Snyder, did not file a response to the involuntary petition.

8. On June 17, 2022, the Court entered an Order for Relief.

9. Robert H. Slone (the "Trustee") is the duly appointed Chapter 7 Trustee for the Debtor and is so acting.

10. Prior to the filing, the Debtor had been in possession of non-residential real property owned by Biros located at 14140 Route 30, North Huntington, Westmoreland County, PA with County Tax Map Number of 54-03019-0-103 (the "Property").

---

[1] In the Shanni Snyder District Court Action, Snyder alleged she should be paid $7.25/hour to be paid monthly for 70 hours per week from January 1, 2016 through February 15, 2020 for monitoring "video surveillance and cameras from 5 p.m. until 3 a.m. each day." Snyder demanded judgment in the amount of $131,351 ($108,079 in hourly wage and $23,272 overtime, prejudgment interest, post-judgment interest, costs, fees and attorney fees if Plaintiff retains counsel. On October 18, 2021, the Court entered a default judgment for Snyder in the amount of $131,351 plus costs in the amount of $402 and post-judgment interest.

11. As a result of the Involuntary filing and the assertion of the Wage Claim, Snyder's bankruptcy case in the Western District of Pennsylvania at bankruptcy number 18-21983 ("Snyder Bankruptcy Case") was reopened because of her failure to disclose the existence of the Wage Claim on her bankruptcy schedules.

12. Not only did Snyder fail to disclose the Wage Claim in the Snyder Bankruptcy Case, but she also prosecuted the action without any involvement of, or notice to, her trustee, Charles Zebley ("Zebley").

13. On May 27, 2022, Snyder filed a secured proof of claim, claim number 1, for the Default Judgment in the amount of $263,100 at 6% interest ("Claim Number 1"). Attached to Claim Number 1 is a notice of judgment against the Debtor.

14. On February 22, 2023, Biros filed a complaint against Shanni Snyder, George Snyder, J. Allen Roth, and Kash Snyder under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act and several state-law causes of action, claiming, among other things, that by way of the Shanni Snyder District Court Action and various other actions they took in an effort to take ownership of Biros' real property, they engaged or conspired to engage in a pattern of racketeering activity, slandered Biros' title in her property, committed common-law fraud, aided and abetted common-law fraud, and abused process.

## CLAIM OBJECTION

15. 11 U.S.C. § 502 provides that a properly filed proof of claim is deemed allowed unless a party in interest objects. Various subsections of section 502 set forth the grounds for disallowing a claim, including section 502(b)(1), which authorizes disallowance because the claim is unenforceable under any agreement or applicable law.

16. Pursuant to 11 U.S.C. § 502(b)(1), in relevant part, if an objection to a claim is made, the court shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

17. The burden of proof for claims filed pursuant to 11 U.S.C.S. § 502(a) is a shifting one and rests on different parties at different times. Under applicable law, the claimant must initially allege sufficient facts to support its claim and, upon meeting this standard of sufficiency, the claim is prima facie valid. Upon objection to the claim, the burden then shifts to the objecting party to produce evidence sufficient to negate the prima facie valid claim. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden then reverts back to the claimant. The claimant must then prove the validity of the claim by a preponderance of the evidence. *Benninger v. First Colony Life Ins. Co. (In re Benninger),* 357 B.R. 337, 340 (Bankr. W.D. Pa. 2006)

18. Snyder's Wage Claim is based on alleged wages due from the Debtor from 2016 through 2020. The Claim should be disallowed as not enforceable under applicable law against the Debtor for the reasons set forth herein.

19. First, Snyder was not an employee of the Debtor and thus no claim for alleged wages can be maintained against the Debtor.

20. Snyder filed the Snyder Bankruptcy Case on May 15, 2018. Her Schedules and Statement of Financial Affairs [cumulatively, Doc. Nos. 1, 12, 28, 32] (the "Schedules") signed under penalty of perjury, indicate that Snyder had no employment. *See*, Schedule I, Doc. No 1, Debtor checked "not employed."

21. No employment or other reference to the Debtor is included in Snyder's Schedules despite her Claim which is based on wages incurred from 2016-2020. Likewise, nowhere in the Schedules does Snyder indicate any amounts owing from the Debtor, despite her listing of other potential causes of action and disputed debts.

