**IN THE UNITED STATES BANKRUPTCY COUR**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br>U LOCK INC.,<br>       Debtor.<br><br>CHRISTINE BIROS,<br><br>            Movant,<br><br>            v.<br><br>ROBERT H. SLONE, Chapter 7 Trustee for the Estate of U LOCK, INC.,<br><br>           Respondent | Bankruptcy No. 22-20823-GLT<br><br>Chapter 7<br><br>Related Doc. No. 258, 277 |

**CONSENT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

NOW COMES, Christine Biros (the "Movant"), creditor and party-in-interest in the above captioned bankruptcy case, by and through her undersigned counsel, Bernstein-Burkley, P.C. and files this *Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Motion") and in support hereof states as follows:

**JURISDICTION AND VENUE**

1.    The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2.    Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief hereinafter requested are section 105 of the

United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## FACTUAL BACKGROUND

4. The Chapter 7 Trustee, Robert H. Slone, Esq, has entered into the Settlement Agreement referenced herein and asked that Biros' counsel file this Motion as a convenience to the Trustee and with his consent.

5. On April 27, 2022 (the "Petition Date"), an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against U LOCK Inc., (the "Debtor") in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") at case number 22-20823-GLT (the "Case").

6. The Debtor did not file a response to the involuntary petition.

7. On June 17, 2022, the Court entered an Order for Relief. [Docket No. 42]

8. On December 22, 2022, Biros filed her Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. §503(b)(1) [Doc. No. 258] (the "Motion for Administrative Expense").

9. On January 6, 2023, the Trustee filed his Response to the Motion for Administrative Expense (the "Response") acknowledging that an allowance of some amount is appropriate, but disputing the amount requested by Biros. *See*, Doc. No. 277.

10. On January 30, 2023, this Honorable Court entered an Order setting, *inter alia*, a deadline of March 1, 2023 for Biros to file a Renewed or Amended Motion for Administrative Expense Claim.

11. On August 25, 2022, Biros filed Claim Number 2 in the total amount of $20,642.53 ("Claim Number 2"), seeking payment of certain real estate taxes which the Debtor was ordered

to pay by the Supreme Court of Pennsylvania on the real property owned by Biros. Biros intends to amend the claim to include the postpetition taxes which the Debtor has also failed to pay.

12. On August 25, 2022, Biros filed Claim Number 3, seeking payment of prepetition rent in the total amount of $405,000.00 for the period of time from July 2015 through April 2022 ("Claim Number 3") when Debtor held and used Biros' real property.

13. On August 26, 2022, Biros filed Claim Number 4, seeking payment of unliquidated damages for the cost of environmental remediation ("Claim Number 4" together with Claim Number 1, Claim Number 2 and Claim Number 3, the "Claims") as a result of damage by the Debtor to Biros' real property during the period when Debtor had the use and occupancy of the real property.

14. On December 20, 2022, this Honorable Court entered an Order approving a sale of substantially all of the assets of the Debtor (the "Sale Order")[Doc. No. 254]

15. After the sale of substantially all the assets of the Debtor, Biros and the Trustee negotiated a comprehensive settlement to eliminate any disputes between them with respect to the Claims and the Motion for Administrative Expense (the "Biros Claims")

16. On February 27, 2023 Biros and the Trustee entered into the attached settlement agreement resolving the Biros Outstanding Disputes (the "Settlement Agreement").

**RELIEF REQUESTED**

17. By this Motion, the Movant seeks the entry of an order pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, substantially in the form attached hereto, approving the Settlement Agreement, and granting such other and further relief as this Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

18. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "the court may issue any order . . . necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). In addition, Federal Rule of Bankruptcy Procedure 9019(a) provides that "on a motion by the trustee and after a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

19. In approving a proposed compromise or settlement, the Bankruptcy Court is required to make an "informed and independent judgment" as to whether the compromise or settlement is "fair and equitable," based on an:

> Educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

20. The Supreme Court has recognized "[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." Id.

21. Guided by *Protective Comm.,* the Third Circuit established four criteria that the Bankruptcy Court should consider when ruling on a motion to compromise: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of creditors. *Morane v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996); *see also Cameron & Mittleman v. Gibbons (In re RFE Indus., Inc.),* 283 F.3d 159 (3d Cir. 2002).

