FILED
3/17/2023 11:24 PM
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: U LOCK INC. a/k/a U-LOCK INC. | ) ) ) ) ) | Case. 22-20823-GLT |
| Debtor. | | |
| | | RE: Motion 344 |

## OBJECTIONS OF GEORGE SNYDER TO MOTION TO CONSENT FOR ALLOWANCE OF PAYMENT OF ADMINISTRATIVE EXPENSE

I am an officer of the debtor U Lock. I file this objection in my personal capacity and as a creditor even though the motion lists only the Trustee Robert Slone as the Respondent.

I will keep this as concise as I can. I am aware of the motion to settle which has a more reasonable figure of $2000, although even that is problematic since Ms. Biros is also seeking the property taxes and as this Court said, the property rent should be about $1500 considering that Ms. Biros possessed it along with U Lock and was able to do what she needed without much interruption.

### TIME OF PAYMENT

I do not think that Ms. Biros should be paid until other administrative expenses are paid. This would wipe out the estate. I will be filing some claims for salary at minimum wage, not much, but some.

### NO REPORT ATTACHED

As to the $7000 a month figure, I cannot have her report reviewed or challenged since she did not attach it. I understand the Rules say exhibits are to be filed 4 days before the hearing, but this is expert testimony and I cannot analyze it without reading it. I have no clue who did the report, what methods, comparables, or most importantly what disclosures Biros gave the evaluator.

I am going to assume, since I don't have the report, that the person who found the property worth the amount and the $7000 rent was not made aware of all of these

environmental damages to the property.  So the renter would have to clean that up, or Ms. Biros would, before it being worth that much.  This Court mentioned the condition of the property in its Show Cause, so certainly the person making the $7000 claim should have been given full disclosure.  Therefore, it'd be $7000 a month less impairments from environmental that came with the property.

### **ENVIRONMENTAL PROBLEMS REDUCE THE VALUE OF THE RENT**

Biros' motion for settlement explains that she still did not do any environmental rehabilitation since being given access and permission in June 2022.  This necessarily means that the property would have to be subject to a rent value with the environmental problems factored in.  As this Court knows, Big's Sanitation aside, most of the environmental issues, tires, etc. existed in 2015 when U Lock bought the property.  Biros has not identified what U Lock allegedly did, and Big's was just a small portion.

Also as Biros was constructing the whole time, moving dirt, any tenant could not enjoy $7000 worth of property. That would reduce the fair rental value.

I believe this Court pointed that out in its Memorandum, but Ms. Biros does not address it or reduce her rent.  While she did settle with the trustee for a lower amount, but regardless of if accepted, candor with the Court should require she present the full picture.  I believe the inflated valuation is meant to make it look like she's giving a bargain to the Trustee at $2000.

### **BIROS EXTENDED THE TIME NECESSARY TO OCCUPY U LOCK**

As this Court stated in its last Order, Biros may have prolonged the time of occupancy.  As the Court knows, the sale of assets Order was delayed because Ms. Biros.  Also she blocked the tenants and called the police on them.  As I told the Court in the last motion, she put this boulder in front of the tenants' door.

Ms. Biros took no responsibility at all in her motion.  She could have knocked off a

month or two without admitting wrongdoing.



### FROM JUNE, BIROS HAD CONTROL OF 90 PERCENT OF U LOCK

This is from my last opposition.  I repeat it as it still applies if she's asking for $7000 a month. U Lock is 20 acres.  The storage sheds occupy less than 10%.  As soon as this Court granted permission for Biros to "remediate," they started accepting boulders as part of a clean fill operation. They blocked the roads, they began accepting commercial fill.  They were repeatedly told not to by North Huntingdon Township, but they never stopped.  Finally around September 2022, after pressure from Mr. Otto, the Township appears to allow them but said no more boulders.  It is unclear if the Biros family received payment or what their terms of accepting the clean fill from Colony Holdings were, but usually people have to pay to get rid of the large boulders.  Accepting boulders from Colony Holdings without a permit so they can build an Auto Zone up the road isn't really remediation–and it definitely isn't something the Estate should pay rent for.[1]  In other words, Biros occupied the majority of the

---

[1] The Court should direct Ms. Biros to disclose all income she received from receiving the boulders and selling the scrap she took.  Perhaps Ms. Biros owes the Estate a portion of her gains.

property.

Certainly, Ms. Biros' possession of most of the property beginning in June reduces the amount she should receive – if she should receive anything – for the alleged rent.

