3/17/2023 10:46 PM
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  U LOCK INC. a/k/a | ) | |
| U-LOCK INC. | ) | Case. 22-20823-GLT |
| | ) | |
| Debtor. | ) | |
| | ) | RE:  Motion 345 |

**OBJECTIONS OF GEORGE SNYDER TO CONSENT MOTION TO APPROVE
SETTLEMENT AGREEMENT**

I am an officer of the debtor U Lock.  I file this objection in my personal capacity and as a creditor even though the motion lists only the Trustee Robert Slone as the Respondent.

I have reviewed the Consent Motion and I have many concerns.

The first thing is that I did want to object to the claims filed by Christine Biros.  There has not been a deadline set to do that.  I was waiting to see how the dispute between Shanni Snyder and Ms. Biros turned out because how this Court rules would implicate a decision and address many of the things I am concerned above.

The second thing is, while I am not an attorney, I thought the Trustee was the one who usually files to approve his settlement and that in his motion he would explain why he acted in good faith and why it made business sense.  When I look at this motion, it seems like as from the start, it is Ms. Biros driving the car with the Trustee in the back seat.  I say that because the Trustee didn't even sign the motion or put his name on it.  It's only Ms. Biros arguing why it should be settled.  With respect to the settlement agreement, I assume the Trustee at least read it since he did sign it.  So I am a little concerned that maybe the Trustee just wants to get this case over with and give Ms. Biros everything there is to give.  So let me go point by point.

**The Administrative Expense Claim of $2,000 a Month Post-Bankruptcy**

I assume Ms. Biros started out with this as its the most reasonable.  I did object to her Motion for Administrative Expense Motion which should ask for $2,000, but does not.  It

asks for a lot more.  I assume that is to make this look like a compromise.  I am not sure why she didn't just ask for the $2,000 a month in the Motion for Administrative Expense and instead asks for $63,000 in that motion knowing what the Court explained to her before.  I will address the $63,000 in the other motion in case Your Honor doesn't resolve this by settlement.

I think the Court's estimate of $1,500 is more logical considering from the getgo, Your Honor gave her almost unfettered access to the property while she "remediated."  She prolonged the possession of the property by the Estate by doing funky things, hiding the assets, blocking the tenants with a 24 hour chain since October 2022, and calling the police on them when they tried to get their things.

But I have a real problem with the Court approving this considering Biros' attempt to double whammy by asking for 2022 property taxes to be paid for by U Lock as I explain below.  She can't have her rent and her taxes too.

### The Biros Tax Claim

Next the Trustee seeks to just give her a priority administrative claim for property taxes.  It is clear that he didn't investigate this at all because Ms. Biros completely mischaracterizes what happened in the Supreme Court of Pennsylvania.

 I cannot understand how Ms. Biros can seek rent for 2022 in addition to seek to make U Lock pay the property taxes.  The letter the Trustee signed says, "Since the Petition Date, another $6,201.87 has accrued."  So why does U Lock pay both rent and property taxes.  This is a continuation of Ms. Biros taking bits and pieces of decisions and twisting them into something else.  In addition, the Order they cite does not contemplate that U Lock would be sharing possession with Ms. Biros.

See the Pennsylvania Supreme Court entered that Order about the property taxes at the request of Ms. Biros who didn't tell the Court that she had the judge give her the deeds.

The Supreme Court thought that the Order delaying remission of the record was a continued

stay of the case so, at Ms. Biros request, which U Lock didn't oppose because it too didn't

know that Biros filed deeds.

The Supreme Court of Pa. denied review of the case on January 19, 2022. But they

don't return jurisdiction to the lower court because U Lock could seek reconsideration or

apply for a delay to go the United States Supreme Court.  Nobody knew that on  January 20,

2022, Mr. Otto's paralegal had a private communication with the Court of Common Pleas

Judge's law clerk resulting in that Order.

Under P.R.A.P. 1701(a) to continue the stay of the case, I had U Lock ask the state

Supreme Court to stay the remand of the record pending the time allowed to petition the

United States Supreme Court.  I attach a copy of the motion as Exhibit A.

Biros filed a request on Feb 15 2022 never telling the PA. Supreme Court she

obtained the deeds and filed them and she requested the stay be conditioned upon U Lock

paying the property taxes on the property.  I attach that as Exhibit B.  Biros said "Real estate

taxes have accrued on the Property, and taxes for the years 2019, 2020 and 2021 remain

unpaid. Real estate taxes in the amount of Nineteen Thousand Seven Hundred Seventy-Three

and 41/100 Dollars ($19,773.41) are currently owed on the Property."

Implying U Lock still owed the property, Biros wrote, "These are real estate taxes

which are owed by Petitioner to local taxing authorities, not to Respondent."  Biros said, "The

real estate taxes are a legitimate debt of Petitioner to third parties; in this case, local taxing

authorities. Failure of the Petitioner to make payment of these taxes could expose the Property

to tax sale, potentially harming either or both of Petitioner or Respondent."

So why didn't I have U Lock object?  Well I didn't know she transferred deeds. She

didn't mention she did in her motion.  I thought we owned the property and thus owed the

taxes.

On March 16, 2022, as collateral for the stay, the Supreme Court noted, "Additionally, in accordance with Pa.R.A.P. 2572(d), Petitioner is hereby instructed to pay all accrued and unpaid real estate taxes and to keep such taxes current during the pendency of its occupancy of the Property." I attach this document as well as C.

So I take issue with this because it is not owed to Ms. Biros.  It was owed by U Lock to the tax bureau because everyone thought it owned the property.   If the deeds filed January 26, 2022, which are subject to all liens, are valid at all considering the Rule 2572 stay, then that debt shift to Ms. Biros at that time.

Also Ms. Biros represented to the Supreme Court of Pennsylvania that the taxes are owed to the taxing authorities, not to Ms. Biros.  So how can she now claim she is the tax authority based on an Order she obtained from representing we owed the tax bureau (because U Lock owed the property). She should be estopped from now switching her position.

So I have to object to this claim #2 settlement which the Trustee did not even consider this history because he never asked anyone or cared.

**PREPETITION RENT CLAIM #3**

Ms. Biros got the Trustee to agree to give her $162,000 for pre-petition rent to the property.  She just amended her claim #3 for the pre-petition rent to a mind boggling $567,000.  To understand the absurdity of this, the Court really need to look at the language of the decisions below.  Ms. Biros keeps falsely stating that the Court found all the deeds to U Lock void.  It didn't.  In Ms. Biros' lawsuit, she never asked for any retroactive relief.  She asked that the 2015 deeds be declared void and that the Court declare the sale never to have occurred, and that it should be held that the Estates (Sellers) still own the property, and that they should sell it to her for the amount she loaned to U Lock.  But neither the state court nor

the Superior Court agreed with that.

Both the state court and the Superior Court stated that the 2018 deeds from the Estates to U Lock conveyed lawful ownership to the Company, but because we had no money to pay Biros back the $305,000 she loaned us, she should get the property in lieu of a money judgment.  I'll be specific.

The state judge wrote, "Even accounting for the void ab initio status of the original deeds, the … deeds, filed March 1, 2018, show legal title in the Subject Property belonging to U Lock, Inc."  He said "[t]he only equitable solution is the imposition of a constructive trust, and the present conveyance of the Subject Property to Plaintiff Christine Biros."  In its Order, the state court directed, "Legal title to the Subject Property shall be conveyed to Christine Biros by execution of the appropriate deeds, currently held in escrow."  This is from the case U Lock v. Biros, No. 4886 CJ 2017 on Aug. 22, 2019  Exhibit D.

Now I am not a scholar, but words like "present conveyance" and "shall be conveyed" and "by execution of the appropriate deeds" makes me think that it means something for the future.

Now U Lock appealed and the appellate court even made it more clear.  They said, "In summary, the record supports the following conclusions: 1)  Appellee paid for the Property on behalf of Appellant; 2)  Appellee expected repayment from Appellant; 3)  Appellant never repaid Appellee; 4)  Appellee had no adequate remedy at law because Appellant lacked resources, other than the Property, with which to compensate Appellee. There was no dispute that Appellee was entitled to repayment. Thus, the trial court faced a choice between imposing a constructive trust and awarding the Property to Appellee  or entering judgment for Appellant and trusting that the conclusion of this litigation would result in an influx of cash to Appellant with which it would, finally, repay its debt. The trial court chose the former, and

we conclude that it acted well within the appropriate bounds for a court sitting as fact finder."

That's found at 255 A.3d 489 (Pa. Super. 2021).   Exhibit E.

So I think that plainly means that instead of giving Ms. Biros a money judgment for $305,000, like a deed in lieu of foreclosure kind of thing without a Sheriff Sale, she just got the property.

So how would she be owed rent?

And even if that's a compromise, the amounts, how hard would it have been for the Trustee to just ask Your Honor this legal question?  It doesn't make good business sense to settle this legal issue because they are scared to ask the Court for a quick decision.

I believe the state courts gave her the property to compensate her for the $305,000 she loaned us.  They said it, we were unable to pay the loan.  They said it would be unjust for U Lock to keep the property without paying her, that I didn't disagree with, I just thought we should have had a chance to pay her.  But I don't think they wanted her to get the property and get $567,000 in rent, or even $162,000 in rent.

Finally Ms. Biros did ask the state judge to make us turn over the rents we collected to her.  She asked for an accounting.  He denied this part of her lawsuit.  She did not appeal this.  Now she files this claim for rent having lost the claim that we owed her for all our business activity.  Your Honor really has to read that decision thoroughly to see how she's trying to get something she already lost in a different context.

