FILED
4/24/23 3:44 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-20823-GLT |
| | . | |
| | . | |
| U LOCK INC, | . | 5414 U.S. Steel Tower |
| | . | 600 Grant Street |
| | . | Pittsburgh, PA 15219 |
| Debtor. | . | |
| | . | April 13, 2023 |
| . . . . . . . . . . . .. | | 1:30 p.m. |

TRANSCRIPT OF #294 CONTINUED ORDER TO SHOW CAUSE SIGNED
ON 1/17/2023. (RE: RELATED DOCUMENT(S): 258 APPLICATION
FOR ADMINISTRATIVE EXPENSES; #278 CONTINUED AMENDED ORDER
TO SHOW CAUSE SIGNED ON 1/6/2023. (RE: RELATED DOCUMENTS(S):
249 ORDER SCHEDULING HEARING); #345 CONSENT MOTION TO
APPROVE COMPROMISE UNDER RULE 9019; #340 OBJECTION TO CLAIM
OF SHANNI SNYDER; AT CLAIM NUMBER 1; #337 OBJECTION TO CLAIM
OF GEORGE SNYDER; AT CLAIM NUMBER 5; #344 AMENDED
APPLICATION FOR ADMINISTRATIVE EXPENSES PURSUANT TO
11 U.S.C. 503(b)(1) AND/OR FOR PAYMENT OF ADEQUATE PROTECTION

BEFORE HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Law Office of J. Allen Roth |
| | By:  J. ALLEN ROTH, ESQ. |
| | 805 S. Alexandria Street |
| | Latrobe, PA 15650 |
| | |
| For George Snyder: | By: GEORGE SNYDER, PRO SE |
| | Box 15 |
| | Irwin, PA 15642 |
| | |
| ECRO: | Hayley Smith |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

2

APPEARANCES (Cont'd):

For Christine Biros:          Bernstein-Burkley, P.C.
                              By:  ROBERT S. BERNSTEIN, ESQ.
                                   MARK LINDSAY, ESQ.
                              601 Grant Street, 9th Floor
                              Pittsburgh, PA 15219

For Christine Biros,          The Law Firm of William E. Otto
Lead Counsel in the           By:  WILLIAM E. OTTO, ESQ.
State Court Action:           4027 Old William Penn Highway
                              P.O. Box 701
                              Murrysville, PA 15668

TELEPHONIC APPEARANCES:

Chapter 7 Trustee:            Mahady & Mahady
                              By:  ROBERT H. SLONE, ESQ.
                              223 South Maple Avenue
                              Greensburg, PA 15601

For Shanni Snyder:            The Lynch Law Group LLC
                              By:  JOHN PATRICK LACHER, ESQ.
                              501 Smith Drive, Suite 3
                              Cranberry Twp, PA 16066


                        - - -

1          ECRO:  Court may now come to order.  The Honorable

2   Gregory L. Taddonio presiding.

3          THE COURT:  All right.  Good afternoon, everyone.

4   This is the United States Bankruptcy Court for the Western

5   District of Pennsylvania and this is the Court's docket of

6   Chapter 7 and Chapter 11 matters on this Thursday, April 13,

7   2023.  The matter under consideration at this time is Case

8   Number 22-20823, U LOCK INC.  I'll begin by taking appearances

9   first here in the courtroom and I'll start over here.  Mr.

10  Roth?

11         MR. ROTH:  Alan Roth on behalf of U LOCK.

12         THE COURT:  All right, good afternoon.

13         MR. SNYDER:  George Snyder.

14         THE COURT:  All right, good afternoon.  Want to come

15  over here?

16         MR. BERNSTEIN:  Your Honor, on behalf of Christine

17  Biros, Robert Bernstein, Bernstein-Burkley.

18         THE COURT:  Okay.

19         MR. BERNSTEIN:  William Otto sitting next to me.

20         THE COURT:  All right, good afternoon.

21         MR. BERNSTEIN:  Ms. Biros is in the courtroom next to

22  him and my colleague Mark Lindsay.

23         MR. LINDSAY:  Good afternoon.

24         THE COURT:  All right, good afternoon, everyone.  All

4

1  right, that satisfies the appearances here in the courtroom and

2  then I'll take appearances on the Zoom call.  I'll start first

3  with the Chapter 7 Trustee.

4         MR. SLONE:  Yes.  Robert Slone, Chapter 7 Trustee,

5  Your Honor.

6         THE COURT:  All right, good afternoon.  And, I'll

7  take an appearance for Shanni Snyder?

8         MR. LACHER:  Good afternoon, Your Honor.  John Lacher

9  on behalf of Shanni Snyder, and Shanni Snyder is in the room

10 with me, Your Honor.

11        THE COURT:  Okay, good afternoon.  All right, and is

12 there anyone else who wishes to enter an appearance in this

13 case?

14                    (No audible response)

15        THE COURT:  All right.  This is a hearing set on

16 several pending matters and I have -- the Claims Objections

17 filed by Christine Biros to the claims of George Snyder and

18 Shanni Snyder.  I have an Amended Application for Payment of

19 Administrative Expenses, including Post-Petition Rent,

20 relatedly a Consent Motion to Approve Compromise under Rule

21 9019, and then two continuations of hearings related to Orders

22 to Show Cause that were issued by the Court at Docket Numbers

23 278 and 294.  Unless there's any housekeeping matters that I

24 need to be aware of, I am just going forward in starting with

25 the claims objections, so any preliminary comments from the

1  parties that we need to address?

2              (No audible response)

3          THE COURT:  All right, hearing none.  I'd like to

4  begin with the Christine Biros' objection to the claim of

5  George Snyder, which is Claim Number 5, and since this seemed

6  to help us with some efficiencies in the hearing, I'm going to

7  just go through some of my observations of what the parties

8  have argued at this point and just ask if there's additional

9  clarification or other remarks that anyone wants to add?

10         So, I have Claim Number 5-1 that was filed by George

11 Snyder in the amount of $99,000 as an unsecured claim or,

12 quote, wage, Fair Labor Standards, end quote.  There was no

13 supporting documentation attached to the claim, but it was

14 timely filed.  Ms. Biros has filed an objection indicating that

15 Mr. Snyder signed the schedules without listing a wage claim

16 and should be judicially estopped from doing so now, and at the

17 341 meeting, Mr. Snyder allegedly testified that, quote, the

18 $99,000 is what Biros would owe me, end quote, because he never

19 received officer compensation for the last seven years.

20         Ms. Biros asserts that the Fair Labor Standards Act

21 does not apply to these claims because, one, Snyder is not an

22 employee of the Debtor and testified the Debtor has no

23 employees.  The FLSA carves out establishments whose only

24 regular employees are the owner and immediate family members,

25 so Snyder is not entitled to a minimum wage.

1            In addition there is no evidence that Snyder was a

2    contractor for U LOCK, and even if he could assert a claim, the

3    statute of limitations is two years, not seven.  Mr. Snyder has

4    filed a response, indicating that he worked for Biros, and if

5    she is correct and owned the business at all times since 2015,

6    he filed the claim after researching Shanni's FLSA claim.  He

7    also cites to Section 13(a)(1) and 13(a)(17) of the FLSA, which

8    provides exemptions from Section 206 regarding minimum wage

9    requirements for employees in a bona fide executive,

10   administrative, or professional capacity, and certain skilled

11   computer workers, and the declaration provides as calculation,

12   assuming he worked four to five hours a day five days a week.

13   Mr. Snyder also asserts he doubled the amount of his actual

14   claim as liquidated damages.

15           So, that's the context of how I understand the claim

16   objection and I'll ask the parties if there's anything in

17   addition that they wish to add separate and apart from what's

18   already in the papers.  Mr. Bernstein?

19           MR. BERNSTEIN:  Assuming that Your Honor was

20   highlighting what was in the papers and not making an

21   exhaustive recitation, we have nothing else to add to what was

22   in our objection.

23           THE COURT:  All right.  Thank you.  Mr. Snyder,

24   anything else you want to add?

25           MR. SNYDER:  Not much.  You covered mostly

1  everything.  I just wanted to add the one thing that Mr. Slone
2  --

3      MR. BERNSTEIN:  Your Honor, I'm sorry.  Could we --
4  because Mr. Snyder is representing himself, is it possible that
5  he be sworn for these assertions so that we have a clear
6  record?