22. Snyder did not disclose any claim for wages in her bankruptcy case. Upon filing a bankruptcy petition, debtors must fully disclose all of their interests and property rights in a manner which is adequate, honest, and offered in good faith. This includes a duty to disclose not only pending lawsuits, but any potential or likely causes of action unless they are hypothetical claims that are so tenuous as to be fanciful. *Sikirica v. Harber (In re Harber),* 553 B.R. 522, 525 (Bankr. W.D. Pa. 2016)

23. If Snyder had any such claim for wages from Debtor at the time she filed her bankruptcy case in 2018, she should and would have made it known. The fact that she did not disclose it supports the conclusion that she did not believe that she had any right to payment from U Lock.

24. Moreover, Snyder is judicially estopped from making any such claim now by failure to disclose it in her Schedules and during the course of the Snyder Bankruptcy Case, including at the 341 meeting of creditors.

25. Judicial estoppel is a discretionary doctrine recognized by the Third Circuit that prevents injury to the courts and the justice system by dismissing claims — regardless of their merit — when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts. The doctrine is applied only to avoid a miscarriage of justice and only when the party to be estopped (1) took a position during litigation that is irreconcilably inconsistent with his or her present position, (2) the party changed his or her position in bad faith, and (3) no lesser sanction

would adequately remedy the damage done by the litigant's misconduct. The Third Circuit and district courts have invoked the doctrine to dismiss claims where plaintiffs who are in bankruptcy (or were in bankruptcy) failed to disclose to creditors pending or potential causes of action as contingent assets in bankruptcy filings. Judicial estoppel remains a fact-specific, equitable doctrine, applied at the courts' discretion. *Coles v. Carlini*, 2013 U.S. Dist. LEXIS 101873, *1

26. U Lock's principals (Snyder's brothers) have testified extensively that the U Lock has no employees. For example, at the trial on April 29, 2019 before Judge Smail, in the Court of Common Pleas of Westmoreland County, *Biros v. U Lock, Inc.,* Case No. 4886 of 2017 (the ("Westmoreland Action"), Kash Snyder testified regarding Snyder's involvement in the Debtor that she was not an employee:

> Q; What involvement did your sister have in all
> of this?
> A. Just like you said helping with the
> documents.
> Q. But she's not a shareholder, director,
> officer?
> A. Correct.
> Q. Is she like a friend of the court?
> A. No. She's a loved loved one, I guess, you know.
> Q. What's her background?
> What involvement did she have in the company?
> A. None in the company.
> Q. But she helped write pleadings including
> factual statements that were made?
> A. She may have.

A true and correct copy of the Trial Transcript is attached hereto and incorporated herein as Exhibit "A". Exhibit A, Page 74:11-75:7.

27. Additionally, on October 1, 2018, U Lock responded to Biros' initial discovery requests in the Westmoreland Action (the "Discovery Responses") when asked to identify all current and former employees of Debtor, that "it does not maintain employees and did not maintain employees in the past. U Lock operates through officers, volunteers, and contractors." A true and

correct copy of the relevant redacted portion of the Discovery Responses are attached hereto and incorporated herein as Exhibit "B".

28. Snyder was not an employee nor even a contractor of U Lock. Snyder has never presented nor has there ever been any evidence of a contract, oral or otherwise, between her and U Lock regarding any employment. To the contrary, Snyder's brothers have alleged that whatever work she did, if any, was out of "sisterly love." *See,* Exhibit A, Page 74:11; Page 75:7; Exhibit C, Page 64:1-4; Page 66:12-20; and Page 105:9-12.

29. Further, at the 341 meeting of creditors on September 9, 2022, and January 6, 2023, both principals of the Debtor, George Snyder and Kash Snyder testified that Snyder was not an employee of the Debtor.

30. In fact, the principals of the Debtor testified that the Debtor had no employees when the bankruptcy was filed and never had any. *See*, September 9, 2022 341 Transcript ("September 341 Transcript"), Page 15:3-13; Page 16:1-2. A true and correct copy of the September 341 Transcript is attached hereto and incorporated herein as Exhibit "C'.

31. *See also*, 341 Transcript January 6, 2023 ("January 341 Transcript"), Page 8-9. A True and correct copy of the January 341 Transcript is attached hereto and included herein as Exhibit D.

32. At the September 341, when George Snyder was asked to expound on the Default Judgment against the Debtor, George Snyder testified as follows: "At the time we didn't really consider her an employee." *See*, Exhibit C, September 341 Transcript, Page 21:1-10. *See also*, Page 27:14-21; Page 47:25-48:1-2; and Page 65:20-25 (Debtor had no employees).