22. When reviewing settlements, the Bankruptcy Court is not required to decide the

numerous questions of law and fact raised by the parties. *See In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), cert. denied 464 U.S. 22 (1983); *Neshaminy Office Bldg. Assoc.,* 62 B.R. 798 (E.D. Pa. 1986). Rather, the Bankruptcy Court should canvass the issues and see if the settlement falls below the lowest point in the range of reasonableness. *Id.*

23. "[T]he decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997).

24. During the course of this Bankruptcy Case, there have been ongoing disputes *inter alia* regarding Biros' Claims. Now that the Sale Order has been entered, the Parties wish to resolve outstanding disputes to work toward the Trustee's resolution and closing of this case. A copy of the Settlement Agreement is attached hereto as Exhibit A.

## SETTLEMENT TERMS AND REQUESTED RELIEF

25. The significant terms of the Settlement Agreement are summarized as follows[1]:

   a. Biros has filed an Amended Motion for Administrative Expense, which the Trustee agrees should be allowed in the total amount of $18,000, which represents an allowance of $2,000 per month for the nine (9) month period of Debtor's possession.

   b. Biros has amended Claim Number 2, which Trustee agrees should be allowed as a priority claim pursuant to 11 U.S.C. 505(a)(8) in the amount of $27,701.59 as a result of pre-petition and post-petition real estate taxes incurred on the real property. No taxing body has filed a claim for the same taxes and Biros does not intend to recover on this claim if the same taxes are paid by the Estate to the taxing authority.

---

[1] Any capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement Agreement.

    a. Claim Number 3 shall be allowed as an unsecured nonpriority claim in the amount of $162,000[2] for prepetition the use and possession of the real Property and deprivation of Biros' possession.

    b. Claim Number 4 shall be allowed as an unsecured nonpriority claim in the compromised amount of $200,000 for the environmental remediation costs[3].

26. Biros, with the Trustee's consent, requests that this Court enter an Order approving the Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019(a).

27. "To minimize litigation and expedite the administration of the bankruptcy estate, [c]ompromises are favored in bankruptcy." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)) (internal quotation marks omitted).

28. A settlement must be "fair and equitable" and fall above the "lowest point in the range of reasonableness." *In re Capmark Financial Group, Inc.,* 438 B.R. 471, 515 (D. Del. 2010) (citing *In re: W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983)).

29. The court must ultimately determine whether the proposed settlement is "fair, reasonable and in the interest of the bankruptcy estate." *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998).

30. In determining whether a settlement is fair and reasonable, the court should consider the following factors identified by the Third Circuit in *Martin*: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation

---

[2] Biros was determined to be the beneficial owner of the Property since July 2015 and accordingly, pursuant to Pennsylvania case law and the theory of quantum meruit, Biros is entitled to the fair rental value of the Property from July 2015 until the Petition Date. Biros has received a professional valuation for the monthly market rent for the Property at $7,000.00. The prepetition period was from July 2015 through April 2022 (81 months). Accordingly, eighty-one months of rent at $7,000.00 equals $567,000.00.

[3] Biros has received various estimates for the remediation clean-up costs on the Property ranging from $125,000 to $314,500.00. While the work has not yet been completed, Biros has agreed to the middle range of the estimates for purposes of valuing the remediation work.

involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *See id.* (citing *Martin*, 91 F.3d at 393).

31. Here, the Settlement Agreement is in the best interest of creditors.

32. The Motion for Administrative Expense asserted a claim for $144,000.00 pursuant to 11 U.S.C. §503(b)(1) for the use and occupancy of the Property for the eight months subsequent to the Petition Date. The Amended Motion outlines the bases for a claim of at least $63,000. The Settlement Agreement proposes to resolve the Motion for Administrative Expense for a claim in the reduced amount of $18,000.

33. This reduction is a significant compromise for Biros and a substantial benefit to the Estate. Biros' original Motion for Administrative Expense asserts the administrative expense claim based, in part, on the value of the subject property. Subsequent to the filing of the motion, Biros' obtained a broker's opinion that the current value of the Property is between $703,000 and $904,000. Based on the lower assessment value (and not the scheduled value of the Property), the expected return for the Property by a developer would be at least $6,952.00 per month.

34. Additionally, the parties have estimated that the Trustee would have spent $6,680 for the moving the equipment that was kept on the Property, in addition to the storage costs for the equipment that was moved which would have been between $500-$1,000.00 per month. Accordingly, even using a conservative estimate for the transportation costs of $6,680 and $750.00 per month for storage, the benefit to the estate for moving and storage for nine months alone (April 27-January 27) is $13,340.00.