Biros received the boulders then buried them. The purpose of these pictures is not to criticize the operation but to demonstrate who possessed the majority of the property.



*"REMEDIATING" BY RECEIVING BOULDERS FROM COLONY HOLDINGS WHICH IS BUILDING AN AUTOZONE NEARBY AND NEEDED TO BE RID OF THEIR WASTE ROCK.  TRUCKLOADS AND TRUCKLOADS CAME.  IT IS UNCLEAR IF BIROS RECEIVED PAYMENT FOR TAKING THE WASTE OR WAS DOING A FAVOR (BIROS AND COLONY HOLDINGS ARE JOINT VENTURERS IN OAK PARK ASSOCIATES INC.).*



*BE IT REMEDIATION, CLEAN FILL OPERATION, OR PLAYING IN THE DIRT, BUT IT IS NOT U LOCK POSSESSING THE PROPERTY. IT IS BIROS POSSESSING, BLOCKING U LOCK, AND NOW TRYING TO GET $18,000 A MONTH FOR DOING IT.*



*MORE BOULDER "REMEDIATION" – ALL PLACED BY BIROS.*



***U LOCK ONLY POSSESSED THE BUILDINGS. THE BOULDER FARM WAS ALL POSSESSED BY BIROS WITH ALL BOULDERS BROUGHT BY BIROS AND THEN BURIED.  (The Court saw the property after they buried most boulders).***

Regardless of the merits of Biros' remediation, the Court needs to calculate the percentage of occupancy by Biros and the percentage by U Lock.  As is clear, Biros' boulder farm and activities occupied the vast majority of the land.

Here is a map of the area in yellow that Biros took complete control over and "remediated" through clean fill and boulder burying, destroying any item in their way.  The purple is area that U Lock did not use for any reason and which they could have done whatever they wanted on.  The black squared buildings are the U Lock buildings.  The trees below the yellow areas were not used or possessed by U Lock and Biros had control over.



**TRUSTEE CEDED TOTAL CONTROL TO BIROS IN LATE OCTOBER**

This is also from my last opposition and I repeat it. Rent should stop in October when Biros put up the chain and blocked access. As I explained in my opposition to lift the stay, Biros took complete control of the property with the Trustee's blessing in October. I cannot access my personal belongings and tenants cannot access the property. This is because a chain blocks the entrance. They misquoted this Court's allowing them to implement security by asserting that they can block all persons with a chain and never open it. This is what they did.

> From my Opposition to the Stay:
>
>> As explained below, and in the attached police report and letter to tenants, Robert Slone, Trustee, ceded complete control of the property to Christine Biros.
>>
>> As this Court is aware, Biros placed a chain at U Lock and prevented access since late October 2022. Since that time, nobody has been able to access the property. The chain went up, the tenants and myself were blocked.
>>
>> When a tenant attempted to, the police were called and a trespass warning was given. Biros specifically told the police and tenant that they needed an Order allowing them access. Counsel for Biros, William Otto, went so far as to give the police this Court's hearing notes to imply the Order was ambiguous and that access did not need to be given.
>>
>> On November 21, 2022, apparently the Trustee sent letters to the tenants giving them nine (9) days to remove their items. However, nobody could access the items because the letter said they had to go through Christine Biros. I received the letter from a tenant who called me in late December 2022 saying he just got this letter. I told him I suppose he needed to call Mr. Otto since that is what the letter says. I don't know if he called Mr. Otto or not. The Trustee should be handling access, not Mr. Otto, but the letter says Mr. Otto is in control. As shown by the police report, Mr. Otto's procedures aren't exactly tenant friendly.
>>
>> The problem is that you cannot simply send a letter to tenants saying on November 21 they have until November 30 to obtain their property. There's a Pennsylvania law called the Self Storage Facility Act that requires notification and publication. I don't think that the Trustee had a lien because the law says for a lien to be enforced, it needed to be within the contract. Regardless, mailing a letter regular mail to out of state and foreign people on November 21 saying the deadline is November 30, but the tenants are blocked by a chain, and have to call Mr. Otto does not appear to be a good procedure.

**CONCLUSION**

I do not think $7000 is a fair valuation considering the percentage U Lock possessed, the environmental damage, and the other conditions, and Ms. Biros' prolonging the time needed to wrap the matter up.

**DECLARATION**

I declare under the penalty for perjury that the foregoing is true and correct to the best of my knowledge, information, and belief (28 USC 1746).

**March 17, 2023.**

*[signature: George Snyder]*

George Snyder
Box 15
Irwin PA 15642
412-979-9999