As a final point, Ms. Biros says the basis of her claim for rent is unjust enrichment.  But the basis of the court giving her the property was unjust enrichment.  How does she get paid twice for unjust enrichment.

Unjust enrichment is equity and this Court knows, and repeatedly stated, we didn't intend to run a self-storage there.  We (Biros, Kash, U Lock, and I) planned to develop it into a shopping center.  While the litigation occurred we just maintained a few customers to pay the bills.  It wasn't some enterprise to make a million dollars.  I couldn't build a McDonalds on the property because the litigation prevented that. I couldn't lease it or do much.  The property was stuck in limbo.  So we got no unjust enrichment.  We worked 7 years and received nothing.

**FOURTH CLAIM ENVIRONMENTAL DAMAGE**

Ms. Biros filed a proof of claim #4 for environmental damage.  That proof of claim didn't list an amount but included various environmental reports.

The trustee agreed to give her a claim for $200,000.  What's crazy about this is I don't think Ms. Biros has any plans to really remediate it.  I don't think the Department of Environmental Protection is making them do anything except bury the spots before they build.  In other words, they want a claim for work they won't even do.

Remember when this case first started.  They said it was an emergency, they needed on the property, they needed to remediate, there are PCBs, it's the end of the world.  They got permission to remediate and they just had their elderly father and their brother move dirt around (clean fill operation).   They had all this time to make a remediation plan, decide which contractor was the best, and rationalize it.  They didn't, they won't, it's fantasy, they will do whatever needs to be done with an excavator.

More troubling is they admit they received an offer of $125,000 to have a third party remediate it, yet the Trustee is making a "settlement" of $200,000.  Why?

Amazingly, they state that Shanni Snyder's removal of items from the property reduced the remediation costs of their high estimate by $100,000.  Did it reduce the low

estimate by 25% as well?  I think we all  know that Shanni Snyder didn't pay anything near $100,000 for the work she did.  This is how inflated, convoluted, and speculative the claim is.

But here's what's truly disturbing about the claim.

First, most of the so-called trash and clean up requirements came with the property. They can't point to what it is U Lock allegedly did.

Second, they keep talking about the Bigs Sanitation "accident."  I am not sure how U Lock would be liable for this.  If the garbage truck came and spilled PCBs, you call the garbage truck's insurance carrier.  The Trustee has a duty to do this.  He has a duty to seek indemnification from Bigs if he's going to agree to $200,000.  But if this was Your Honor's property, and some garbage truck from a huge waste hauling company dropped PCBs, wouldn't you do something to make them clean it?  An ordinary, prudent, intelligent person would simply call the Hauler's insurance company.  But they made no attempt.  In this Court's Order way back in June 2022, it lifted the stay and specifically put in the Order that they can make an insurance claim.  I know they are busy, but it's been a year.

How can the Trustee justify settling this without bothering to investigate the insurance or lodge a claim.   Because the garbage truck didn't even dump where they say the PCBs were.  The owner of Bigs is available he came to Court twice already to testify but nobody was interested.  The trustee just needs to call him.

So in conclusion we have cleanup that, *if* it was ever done would cost $125,000, but an allowed $200,000 claim, with no explanation as to what damage came with the property, what damage was caused by Big's, or what damage was caused by what.

If anything, Ms. Biros owes the Estate for what I did clean up over the years including thousands of tires that were on the property when U Lock bought it, removal of many things,

building of access roads, etc.

## **CONCLUSION**

Based on the above, I must object to the settlement. It's in bad faith, it defies logic, and I think the Trustee is just scared of litigating against Ms. Biros' legal team – and I understand that fear as sometimes I have to force myself to do what I think is the right thing. But it can't be good business judgment to rubber stamp these demands.  I guess tho at least he didn't sign the motion to settle.

March 17, 2023.

George Snyder
PO Box 15
Irwin PA  15642
412-979-9999

Received 2/2/2022 2:47:26 PM Supreme Court Western District

Filed 2/2/2022 2:47:26 PM Supreme Court Western District
259 WAL 2021

IN THE SUPREME COURT FOR THE COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| U LOCK INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 259 WAL 2021 |
| | ) | |
| CHRISTINE BIROS, | ) | |
| | ) | |
| Respondent. | ) | |

## APPLICATION PURSUANT TO Pa.R.A.P. 2572(c) TO STAY REMAND OF RECORD PENDING UNITED STATES SUPREME COURT REVIEW

U Lock Inc. ("U Lock Inc.") applies to this Court pursuant to Pa.R.A.P.

2572(c) to stay the remand of the record pending the filing of a Petition for Writ of

Certiorari with the United States Supreme Court.  This is necessary to address and

preserve the important Constitutional issue related to due process violations for

providing an unsecured creditor control of the Petition through an equitable trust.


Respectfully submitted,

*/s/ J. Allen Roth, Esq.*

_____

J. Allen Roth, Esq. (PA ID 30347)
805 S. Alexandria Street
Latrobe PA  15650
(724) 537-0939

ATTORNEY FOR APPLICANT
U LOCK INC.

EXHIBIT A

Received 2/15/2022 3:54:41 PM Supreme Court Western District

Filed 2/15/2022 3:54:00 PM Supreme Court Western District
259 WAL 2021

IN THE SUPREME COURT OF PENNSYLVANIA

No. 259 WAL 2021

CHRISTINE BIROS,
Plaintiff-Respondent,
vs.
U LOCK INC., a Pennsylvania corporation,
Defendant-Petitioner.

On Petition for Allowance of Appeal from the Judgment of the Superior Court at No. 1841 WDA 2019 Affirming the Judgment of the Court of Common Pleas of Westmoreland County, Pennsylvania, Civil Division, at 17CJ04886

ANSWER TO APPLICATION PURSUANT TO Pa.R.A.P. 2572(c) TO STAY REMAND OF RECORD PENDING UNITED STATES SUPREME COURT REVIEW AND APPLICATION FOR APPROPRIATE SECURITY

William E. Otto, Esq. (PA 32716)
P.O. Box 701
Murrysville, PA 15668
(724) 519-8778
weo@ottolawfirm.com
COUNSEL FOR RESPONDENT
CHRISTINE BIROS

EXHIBIT B

## **TABLE OF CITATIONS**

**Statutes:**

Pa.R.A.P 1733(a) ................................................................. 3

Pa.R.A.P 1733(b) ............................................................... 2

Pa.R.A.P 1734(a) ............................................................... 2

Pa.R.A.P. 2572(c) ...........................................................1, 2

Pa.R.A.P. 2572(d) ............................................................. 2

AND NOW, comes Respondent Christine Biros by and
through her counsel, William E. Otto, Esq., and files her <u>Answer
to Application Pursuant to Pa.R.A.P. 2572(c) to Stay Remand of
Record Pending United States Supreme Court Review</u> And
<u>Application For Appropriate Security</u> in the above-captioned case.

The underlying dispute in this case involves that certain real
estate situate at 14140 Route 30, North Huntingdon, PA 15642,
more specifically identified by Tax Map ID No. 54-03-10-0-103
(the "Property"). Petitioner has had possession and control of the
Property from July 16, 2015 and continues to occupy the Property
to this date.

Verdict in the trial court was rendered in favor of
Respondent Christine Biros, and Petitioner U Lock commenced the
appeal procedure. On January 19, 2022, the Pennsylvania
Supreme Court denied Petitioner's Petition for Allowance of
Appeal to the Pennsylvania Supreme Court. On February 2, 2022,
Petitioner filed an Application Pursuant to Pa.R.A.P. 2572(c) to
Stay Remand of Record Pending United States Supreme Court
Review.

Real estate taxes have accrued on the Property, and taxes for the years 2019, 2020 and 2021 remain unpaid. Real estate taxes in the amount of Nineteen Thousand Seven Hundred Seventy-Three and 41/100 Dollars ($19,773.41) are currently owed on the Property.   *See Exhibit "A".* These are real estate taxes which are owed by Petitioner to local taxing authorities, not to Respondent.

Pursuant to Pa.R.A.P. Rule 2572(d), appropriate security in an adequate amount may be required as a condition to the grant of a stay of remand. *Pa.R.A.P. Rule 2572(d).* The only definition of "appropriate security" in the Appellate Rules is contained in Chapter 17 of the Rules of Appellate Procedure, Effect of Appeals; Supersedeas and Stays. *Pa.R.A.P. Chapter 17.* Pa.R.A.P Rule 1734 describes the various forms of "appropriate security" which may be required of an appellant, but Rule 1734(a) also provides that those forms of security apply "...unless otherwise ordered pursuant to this chapter [17]." *Pa.R.A.P Rule 1734(a).*  Although not completely on point, Rule 1733(b) addresses situations involving real property, and provides for an amount of security,

2

"…at such sums only as will secure any damages for the use and detention of the property, interest, the costs of the matter and costs on appeal." *Pa.R.A.P Rule 1733(a).*

The real estate taxes are a legitimate debt of Petitioner to third parties; in this case, local taxing authorities. Failure of the Petitioner to make payment of these taxes could expose the Property to tax sale, potentially harming either or both of Petitioner or Respondent.

Based on Petitioner's failure to pay the real estate taxes on the Property, Respondent Christine Biros requests that as a condition for the grant of a stay as requested by Petitioner, Petitioner be required promptly to either (1) pay all accrued and unpaid real estate taxes and keep such taxes current during the pendency of Petitioner's occupancy of the Property; or (2) post appropriate security in an amount equal to 120% of such amount, to be made available to the real estate taxing authorities having jurisdiction over the Property.