7      THE COURT:  I don't have any issue with that.  Mr.
8  Snyder, you understand what we're going to do is we're going to
9  put you under oath and so any statements that you give are
10  going to be your sworn testimony in this matter?

11      MR. SNYDER:  Yes, I do.

12      THE COURT:  Okay.  If you can please rise and raise
13  your right hand and I'll ask the court reporter to please swear
14  you in.

15          GEORGE SNYDER, WITNESS, SWORN

16      ECRO:  Thank you, and if you can please speak clearly
17  into the microphone.  Thank you.

18      MR. SNYDER:  Okay, yeah.  I noticed I did that.  Kay.

19      The only other thing I wanted to add throughout this
20  whole process, right after we handed in the schedules, I was
21  also going to -- Mr. Slone and I were talking about amending
22  the schedules, so I could have amended that part as well.  I
23  just thought I'd mention that.

24      THE COURT:  Okay.  But, nothing further at this
25  point?

1        MR. SNYDER:  No.

2        THE COURT:  All right.  Well, upon review of the

3  papers and review of the claim, I'm going to make the following

4  findings.  Number one, as noted before, the claim is just a

5  bare bones claim.  It does not have any supporting

6  documentation substantiating the amounts claimed, or breakdown

7  of the time periods, or the time frames by which the wages were

8  accrued, and so under the <u>Allegheny International</u> line of cases

9  that followed from the Third Circuit decision there, I find

10  that it's not entitled to prima facie validity.  And in

11  addition to that, I do think that there are valid points that

12  have been raised by Christine Biros with respect to

13  deficiencies in the claim.

14        First off, under applicable law, 29 U.S.C.A. Section

15  203(s)(2), provides, quote, any establishment that has as its

16  only regular employees, the owner thereof, or the parent,

17  spouse, child, or other member of the immediate family of such

18  owner, shall not be considered to be an enterprise engaged in

19  commerce, or in the production of goods for commerce, or a part

20  of such an enterprise, end quote.

21        Relatedly, Section 29 U.S.C.A., Section 206 provides,

22  quote, every employer shall pay to each of his employees, who

23  in any work week is engaged in commerce, or in the production

24  of goods for commerce, or is employed in an enterprise engaged

25  in commerce, or in the production of goods for commerce, wages,

1 at the following rates, end quote.

2         Here, the Court is finding that this did not

3 constitute -- U LOCK did not constitute an entity or an

4 enterprise engaged in commerce, since he was -- George Snyder

5 was the owner, U LOCK had no other employees, and consequently

6 George does not appear to be an employee as qualified under the

7 FLSA.

8         I also note that the statute does provide under 29

9 U.S.C., Section 255(a), that there is a two year statute of

10 limitations except that an action arising from a willful

11 violation may be commenced within three years.  Here, the

12 allegation is that some of these claims may reach as far back

13 from 2015 to at least 2019 and, therefore, would seemingly be

14 time barred.

15         I also note that the response that was given does

16 seem to have some inconsistencies.  I'm not sure exactly why

17 Mr. Snyder is claiming exemptions under the FLSA, because the

18 exemptions would not be helpful to him and, in fact, would

19 exclude U LOCK or his status from coverage for wages.

20         It also appears to me that Claim 5-1 appears to be an

21 attempt to recoup lost sweat equity or capital contributions

22 that were provided through his labor and efforts, rather than a

23 wage.

24         And, finally, and also compelling, is that the claim

25 does conflict with sworn statements that were given elsewhere

1  in this case, particularly with respect to the schedules and

2  testimony at the 341 meeting and in other sworn declarations.

3  So, for all those reasons, I find that the objection is well-

4  founded and I will sustain the objection and deny Mr. Snyder's

5  claim.

6        So, that brings us forward to the next claim

7  objection which is the objection to Claim Number 1 filed by

8  Shanni Snyder.  This was a claim filed in the amount of

9  $263,100, originally as a secured judgment.  Ms. Biros has

10 filed an objection, asserting that Shanni was not an employee

11 of U LOCK, and as is supported by Shanni's schedules, and given

12 her failure to properly schedule a wage claim, Shanni should be

13 judicially estopped from asserting one now.

14       Both George and Kash Snyder have testified

15 extensively that U LOCK had no employees and did not consider

16 Shanni Snyder to be an employee.  She also notes that there is

17 no evidence that Shanni was a contractor of U LOCK and further

18 observes that Shanni does not qualify as an employee under the

19 FLSA because U LOCK was an immediately -- or an immediate

20 family-owned business.  And, even if she had such a claim under

21 the FLSA, the statute of limitations is two years.

22       Biros' also asserts that the claimant Shanni worked

23 for ten hours a night, every night, for four years, is on its

24 face incredible, and given that the security setup at the site

25 did not have wifi or other connectivity, it is unclear how

1  Shanni could have monitored the cameras as alleged in her

2  claim.

3       Ms. Snyder filed a response arguing that Biros is

4  seeking to collaterally attack her judgment and she asserts

5  that judicial estoppel cannot apply because she later amended

6  her schedules and only part of the claim belonged to her

7  estate, and finally suggests that if an evidentiary hearing is

8  necessary to address the validity of the judgment, the

9  reference should be withdrawn to permit the District Court to

10  do so.

11       So, again, those are my initial observations of what

12  had been contended by each of the parties with respect to that

13  pending claim objection.  Is there anything further that Ms.

14  Biros wishes to raise with respect to that claim objection?

15       MR. BERNSTEIN:  Nothing further at this point, Your

16  Honor.  Thank you.

17       THE COURT:  All right, thank you.  All right, Mr.

18  Lacher, how about on your behalf for Ms. Snyder?

19       MR. LACHER:  Yes, thank you, Your Honor.  Again, as

20  noted, we're dealing here with a final judgment and I would

21  also point out that Ms. Biros has commenced a RICO action in

22  the District Court, which includes the same attacks on the

23  judgment that they raise here before Your Honor.  So, you have

24  them asking the District Court to pass on the facts and they

25  have Your Honor asking to pass on the facts, and based on Your

1  Honor's findings in regard to the last objection, I'd also

2  point out, they rely largely on a case issued by Judge Deller,

3  kind of stating that this Court can always get behind a

4  judgment in a claims objection situation.  I don't think that

5  case says that at all.  That was a case that dealt with

6  confessed judgments that, on the face of the record, were not

7  lawful, the process was not followed.  In this instance, Ms.

8  Snyder filed her complaint.  Went to court.  Attended a hearing

9  in front of Judge Colville.  Judge Colville took evidence.

10 Judge -- including testimony from Ms. Snyder.  He rendered a

11 final judgment.  That judgment is a year and a half old.

12 Nobody has attacked it, and I do believe this Court can't get

13 behind it, and I also believe that if it is going to be

14 challenged, it should go back to the District Court, as Your

15 Honor mentioned.

16         THE COURT:  Okay.  Anything in response, Mr.

17 Bernstein?

18         MR. BERNSTEIN:  Nothing that we haven't already set

19 forth, Your Honor.  Thank you.

20         THE COURT:  All right, thank you.  All right.  I'll

21 address the points as follows.  I do think that Shanni's

22 judgment was entered by default.  It's clearly indicated as

23 such and, therefore, I reach the finding that it is not

24 entitled to preclusive effect, and in support of that, I do

25 rely on the In re Chatkin case, 465 B.R. 54, at Page 65, which

1 is a decision of the Bankruptcy Court of the Western District

2 of Pennsylvania from 2012, which provided, quote, as a general

3 rule under federal law, any issue raised in a case where a

4 default judgment was entered is not actually litigated for

5 purposes of collateral estoppel, and therefore does not bar

6 litigation of the issue in the Second Federal Court, end quote.

7        There is no exception where the defendant never

8 appeared and participated.  I think Biros is correct that the

9 statute of limitations for the FLSA claim is two years, with

10 the possibility of three years for a wilful violation.  It's

11 under 29 U.S.C., Section 255(a), and to the extent that Shanni

12 reopened her bankruptcy case and amended her schedules and

13 entered into a settlement with the Trustee, I do find that

14 judicial estoppel would appear to be moot and is no longer at

15 play here.