33. Likewise, in a recent Declaration of George Snyder attached hereto and incorporated herein as Exhibit "E", George Snyder specifically states that the Debtor only had

persons who worked for the Debtor from 2015 through 2022 that did not receive cash compensation in excess of $550 (and thus no 1099s were filed). "The cash payments under $550 per year were people who helped with the landscape, construction, maintenance, painting, electrical, errands." *See*. Exhibit E.

34. Additionally, George advised that "People who helped out, and whatnot, and people like Shanni Snyder who helped with security and cameras, were not salaried employees receiving cash." Exhibit E.

35. Accordingly, it is clear that Snyder was not an employee or a contractor, and whether or not she did perform services for the Debtor, she was never to be paid any wages or monetary compensation for same.

36. The Wage Claim is not enforceable under the Fair Labor Standards Act, 29 U.S.C. §§201 to 209, even the alleged facts were true.

37. First, as set forth above, Snyder is not an employee of the Debtor as the Debtor had no employees and thus the Fair Labor Act would not apply.

38. Second, even assuming arguendo, Snyder was somehow able to establish she was an "employee," the Fair Labor Act provides in relevant part in Section 203(2) that any establishment that has as its **only regular employees the owner thereof or the parent, spouse, child or other members of the immediate family of such owner shall not be considered to be an enterprise engaged in commerce or in the production of goods for commerce as part of such enterprise**.

39. To receive minimum wage under the Fair Labor Act, Section 206 requires minimum wage for every employer to pay to his employees who in any workweek is engaged in commerce or in the production of goods for commerce. 29 U.S.C. Section 206.

40. Accordingly, pursuant to the Fair Labor Act, Snyder would not be eligible to receive minimum wage under the Fair Labor Act as she is the sister and immediate family member of the owners of the Debtor and thus the Debtor would not be considered to be an enterprise engaged in commerce or in the production of goods for commerce as part of such enterprise.

41. Accordingly, the Default Judgment upon which the Claim is based is void as Debtor did not violate the Fair Labor Act as alleged in Snyder's complaint in the Shanni Snyder District Court Action.

42. Even if Snyder could maintain a claim against U Lock under the Fair Labor Act, it could not cover the time period requested, as the statute of limitations under the Fair Labor Act is two years and Snyder seeks more than four (4) years of alleged wages in the Claim and in Claim Number 1. See, 28 U.S.C.S. §255(a).

43. "Under the Fair Labor Standards Act (FLSA), the applicable statute of limitations is three years for a willful violation, two years otherwise." 29 U.S.C.S. 255(a). *Copley v. Evolution Well Servs. Operating, LLC,* 2022 U.S. Dist. LEXIS 17266, at *1 (W.D. Pa. Jan. 31, 2022)

44. When an employer's actions are willful, the statute of limitations is extended to three years: "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. " 29 U.S.C. § 255(a). K*elly v. Eckerd Corp*., 2004 U.S. Dist. LEXIS 4381, at *4-5 (E.D. Pa. Mar. 10, 2004)

45. Even if Snyder were to allege the doctrine of equitable tolling, for the doctrine of equitable tolling to apply to the Fair Labor Act, a defendant's misleading conduct must induce a plaintiff to delay filing notice of her intent to sue. The doctrine is not applied, however, every time a defendant makes an incorrect or even misleading statement to the Plaintiff. Likewise, the

Plaintiff has the burden of proving facts necessary to invoke the equitable tolling doctrine. *See, Kelly v. Eckerd Corp.* 2004 U.S. Dist. LEXIS 4381, at *4-5.

46. Additionally, Snyder has conceded her Wage Claim is not secured as it was indicated to be secured in real estate but not in the tangible and intangible assets of U Lock. *See*, Stipulation Between Chapter 7 Trustee, Charles O. Zebley, Jr., Chapter 7 Trustee Robert H. Slone, and Chapter 7 Debtor, Shanni Sue Snyder, Doc. No. 228.

47. Attached to Claim Number 1 is the Default Judgment. Both Snyder and the Court have now recognized Snyder has no lien against the Debtor. Thus, the existence of a lien cannot be a basis for Claim Number 1 and it should fail.

48. Notwithstanding the Shanni Snyder District Court Action asserting only rights under the Fair Labor Act, Snyder might try to claim that she was a contractor or contract worker for U Lock during the multiple years covered by her Wage Claim.

49. There is no assertion or evidence in any of the numerous pleadings and other filings under oath by Snyder or U Lock that would support any claim that there was a contract relationship between Snyder and U Lock for the providing of the services that Snyder claims to have provided.

50. There is no contract under applicable non-bankruptcy law. There is no bankruptcy law basis for a prepetition claim by Snyder as asserted in Claim Number 1.