35. Finally, Biros' also obtained an estimate of the fair rental value for the Property from a real estate appraisal firm showing the rental value at $7,000.00/month.

36. Biros' has a right to a claim for the deprivation of the possession of her Property as well as costs incurred and which possession was a benefit to the estate. Accordingly, a compromised claim for the use of the Property for the nine month period at $2,000.00 is in the best interests of creditors in not only limiting Biros' right to recovery but also a cessation of any litigation over the Claims.

37. Claim Number 2 asserts a claim for $20,642.53 pursuant to 11 U.S.C. §505(a)(8) for real estate taxes owed pursuant to Court Order. Biros will be amending the claim to include taxes incurred postpetition. The Debtor was ordered by the state court to pay the taxes and has not. The Settlement Agreement proposes to allow Claim Number 2 for a priority claim in the amount of $27,701.59 owed to the Westmoreland County Tax Claim Bureau. The Settlement resolves any possible dispute over the responsibility for the taxes and reduces the amount of expense the Estate will incur in such a dispute.

38. Claim Number 3 asserts a claim for $405,000.00 for the prepetition rent due for the Property for the period of time from July 2015 through April 2022 when Debtor held and used Biros' real property. Biros has or subsequent hereto will be filing an amended Claim Number 3 in the total amount of $567,000.00 for the prepetition rent based on the fair rental value of the Property.

39. The Settlement Agreement proposes to resolve Claim Number 3 for $162,000.00. As discussed in prior pleadings filed by Biros in this case, pursuant to the litigation in Westmoreland County, it was determined that Biros was the beneficial owner of the Property since 2015. Pursuant to Pennsylvania case law, Biros is entitled to a quantum meruit claim for the fair rental value of the Property from July 2015 until the Petition Date. Biros has received a professional valuation for the monthly market rent for the Property at $7,000.00. The prepetition

period was from July 2015 through April 2022 (81 months). Accordingly, eighty-one months of rent at $7,000.00 equals $567,000.00.

40. *Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of a benefit provided to a recipient. *Durstv. MilroyGeneralContracting, Inc., 52A.3d 357 (2012) citing Am.& Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 606Pa. 584,2A.3d 526, 532fn. 8 (2010) (citing Black's Law Dictionary(8 th ed. 2004))*. There are three elements to be satisfied in order to support a finding for unjust enrichment: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. (citations omitted). *Durst, at360*.

41. Further, where unjust enrichment is found, the law implies a contract which requires the defendant to pay to the plaintiff the value of the benefit conferred. *Durst, at 360, citing Schenckv. K.E. David, Ltd., 446 Pa.Super. 94,666A.2d327(1995)*. Although *Durst* applied to a situation in which plaintiff contractor sued homeowners for the value of improvements, it applies equally in this situation of a real estate rental. In *Milby v. Pote, 189A.3d1065(2018)*, a lessee occupied multiple spaces within a manufactured home park and refused to pay either rent or reimbursement for utilities which the lessee had enjoyed. The landlord/owner of the trailer park asserted a claim for rent payment based on *quantum meruit*. The trial court awarded the landlord a financial judgment based on the market value of the use of the lot. *Milby, at 1087*. The principles underlying the theory of *quantum meruit* are expressed in the Restatement, Restitution which states, "…a person who has been unjustly enriched at the expense of another is required to make restitution to the other". *Milby, at 1087, citing Zawada v. Pennsylvania Sys. Bd. of Adjustment,*

*Bhd. of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emp., 392Pa. 207,140A.2d 335,340(1958)(quoting Restatement, Restitution § 1).*

42. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, the focus is not on the intention of the parties but rather on whether the defendant has been unjustly enriched. *Schenck, at 97,328.*

43. There is no dispute that Debtor occupied the Property. In fact, this Honorable Court has specifically acknowledged Debtor's occupancy, both pre-petition and post-petition. Further, there is no question that Debtor benefitted from the occupancy of the Property by accepting rent from its various renters throughout this period. This has been acknowledged by the President of Debtor, George Snyder. Lastly, because Biros has been deprived of the use of her property since 2015, retention of this benefit without payment has been inequitable. With regard to the value of the benefit conferred, the question is not of value to the recipient, but rather the market value of the benefit conferred. *See e.g., Fleming Steel Co. v. Jacobs Engineering Group, Inc., 373 F.Supp. 3d 567, 606(USDC, WDPA, 2019); Milby, at 1087.*