The grant of such security is to provide payment of such real estate taxes which Petitioner should have been paying. Such

3

action will prevent the risk of the Property being exposed to tax sale prior to the full resolution of this case.

**WHEREFORE**, Respondent Christine Biros respectfully requests this Court to direct that as a condition to the grant of a stay of remand of the record, Petitioner U Lock, Inc. be required Petitioner be required to promptly either to (1) pay all accrued and unpaid real estate taxes and keep such taxes current during the pendency of Petitioner's occupancy of the Property; or (2) post appropriate security in an amount equal to 120% of such amount, to be made available to the real estate taxing authorities having jurisdiction over the Property.

Respectfully submitted,

/s/ William E. Otto
William E. Otto, Esq.
P.O. Box 701
Murrysville, PA 15668
(724) 519-8778
COUNSEL FOR RESPONDENT
CHRISTINE BIROS

4

## <u>CERTIFICATE OF COMPLIANCE WITH P.R.A.P. 127</u>

I certify that this filing complies with the provisions of the

*Case Records Public Access Policy of the Unified Judicial System*

*of Pennsylvania* that require filing confidential information and

documents differently than non-confidential information and

documents.

/s/ William E. Otto
William E. Otto, Esq.

EXHIBIT "A"

PROPERTY TAXES



Deputy Director
Director
724-830-3428

Linda Kushar
Deputy Director

Tim Andrews
Solicitor

Tax Claim Bureau
40 N. Pennsylvania Ave. Suite 109
Greensburg, PA 15601

Office Hours
Monday Through Friday
8:30 AM to 4:00 PM

DATE: 2/09/2022                    **REAL ESTATE TAX LIEN CERTIFICATE**                    PAGE    1

TIME: 14:04:05

> THIS DOCUMENT CERTIFIES THAT THE TAXES/COSTS DUE ON THE PROPERTY DESCRIBED BELOW,
> AS SHOWN BY THE RECORDS PROCESSED IN OUR OFFICE AS OF  2/09/22 ARE AS FOLLOWS.

******** DIST/CTL  54   9485 ********

```
BIROS CHRISTINE                      MAP NO    54 03 10 0 103
3001 JACKS RUN RD                    SITUS     14140 RT 30 E
MC KEESPORT PA 15131
                                     PROPERTY BLDGS PCL 2
                                     DESC   21.0976 AC
                                            SHANE PLAN
          N HUNTINGDON TWP                                       CERT MAIL-R/C 91101252
65650     NORWIN                     BOOK/PAGE0220   3085         CERT MAIL-SALE 91526920
                                     LAND USE C
STATUS  C                            ACREAGE      21.097
                                     VALUE       46,410  VALUE C&G     46,410
```

| DATE | CODE | DESCRIPTION | RECEIPT NO | TAX | PENALTY | INTEREST | CHARGES | PAYMENTS | BALANCE DUE | INT ADDED EACH MO |
|------|------|-------------|-----------|-----|---------|----------|---------|----------|-------------|-------------------|
| 1/30/18 | 200 | COU-N HUNTINGDON TWP | 974.15 | | 97.42 | 116.96 | 1188.53 | | | .00 |
| 1/30/18 | 300 | CBT-N HUNTINGDON TWP | 539.28 | | 53.93 | 64.64 | 657.85 | | | .00 |
| 1/30/18 | 400 | SCH-NORWIN | 3601.42 | | 360.14 | 432.16 | 4393.72 | | | .00 |
| | | | | | 2017 TAX TOTAL | | 6240.10 | | | |
| 1/30/18 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/05/18 | 205 | REMINDER COST | | | | | .80 | | | |
| 4/03/18 | 202 | POSTAGE RET & CLAIM | | | | | 5.45 | | | |
| 4/03/18 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 10/04/18 | 205 | REMINDER COST | | | | | .80 | | | |
| 5/07/19 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 5/07/19 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 5/07/19 | 207 | POSTAGE SALE NOTICE | | | | | 12.00 | | | |
| | | | | | 2017 FEE TOTAL | | 103.05 | | | |
| 5/28/19 | | PAYMENT RECEIVED: | 804461 | | | | | 6343.15- | | |
| | | | | | 2017 PAYMENT TOTAL | | 6343.15- | | | |
| | | | | 2017 YEAR TOTALS & BALANCE | | | 6343.15 | 6343.15- | .00 | |
| 1/22/19 | 200 | COU-N HUNTINGDON TWP | 974.15 | | 97.42 | 29.24 | 1100.81 | | | .00 |
| 1/22/19 | 300 | CBT-N HUNTINGDON TWP | 539.28 | | 53.93 | 16.16 | 609.37 | | | .00 |
| 1/22/19 | 400 | SCH-NORWIN | 3712.80 | | 371.28 | 387.88 | 4471.96 | | | .00 |
| | | | | | 2018 TAX TOTAL | | 6182.14 | | | |
| 1/22/19 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/28/19 | 205 | REMINDER COST | | | | | .85 | | | |
| 4/02/19 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 4/02/19 | 202 | POSTAGE RET & CLAIM | | | | | 5.65 | | | |
| 11/01/19 | 205 | REMINDER COST | | | | | .80 | | | |
| 6/05/20 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 6/05/20 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 6/05/20 | 207 | POSTAGE SALE NOTICE | | | | | 12.00 | | | |
| 7/08/20 | 209 | POSTING UPSET SALE | | | | | 65.00 | | | |
| 7/08/20 | 210 | ADVERTISING | | | | | 10.00 | | | |
| 8/14/20 | 220 | PROOF OF MAIL FEE | | | | | 2.00 | | | |
| | | | | | 2018 FEE TOTAL | | 180.30 | | | |
| 5/28/19 | | PAYMENT RECEIVED: | 804461 | | | | | 3656.85- | | |
| 9/09/20 | | PAYMENT RECEIVED: | 840566 | | | | | 2705.59- | | |
| | | | | | 2018 PAYMENT TOTAL | | 6362.44- | | | |

| DATE | CODE | DESCRIPTION | RECEIPT NO | TAX | PENALTY | INTEREST | CHARGES | PAYMENTS | BALANCE DUE | INT ADDED EACH MO |
|------|------|-------------|-----------|-----|---------|----------|---------|----------|-------------|-------------------|
| | | 2018 YEAR TOTALS & BALANCE | | | | | 6362.44 | 6362.44- | .00 | |
| 1/22/20 | 200 | COU-N HUNTINGDON TWP | 974.15 | | 97.42 | 182.75 | 1254.32 | | | 7.31 |
| 1/22/20 | 300 | CBT-N HUNTINGDON TWP | 539.28 | | 53.93 | 101.00 | 694.21 | | | 4.04 |
| 1/22/20 | 400 | SCH-NORWIN | 3824.18 | | 382.42 | 717.00 | 4923.60 | | | 28.68 |
| | | 2019 TAX TOTAL | | | | | 6872.13 | | | |
| 1/22/20 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/04/20 | 205 | REMINDER COST | | | | | .80 | | | |
| 5/14/20 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 5/14/20 | 202 | POSTAGE RET & CLAIM | | | | | 5.80 | | | |
| 5/17/21 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 5/17/21 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 5/17/21 | 207 | POSTAGE SALE NOTICE | | | | | 12.00 | | | |
| 7/01/21 | 209 | POSTING UPSET SALE | | | | | 65.00 | | | |
| 7/01/21 | 210 | ADVERTISING | | | | | 10.00 | | | |
| 8/17/21 | 220 | PROOF OF MAIL FEE | | | | | 2.00 | | | |
| | | 2019 FEE TOTAL | | | | | 179.60 | | | |
| | | 2019 YEAR TOTALS & BALANCE | | | | | 7051.73 | .00 | 7051.73 | 40.03 |
| | | ESTIMATED BALANCE DUE NEXT MONTH | | | | | | | 7091.76 | |
| 1/26/21 | 200 | COU-N HUNTINGDON TWP | 997.35 | | 99.74 | 97.24 | 1194.33 | | | 7.48 |
| 1/26/21 | 300 | CBT-N HUNTINGDON TWP | 542.53 | | 54.25 | 52.91 | 649.69 | | | 4.07 |
| 1/26/21 | 400 | SCH-NORWIN | 3935.57 | | 393.56 | 383.76 | 4712.89 | | | 29.52 |
| | | 2020 TAX TOTAL | | | | | 6556.91 | | | |
| 1/26/21 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/09/21 | 205 | REMINDER COST | | | | | .80 | | | |
| 4/13/21 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 4/14/21 | 202 | POSTAGE RET & CLAIM | | | | | 5.90 | | | |
| | | 2020 FEE TOTAL | | | | | 55.70 | | | |
| | | 2020 YEAR TOTALS & BALANCE | | | | | 6612.61 | .00 | 6612.61 | 41.07 |
| | | ESTIMATED BALANCE DUE NEXT MONTH | | | | | | | 6653.68 | |
| 1/19/22 | 200 | COU-N HUNTINGDON TWP | 997.35 | | 99.74 | 7.48 | 1104.57 | | | 7.48 |
| 1/19/22 | 300 | CBT-N HUNTINGDON TWP | 542.53 | | 54.25 | 4.07 | 600.85 | | | 4.07 |
| 1/19/22 | 400 | SCH-NORWIN | 3935.57 | | 393.56 | 29.52 | 4358.65 | | | 29.52 |
| | | 2021 TAX TOTAL | | | | | 6064.07 | | | |
| 1/19/22 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| | | 2021 FEE TOTAL | | | | | 45.00 | | | |
| | | 2021 YEAR TOTALS & BALANCE | | | | | 6109.07 | .00 | 6109.07 | 41.07 |
| | | ESTIMATED BALANCE DUE NEXT MONTH | | | | | | | 6150.14 | |
| | | CLAIM TOTALS | | | | | 32479.00 | 12705.59- | 19773.41 | 122.17 |
| | | ESTIMATED TOTAL DUE NEXT MONTH | | | | | | | 19895.58 | |