16        But, even though Shanni is the sister of Kash and

17 George, it is unclear whether adult siblings under the

18 circumstances would be considered, quote, immediate family

19 under the FLSA, and I think there are some factual issues that

20 are raised here, but nevertheless, the fact that there is a

21 judgment, does require at this point for the Court to schedule

22 an evidentiary hearing on the merits of the claim itself.  And,

23 so I am prepared to do that and we'll issue a suitable pretrial

24 order.  My expectation though is that this should not be a long

25 or involved process.  I am contemplating an evidentiary hearing

1 of no more than two hours and I think the primary witness would

2 be Ms. Snyder herself.  If there is cause to be shown that

3 there are needs for other witnesses, we can address that, but

4 I'm not envisioning that as we sit here today.

5          To the extent the parties need a discovery period,

6 I'm prepared to provide a brief 60-day discovery period for

7 that.  But, in short, I'm moving forward with quantifying the

8 claims of this estate, and the only way to do so is to have an

9 evidentiary hearing on the merits of that claim objection.  To

10 the extent that Ms. Snyder wants to seek a withdraw of the

11 reference, that's her prerogative.  She can file an appropriate

12 motion with the District Court.  The District Court can act

13 with it as it deems necessary, but my expectation would be that

14 liquidating and determining the allowance of claims is

15 something that is normally done within the Bankruptcy Court and

16 unless there's some other basis to seek a withdraw of the

17 reference, I would not be betting money that the District Court

18 would grant that.

19          But, nevertheless, I'm prepared to be surprised on

20 that, but in the meantime, I'm not going to wait for the

21 District Court to rule on that.  This is an estate that needs

22 to be properly addressed, and so I will move forward with the

23 evidentiary hearing under the schedule that I've just outlined.

24          I would also note though that, and this is for Mr.

25 Lacher's benefit because he is new to the party, so to speak,

1  is that, on its face and given the circumstances of which

2  unfolded, and again mind you, I'm not making any final

3  determinations, but the veracity and validity of the Shanni

4  Snyder claim is certainly somewhat dubious.  I made no mistake

5  about that and some of the things I've written in my orders

6  before, and so I want to make sure that we're all clear on what

7  the expectations are going forward, and that is the Court has

8  already put all of the parties in this room and on the Zoom

9  call on notice that I'm not tolerating any more games or

10 crossing any lines.  Rule 11 is in play and, to the extent that

11 there were sworn statements given in this proceeding, penalty

12 of perjury also applies here.

13       So, as we move forward with an evidentiary hearing, I

14 want folks to be mindful of that so that we can be all clear on

15 what the expectation is and that there is no funny business or

16 games that are being played as we move forward with the goal of

17 including the administration of this estate and determining

18 what the claims are and allowing the Trustee to take what

19 limited resources he has and make distributions to creditors.

20 So with that, any questions or further clarifications that the

21 parties need at this stage?

22       MR. BERNSTEIN:  No, Your Honor.

23       MR. LACHER:  No, Your Honor.

24       THE COURT:  So, while we're at it, I'm going to just

25 set a date.  If I use 60 days from today for discovery, I have

the window of July 14th in the afternoon, which is a Friday,

for an evidentiary hearing.  How does that work for the

parties?

MR. BERNSTEIN:  Fine with us, Your Honor.

MR. LACHER:  Fine with me, Your Honor.

THE COURT:  All right.  Then, I'll set that for July

14th at 1:30 p.m.

MR. OTTO:  Unless you're home for Bastille Day.

THE COURT:  All right.  That brings us forward to the

next pending item, which I will take as the consent motion to

approve the compromise under Rule 9019 and this is somewhat

related to the amended application for administrative expenses

that was filed by Christine Biros, which has drawn an objection

from George Snyder.  The motion to compromise has drawn

objections from both George Snyder and Shanni Snyder and a

consent response from the Chapter 7 Trustee.

Okay.  So, again, where I view the papers at this

stage is as follows.  Christine Biros and the Trustee have

entered into a settlement of her claims.  The settlement would

provide for an allowance of an administrative expense claim of

$18,000 for use and occupancy of the subject property during

the pendency of the bankruptcy.  That equates to $2,000 a month

for a period of nine months.  It would also allow amended Claim

Number 2 in the amount of $27,701.59 as a priority claim under

Section 507(a)(8) for pre and post-petition real estate taxes

17

1 incurred on the real property.  Biros will reduce this claim to

2 the extent the taxes are paid by the estate.  It will also

3 allow Claim Number 3 in the amount of $162,000 as a general

4 unsecured claim for the pre-petition use and occupancy of the

5 property.  That is based on a rental figure of $7,000 a month

6 for 81 months, dating back to approximately July of 2015.

7 And, Claim Number 4, which is $200,000 as an allowed

8 general unsecured claim for environmental remediation costs.

9 And, Ms. Biros asserts that this is the middle range of the

10 remediation estimates she received.  I have objections from

11 Shanni Snyder indicating that Biros' claims are premature,

12 because they are based on Biros' alleged ownership, which

13 Shanni has challenged in an avoidance action that is pending

14 before this Court, and even if Shanni is not successful, she

15 alleges that the rent claims are excessive in relation to the

16 fair market value.  She also contends that rent would

17 constitute unjust enrichment, because after obtaining title to

18 the property, she would effectively be recovering a second time

19 for the same pre-petition period.  And, Shanni also contends

20 the environmental claim is unilateral estimate of damages and

21 does not address the availability of insurance coverage for the

22 garbage truck fire.

23 George has filed an objection indicating that he

24 thinks that $1500 a month for administrative expense rent is

25 the more appropriate number.  He objects to Biros seeking rent

1  and real estate taxes and objects to the real estate taxes

2  being paid to her, as they are owed to the taxing authorities,

3  and objects to the pre-petition rent on the basis that the

4  State Court did not grant retroactive relief.

5       I will hear from the parties in just a minute, but I

6  do have some additional questions for the Trustee with respect

7  to this, and so -- well, let me go around the room first.

8  Anything further from Ms. Biros' team with respect to this

9  motion?

10       MR. BERNSTEIN:  The only thing I'd point out and I

11  don't know where the Court is inclined to go, at this point,

12  Mr. Snyder is not a creditor and on his own I don't think would

13  have standing to object or --

14       THE COURT:  I think that's correct, but that's just

15  an order I issued today, so I think for the purposes of today,

16  I'll still allow him to be heard with the expectation of I've

17  ruled that he is not a creditor any further at this point.

18       MR. BERNSTEIN:  Thank you.  That's all, Your Honor.

19       THE COURT:  All right.  So, anything further, Mr.

20  Snyder?  I'm going to come back after I hear from the Trustee,

21  but any preliminary comments?

22       MR. SNYDER:  Just preliminarily, the State Court, you

23  know, kind of looked at it as if we owed this -- the State

24  Court looked at is as, you know, part of the basis of their

25  judgment, was to say that we owed the taxes, so in lieu of

1  taxes, they gave them the property, so they get the property,

2  and now they're going to come back and try to get the money for

3  the taxes.  So, that was one of my -- I just don't think the --

4  the settlement, I think it lacks good faith and it's not a good

5  business decision for that reason and several others --

6          THE COURT:  Okay.  And --

7          MR. SNYDER:  -- others.

8          THE COURT:  -- Mr. Lacher, anything else from you

9  preliminarily?

10          MR. LACHER:  Yes, Your Honor.  I would just say that

11  there is a claims process under the bankruptcy code.  Parties

12  in interest have an opportunity to object.  There's no real

13  deadline on that in the Chapter 7 case.  Obviously, if Your

14  Honor wants these objections filed, you can order it and we

15  would most certainly obey, but to be bound to have our right to

16  object taken away because the Trustee and Ms. Biros agree to

17  the treatment of the claims vis-a-vis the Trustee, I think,

18  would be improper.

19          So, I would say at the very least we should be given

20  an opportunity to object.  But, again, as set forth in my

21  response, I think that's pretty wasteful and maybe needlessly

22  costly and time consuming if the avoidance action is going to

23  make all these claims subject to change, so I would just put

24  that --

25          THE COURT:  Okay, but why wasn't there an objection

1 raised prior to this?  I mean, these claims have been out there

2 for a while.  It looks like Ms. Biros filed her claims back in

3 August and, you know, I've now looking to conclude the estate.

4 I've had the Trustee liquidate some of the proceeds or some of

5 the assets into proceeds.  You've got your adversary claim.  I

6 mean, this is the time to quantify claims, so I don't know why

7 it's incumbent upon the Court to actually set a deadline for

8 claims objections at this point.  The creditors were free to

9 file objections at any point.