51. Moreover, assuming arguendo, Snyder did perform work for the Debtor, the Wage Claim and Claim Number 1 is based on Snyder's allegations that she worked for the Debtor for ten hours a day, overnight, and more than four years straight without any pay or days off on weekends or otherwise[2].

---

[2] There is no explanation as to why Snyder waited more than four (4) years without receiving a penny from the Debtor to file the Shanni Snyder District Court Action. Snyder never made any claim to alleged wages until she filed the Shanni Snyder District Court Action. In fact, the timing of the filing of the Shanni Snyder District Court Action is suspect, as it was filed only six (6) weeks following the Pennsylvania Superior Court's decision to affirm a

52. While this claim for hours worked is utterly incredible in itself, it is also unclear how Snyder monitored or did surveillance for the cameras. George Snyder testified at the September 341 meeting that the camera system was closed-circuit and there was no wi-fi on the property. He then testified that he thought Snyder had her own camera system on the property. Accordingly, it is unclear whether and how Snyder actually monitored the camera(s) and if so, if it was done at the request of the Debtor (if done at all). *See* Exhibit C, Page 78-81.

53. Finally, Claim Number 1 should be disallowed by this Honorable Court pursuant to 11 U.S.C. § 105.

54. The United States Supreme Court has recognized that by filing a claim against the bankruptcy estate, a creditor triggers the process of "allowance and disallowance of claims," thereby subjecting the creditor to the bankruptcy court's equitable power. *See*, *Langenkamp v. Culp,* 498 US 41, 44-45 (1990).

55. The bankruptcy court has the power to look behind and reduce claims based on judgments issued by other courts, both state and federal. *In Margolis v. Nazareth Fair Grounds*, 249 F.2d 221 (2nd Cir. 1957), the Second Circuit held that a bankruptcy court may inquire into the validity of any claim asserted against the bankrupt and may disallow it if it is found to be without lawful existence and the mere fact that a claim has been reduced to a judgment does not prevent such an inquiry. As the merger of a claim into a judgment does not change its nature so far as provability is concerned so the court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance. *Margolis v. Nazareth Fair Grounds,* 294 F.2d at *223-224 (internal citations omitted).

---

holding of the Westmoreland County Court of Common Pleas which found that the Property is held in a constructive trust by Debtor for the benefit of Biros and has been held in such trust since 2015.

56. A claim should be rejected and disallowed when it has no basis in fact or law, is non-existent or illegal." *Diasonics, Inc. v. Ingalls*, 121 B.R. 626, 630 (Bankr. N.D. Fla. 1990) (citation omitted).

57. In *Benninger v. First Colony Life Ins. Co. (In re Benninger)*, 357 B.R. 337, 350-51 (Bankr. W.D. Pa. 2006), Judge Deller applied Supreme Court precedent to disallow claims in that case as the judgments confessed against the Debtor were unlawful, referencing *Pepper v. Litton*, 308 U.S. 295, 301-303, 60 S. Ct. 238, 84 L. Ed. 281 (1939), where the United States Supreme Court allowed a debtor to challenge a state court judgment in bankruptcy court on the ground that a confessed judgment obtained by fraud was void *ab initio* for procedural reasons.

58. In *Benninger*, the objection to proofs of claim filed by the creditor were sustained and the claims disallowed for grounds including but not limited to the unclean hands of the creditor. Judge Deller acknowledged, "It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." *Benninger* at 350.

59. Additionally, the Court held that it also found "equally troubling" the fact that the underlying basis of the creditor's claims were "dubious at best." Thus, Judge Deller ruled that even if the claims had some basis, he would nonetheless disallow them under the clean hands doctrine and for public policy reasons. *Benninger* at 360.

60. It is clear from the face of Claim Number 1, the suspicious timing of the filing of the Shanni Snyder District Court Action on which the basis for Claim Number 1 exists, the exorbitant number of hours claimed to have been worked, the sworn testimony of the officers of the Debtor that they had no employees and the subsequent reopening of this case on the basis of

this undisclosed asset for the purpose of initiating this Debtor's involuntary bankruptcy case, the Claim should also be denied for public policy reasons.

WHEREFORE, Christine Biros respectfully requests that this Honorable Court enter an order substantially in the form attached hereto granting this Objection and disallowing the Snyder Claim.

Dated: February 24, 2023    BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
Robert S. Bernstein (PA ID No. 34308)
Lara S. Martin (PA ID No. 307272)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8100
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com
lmartin@bernsteinlaw.com

*Counsel for Christine Biros*