44. In *Fleming Steel,* a manufacturer sued a contractor for unjust enrichment under Pennsylvania law in connection with an oral agreement. Fleming Steel, the plaintiff, claimed that it was entitled to reimbursement for the market value hourly rates Fleming Steel paid its engineers. The District Court held that Fleming Steel was entitled to present expert testimony as to the market value rates of its engineers. Consequently, the Court held that the issue was not whether Jacobs Engineering, the recipient of the services, could utilize the services or what the value of those services were to Jacobs Engineering, but rather what the market value was of Fleming Steel's engineering rates. *Fleming Steel, at 606.*

45. Accordingly, the agreement to reduce Claim Number 3 to $162,000.00 significantly benefits the estate and its creditors by reducing the most significant unsecured claim.

46. Claim Number 4 asserts a claim for unliquidated damages for the cost of environmental remediation as a result of damage by the Debtor to Biros' real property during the period when Debtor had the use and occupancy of the real property. The Settlement Agreement proposes to allow Claim Number 4 as an allowed unsecured claim for $200,000.00.

47. This claim, as well as the presence of substantial sources of hazardous waste on the site, has previously been discussed during this case. It is undisputed that a garbage truck caught fire when parked on the Debtor property between the Petition Date and the Order for Relief.

48. The report of American Geosciences, Inc. from January, 2020 as well as its Affidavit from May, 2022, layout the presence of hazardous waste on the property, for which the Debtor would have liability under Pennsylvania statutes. *See*, Claim Number 4. Under the Pennsylvania Hazardous Sites Cleanup Act, *35 P.S. §§6020.101 et seq.* ("HSCA"), both Debtor and principal George Snyder were responsible persons. Further, the HSCA authorizes Biros to seek contribution for the cost of remediation and cleanup.

49. In light of the bankruptcy, it is unlikely that any substantial cleanup activity will be undertaken directly by the Debtor, and therefore Biros will be obligated to undertake any cleanup. In order to obtain any contribution from the Estate, it is necessary to demonstrate that, if it was solvent, Debtor would have an obligation to either perform the remediation or contribute to the cost of remediation.

50. As described in the 2020 Report as well as the 2022 Affidavit, Hazardous Waste is present on the site and may have caused contamination of the soil and/or groundwater. The extent of this contamination is currently unknown. In the 2020 Report, a rough estimate of $414,500.00

was given for the cost of remediation of the site. In the interim, as part of the asset sale, various items were removed by Shanni Snyder or her representatives. The aggregate amount of the removed items in AGI's estimate was $100,000 thereby reducing AGI's estimate to $314,500. While this cost may not be currently valid, no environmental remediation is inexpensive.

51.    Biros has received various estimates for the cleanup. They range from a low of $125,000 to as much as $314,500. The work has not yet been completed.

52.    Biros has agreed to an allowed claim of $200,000 for the remediation costs.

53.    Continued litigation of the Biros' Claims would result in significantly more expense to the Debtor's estate and the settlement provides for a reasonable resolution of all outstanding claims by Biros against the Debtor's estate.

54.    The Settlement Agreement, by contrast, will relieve a burden on the estate by providing for a resolution for all of the outstanding matters and actions between the parties, and allow for the case to be administered and closed.

55.    Accordingly, the Agreement is fair and reasonable.

56.    The Parties submit that the proposed Settlement Agreement is fair and equitable, in the best interest of the Debtor's estate and creditors, and well within the range of reasonableness.

57.    Based on the foregoing, the Parties believe and therefore, aver that the <u>Martin</u> factors set forth above, weigh heavily in favor of approval of the Settlement Agreement.

WHEREFORE, Christine Biros, creditor and party-in-interest, and Robert H. Slone, Chapter 7 trustee of this Bankruptcy Case, respectfully request that this Honorable Court enter an order substantially in the form attached hereto (i) approving this Motion, and (ii) granting such other relief as this Court deems just and proper.

Dated: March 1, 2023

        Respectfully submitted by:

BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
Robert S. Bernstein (PA ID No. 34308)
Lara S. Martin (PA ID No. 307272)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8108
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com
lmartin@bernsteinlaw.com