MISC RECEIPTS - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| 4/23/19 | 960 | LIEN CERTIFICATE | 801274 | | | | | | 15.00 | |
| 5/20/19 | 960 | LIEN CERTIFICATE | 803746 | | | | | | 15.00 | |
| 6/12/19 | 960 | LIEN CERTIFICATE | 806067 | | | | | | 15.00 | |

CREDIT CARD TRANSACTIONS - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | | |
|---|---|---|
| CHRISTINE BIROS, AN INDIVIDUAL, | : | No. 259 WAL 2021 |
| | : | |
| Respondent | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| U LOCK INC., A PENNSYLVANIA | : | |
| CORPORATION, | : | |
| | : | |
| Petitioner | : | |

**ORDER**

**PER CURIAM**

    **AND NOW**, this 16th day of March, 2022, the Application to Stay Remand of Record Pending United States Supreme Court Review is **GRANTED**.  Additionally, in accordance with Pa.R.A.P. 2572(d), Petitioner is hereby instructed to pay all accrued and unpaid real estate taxes and to keep such taxes current during the pendency of its occupancy of the Property.

EXHIBIT C

## IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA

**CHRISTINE BIROS,** an individual,

CASE NO. 4886 of 2017

Plaintiff,

vs.

**DENISE SCHUR,** Executrix of the **ESTATE OF ALEX SCHUR, HENRY L. MOORE and SUSAN STANO,** Co-Executors of the **ESTATE OF NICHOLAS SCHUR, KATHLEEN S. WALTER,** Executor of the **ESTATE OF MICHAEL SCHUR, CYNTHIA SARRIS,** Administrator of the **ESTATE OF ANN SARRIS** and **U LOCK INC.,** a Pennsylvania corporation,

Defendants.

**COMPLAINT IN CIVIL ACTION FOR DECLARATORY JUDGMENT AND EQUITABLE ACTION TO CONVEY TITLE, TO QUIET TITLE AND FOR AN ACCOUNTING**

**LIS PENDENS**

Filed on Behalf of Plaintiff:
Christine Biros

Counsel of Record

I hereby certify that the actual location of the parcel of real property is in the Township of North Huntingdon, County of Westmoreland, Commonwealth of Pennsylvania and known as Tax Map No. 54-03-10-0-103.

William E. Otto, Esq.
PA I.D. #32716
P.O. Box 701
Murrysville, PA 15668
office: (724) 519-8778

_William E. Otto, Esq., Counsel for Plaintiff_

PROTHONOTARY
CHRISTINA O'BRIEN
2017 OCT -4 PM 12: 39
WESTMORELAND COUNTY
PROTHONOTARY'S OFFICE
FILED IN

1

EXHIBIT D

## IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA

**CHRISTINE BIROS,** an individual,

        Plaintiff,

vs.

**DENISE SCHUR,** Executrix of the **ESTATE OF ALEX SCHUR, HENRY L. MOORE and SUSAN STANO,** Co-Executors of the **ESTATE OF NICHOLAS SCHUR, KATHLEEN S. WALTER,** Executor of the **ESTATE OF MICHAEL SCHUR, CYNTHIA SARRIS,** Administrator of the **ESTATE OF ANN SARRIS** and **U LOCK INC.,** a Pennsylvania corporation,

        Defendants.

CASE NO. 4886 of 2017

**COMPLAINT IN CIVIL ACTION FOR DECLARATORY JUDGMENT AND EQUITABLE ACTION TO CONVEY TITLE, TO QUIET TITLE AND FOR AN ACCOUNTING**

**LIS PENDENS**

### NOTICE TO DEFEND

**YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**LAWYER REFERRAL SERVICE
WESTMORELAND BAR ASSOCIATION
P.O. BOX 565
GREENSBURG, PA  15601
TELEPHONE: (724) 834-8490
HTTP://LRS.WESTBAR.ORG**

2

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

**CHRISTINE BIROS,** an individual,

        Plaintiff,

vs.

**DENISE SCHUR,** Executrix of the **ESTATE OF
ALEX SCHUR, HENRY L. MOORE and SUSAN
STANO,** Co-Executors of the **ESTATE OF
NICHOLAS SCHUR, KATHLEEN S. WALTER,**
Executor of the **ESTATE OF MICHAEL SCHUR,
CYNTHIA SARRIS,** Administrator of the **ESTATE
OF ANN SARRIS** and **U LOCK INC.,** a
Pennsylvania corporation,

        Defendants.

CASE NO. 4886 of 2017

**COMPLAINT IN CIVIL ACTION
FOR DECLARATORY
JUDGMENT AND EQUITABLE
ACTION TO CONVEY TITLE,
TO QUIET TITLE AND FOR AN
ACCOUNTING**

**LIS PENDENS**

## COMPLAINT IN CIVIL ACTION FOR DECLARATORY JUDGMENT AND EQUITABLE ACTION TO CONVEY TITLE, TO QUIET TITLE AND FOR AN ACCOUNTING

AND NOW comes Plaintiff Christine Biros, by and through her attorney, William E.

Otto, Esq., and files the herein Complaint in Civil Action for Declaratory Judgment and

Equitable Action to Convey Title, to Quiet Title and for an Accounting as follows:

1.      Plaintiff Christine Biros is an individual with a mailing address of 435 Millers

Lane, Plum, PA 15239.

2.      Defendant Denise Schur, Executrix of the Estate of Alex Schur, is an individual

with an address of 8700 Cleveland Road, Creston, OH 44217.

3.      Defendant Henry L. Moore, Co-Executor of the Estate of Nicholas Schur, is an

individual with a business address of 310 Keystone Commons, 35 West Pittsburgh Street,

Greensburg, PA 15601.

3

4.      Defendant Susan Stano, Co-Executor of the Estate of Nicholas Schur, is an individual with an address of 31856 Lake Drive, Avon Lake, OH 44012.

5.      Defendant Kathleen S. Walter, Executor of the Estate of Michael Schur, is an individual with an address of 3 Ridge Court, Saratoga Springs, NY 12866.

6.      Defendant Cynthia Sarris, Administrator of the Estate of Ann Sarris, is an individual with an address of 14249 Hiland Place, Irwin, PA 15642.

7.      Defendant U Lock Inc. ("U Lock") is a Pennsylvania corporation with a principal business address of 14140 Route 30, North Huntingdon, PA 15642.

8.      Defendant Denise Schur, Executrix of the Estate of Alex Schur, Defendants Henry L. Moore and Defendant Susan Stano, Co-Executors of the Estate of Nicholas Schur, Defendant Kathleen S. Walter, Executor of the Estate of Michael Schur and Defendant Cynthia Sarris, Administrator of the Estate of Ann Sarris (collectively, the "Owners") are the current owners of real property situate at 14140 Route 30, North Huntingdon, PA 15642 with a County Tax Map No. 54-03-10-0-103 (the "Property").

9.      On July 16, 2015 (the "Payment Date"), Plaintiff Christine Biros paid the sum of Three Hundred Nine Thousand Two Hundred Thirteen and 30/100 Dollars ($309,213.30) (the "Purchase Price") to Owners as consideration for the Property. Copies of such checks are attached hereto as Exhibit "A" and are incorporated herein.

10.     Plaintiff believes and therefore avers that on the Payment Date, four (4) deeds were delivered to Defendant U Lock (the "Deeds") by Defendant Owners.

11.     Plaintiff believes and therefore avers that each of the four (4) Deeds purported to transfer title to a different percentage interest in the Property to Defendant U Lock.

4

12.    Only one (1) of such Deeds has been recorded. A copy of such Deed is attached

hereto as Exhibit "B" and is incorporated herein.

13.    Defendant U Lock is a Pennsylvania corporation which was incorporated on

September 24, 2015. A certified copy of the Articles of Incorporation for U Lock Inc. are

attached hereto as Exhibit "C" and are incorporated herein.

14.    Defendant U Lock was not in existence on the Payment Date.

## COUNT I – DECLARATORY JUDGMENT

15.    The averments set forth above are incorporated as if fully set forth herein.

16.    Pursuant to Section 7533 of the Declaratory Judgments Act, 42 Pa C.S. § 7533,
"Any person interested under a deed…or other writings constituting a contract, or
whose rights, status or other legal relations are affected by a…contract,…may
have determined any question of construction or validity arising under the
instrument or contract,…and obtain a declaration of rights, status or other legal
relations thereunder." 42 Pa.C.S. § 7533.

17.    Plaintiff Christine Biros believes and therefore avers that on the Payment Date,

Defendant Owners delivered the four (4) Deeds to Defendant U Lock purporting to convey title

to the Property to Defendant U Lock.

18.    On the Payment Date, Defendant U Lock had not been incorporated and therefore

did not exist as a corporation.