10          MR. LACHER:  Well, I agree, Your Honor, but -- and I

11 do agree.  But, I would also say that we're not passed a

12 deadline to file objections.  You know, and again, Ms. Biros

13 just filed her claim to Ms. Snyder's and Mr. Snyder's

14 objection.  Those claims sat there for a long time, as well.

15 In this case, you have an avoidance action intervening.  It can

16 really change the validity or mootness of those claims.  That

17 said, if Your Honor wants objections, we'll absolutely file

18 them right away.

19          THE COURT:  Well, I'm just saying.  I mean, the

20 motion to compromise was filed -- when was this filed?

21          MR. BERNSTEIN:  March 1st, Your Honor.

22          THE COURT:  March 1st.  So, we're a month in.

23 There's been no claim objection.  This was an effort to

24 compromise the claim.  I'm thinking if there was a time to

25 object to the claim, it's now or never, and so I'm not too

1 receptive to parties that want to sit on their rights and then

2 claim somehow that there's a need for a further delay when the

3 issue has been teed up.  The Trustee has had a discussion with

4 Biros about compromising the claims.  The Trustee obviously

5 must have had some reason to object in his own right to some of

6 the claims and that's why the parties have come forward with a

7 compromise to resolve their dispute.  So, this is the time to

8 do it.  All right, well, let me turn to the Trustee.

9 Relatedly, Mr. Slone, is it correct for me to understand that

10 you've investigated these claims and you've looked into them?

11          MR. SLONE:  I have, Your Honor.  Before we get too

12 far, the claim for the real estate taxes had to be paid

13 directly to the Tax Claim Bureau of Westmoreland County.  I

14 think that was part of the agreement.  It doesn't have to go to

15 Mrs. Biros.  It can be paid there.  So, I'm holding a little

16 over $70,000 in my account.  If the administrative claim is

17 between 15 and $18,000 and the tax claim is $27,000, that's

18 over $40,000 right there.  I have a lot of time in this case.

19 My bookkeeper pointed out I have 155 hours already in the case.

20 Even if half of that is legal time we're eating up most of the

21 $70,000 with administrative costs in the tax claims, Your

22 Honor.  We're fighting over -- we'd be fighting over just a

23 little bit of money on unsecureds at this point.  I don't think

24 we're going to get too many -- too much money left for the

25 unsecured creditors, Your Honor.

22

1    THE COURT:  Well, that's kind of my thought, as well,

2  but you've investigated the claims, you've looked at the

3  assertions that Ms. Biros has made in terms of what she's

4  alleging in each one of these components that you're seeking to

5  compromise?

6    MR. SLONE:  I am, Your Honor.  Rather than me file

7  objections in all four claims, I thought this was the best way

8  to handle this.

9    THE COURT:  All right, and there's a reference to

10  this appraisal report or the estimate of the fair rental value

11  and the valuation of the property.  Have you seen those

12  reports?

13    MR. SLONE:  I got the -- not the entire reports.  I

14  got the summary from Mr. Lindsay and Mr. Bernstein when we were

15  trying to put this thing together, Your Honor.  I disregarded

16  most of it.  I didn't feel that it was worth anywhere near

17  $7,000 a month for rent.  I thought 2,000 was more of a figure

18  that I would be more comfortable with, Your Honor.

19    THE COURT:  All right.  And, what -- have you run

20  down the issue on the garbage fire insurance?

21    MR. SLONE:  I have not, Your Honor.  Although, the U

22  LOCK would be, under the law, would be responsible even if it

23  wasn't there -- or could be responsible.  And, again, it would

24  only be if an unsecured creditor for the amount of money we are

25  dealing with would be de minimis.

1          THE COURT:  All right.  All right, let me go around

2     the room one more time.  Then, based on where we are at this

3     point, anything further from Christine Biros?

4          MR. BERNSTEIN:  I'm just going to point out with

5     respect to what the Trustee said, there were more than one

6     environmental problem on the property.  The truck fire was only

7     the most recent one.  And, the compromise amount obviously is

8     significantly less than the fair rental value under this

9     broker's report, this real estate appraisal report that we

10    received.  We'd certainly make that available if necessary.

11    There's no attempt to hide it.  There was no --

12         MR. SLONE:  Your Honor, may I ask Mr. Bernstein to

13    speak into the microphone?

14         THE COURT:  Okay.

15         MR. BERNSTEIN:  I'm sorry.

16         THE COURT:  Is --

17         MR. BERNSTEIN:  I was just saying that there was more

18    than one environmental problem.  It wasn't just the truck.

19    And, with respect to the $7,000 opinion by the appraiser, the

20    comprise is -- the compromise agreement with the Trustee is for

21    significantly less than that.  And, I believe we may have

22    provided the summary pages to Mr. Slone.  It is a bonafide

23    report.  There is no attempt to hide it and we'll produce it as

24    requested.

25         THE COURT:  Okay, and you will produce that?  All

24

1  right.  All right, anything further, Mr. Snyder?

2       MR. SNYDER:  Yeah.  In response to that, they said

3  there was no attempt to hide it.  In fact, the person who did

4  the environmental report did in fact hide.  He parked his car

5  down the street, walked over, and did what he did.  There were

6  no other environmental issues.  The DEP had came out several

7  times from Harrisburg and said there was no issue and nothing

8  the buyers were required to remediate, so that's a fabricated

9  number, in my opinion.

10      Also, there weren't other environmental issues that

11 were new to the property.  When the property was acquired,

12 there were some tires there.  Some junk vehicles and things

13 like that.  In January, myself and a couple people cleaned up

14 everything that really wasn't our responsibility to clean up,

15 and I believe the purchaser, or my sister purchasing the

16 assets, cleaned the property even further, so everything was

17 cleaned up, which really they weren't entitled to that cleanup.

18 So, I don't see where there would be one dollar required to

19 clean up anything let alone a couple hundred thousand, so I

20 don't think that's a good compromise.

21      THE COURT:  Well, I mean, do you have anything to

22 back that up in terms of additional evidence or an

23 environmental expert that would counter the American

24 Geosciences report?

25      MR. SNYDER:  As far as the garbage truck fire?

1          THE COURT:  Well, just the environmental claim

2    generally?

3          MR. SNYDER:  Well, I don't have -- I don't have

4    anything to refute that, other than the fact that they don't

5    have a report from the DEP saying it's required to clean up,

6    because they did investigate it and came from Harrisburg

7    several times and I haven't seen anything in any of the filings

8    that said there was environmental damage because of this truck

9    and anything had to be cleaned up.  In fact, she told me in

10   person that nothing needed to be cleaned up.

11         THE COURT:  Well, is there a reason that the DEP has

12   to be a prerequisite to having an allowed environmental claim?

13         MR. SNYDER:  Pardon me?

14         THE COURT:  Is there somewhere that you can point to

15   that a determination of the DEP is a prerequisite to having an

16   environmental claim?

17         MR. SNYDER:  Well, just that they are saying there's

18   multiple environmental issues, and I'm just saying that it's

19   not really substantiated.  And, then in the report, I don't

20   know if it was -- I can't remember when this was done.  This

21   was -- they had a report from an environmental company that

22   said cars need to be removed, tires need to be removed.  There

23   was a lot of issues and they've all been addressed and resolved

24   that I'm aware of.

25         THE COURT:  Okay.  Thank you.  Mr. Lacher, anything

26

1 further from you?

2 MR. LACHER:  Yes, thank you, Your Honor.  Again, I
3 would point out, there was not an attempt to sit on our rights
4 here.  I did raise some substantive objections in my response,
5 I pointed out to the Court but I thought it might be wasteful
6 in light of the avoidance action to do these things now.  I
7 will point out that neither U LOCK, nor Biros, nor anyone else,
8 has gone after the garbage truck owner that caused the problem,
9 and I think there's grounds to object if the Court thinks it's
10 necessary to object at this point, and I would ask that they be
11 allowed to do so.

12 THE COURT:  All right.  Thank you.  So, I do have one
13 additional question for Ms. Biros and that is, so the
14 contention is that the pre-petition rent is a double recovery.
15 Why is that not accurate, because I mean it's unclear to me
16 that the State Court order was meant to be entirely retroactive
17 and it would seem to me that if the State Court was issuing an
18 order saying, "well, because you lent the money, it would be
19 unjust enrichment for U LOCK to have title with no ability to
20 pay back that money, a constructive trust was imposed."  But,
21 why does that entitle Ms. Biros to pre-petition rent on top of
22 that?