19.    Pursuant to Pennsylvania case law, such Deeds are *void ab initio*, Africa, et al. v.

Trexler, 232 Pa. 493, 499, 81 A. 707 (Pa. 1911); Borough of Elizabeth v. Aim Sher Corporation,

316 Pa.Super. 97, 99, 462 A.2d 811, 812 (Pa.Super. 1983); Lester Associates v. Commonwealth

of Pennsylvania, 816 A.2d 394, 397, 399 (Pa. Commonwealth 2003).

20.    Since the Deeds purporting to convey title to Defendant U Lock dated the

Payment Date are *void ab initio*, no transfer of title has taken place.

5

21.     Pursuant to Pennsylvania law, Defendant Owners remain the owners in fee simple of the Property.

**WHEREFORE**, Plaintiff Christine Biros prays this Honorable Court enter an order in favor of Plaintiff Christine Biros as follows:

(i)     Declaring that any deeds conveying title to Defendant U Lock by Defendant Owners on the Payment Date are *void ab initio*;

(ii)    Declaring that Defendant Owners are still the owners in fee simple of the Property;

(iii)   Declaring that Plaintiff Christine Biros delivered the Purchase Price to Defendant Owners on the Payment Date;

(iv)    Declaring that Defendant Owners have received full consideration for the title to the Property; and

(v)     Declaring that Plaintiff Christine Biros is the equitable owner of the Property.

## COUNT II – EQUITABLE ACTION TO COMPEL CONVEYANCE OF TITLE

22.     The averments set forth above are incorporated as if fully set forth herein.

23.     Plaintiff Christine Biros paid Defendant Owners the Purchase Price for the Property on the Payment Date. See Exhibit "A".

24.     Defendant U Lock did not pay any portion of the Proceeds to Defendant Owners.

25.     Defendant U Lock has not paid any of the Proceeds to Plaintiff Christine Biros.

26.     Since Defendant Owners have received payment in full for the Property, Defendant Owners are obligated to convey title to a purchaser.

27.     Since Plaintiff Christine Biros paid the Proceeds to Defendant Owners, she is equitably entitled to receive legal, fee simple title to the Property from Defendant Owners.

28.     Since they have been paid in full, no harm will result to Defendant Owners by being compelled to convey title to the Property to Plaintiff Christine Biros.

29.     Since they have paid no consideration to either Plaintiff Christine Biros or Defendant Owners, no harm will result to Defendant U Lock if title is conveyed to Plaintiff Christine Biros.

**WHEREFORE**, Plaintiff Christine Biros prays this Honorable Court enter an order in favor of Plaintiff Christine Biros compelling Defendant Owners to convey fee simple title to the Property by deed to Plaintiff Christine Biros.

<u>**COUNT III – QUIET TITLE**</u>

30.     The averments set forth above are incorporated as if fully set forth herein.

31.     Plaintiff Christine Biros wishes to eliminate any cloud upon or doubt as to the true holder of title to the Property.

32.     Defendant U Lock has recorded one deed purporting to convey an Eighteen and 75/100 Percent (18.75%) interest in the Property from Kathleen S. Walter, Executrix of the Estate of Michael Schur, to U Lock Inc. A copy of such Deed is attached hereto as Exhibit "B".

33.     Since Defendant U Lock was not in existence on the date of such deed, such deed is *void ab initio*.

34.     Plaintiff believes and therefore avers that Defendant U Lock has three other deeds similarly purporting to convey title from Defendant Owners to Defendant U Lock.

35.     All such Deeds are *void ab initio*. <u>Africa, et al.;</u> <u>Borough of Elizabeth;</u> <u>Lester Associates.</u>

**WHEREFORE**, Plaintiff Christine Biros prays this Honorable Court enter an order in favor of Plaintiff Christine Biros as follows:

7

(i)      Declaring that certain deed conveying a portion of the Property to Defendant U

Lock from Kathleen S. Walter, Executrix of the Estate of Michael Schur, and recorded in the

Office of the Recorder of Deeds of Westmoreland County at Instrument No. 201704040010760

to be *void ab initio* and of no further force and effect;

(ii)     Declaring that any and all deeds executed by any one or all of Defendant Owners

purporting to convey title to Defendant U Lock on the Payment Date to be null and *void ab initio*

and of no further force and effect;

(iii)    Declaring that Plaintiff Christine Biros is entitled to the quiet, exclusive,

uninterrupted and peaceful possession and quiet enjoyment of the Property;

(iv)     Declaring that Defendant U Lock does not hold any property interest in the

Property, whether in trust or otherwise;

(v)      Quieting title to the Property in favor of Plaintiff Christine Biros and against

Defendant U Lock, its successors and assigns, in and to the Property and all persons claiming

under Defendant U Lock by reason of the Deeds, and that Defendant U Lock, its successors and

assigns, and any and all persons claiming under them have no estate, right, title, lien or interest in

or to said Property or any part thereof by reason of the Deeds or otherwise; and

(vi)     Awarding to Christine Biros from Defendant U Lock her attorney's fees, costs of

suit and such other relief which the Court deems just and proper.

## COUNT IV – ACCOUNTING

36.      The averments set forth above are incorporated as if fully set forth herein.

37.      Plaintiff Christine Biros believes and therefore avers that from and after the

Payment Date, Defendant U Lock has been in possession of the Property.

38.     Plaintiff Christine Biros believes and therefore avers that from and after the

Payment Date, Defendant U Lock has been collecting rents from tenants and licensees of the

Property.

39.     Plaintiff Christine Biros believes and therefore avers that Defendant U Lock has

collected substantial sums from such tenants.

40.     Since Defendant U Lock has no legal or equitable ownership in the Property,

Defendant U Lock should account for all sums collected from tenants of the Property since the

Payment Date.

**WHEREFORE**, Plaintiff Christine Biros prays this Honorable Court enter an order in

favor of Plaintiff Christine Biros:

(i)     That Defendant U Lock shall within thirty (30) days deliver a rent roll of all

tenants of the Property from the Payment Date through a date set by the Court;

(ii)    That Defendant U Lock shall within thirty (30) days deliver a full accounting of

all sums collected from each tenant of the Property;

(iii)   That Defendant U Lock shall within thirty (30) days deliver all such sums into

escrow pending resolution of this case;

(iv)    That all sums collected thereafter by Defendant U Lock from the Property be

placed in escrow pending resolution of this case; and

(v)     Awarding to Christine Biros from Defendant U Lock her attorney's fees, costs of

suit and such other relief which the Court deems just and proper.

Respectfully submitted,

William E. Otto, Esq.
Attorney for Plaintiff

9

J-S43016-20

2021 PA Super 104

| CHRISTINE BIROS, AN INDIVIDUAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| U LOCK INC., A PENNSYLVANIA CORPORATION | |
| Appellant | No. 1841 WDA 2019 |

Appeal from the Judgment Entered January 6, 2020
In the Court of Common Pleas of Westmoreland County
Civil Division at No: 17 CJ 04886

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

OPINION BY STABILE, J.:                    **FILED: MAY 21, 2021**

Appellant, U Lock Inc., appeals from the January 6, 2020 judgment entered in favor of Appellee, Christine Biros.  We affirm.

The record reflects that, in 2014, Erik Martin agreed with the Estates of Nicholas Schur, Anne Sarris, Alex Schur, and Michael Schur (the "Estates") for the purchase of real property (the "Property") for $325,000.  The agreement of sale listed the buyer as Erik Martin, incorporator of ULock, Inc.  Martin failed to appear at the scheduled closing.  A subsequent closing was scheduled for July 16, 2015.  One day prior, on July 15, 2015, Appellant filed articles of incorporation.

EXHIBIT E

At the closing, Appellee appeared with four cashier's checks worth approximately $309,000.00 in total.[1]   In a brief, handwritten note which provided for repayment on terms to be set by August 16, 2015, Appellant agreed to treat the funds as a loan from Appellee.  Appellee testified that she made the loan at the behest of her brother, John Biros, and that she never intended the money to be an investment in Appellant and she did not intend to own shares in Appellant.  Kash Snyder signed the handwritten agreement on behalf of Appellant.  The parties ultimately never agreed to the terms of repayment, though Appellant does not dispute its outstanding debt to Appellee.

At the closing, Appellee remitted the funds directly to the Estates.  The Estates issued a settlement statement listing the buyer of the Property as ULock, Inc.  Kash Snyder signed the settlement statement as director of Appellant.  His brother George Snyder, also of Appellant, accepted delivery of the deeds (the "2015 Deeds").  George Snyder believed Appellee and John Biros would be partners in the business venture; he did not expect Appellee to request a repayment agreement on the day of the closing.

On July 17, 2015, the day following the closing, the Pennsylvania Secretary of State issued a letter rejecting Appellant's articles of incorporation because of an error in the docketing statement.  The letter provided that

---

[1]  The Estates had already received the remainder of the balance in hand money.

Appellant could retain the July 15, 2015 date of incorporation so long as it corrected the error within thirty days. Appellant failed to make a timely correction, but later refiled its articles of incorporation. The Secretary of State accepted the new articles of incorporation on September 4, 2015. On February 13, 2018, while this action was pending, the Estates issued new deeds to Appellant (the "2018 Deeds"). Appellant filed the 2018 Deeds with the recorder of deeds on March 1, 2018.[2]

On May 5, 2017, Appellee sent a letter to George Snyder designating the outstanding balance of the loan as $385,939 and demanding, among other things, repayment at 9% interest with a balloon payment of the outstanding balance by June 1, 2022. On October 4, 2017, Appellee filed a complaint against Appellant and the Estates alleging and seeking a declaratory judgment that the July 2015 Deeds were void *ab initio*, and alleging equitable causes of action to convey title, quiet title, and for an accounting. The Estates were later dismissed from the action with the agreement to place blank deeds to the Property in the court registry. Appellant filed an answer and new matter, followed by several amended answers in response to Appellee's preliminary objections.