23 MR. BERNSTEIN:  So, obviously, Your Honor, the
24 initial position is that the purpose of this compromise is to
25 avoid litigating these issues which may be in dispute.  If Ms.

1  Biros was the beneficial owner of this property since 2015 and

2  did not have the use of the property, we believe that she has a

3  claim against the party who held the property for the fair

4  rental value of that property.  The so-called unjust

5  enrichment, and I know we're using unjust enrichment twice in

6  this situation, but that's advisedly.

7          So, her property, she had a right to this property.

8  She had the equity interest in this property that was worth

9  something, and it was kept from her.  She couldn't use it.

10  She's entitled to some -- compensation for that.  And, even

11  though she has the property today, or as of the end of January,

12  she had that whole pre-petition period where she did not have

13  the property.

14          THE COURT:  Okay.  So, let me stop you there.  Where

15  in the State Court order, either Trial Court or Superior Court

16  does it reach back to 2015 or does it give her title

17  retroactively?  I mean, it just seemed that it imposed a

18  constructive trust, declared the 2015 deeds void ab initio, but

19  that doesn't necessarily equate to giving title to Ms. Biros as

20  of 2015.  At least that's my initial review.  So, if you want

21  to direct me somewhere else, I'm happy to do that, because,

22  again, she was deemed by the State Court to be a lender here

23  and the constructive trust was imposed as an equitable remedy,

24  so she normally would not be the titleholder, and so this was

25  extraordinary relief that was given, and so, as such, I need to

1 have an understanding of how she can reach back to 2015 for

2 that rent.

3          MR. BERNSTEIN:  I don't know that we have all of

4 those documents here, Your Honor.  And, Mr. Otto, who is more

5 conversant with this, is going to see if he can point to that.

6          THE COURT:  Okay.  Well, I know Mr. Snyder included

7 the copies of the State Court and Superior Court orders to his

8 responses, so that's one area where the copy is.

9          MR. BERNSTEIN:  Here -- look through there.  While

10 Mr. Otto is looking, Your Honor, just briefly in response to

11 what Mr. Lacher said.  Purpose of the compromise is to avoid

12 the fight.  The Court certainly has the power to allow the

13 claims, and allowing the claims ends the ability of other

14 parties to object.  Ms. Snyder, as the Court said, has been

15 here since the beginning.  Has -- these claims have been here

16 since almost the beginning of this case.  We were here three or

17 four months ago when the Court admonished both Ms. Snyder and

18 Ms. Biros to bring their actions and let's get this going.  If

19 you wanted us to bring the objections to the claims, to their

20 claims.  You wanted her to bring the avoidance action.  All of

21 that is now in play.  It simply doesn't make sense to us to

22 allow some further period for them to object, to have us

23 litigate these claims that we're trying to compromise.  Now,

24 that will change the whole deal with the Trustee.

25          THE COURT:  All right.  Well, let me tell you where

1  I'm at, at this point, while you search for that.  This is a

2  settlement and compromise, so I'm not looking for perfection

3  and I'm not looking for, you know, crossing every T and dotting

4  every I.  I do find that what's been proposed is the allowed

5  administrative expense for use and occupancy post petition wise

6  at $18,000, is reasonable under the circumstances.  It's not

7  far off from what the Court had originally estimated during the

8  sale process, and I acknowledged that that's a significant

9  change from the position that Ms. Biros was at several months

10 earlier.

11         As to the taxes, I don't know that there's

12 necessarily a dispute as to that from what I heard from Mr.

13 Snyder.  I mean, there's an acknowledgment that real estate

14 taxes are due and owing.  If it's due and owing from U LOCK,

15 and I don't think particularly that there's an issue with that,

16 then that would be paid from the U LOCK estate.  If it's not

17 paid from the U LOCK estate, Ms. Biros, as the current title

18 holder, is alleging that she's entitled to reimbursement from

19 the estate for that.  So, I do find that that aspect of the

20 compromise is not a really compromise.  It's just commonsense

21 at this point.

22         As to Claim Number 4 and the environmental claim.

23 It's $200,000.  I acknowledged that I have a report from

24 American Geosciences in 2020 that was attached suggesting that

25 the remediation was about $414,000.  Ms. Biros has also alleged

1 that there's estimates between 125 to $314,000 for the cleanup

2 work.  And, this is a significant compromise down to $200,000,

3 so Biros asserts that that's the middle range of the

4 remediation estimates.

5          As I noted during the exchange with the parties, I

6 don't have anything from anybody else challenging those numbers

7 from any degree of certainty or expertise.  It's just

8 conjecture.  And, at this point, I just need more than just

9 bare lay opinion.  I need some sort of data points to look at

10 and I've got the Trustee relaying to me that he has

11 investigated these things.  He has taken the time to drill down

12 and represents the $200,000 allowance for that claim is

13 reasonable.

14          Where I do have the problem and where I think the

15 Snyders have made a compelling argument to me, is with respect

16 to this general unsecured claim for their pre-petition use and

17 occupancy of the premises.  $7,000 a month for 81 months.  In

18 my review, I'm not convinced that the State Court has

19 retroactively granted her relief for that period and it would

20 seem to be a double recovery, and so I'm not inclined to allow

21 or accept that portion of the settlement.  If that blows things

22 up, then be that as it may, but I'm inclined to otherwise rule

23 in that direction.  I do find that the Martin factors otherwise

24 are satisfied.  I think there's a probability of success on the

25 merits, weighs to the fact that there is a likelihood that Ms.

1  Biros can prevail on her claims as showing entitlement to

2  post-petition rent and reimbursement of taxes for the reasons

3  I've stated, as well as proof that environmental remediation

4  costs exist, and those costs existed before the garbage truck

5  fire and are separate and distinct from that whole fiasco.

6       The difficulty of collection, you know, is one of the

7  estate having limited assets and, furthermore, there is a

8  complexity of the matter that would require unnecessary time

9  and expense and delay to go through and litigate these matters.

10 One thing that's been apparent to me throughout this case and

11 I've remarked on it on several occasions, is the parties have

12 no problems litigating minute or small dollar amount issues to

13 the hilt in a way that is totally out of proportion of what the

14 value of the claim is, so that's to me probably the most

15 compelling thing here is that this would preserve what little

16 is left in the estate for the distribution of creditors.  And,

17 so from that standpoint, it's in the paramount interest of

18 creditors to allow the estate to proceed to quantify these

19 claims and get closer to a distribution that the Chapter 7

20 Trustee can make to creditors.

21      Having said all that, I am mindful of one thing that

22 Mr. Lacher has said, which is he's got his pending avoidance

23 action out there and I think that could change the perspective

24 here.  So, as a result, I'm prepared, based on what I've said

25 on the record, I'll give Ms. Biros' team one last chance to

1 respond on this pre-petition rent thing, but that the allowance

2 is on an interim basis, but the payment of any claim would be

3 held in abeyance pending the conclusion of the avoidance

4 action.  And, from that standpoint, that would allow me to

5 ensure that there is no money going out the door prematurely

6 until we have a full handle on the what the estate is and what

7 the respective rights of the parties are.

8          Having said that, and I understand that this is not

9 teed up for today, but if nothing, I always try to be candid

10 with you all so you know exactly where I sit on these things.

11 I've had a chance to look at the avoidance action and, right

12 now, I have to tell you, I'm not real impressed with it.  You

13 know, I question whether it could be dismissed as implausible

14 under Twombly and, specifically, the complaint seems to be more

15 mechanical and simply assumes that the constructive trust is an

16 avoidable transfer without giving any more depth or background

17 to that.  So, again, that's not a final determination.  That's

18 just an initial off-the-cuff reaction of what I've seen on the

19 pleadings, but it does color, in an extent, to me, the

20 scheduling of where we are and the need to move forward and

21 what the expectations are for what I think the time frames need

22 to be to bring this matter to a close.  If I thought there was

23 more there, then I think we would be inclined to have a more

24 robust time frame for this to occur.  It's not to say we're not

25 going to do that here.  It's just that I'm starting to question

33

1  whether or not this is something that can be resolved on a Rule

2  12 stage at this point, but we'll see what the coming weeks are

3  at this point.

4         Again, just food for thought for the parties so that

5  there are no surprises, and the parties can come into the

6  courtroom on the appropriate date adequately prepared to

7  address what I see as some concerns at this stage.  So with

8  that, let me come back, anything further on the pre-petition

9  rent?