On April 1, 2019, Appellee filed a praecipe to schedule trial. Trial commenced on April 29, 2019, and the trial court entered a declaration that

---

[2] According to Appellee's opening argument, the 2018 Deeds were "subject by the language of the deeds to *Lis Pendens*[.]" N.T. Trial, 4/29/19, at 16.

the 2015 Deeds were void *ab initio*.  The court also entered judgment favor of Appellee on her action to compel conveyance of title.  The court found that Appellant would be unjustly enriched by maintaining its ownership in the Property with no ability to repay Appellee the money she lent for its purchase. Thus, the court found that Appellant held the property in constructive trust, and it directed conveyance of the Property to Appellee.[3]

In its post-trial motions, Appellant argued that Appellant's declaratory judgment action as to the 2015 Deeds was moot, given the 2018 Deeds and the lack of any challenge as to their efficacy.  Appellant also argued that indispensable parties were absent, given Appellee's assertions:  (1) that the 2015 Deeds were void *ab initio,* and (2) that Appellant was not the valid owner of the Property.  Also, Appellant argued that Appellee did not plead constructive trust and unjust enrichment in her complaint and did not argue for it until the proposed conclusions of law she submitted at the conclusion of trial.  Appellant argued that Appellee's unsecured loan did not entitle her to any of the remedies the trial court granted, and that she had an adequate remedy at law.

The trial court conducted a hearing on the post-trial motions on November 8, 2019.  The trial court denied Appellant's post-trial motions by

---

[3]  The trial court also held that the quiet title action was moot, and that entry of an accounting was not appropriate in an action at equity.

order of December 9, 2019.  The verdict was reduced to judgment on January

6, 2020.  We now turn to the issues Appellant raises in this timely[4] appeal.

> On appeal from a non-jury trial, we are mindful of the following:
>
> Our appellate role in cases arising from non-jury trial verdicts is
> to determine whether the findings of the trial court are supported
> by competent evidence and whether the trial court committed
> error in any application of the law.  The findings of fact of the trial
> judge must be given the same weight and effect on appeal as the
> verdict of a jury.  We consider the evidence in a light most
> favorable to the verdict winner.  We will reverse the trial court
> only if its findings of fact are not supported by competent evidence
> in the record or if its findings are premised on an error of law.
> However, [where] the issue ... concerns a question of law, our
> scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a
> non-jury trial are not binding on an appellate court because it is
> the appellate court's duty to determine if the trial court correctly
> applied the law to the facts of the case.

***Stephan v. Waldron Elec. Heating & Cooling LLC***, 100 A.3d 660, 664–65

(Pa. Super. 2014)

The first three of Appellant's six assertions of error are related, and we

consider them together.

I.     Whether the court lacked jurisdiction to grant declaratory
       and equitable relief as to the moot issue regarding the [2015
       Deeds] considering the new [2018 Deeds]?

---

[4] Appellant filed its notice of appeal prematurely before the entry of judgment.
We will treat Appellant's premature appeal as one from the January 6, 2020
judgment and entertain jurisdiction.  ***See Johnston the Florist v. TEDCO
Constr. Corp.***, 657 A.2d 511, 514-15 (Pa. Super. 1995) (holding that this
Court will entertain an appeal where the notice of appeal predates the entry
of judgment).

II.     Whether the court lacked jurisdiction as a result of the
        failure to join indispensable parties?

III.    Whether the court erred by finding that filing mistake as to
        [Appellant's] corporation papers warranted finding deeds
        void *ab initio* and transferring property to an unsecured
        creditor? `

Appellant's Brief at 5.

As set forth above, Appellant filed its articles of incorporation the day

before the 2015 closing, but the Commonwealth Secretary of State rejected

them.  Appellant failed to cure the defect in time, and so its official date of

incorporation, September 4, 2015, postdates the transaction in which the

Estates transferred the Property to Appellant.  On that basis, Appellee asked

the trial court to declare the 2015 Deeds void *ab initio*, and the court did so.

Appellant argues that any defect in the 2015 Deeds was cured and rendered

moot when the Estates issued the 2018 Deeds.  Appellant also argues that

either 1) it was a *de facto* corporation pursuant to 15 Pa.C.S.A. § 504[5] on July

---

[5]  That section provides:

Where heretofore or hereafter any act has been or may be done
or any transfer or conveyance of any property has been or may
be made to or by any corporation created or intended to be
created under any statute supplied or repealed by this part, in
good faith, after the approval of the articles or application for a
charter or issuance of letters patent but without the actual
recording of the original papers with the endorsements thereon,
or a certified copy thereof, in the office of any recorder of deeds,
as provided in such statutes then in force, the acts, transfers and
conveyances shall nevertheless be deemed and taken to be valid
and effectual for all purposes, regardless of the omission to record

15, 2015, the date of transfer of the 2015 Deeds, or 2) Appellee failed to join indispensable parties—namely the officers, directors, and/or shareholders of the corporation to be.

"An issue before a court is rendered moot when a determination is sought in a matter which, when rendered, cannot have any practical effect on the existing controversy." ***Printed Image of York, Inc. v. Mifflin Press, Ltd.***, 133 A.3d 55, 59 (Pa. Super. 2016).  On consideration of the facts before us, we conclude that the efficacy of the 2015 Deeds can have no effect on the ultimate outcome of this case.  Appellant has not challenged the efficacy of the 2018 Deeds. Appellant cites no legal authority preventing the Estates from issuing the 2018 Deeds subject to *Lis Pendens*.  Furthermore, the trial court accepted the legitimacy of the 2018 Deeds:  "Even accounting for the *void ab initio* status of the [2015 Deeds], the corrective [2018 Deeds], show legal title in the [Property] belonging to U Lock, Inc.  Certainly, U Lock has had full possession and control of the [Property] since July 16, 2015 […]."  Trial Court Opinion, 8/23/19, at 5.  The 2018 Deeds did not prejudice Appellant's cause of action.  In some ways, they facilitated it.  Because of the 2018 Deeds, there

_____

the original papers with the endorsements thereon, or a certified copy thereof, as heretofore required by such statutes. Every such corporation shall be deemed and taken to have been incorporated on the date of approval of its articles or application for a charter or on the date of issuance of its letters patent, whichever event shall have last occurred.

15 Pa.C.S.A. § 504.

- 7 -

can be no dispute that Appellant is the proper party in interest, and therefore the trial court had jurisdiction over Appellant's action for conveyance of title. Likewise, we have no need to determine whether Appellant, as of the July 15, 2015 closing, met the definition of a *de facto* corporation. In short, the efficacy—or lack thereof—of the 2015 Deeds has no bearing on the relief the trial court ultimately ordered—imposing a constructive trust on the Property and ordering its conveyance to Appellee. Thus, we come to Appellant's fourth assertion of error, and the heart of the matter:

> IV.  Whether the court erred in granting judgment and transferring ownership of the [P]roperty through a constructive trust when: (a) No allegations, facts, or theories or demand for for [sic] establishing a constructive trust were contained in the complaint or at trial; (b) No setting of the terms and conditions of the loan occurred by the trial court; (c) Transferring the [P]roperty under a constructive trust created an unjust enrichment and windfall; (d) Ordinary causes of action and a money judgment would have resolved the controversy?

Appellant's Brief at 5.

The following law governs the imposition of a constructive trust:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment.

***Nagle v. Nagle***, 799 A.2d 812, 819 (Pa. Super. 2002) (citations omitted), ***appeal denied***, 820 A.2d 162 (Pa. 2003).

- 8 -

"There is thus no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; the test is whether or not unjust enrichment can thereby be avoided." ***Stauffer v. Stauffer***, 351 A.2d 236, 241 (Pa. 1976).  "This Court has repeatedly cited with approval the oft-quoted language of Justice (then Judge) Cardozo in ***Beatty v. Guggenheim Exploration Co.***, 122 N.E. 378, 380-81 (N.Y. 1919):

> A constructive trust is the formula through which the conscience of equity finds expression.  When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee … A court of equity in decreeing a constructive trust is bound by no unyielding formula.  The equity of the transaction must shape the measure of relief.

***Id.***  "To introduce the issue of a constructive trust a plaintiff must allege that the putative trustee had legal title to the property, and that were he to retain it, he would be unjustly enriched." ***Buchanan v. Brentwood Fed. Sav. and Loan Ass'n***, 320 A.2d 117, 127 (Pa. 1974).

Appellant argues that the trial court's imposition of a constructive trust must fail because Appellee did not specifically request the imposition of a constructive trust in her complaint.  We disagree.  In her complaint, Appellee alleges that she paid for the Property and that deeds were delivered to Appellant.  Complaint, 10/4/17, at ¶¶ 10-11.  In her cause of action for declaratory judgment, Appellee asked for a declaration that she was the equitable owner of the property.  ***Id.*** at ¶ 21(v).  Further, in her cause of action for equitable conveyance of title, Appellee alleged that she paid the

Estates for the Property, that Appellant paid no money toward the purchase of the Property, that Appellant never reimbursed Appellee for the payment, and that Appellee, therefore, was entitled to own the Property in fee simple. *Id.* at ¶¶ 22-29.  Thus, while the words "unjust enrichment" and "constructive trust" are absent from Appellee's complaint, she very clearly pled the elements of a constructive trust in accord with ***Buchanan***, and the parties litigated those elements at trial.[6]  Indeed, Appellant concedes that Appellee paid for the Property; that she deserves to be repaid; and that Appellant has not repaid her.