10         MR. BERNSTEIN:  Yes, Your Honor, just a couple of

11 things addressing, maybe in reverse order, what the Court said.

12 If the Court -- we understand the concern about the avoidance

13 action might have some affect on payment of these claims and we

14 don't expect -- we don't expect payment now other than perhaps

15 the tax claim should be paid and we would be happy to work with

16 the Trustee.  The Trustee may want to file a claim on behalf of

17 the Tax Claim Bureau.  I believe the Trustee is entitled to do

18 that.  And, if that's allowed, because Ms. Biros isn't looking

19 for a duplicate claim, so we can -- we'd like to put that one

20 to bed.  We'd like to put the fight over Ms. Biros' claims to

21 bed now, even if payment is not made until ultimately later in

22 the case or at the end of the case.

23         With respect to the 2015 issue, I think the -- Mr.

24 Otto, who litigated that, can speak more to it, but in looking

25 at the August 2019 order, perhaps the particular section, I'm

1  sorry paragraph, is that, one, it says "plaintiff, Christine

2  Biros, is the equitable owner of the subject property."  It

3  does not indicate in that paragraph, that 2015, that it's

4  retroactive to them.  Even -- and I think Mr. Otto can explain

5  why that is and perhaps satisfy the Court that it is

6  retroactive.  Even if it isn't, it would be effective as of

7  that date, which is August of 2019, and if we count August of

8  2019 to the petition date, I think I count 45 months.  45

9  months at our asserted fair rental value of $7,000 a month is

10  more than the 162,000 that we've compromised.  45 months, even

11  at the $2,000 that we've been using in the admin claim is

12  $90,000, and I would need a few seconds to speak with Ms. Biros

13  about whether that would be a number that would satisfy her if

14  that would eliminate that retroactivity issue from the Court's

15  concerns.  If I may have just a --

16         THE COURT:  Well, yes, I mean, my initial reaction to

17  that though is that even though that was the decision in 2019,

18  that the deeds were still not delivered until later and, you

19  know, it's -- I don't want to get back into asking the State

20  Court to have to clarify that order because it's just not time

21  intensive.  And the other aspect of this, which I think is

22  another point that's been raised by several parties is, at the

23  end of the day, is this going to really matter when the Trustee

24  is holding no more than $70,000 plus whatever could be salvaged

25  from the avoidance claim?  I've already told you that I've got

1  some concerns about the avoidance claims, so if I go with the

2  supposition that there's only $70,000, arguing over an

3  additional hundred and --

4          MR. BERNSTEIN:  Sixty-two.

5          THE COURT:  -- sixty-two thousand when I've already

6  said I'm going to allow the 200,000 plus the 27,000 for taxes

7  and the 18,000 for the administrative claim, I just think it's

8  a fool's errand.

9          MR. BERNSTEIN:  Your Honor, you're right, and if the

10 Shanni Snyder claim was disallowed also and Ms. Biros knew that

11 her $200,000 general unsecured claim was the only one, then it

12 would be -- that would be an easy resolution.  We're still in a

13 little bit of shifting sands, but we know there's very little,

14 and I'd love to figure out a way so that this compromise could

15 resolve all of those things.  That's what we were trying to do

16 with the Trustee.  Perhaps Mr. Otto can just give you a couple

17 of minutes on the State Court, that background to see if --

18         THE COURT:  All right.  I'll allow it very briefly.

19         MR. BERNSTEIN:  Thank you.

20         MR. OTTO:  Your Honor, the Trial Court actually

21 issued three post-trial orders.  The first was the judgment and

22 that was on the August 2019 date.  The second was an order in

23 response to post-trial motions.  The third order was issued in

24 mid-2022 in response to appeals by U LOCK, Shanni Snyder, and

25 Mark Mycka, when he issued a 1925 order.  The appeals from U

1  LOCK, Mark Mycka, and Shanni Snyder, were all filed post

2  petition, and he was -- the judge was required by Superior

3  Court to issue a 1925 opinion, which he did.  And, in the

4  course of those three orders -- and I apologize, we don't have

5  those three orders in front of us, we only have the Trial Court

6  or the trial decision.  In at least one of those, the judge

7  specifically states that she had equitable title dating back to

8  2015.

9            I would also point out something that Mr. Bernstein

10 probably wasn't thinking about.  The way this trial went, there

11 were deeds that were issued by the estates in May of 2019.

12 After the final decision by the Pennsylvania Supreme Court,

13 then we recorded the deeds that we received from the Trial

14 Court.  Those deeds were dated in May of 2019, which in essence

15 predate the Trial Court's trial judgment.  So, if the question

16 is how far back do we go, theoretically, we could go back to

17 legal title in May of 2019.

18            THE COURT:  Okay.

19            MR. OTTO:  But, I -- if Your Honor wants or asks for,

20 I would be happy to provide the portions of the Trial Court's

21 orders that state that she had equitable title dating back to

22 2015.  I do agree with Mr. Bernstein that you get to the point

23 where it doesn't make a big difference because there's not

24 enough money to cover everything anyway.

25            THE COURT:  Yes.

37

1          MR. BERNSTEIN:  Let me see if I can help here, Judge.

2          THE COURT:  Well, I mean, yes, all right, if you have

3  a suggestion.

4          MR. BERNSTEIN:  I do have a suggestion.  Using August

5  of 2019 when the order occurred, or using -- when was the deed

6  dated."

7          MR. OTTO:  May.

8          MR. BERNSTEIN:  -- May when the deeds were dated, we

9  would offer the Trustee a unilateral amendment to our

10  settlement to reduce Claim 3 to $90,000.  We think that's fair.

11  The cost of litigating this, it's not worth it to anybody.  We

12  really, in this settlement, tried to protect the Trustee so

13  that at this point the reasonable expectation is the Trustee is

14  going to get paid for what he did and what his counsel did and

15  we're not in his pocket.  The more we litigate this, the more

16  that is not clear.  You know, so I'll bid against myself twice.

17  If the Court were to allow the administrative claim, allow the

18  tax payment either to us or to the Tax Claim Bureau, allow

19  Claim 4 of the general unsecured claim, and allow the Claim 3

20  in any amount from 0 to $162,000, we would be satisfied.

21          THE COURT:  I'm sorry.  Say that last part again?

22          MR. BERNSTEIN:  The last part is, we'll give up on

23  Claim 3 --

24          THE COURT:  Okay.

25          MR. BERNSTEIN:  -- if we can't convince the Court

1  that there is some value to that.  It's just not worth it to

2  stand here and argue over it.

3        THE COURT:  All right.  Thank you.  Well, that's

4  where I was ending up on this, is that I am prepared to enter

5  an interim order approving the settlement on the grounds that I

6  said, which is to allow the administrative expense, the tax

7  claim, and the environmental claim, to preclude the

8  pre-petition rent claim on the basis that I've said, and

9  payment would be deferred pending the resolution of the

10 avoidance action and we'll take it back up again when that's

11 concluded, at which time I would enter a final order

12 authorizing the settlement at that point, because I just don't

13 see a utility in having a full blown evidentiary hearing on

14 this.  That's the whole point of a settlement is to avoid

15 unnecessary litigation when the costs exceed the benefits.

16       So having said all of that, I'm going to issue an

17 order to that effect and then we'll take up the rest of it once

18 the --

19       MR. BERNSTEIN:  Your Honor, if I may just ask for

20 clarification to --

21       THE COURT:  -- avoidance action is resolved, with the

22 exception of the tax claim though.  I mean, if the Trustee --

23       MR. BERNSTEIN:  If I heard correctly, the allowance

24 will not be final until the avoidance action is resolved?

25       THE COURT:  What I will do is, I will withhold the

1 payments and the distributions until the avoidance action is

2 resolved.

3           MR. BERNSTEIN:  That's fine.  I just don't want to

4 have to come back and fight over the claims again.  Thank you.

5           THE COURT:  But --

6           MR. LACHER:  Well, Your Honor -- I'm sorry.

7           THE COURT:  Well, let me make this clear though.  I'm

8 saying the distributions would be withheld, with the exception

9 that if the Trustee wishes to proceed with paying the tax claim

10 to the Tax Claim Bureau he is free to do that because that's

11 something that would be independent of the settlement here.

12 Mr. Lacher?

13           MR. LACHER:  Yes, Your Honor.  The one I'm focused on

14 is the environmental claim and this kind of mirrors Mr.