Further, the record supports the trial court's finding that Appellant lacks the financial wherewithal to repay Appellee, as evidenced in this exchange between Appellant's counsel and George Snyder:

> Q.    Do you agree that you still owe this money, or U Lock, or someone, owes this money to [Appellee]?
>
> A.    Yes, I do.
>
> Q.    Are you attempting to try and make arrangements to pay that back?
>
> A.    Well, yes.  We could at any time that the *Lis Pendens* – **the deed makes it difficult.**
>
> Q.    Okay.  Are you willing to attempt to get that money together to pay her?
>
> A.    Absolutely.

---

[6] ***See also***, ***Marion v. Bryn Mawr Tr. Co.***, ____ A.3d ____ (Pa. Super. 2021) (looking at the substance of a cause of action, rather than its title, to determine whether the plaintiff alleged a valid cause of action).

Q.    Do you have people that want to become involved in your corporation, after this lawsuit is over, that would give you money to be able to pay her off?

A.    A whole list of people are very interested.

N.T. Trial, 4/29/19, at 49 (emphasis added).  The trial court could reasonably find from the bolded portion of this passage that Appellant could not, without alienating the Property, repay Appellee.  At other times during trial, the trial court heard evidence that Appellant had limited resources, that it was not run in accordance with applicable corporate law, and that it had never filed a corporate tax return.[7]  From this, the trial court could reasonably reject George Snyder's self-serving testimony about his "whole list" of wiling investors waiting for this litigation to go away.

In summary, the record supports the following conclusions:  1) Appellee paid for the Property on behalf of Appellant; 2) Appellee expected repayment from Appellant; 3) Appellant never repaid Appellee; 4) Appellee had no adequate remedy at law because Appellant lacked resources, other than the Property, with which to compensate Appellee.  There was no dispute that Appellee was entitled to repayment.  Thus, the trial court faced a choice between imposing a constructive trust and awarding the Property to Appellee

---

[7]  George Snyder testified that Appellant never filed tax returns.  N.T. Trial, 8/29/19, at 52.    He was unsure whether Appellant ever issued stock certificates to its 800 shareholders, and Appellant never sent an Internal Revenue Service Form 1099 to any shareholder.  *Id.* at 51-52.  Appellant maintained no insurance on the Property.  *Id.* at 52.  George Snyder believed Appellant had corporate bylaws and minutes, but George Snyder was unable to produce them in discovery.  *Id.* at 54.

or entering judgment for Appellant and trusting that the conclusion of this litigation would result in an influx of cash to Appellant with which it would, finally, repay its debt. The trial court chose the former, and we conclude that it acted well within the appropriate bounds for a court sitting as fact finder.

That Appellant alleged causes of action for a declaratory judgment (including a declaration that she is the owner of the Property) and equitable conveyance of title, rather than for a constructive trust, does not alter our result. As we have explained, the relief the court imposed is in accord with the facts alleged in the complaint, the relief sought in the complaint, and the issues litigated at trial.

For all the foregoing reasons, we discern no error in the trial court's imposition of a constructive trust on the Property and its direction that ownership thereof be transferred to Appellee.

In its fifth assertion of error, Appellant claims the trial court erred in scheduling a "snap trial" before the completion of discovery, and in denying Appellant's motion to continue the trial. Appellant's Brief at 5. The trial court acknowledges that its decision to schedule the trial was not in accord with the Westmoreland County Rules of Civil Procedure. The court reasoned, however, that Appellant suffered no prejudice from its action. The trial court cited Rule 126 of the Pennsylvania Rules of Civil Procedure, which permits it to "disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. No. 126. In its brief, Appellant complains that it

was deprived of the opportunity to test Appellee's claims through discovery, but Appellant fails to specify any additional discovery it would have sought. Likewise, Appellant does not explain precisely how the scheduled order hampered its ability to defend itself in this case. For these reasons, Appellant is not entitled to relief on this issue.

In its sixth and final assertion of error, Appellant claims the trial court erred in sustaining Appellee's preliminary objection to scandalous and impertinent material set forth in Appellant's answer and new matter to Appellee's complaint. Appellant alleged that the funds Appellee used to pay for the property were derived from illicit gambling activity. Rule 1028(a)(2) permits a preliminary objection for "failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter[.]" Pa.R.C.P. No. 1028(a)(2). "In order to be scandalous or impertinent, 'the allegation must be immaterial and inappropriate to the proof of the cause of action.'" ***Breslin v. Mountain View Nursing Home, Inc.***, 171 A.3d 818, 822 (Pa. Super. 2017) (**quoting *Common Cause/Pennsylvania v. Commonwealth of Pennsylvania***, 710 A.2d 108 (Pa. Commw. 1998)). We will reverse an order sustaining a preliminary objection only if the trial court committed an error of law or abuse of discretion. ***Id.*** at 822.

The trial struck the allegation as immaterial and inappropriate to this case of action. We agree. Whatever the source of Appellee's funds, she pled and proved that she paid for the Property expecting repayment, and that

- 13 -

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA
CIVIL ACTION

CHRISTINE BIROS,               )
                                 )
            Plaintiff,     )
                                 )         No. 4886 of 2017
        v.                   )
                                 )
U LOCK, INC.,             )
                                 )
            Defendant.    )
                                 )

## NON-JURY TRIAL OPINION AND ORDER OF COURT

BY THE COURT:

     The Court held a non-jury trial on the record with regard to this action on April 29, 2019

pursuant to the April 3, 2019 Order of Court designating the matter for a one day non-jury trial.

The case and concerns the conveyance of a property located at 14140 Route 30, North Huntingdon,

Westmoreland County, Pennsylvania, with a County Tax Map Number of 54-03-10-0-103 ("the

Subject Property").  The initial complaint named Denise Schur as Executrix of the Estate of Alex

Schur, Henry L. Moore and Susan Stano as Co-Executors of the Estate of Nicholas Schur, Kathleen

S. Walter as Executrix of the Estate of Michael Schur, and Cynthia Sarris as Administrator of the

Estate of Ann Sarris as Defendants, as these named estates together were the full owners of the

Subject Property.  The Estate Defendants were released from the case upon their motion at the

commencement of trial in this matter, upon assurance that the Estates would issue corrective deeds

to the prevailing party in this matter, and noting that the Estates had no further interest in the

litigation.  Upon conclusion of trial, proposed findings of fact, conclusions of law and orders of

court, along with accompanying briefs were ordered by this Court, and the same have been duly

considered in rendering the within opinion.

## *FACTS*

An agreement for sale of the Subject Property was entered into by the Defendant Estates and Defendant U Lock, and the same was executed by Defendant U Lock on November 25, 2014 and the Defendant Estates on December 22, 2014. (Exhibit "A"). On July 16, 2015, the Subject Property was conveyed to Defendant U Lock. (Transcript of Trial p 18). Four checks were issued by Plaintiff Christine Biros to the former Defendant Estates in full compensation for their respective ownership interests in the Subject Property. (T.T. p. 19, 23, Exhibit "P1"). A handwritten agreement dated July 16, 2015 and signed by Kash Snyder as Director of U Lock, Inc. sets out in brief the terms of a loan agreement wherein Plaintiff Christine Biros lent the full sum of $325,316.00 to Defendant U Lock for the purchase of the Subject Property. (Exhibit "P5").

U Lock attempted to file Articles of Incorporation on July 15, 2015, but the application was returned by the Commonwealth of Pennsylvania Department of State by letter dated July 17, 2015 for insufficiency. (Exhibit "P2"). The letter indicating the applications rejection provided that the original date of incorporation could be retained, provided that a corrected application was provided to the Department of State within thirty days. (Exhibit "P2"). U Lock's Articles of Incorporation were filed on September 4, 2015 with the Commonwealth of Pennsylvania Department of State. (Exhibit "P3"). No evidence of existent corporate by-laws or minutes was submitted by U Lock, and U Lock admits that the subject property has been and remains uninsured. (T.T. p. 53-54). No tax returns have been filed relative to the property since July 2015. (T.T. p. 69). Corrective deeds naming the now-existent U Lock, Inc. as purchaser of the Subject Property were filed with the Westmoreland County Recorder of Deeds on March 1, 2018. (Exhibits "C," "D," "E," and "F").

It is undisputed that U Lock has remained in possession of the Subject Property exclusively since the transfer on July 16, 2015. Plaintiff has never received any reimbursement from U Lock or on behalf of U Lock, and this is admitted by defendant U Lock. (T.T. p. 32, 66). Defendant U

Lock has since July 16, 2015 received and continues to receive income via the commercial operation of the Subject Property.  (T.T. p. 61).

### ***DISCUSSION AND ANALYSIS***

<u>COUNT I – DECLARATORY JUDGMENT</u>

Count I of Plaintiff's Complaint requests a declaratory judgment declaring that: (1) the deeds entered into on July 16, 2015 are *void ab initio*; (2) the Defendant Estates remain the owners of the property in fee simple; (3) Christine Biros delivered the purchase price for the property on the date of payment; (4) the Defendant Estates have received full consideration for title to the property; and (5) that Plaintiff Christine Biros is the equitable owner of the property.  At the outset, the Court notes that the Defendant Estates have stipulated to the fact that they have received full consideration for title to the property.  The Defendant Estates have agreed to execute deeds in favor of the prevailing party to this suit, and so the Estates have been dismissed from the within action.