15 Bernstein's question for clarification.  If we were successful

16 in the avoidance action, am I to understand Ms. Biros would

17 have an allowed claim from the environmental clean up even

18 though she's not the owner of the property?

19           THE COURT:  Well, she would not receive a

20 distribution on that claim if she is not the owner of that

21 property.  That's how I would rectify that.

22           MR. LACHER:  I appreciate that, Your Honor, and

23 that's why, again, I wanted to know the effect of the

24 allowance, let's say.

25           THE COURT:  Yes.

1          MR. LACHER:  Thank you, Your Honor.

2          THE COURT:  Okay.  All right, any other

3     clarifications or questions that we have with respect to that?

4          MR. BERNSTEIN:  I'm sorry, Your Honor, I have to do

5     this, because the landscape just changed again.  If the

6     avoidance action is successful, that will put more money in the

7     estate.  If the unsecured claim of Ms. Biros is disallowed

8     because the avoidance action is successful, then she will have

9     given up her claim to the pre-petition rent argument as part of

10    the settlement and be left with nothing out of the unsecured

11    portion.  We're just trying to fix the rights now and if the

12    avoidance action is successful, she's likely -- she will have

13    lost a significant value.

14         THE COURT:  Well, no, I don't know.  I mean, if she

15    loses the avoidance action, that would deem that she is not the

16    owner of the property.  She would not be subject to the

17    environmental obligations at that point because she has no duty

18    to do that as not being the owner, so --

19         MR. BERNSTEIN:  We can't say that for sure.  She's a

20    -- if she's a potentially responsible person, party, now, we

21    don't know whether the environmental claim will follow her

22    because she was the owner of that property during the time that

23    it occurred.  She may have some liability and there's no --

24    there's nobody indemnifying her.  I know it creates a

25    complication, but that's part of why we did this, this way,

1  with the Trustee, because otherwise she can come out -- I know

2  that we don't expect her to lose the avoidance action, but

3  lightening strikes.  If she lost the avoidance action,

4  therefore, loses her environmental claim, doesn't get any

5  distribution as an unsecured creditor, but is a target of

6  somebody, perhaps the new owner of the property, Ms. Snyder,

7  who decides to go after people who were in control of the

8  property when the environmental situation happened.  It just

9  opens up a whole can of worms.

10          THE COURT:  All right.  Well, if that's the case,

11  then what I'm doing is, I'm just deferring any determination on

12  the settlement motion until after the avoidance action is

13  concluded because --

14          MR. BERNSTEIN:  I guess you have to do that, Judge.

15  I can't -- we're -- I'm sorry -- yeah, other than perhaps the

16  taxes, but the rest of it --

17          THE COURT:  Well, the taxes, but I mean, again, you

18  raise a point about her being in a chain of title as being a

19  responsible party for the environmental, but I'm still not

20  hearing how she would have any claim to pre-petition rent if

21  she was not the owner having lost the avoidance action.  But,

22  be that as it may, you know, this is starting to dilute the

23  efficacy of having a compromise, so --

24          MR. BERNSTEIN:  Yeah.

25          THE COURT:  -- at this stage, I'm inclined to just

42

1 defer it until after the avoidance action and then I'll take it

2 up at that point and see what the landscape is at that stage.

3 But I think that, as I indicated, my views on the

4 administrative expense claim are such that I think that would

5 be a satisfactory resolution of the administrative expense

6 motion, but if we're not going to approve that today then I'm

7 going to just --

8         MR. BERNSTEIN:  Your Honor, one moment please.

9 Sorry.

10                          (Pause)

11         MR. BERNSTEIN:  What we're discussing, Your Honor, is

12 whether it's worth upsetting this settlement and then allowing

13 the other parties to file objections to the claims or taking

14 the beating that we're taking today and having you allow the

15 claims, which will prevent another set of objections to the

16 claims in the litigation that would follow there.  I think

17 we'll take what the Court offered before I raised the

18 environmental responsibility issue.  I just think that that is

19 -- that we're better off taking that and eliminating the

20 ongoing fight objection from the Snyders as to these claims and

21 beating them to death.

22         THE COURT:  Well, again, I think if the avoidance

23 action is successful, it changes the landscape of rights.  It

24 changes Ms. Biros from being an owner, back to being a lender,

25 and what that entails.  You know, you've got potentially

43

another $300,000 worth of claims that she would have at that

point so, but, again, I had viewed this as a way of trying to

narrow the issues, but if it's going to create more, then I'm

just going to defer it and then we'll see what happens with the

avoidance action and make that determination at that time.

MR. BERNSTEIN:  Is the Court willing to determine

that the process to date and the opportunity to object to this

settlement was a sufficient time for the other parties in the

case to --

THE COURT:  I definitely think that the settlement

was appropriately noticed and there was adequate time to be

heard with respect to the merits of the settlement.

MR. BERNSTEIN:  However Your Honor wants to handle it

at this point.  I will just add that the avoidance action being

successful does not automatically undo Ms. Biros' rights that

occurred during the time that she was an owner or a

constructive owner, just as if Ms. Biros had received a

monetary transfer, if it -- if that monetary transfer or that

preference were avoided, but she had used that money to create

some investment that she made a million dollars on, the

estate's claim for the avoidance would not be the profits on

the avoidance, it would just be the value at the time that it

was transferred.  So, she's still going to have her claims as a

constructive owner and as a real owner, regardless of whether

the transfer was avoided.  She was an owner during the time she

1  was an owner.  So, I just don't think it's automatic that if

2  they win the avoidance action that her claims disappear.  With

3  that, I'll sit down and Your Honor decide --

4           THE COURT:  Well, I didn't say they'd disappear.  I

5  just -- I think they get recharacterized into different types

6  of claims, but --

7           MR. BERNSTEIN:  Perhaps.

8           THE COURT:  You know, all right.  And, since we've

9  had a long exchange there, anything further, Mr. Lacher, that

10  you wanted to add at this point?

11          MR. LACHER:  No thank you, Your Honor.

12          THE COURT:  George?

13          MR. SNYDER:  Yes.  If I can clarify two things.  On

14  the environmental claim, they had mentioned something about the

15  things that had happened while Christine was the owner.  For

16  clarification, the only thing environmental would have been

17  that fire truck -- or garbage truck that caught on fire.  All

18  the other stuff, the property was purchased in a condition with

19  the tires, and cars, and different things.  None of that was U

20  LOCK bringing any environmental issues to the table.  So, I

21  wanted to clarify that.

22          THE COURT:  Okay.

23          MR. SNYDER:  And, the thing with the rent, I had just

24  wanted to mention.  I spoke with Mr. Slone and officially they

25  were given -- the Biros were given sole control, possession of

1  the property in October, because I was -- because they put a

2  cable up. Locked me out, the tenants out.  In fact, there were

3  tenants that they knew.  They met them before, exchanged

4  numbers and information and called the police on them, and I

5  think Mr. Otto actually went to the police station the next day

6  to try to get them arrested.  So, but prior to that, and I

7  believe early on, you know, it was like the Biros took over

8  full trustee powers from Mr. Slone and he appeared to be in the

9  backseat.  And, when I spoke to Mr. Slone about it, he had said

10 that he was threatened by them, so I'm not sure --

11          MR. BERNSTEIN:  Your Honor, I'll object to that,

12 hearsay.

13          MR. SNYDER:  Here, he could maybe speak to that.

14          THE COURT:  All right.  Well, it's not relevant to

15 the issue that I'm hearing, other then that you're contending

16 that Ms. Biros had full control of the property, which I

17 understand you've made before, and I have discussed that in my

18 opinion before that it's not as if she was deprived of all

19 access to the property during the time period.  But, what this

20 comes down to is, what is a reasonable value of what the

21 estate's interest was for having possession of the property,

22 and bottom line is, irrespective of whether Ms. Biros had

23 control of 80 percent of the property or none of the property,

24 the fact of the matter is, the estate had assets on the

25 property at that time.  The use of the property was beneficial

1  to the estate and, as such, Ms. Biros, as the title holder, is

2  entitled to some sort of compensation for the reasonable value,

3  and you know we've discussed that ad nauseam at the prior

4  hearings.  But, you know, again, I come back to where we are

5  now, $2,000 a month.  You, yourself, said 1500 was reasonable.

6  This is just slightly above that, so I'm not really quibbling

7  with that amount at this stage.