As to the question of the July 16, 2015 deeds alleged *void ab initio* status, Plaintiff claims that because the deeds were delivered to "U Lock, Inc.," and U Lock, Inc. was not incorporated until September 4, 2015, the deeds are void from their inception.  Defendant U Lock argues that U Lock, Inc. was operating as a *de facto* corporation at the time of the deed execution, and so the deeds were valid.

It is settled law in Pennsylvania that "[a] deed that purports to convey real estate to a nonexistent corporation has no effect." *Borough of Elizabeth v. Aim Sher Corp.*, 462 A.2d 811, 812 (Pa. Super. 1983) (citations omitted).  "Upon the filing of the articles of incorporation in the Department of State or upon the effective date specified in the articles of incorporation, whichever is later, the corporate existence shall begin." 15 Pa. C.S. § 1309.  In certain situations, a corporation may be considered to exist *de facto* despite the failure of the required process where "…after the approval of the articles or application for a charter or issuance of letters patent but without the

3

actual recording of the original papers with the endorsements thereon, or a certified copy thereof, in the office of any recorder of deeds…" the attempted corporation conducts business such as the transfer of property.   15 Pa. C.S. § 504.   Pennsylvania common law additionally provides a framework under which a *de facto* corporation may exist: "[f]irst, there must be a law or charter under which an organization might be effected. Second, there must be an attempt to organize which falls so far short of the requirements of the law or charter as to be ineffectual. Third, there must be an assumption and exercise of corporate powers, notwithstanding the failure to comply with the law or charter." *Appeal of Riviera Country Club*, 176 A.2d 704, 706 (Pa. Super. 1961).

It is clear that U Lock, Inc. did not come into being until September 4, 2015.  This is over seven weeks after the date of payment and conveyance of the property, being July 16, 2015.  It is notable that the letter rejecting U Lock's incorporation application provided a method of retaining the original date of incorporation, yet U Lock did not comply with this option. 15 Pa. C.S. § 504 allows that a *de facto* corporation may exist "after the approval of the articles or application for a charter or issuance of letters patent…"  This is plainly not the case here, as the application was not approved until September 4, 2015.

Looking to the common law requirements, it is obvious that a law exists under which U Lock may — and eventually did — incorporate.  Turning next to the "attempt to organize," comparing the requirements of various cases is illustrative, and demonstrates that this attempt is generally categorized as, at a minimum, the issuance of a corporate charter or other approval by the state. See e.g., *Cochran v. Arnold*, 58 Pa. 399 (Pa. 1868); *Spahr v. Farmer's Bank, Carlisle*, 94 Pa. 429 (Pa. 1880); *Pinkerton v. Pennsylvania Traction Co.*, 44 A. 284, 285 (Pa. 1899); *Schmitt v. Potter Title & Trust Co.*, 61 Pa. Super. 301 (Pa. Super. 1915); *In re Mt. Sharon Cemetery*, 120 A. 700, 701 (Pa. 1923); *Appeal of Riviera Country Club*, 176 A.2d 704, 707 (Pa. Super. 1961).  Here, there was no approval or issuance of any state approval until September 4, 2015.  U Lock

4

additionally did not avail itself of the Department of State's offer to retain its original July filing date, falling short of any alleged attempt to incorporate prior to September 4, 2015.

Based on the above reasoning, Defendant U Lock, Inc. was neither a *de facto* nor a *de jure* corporation at the time of the issuance of the original deeds, and so the original deeds are *void ab initio*. As conceded by Defendants Estates at the commencement of trial, the Defendants Estates have been fully compensated for the purchase price of the property by Plaintiff Biros. Plaintiff Biros' equitable ownership of the property will be discussed below.

COUNT II – EQUITABLE ACTION TO COMPEL CONVEYANCE OF TITLE

Count II of Plaintiff's Complaint requests relief in equity conveying title to the property to Plaintiff, Christine Biros. Plaintiff's proposed Conclusions of Law make clear that Plaintiff is proceeding under a theory that U Lock has held the property in a constructive trust for Plaintiff Biros. "The theory underlying the constructive trust doctrine is that '[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' Courts will impose a constructive trust only where the defendant has acquired the property at issue as a result of fraud, duress, undue influence, mistake, abuse of a confidential relationship, or other such circumstances suggesting unjust enrichment." *Louis Dolente & Sons v. U.S. Fid. & Guar. Corp.,* 252 F. Supp. 2d 178, 182 (E.D. Pa. 2003) (citation omitted).

Even accounting for the *void ab initio* status of the original deeds, the corrective deeds, filed March 1, 2018, show legal title in the Subject Property belonging to U Lock, Inc. Certainly, U Lock has had full possession and control of the property since July 16, 2015, and has collected rents from tenants since that time. It is undisputed by U Lock that Christine Biros paid the full purchase price of the property to the Defendant Estates, and that U Lock has not repaid any of the purchase price to Plaintiff Biros. As such, the present case is ripe for the imposition of a constructive trust,

where it is clear that it would be wholly inequitable for Defendant U Lock to retain the beneficial interest of the property. It is clear that U Lock would be unjustly enriched in maintaining the benefits of the property, which, in addition to the mere ownership of the property itself, also consist of the accumulation of rent via tenants utilizing storage on the property.

As such, the Court finds that equity demands the imposition of a constructive trust in this situation. In its Findings of Fact and Conclusions of Law, Defendant U Lock maintains that the Plaintiff failed to pursue remedies at law, such as a claim for breach of contract, and so relief in equity is unwarranted. Pennsylvania law provides, however, that "a court of equity has the power to afford relief despite the existence of a legal remedy when, from the nature and complications of a given case, justice can best be reached by means of equity's flexible machinery." *Vautar v. First Nat. Bank of Pennsylvania*, 133 A.3d 6, 12–13 (Pa. Super. 2016) (citation omitted).

Here, the Court notes the unique nature of real property in establishing Plaintiff Biros' right to relief in equity, which provides not only the instant unique piece of real property, but the additional tenant rents which have been collected by U Lock since July 2015 and which will continue to accumulate into the future. Additionally, the Court notes that the record reflects doubt as to U Lock's solvency and ability to repay Plaintiff Biros the purchase price of over $300,000.00 now or at any point subsequent. As such, the only equitable solution is the imposition of a constructive trust, and the present conveyance of the Subject Property to Plaintiff Christine Biros.

## COUNT III – QUIET TITLE

Plaintiff Biros' Count III requests judgment in quiet title. As title to the subject property has been equitably awarded to Plaintiff Biros pursuant to Count II of this action, any claim in quiet title is moot, and so must be dismissed.

COUNT IV – ACCOUNTING

Plaintiff Biros' Count IV requests an accounting of all sums collected by U Lock from tenants of the subject property since July 16, 2015.  To establish a right to an accounting a plaintiff must show the following:

> (1) there was a valid contract, express or implied, between the parties whereby the defendant (a) received monies as agent, trustee or in any other capacity whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for the monies received by the defendant, or (b) if the relationship created by the contract between the plaintiff and defendant created a legal duty upon the defendant to account and the defendant failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him, and (2) that the defendant breached or was in dereliction of his duty under the contract.

*Haft v. U.S. Steel Corp.*, 499 A.2d 676, 678 (Pa. Super. 1985).  Here, as the action is based solely in equity and no contract action has been maintained, an accounting is inappropriate.  Plaintiff's Count IV must therefore be dismissed.

Based upon the foregoing reasoning, this Court enters the following Order of Court:

## ORDER OF COURT

AND NOW, to wit, this 22nd day of August, 2019, consistent with the analysis contained in the foregoing Opinion; it is hereby ORDERED, ADJUDGED and DECREED, as follows:

1. As to the Plaintiff's Complaint, a verdict is hereby ENTERED in favor of Plaintiff Christine Biros and against Defendant U Lock, Inc. on Counts I and II.

2. Count III of Plaintiff's Complaint is hereby DISMISSED as moot.

3. Count IV of Plaintiff's Complaint is hereby DISMISSED.

4. Any and all deeds executed by any one or all Defendant Estates purporting to convey title to Defendant U Lock, Inc. on July 16, 2015 are *void ab initio* and of no further force and effect.

5. Defendant Estates have received full consideration for title to the Subject Property.

6. Plaintiff Christine Biros is the equitable owner of the Subject Property.

7. Legal title to the Subject Property shall be conveyed to Christine Biros by execution of the appropriate deeds, currently held in escrow.

8. The Court will consider Plaintiff Biros' request for an appeal bond should an appeal be taken by Defendant U Lock.

9. Further, in accord with Pa.R.C.P. No. 236(a)(2)(b), the Prothonotary is DIRECTED to note in the docket that the individuals listed below have been given notice of this Order.

BY THE COURT:

Harry F. Smail, Jr., Judge

ATTEST:

Prothonotary

cc:   William E. Otto, Esq.
      J. Allen Roth, Esq.
      John Tumolo, Esq.
      Dennis Del Cotto, Esq.

8

Appellant has remained in possession and enjoyment of the Property ever since, without any apparent ability to make repayment. Thus, the source of Appellee's funds has no obvious bearing on the equities between the parties to this case. We discern no error of law or abuse of discretion in the trial court's decision.

For all the foregoing reasons, we affirm the trial court's judgment in favor of Appellee.

Judgment affirmed.

Judge King joins the opinion.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/21/2021

- 14 -