8          MR. SNYDER:  Okay, and that -- that's the part I was

9  getting at.  That's what I was discussing with Mr. Slone,

10 because I said about the 1500, which could have been a

11 reasonable amount, but I was telling him, that wasn't even

12 necessarily fair because I didn't have access to doing

13 anything.  You couldn't do anything.  And, Mr. Slone seemed to,

14 you know, he said I had a good point.  But, yeah, I'm not

15 arguing about --

16          THE COURT:  Okay.

17          MR. SNYDER:  -- you know, the particulars there,

18 other than they weren't really entitled to anywhere near this.

19          THE COURT:  Okay.  Thank you.

20          MR. SNYDER:  Thank you.

21          THE COURT:  All right.  Well, I'm going to take this

22 under advisement and consider whether what kind of order I do,

23 if I do an order with respect to the settlement motion, but

24 we've had an extensive discussion on this so you know where the

25 Court has preliminary comments has been and what my inclination

47

1  was initially.  I'll ponder some more what was discussed and

2  see if that changes my thought process at all.

3         Relatedly, is the Christine Biros' amended motion for

4  allowance of payment of the administrative expense.  I did have

5  the objections from George Snyder and I think we've covered

6  that, so to the extent that I approve the settlement, that will

7  render the administrative claim motion moot.  To the extent

8  that I deny or defer approval of the settlement, that will keep

9  that objection live and I'll issue a scheduling order on that

10 further, to the extent that that remains an active issue.

11        MR. BERNSTEIN:  On that scheduling, Your Honor, we're

12 happy to have it ride along if the Court decides to defer the

13 settlement.  We're happy to have that admin motion ride along

14 without it.

15        THE COURT:  That's what I would intend to do, so

16 thank you.

17        MR. BERNSTEIN:  Thank you.

18        THE COURT:  Okay.  So, then the next item is the

19 order to show cause that was issued on January 17, 2023.  This

20 relates to the administrative expenses.  At the last hearing, I

21 explained in detail why I found the filing of Christine Biros'

22 motion for allowance of the administrative expense claim,

23 pursuant to 11 U.S.C., Section 503(b)(1), was in violation of

24 Rule 9011(b)(1) through (3) and why I found the response to be

25 unpersuasive.

1    Most notably, the response offered no defense to the

2  assertion of the $144,000 administrative expense, other than

3  suggesting that Ms. Biros could have proven its reasonableness

4  had she been afforded an opportunity to submit a detailed

5  record.  The Court continued the order to show cause to allow

6  Ms. Biros and Attorney Bernstein to -- time to consider the

7  Court's comments and potentially seek reconsideration of the

8  Court's memorandum.  I note that no motion for reconsideration

9  was filed, nor was there any further response.  And, as noted,

10 Ms. Biros did file her amended motion for administrative

11 expense seeking $63,000, which was less than half of the

12 original request, and then she then proposed to settle the

13 claim for $18,000, which is roughly 12.5 percent of the

14 original request.  So, as indicated in the Court's order dated

15 January 30, 2023, at Docket Number 314, this was their last

16 change to appear in opposition to the order to show case.  So,

17 anything further that the parties wish to raise or address at

18 this point on that account?

19    MR. BERNSTEIN:  The Court can resolve this obviously

20 however it wants to.

21    THE COURT:  Okay.

22    MR. BERNSTEIN:  I think we've shown why what was

23 requested in the original admin motion was not completely

24 unreasonable, or impossible, or so out of line.  We've

25 attempted to provide the estate with a way to resolve the admin

49

1  claim at a reasonable number.  We have heard and taken to heart

2  the Court's comments about the way it proceeded.  Although, and

3  the fact that we did not file a motion for reconsideration or a

4  further response, frankly, we thought the filing -- we thought

5  our choices included filing an amended motion and that it

6  wasn't necessary to file a new response or a motion for

7  reconsideration and that it was open.  And, we have -- we've

8  previously apologized to the Court for taking an approach which

9  the Court found unreasonable, and we did what we thought was an

10 appropriate thing to do for our client under the circumstances.

11         As I said at the last hearing on this, Ms. Biros, on

12 this matter, followed our recommendations and did not have an

13 independent decision to file the motion the way it was filed.

14 We told her what we thought the appropriate thing to do is.

15 So, to the extent there is a sanction to be applied, it should

16 be us and not her.  And, frankly, we think that we've suffered

17 as a result of being in a position to receive that kind of

18 order from the Court and I think that's all I have to say, Your

19 Honor.

20         THE COURT:  Okay.

21         MR. BERNSTEIN:  Thank you.

22         THE COURT:  So, I mean, what I want to address though

23 is there's no effort at this point to establish any further

24 record, or offer anything else to suggest the reasonableness of

25 the $144,000?

50

1          MR. BERNSTEIN:  Other than the assertions in our

2  amended motion that explain the various values and methods of

3  computation, I have nothing -- nothing further to add today.

4          THE COURT:  Okay.  Thank you.  All right, well, I'm

5  not finding anything that dissuades me from the original

6  finding that there was a Rule 9011 issue with respect to the

7  original motion and that the $144,000 was unreasonable.

8  Certainly, appreciate the efforts to try to resolve this

9  through the amended motion.  I thought that was certainly well

10 crafted and well thought out and it doesn't go unnoticed from

11 the Court, the time and effort that went into that.  But, it

12 still leaves me with the factor that the original claim of

13 $144,000 was settled for 12.5 percent of that, which seems to

14 indicate again to me that the original amount was patently

15 unreasonably.

16         In terms of where we go from here, I am considerate

17 of the fact that Mr. Bernstein has indicated that Ms. Biros

18 followed the advice of counsel and, as a result, with taking

19 that advice, she is not blame worthy at this point with respect

20 to sanctions.  And, with respect to counsel, I do find that

21 this is a first offense and that the prior memorandum opinion

22 is a sufficient admonishment with respect to where we are with

23 respect to this matter, so I will conclude it there with that.

24         MR. BERNSTEIN:  Thank you, Your Honor.

25         THE COURT:  Going forward, we have the order to show

51

1  cause that was issued with respect to the stay violations.  I

2  had just continued this as a placeholder in the event that

3  there was anything else that had any bearing on those motions.

4  They were submitted, but to the extent that there was

5  additional discussion that had an impact on the Court's

6  findings or conclusions, I wanted to have the option open.

7          I'm not hearing anything today that would suggest

8  that I need to add new considerations to the mix, but before I

9  do close the door on that, I open it up one last time to the

10 parties if there's anything else they wish to address on any

11 other matters here?

12         MR. BERNSTEIN:  Nothing further from Ms. Biros, Your

13 Honor.

14         THE COURT:  All right, thank you.  Mr. Snyder?

15         MR. SNYDER:  Nothing further, Your Honor.

16         THE COURT:  All right.  Mr. Lacher?

17         MR. LACHER:  Nothing further, Your Honor.  Thank you.

18         THE COURT:  All right, thank you.  All right.  Well,

19 then that concludes the matters that are presently set before

20 the Court at this time.  I will enter an order just to recap

21 sustaining the objection to the claim of George Snyder.  I will

22 issue a scheduling order on the claim of Shanni Snyder.  I will

23 consider what I do with respect to the 9019 motion, and if it's

24 granted, the application for administrative expenses at 344

25 will be denied as moot.  If it's continued, then that motion at

1  344 will be continued and heard at the same time, and I have

2  addressed the show cause orders in the latter two with respect

3  to the stay motions are under advisement with the other show

4  cause having been resolved on the record for the reasons stated

5  here today.  And, with that, we will call it a day.

6            MR. BERNSTEIN:  Thank you, Your --

7            THE COURT:  The Court will now stand adjourned and we

8  will close the record.  Thank you, everyone.

9            MR. BERNSTEIN:  Thank you, Your Honor.

10           UNIDENTIFIED ATTORNEY:  Thank you.

11           UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

12           UNIDENTIFIED ATTORNEY:  Thanks, Your Honor.

13                         * * * * *

14              **C E R T I F I C A T I O N**

15           I, WENDY ANTOSIEWICZ, court approved transcriber,

16  certify that the foregoing is a correct transcript from the

17  official electronic sound recording of the proceedings in the

18  above-entitled matter and to the best of my ability.

19

20  /s/ Wendy Antosiewicz

21  WENDY ANTOSIEIWICZ

22  J&J COURT TRANSCRIBERS, INC.    DATE:  April 24, 2023

23

24

25