# Exhibit 1

# BERNSTEIN • BURKLEY
— ATTORNEYS AT LAW —

Mac Booker

mbooker@bernsteinlaw.com | (412) 456-8122

*A business approach to legal service* ™

May 24, 2023

Citizens Bank
c/o Polly Klane, Chief Legal Officer
One Citizens Plaza
Providence, RI 02903

**RE:    U Lock Inc., Western District of Pennsylvania Bankruptcy Case No. 22-20823-GLT
File No. 3626-001**

Dear Ms. Klane:

Enclosed please find a Second Subpoena to Produce Documents, Information, or Objects with regards to the above referenced bankruptcy case, along with Exhibit A detailing the information we are requesting.  If you are not the appropriate addressee to direct the subpoena to, please either direct it to the appropriate person(s) or advise our office as to whom to direct this and we will send take care of forwarding it.

Do not hesitate to contact our office with any questions or concerns.

Very truly yours,
BERNSTEIN-BURKLEY, P.C.

Mac Booker
Associate Attorney

MB/mag

Enclosures



601 Grant Street • 9ᵗʰ Floor • Pittsburgh, PA 15219
Phone: (412) 456-8100 • Fax (412) 456-8135
www.bernsteinlaw.com

# UNITED STATES BANKRUPTCY COURT

## Western District of Pennsylvania

In re U LOCK INC.
                    Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 22-20823-GLT

Chapter 7

_____
                    Plaintiff
                    v.
_____
                    Defendant

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **Citizens National Bank**
                    *(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Online Transfer to Checking 0024996386 on July 5, 2022

| PLACE: Bernstein-Burkley, P.C., 601 Grant Street, 9th Floor, Pittsburgh, PA 15219 c/o Mac Booker | DATE AND TIME: June 5, 2023 at 5:00 p.m. |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **5-24-2023**

CLERK OF COURT

OR _____

_____                    _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Christine Biros, who issues or requests this subpoena, are:   Mac Booker, Bernstein-Burkley, P.C., 601 Grant Street, 9th Floor, Pittsburgh, PA 15219, mbooker@bernsteinlaw.com, (412) 456-8100

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services. for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service. etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A
## INFORMATION AND DOCUMENTS
## TO BE PRODUCED BY CITIZENS BANK, N.A.

### I. DEFINITIONS

1.      "Citizens" means Citizens Bank, N.A., its current and former parents and/or predecessors, successors, subsidiaries, affiliates, and/or each of their present and past members, managers, employees, agents, attorneys and/or any and all persons and/or business entities acting and/or purporting to act for or on their behalf.

2.      The "6386 Account" means Citizens Checking Account No. 0024996386, which is referenced in Exhibit A-1 attached hereto.

3.      The "6498 Account" means the Citizens Savings Account for which Exhibit A-2 attached hereto is a Savings Account Statement.

4.      "USA AG" means USA AG Systems Co., a corporation organized under the laws of the State of Colorado corporation and the business customer for which the 6386 Account was opened.

5.      "Document" means all materials discoverable pursuant to the Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure, including without limitation the following items, whether electronic, printed or reproduced by any process, or written or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery, namely: notes, letters, correspondence, communications, text messages, tweets and retweets, Instagram posts, website posts, telegrams, social media posts or comments, memoranda, blog entries, instant messages, summaries or records of telephone conversations, summaries or records of personal conversations, diaries, reports, research reports and notebooks, charts, plans, drawings, photographs, minutes or recordings of meetings, including directors' meetings, reports or

summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, data compilations, e mail, electronically stored data, computer tapes or disks, computer printouts, computer directories, computer files and all material fixed or recorded in or on any medium or from which any material can be obtained, translated, or recovered, including without limitation deleted but recoverable data, including without limitation computers, of whatever kind known to you or in your possession, custody and/or control. The term "document" also includes all copies which are not identical to the original.

6.      "Person" or "persons" means, refers to and includes natural persons, corporations, professional corporations, limited liability partnerships, firms, partnerships, associations, joint ventures, trusts, trustees, proprietorships, entities, government or governmental entities, and all other forms of organizations, associations or entities, and any past or present officer, director, partner, principal, agent, trustee, beneficiary, or representative of such person.

7.      "All" means "any and all" and the word "any" means "any and all."

8.      The terms "and," "or," and "and/or" are used herein in their general sense and are not intended to limit the scope of any Requests. The terms shall be construed as broadly as possible to bring within their scope all discoverable information which might otherwise be excluded.

## II. INSTRUCTIONS

1.      Responses to these Requests shall be supplemented as required by the Bankruptcy Rules of Civil Procedure, the Federal Rules of Civil Procedure and accompanying case law. These Requests shall be deemed to impose a continuing duty upon you to properly and timely serve upon Christine Biros supplemental documents.

2.     With respect to the documents produced, you shall produce them as they are kept in the usual course of business.  If you have no documents or things responsive to a particular request, so state.

3.     All definitions above are applicable to these requests whether they are capitalized or in lowercase.

4.     Electronically stored information, including but not limited to emails and instant messages, shall be produced in the form or forms in which it is ordinarily maintained ("native form") or in a form that is reasonably usable.

5.     With respect to any responsive information or documents as to which you assert a claim of privilege or other immunity from discovery, you shall submit a list identifying each such document or piece of information by stating:

(i)     its type (*e.g.*, letter, inter-office memorandum, note, etc.), subject matter, title, date, and the number of pages thereof;

(ii)    the identity of each person who participated in its preparation;

(iii)   the identity of each person who signed or sent the document;

(iv)    the identity of each person to whom the document or information was addressed, copied to or sent;

(v)     the identity of each person who received the document or information; and

(vi)    the basis of the claim of privilege or immunity.

6.     In the event that any requested information or document is known to have existed and cannot now be located or has been destroyed or discarded, that information or document shall be identified by:

(i)     the last known custodian;

(ii)    date of destruction or discard;

(iii)     the manner of destruction or discard;

(iv)     the reason(s) for destruction or discard;

(v)      as to lost or misplaced documents, the efforts made to locate such documents;

(vi)     a statement describing the document, including a summary of its contents;

(vii)    the identity of its author(s); and

(viii)   persons to whom it was sent or shown.

7.      For documents originally collected in paper form, all associated file labels, file headings thereon, and file folders shall be produced together with the responsive documents from each file such that the labels, headings, and folders precede the documents with which they are associated. Each page shall be given a discrete production number.

## III. INFORMATION AND DOCUMENT REQUESTS

1.      Please provide documents sufficient to show transferees and transferors with regard to all transactions into and out of the 6386 Account from the creation of the account to the present.

2.      Please provide all periodic statements that Citizens has issued for the 6386 Account.

3.      Please provide all documents constituting or reflecting any communications between Citizens Bank and any person with regard to relating to the creation or operation of the 6386 Account, including without limitation all forms of identification provided to Citizens in connection with the creation of the 6386 Account.

4.      Please provide documents sufficient to show transferees and transferors with regard to all transactions into and out of the 6498 Account from the creation of the account to the present.

5.      Please provide all periodic statements that Citizens has issued for the 6498 Account.

6.      Please provide all documents constituting or reflecting any communications between Citizens Bank and any person with regard to relating to the creation or operation of the

6498 Account, including without limitation all forms of identification provided to Citizens in connection with the creation of the 6498 Account.

7.    Please provide documents sufficient to show the full name of the holder of the 6498 Account.

8.    Please provide, for the period from the creation of the account to the present, documents sufficient to show the full name(s) of any person(s) authorized to:

        a.   Sign checks on the 6498 Account ;

        b.   Access the 6498 Account;

        c.   Sign withdrawal slips or authorize wires or other withdrawals from the 6498 Account; and

        d.   Make deposits into the 6498 Account.

9.    Please provide documents sufficient to show the date on which the 6498 Account was opened or otherwise created.

10.    For each Citizens account opened for or owned at any time by USA AG, please provide documents sufficient to show transferees and transferors with regard to all transactions into and out of that account at any time by USA AG from the creation of that account to the present.

11.    For each Citizens account opened for or owned at any time by USA AG, please provide all periodic statements that Citizens has issued for that account.

12.    For each Citizens account opened for or owned at any time by USA AG, please provide all documents constituting or reflecting any communications between Citizens Bank and any person relating to the creation or operation of that account, including without limitation all forms of identification provided to Citizens in connection with the creation of that account.

13.    For each Citizens account opened for or owned at any time by USA AG, please

provide documents sufficient to show the full name of the holder of that account.

14.     For each Citizens account opened for or owned at any time by USA AG, please provide documents sufficient to show, for the period from the creation of the account[s] to the present, the full name(s) of any person(s) authorized to:

       a.   Sign checks on behalf of that account;

       b.   Access that account;

       c.   Sign withdrawal slips or authorize wires or other withdrawals from that account; and

       d.   Make deposits into that account.

15.     For each Citizens account opened for or owned at any time by USA AG, please provide documents sufficient to show the dates on which that account was opened or otherwise created.

16.     Documents sufficient to verify the information requested in Requests 1-12, as set forth directly above.

D.    The trustee used reasonable efforts to attract interested parties into making an offer for the Assets.

E.    After consideration of the matters of record as well as the observations made during the Site Visit, the Court concludes that (1) the Tangible Property is in poor condition and given the lack of interest by prospective third-party purchasers, likely has no value beyond salvage value; and (2) the amount of time, effort, and attorneys' fees expended by the parties in connection with the *Sale Motion* likely exceeds the value of Tangible Assets.

F.    The trustee received two Qualified Bids[4] for the Purchased Assets. After entertaining additional competitive bidding during an auction conducted on December 15, 2022, Shanni Snyder made the highest and best bid for the Purchased Assets (the "Successful Bidder") in the amount of $70,000 in cash (the "Purchase Price"). Christine Biros made the next highest bid (the "Back-Up Bidder") in the amount of $65,000 (the "Back-Up Purchase Price"), consisting of $55,000 in cash and a waiver of $10,000 for any administrative claim Biros may assert against the bankruptcy estate for use and occupancy of the Real Property.

G.    The Successful Bidder has acted in good faith with respect to the sale in accordance with In re Abbotts Dairies of Pa. Inc., 788 F.2d 143 (3d Cir. 1986). The Successful Bidder submitted *Shanni Snyder's Verified Disclosure Statement Under 28 U.S.C. § 1746* [Dkt. No. 224-1] and has further demonstrated to the Court that she has no agreements or arrangements with any other party to share in the benefits of the Purchased Assets other than disclosed to the Court.

---

[4]    As defined by the Court's *Amended Order* dated November 15, 2022 [Dkt. No. 213].

FILED
12/20/22 12:43 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| **U LOCK INC.,** | : | Chapter 7 |
| *Debtor.* | : | |
| | : | |
| **ROBERT H. SLONE**, in his capacity as chapter 7 trustee of U Lock, Inc., | : | |
| *Movant,* | : | |
| v. | : | Related to Dkt. Nos. 213, 217 |
| **CHRISTINE BIROS, GEORGE SNYDER, SHANNI SNYDER, FRED BANKS, RENEE BASISTA, DAVID PERLA, DENNY DULL, JOHN DULL, GLENN MOWRY, INW, JAR COAL COMPANY, JAMES CLAWSON, GARY CHERIPKA, JEFFREY SHAW, JENNIFER VERRICO, MARK MYKA, PA TURNPIKE TOLL BY PLATE, RSS, R.J. ABREU, PETERS PAINTING, R. WOODALL, SARA STUMME, RICOBERTO NEGRETE GALENO, SHARON McCANCE, SHELLY CHABANDE, BEN SHABANDE, TERRY NOLL, TONY DAVIS, UNITED STEEL WORKERS, WEST PENN POWER, WESTMORELAND COUNTY TAX CLAIM BUREAU, DANIELS & MILLER INC., MICHAEL BROTHERS, MON VALLEY RECYCLING, WESTMORELAND IRON & METAL, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, WESTMORELAND COUNTY, U.S. ENVIRONMENTAL PROTECTION AGENCY, NORTH HUNTINGDON TOWNSHIP, U.S. ATTORNEY – WESTERN DISTRICT OF PENNSYLVANIA, ATTORNEY GENERAL FOR COMMONWEALTH OF PENNSYLVANIA,** | : | |
| *Respondents.* | : | |

1

## ORDER CONFIRMING SALE OF TANGIBLE AND INTANGIBLE
## PERSONAL PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 363(f),
## FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

This matter is before the Court upon the *Trustee's Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. § 363(f) Free and Clear of All Liens, Claims, and Encumbrances* [Doc. 217] (the "Sale Motion")[1] wherein the chapter 7 trustee seeks authority to sell a substantial portion of the assets belonging to the Debtor, U Lock, Inc., including certain tangible and intangible property identified in the *Sale Motion*. Despite the modest value of the assets (as reflected on the Debtor's bankruptcy schedules), the proposed sale has drawn various responses and objections which necessitated three separate hearings (conducted on November 10, December 1, and December 15)[2] and prompted the Court to take the unusual step of conducting a site visit with the parties on December 2, 2022 (the "Site Visit") to view the three separate locations where the Debtor's assets are allegedly located. After considering the record made by the parties at the hearings, the Court finds that the relief requested in the *Sale Motion* is in the best interest of the bankruptcy estate and all creditors; and after due deliberation and with good and sufficient cause appearing; it is hereby **FOUND** and **DETERMINED** that:

A.     Subject to the exclusions in paragraph A(3), the trustee requests authority to sell the following assets (collectively, the "Purchased Assets"):[3]

1.     The Debtor's interest in the following intangible assets (collectively, the "Intangible Assets"):

all right, title, and interest in any and all claims, claims for relief, and causes of action that the Debtor, its bankruptcy estate, and/or

---

[1]   The *Sale Motion* amends the *Trustee's Motion for Sale of All Tangible and Intangible Personal Property of the Estate* [Dkt. No. 175].

[2]   The latter two hearings were scheduled as evidentiary hearings.

[3]   During the sale hearings, the parties raised discrete issues as to the scope and breadth of the assets to be conveyed. In rulings made during the sale hearing, the Court clarified and refined the description of the assets included in any sale. Accordingly, to the extent the definition of "Purchased Assets" differs from any prior iteration compiled by the trustee, the terms of this Order control.

the trustee may have had as of the petition date of April 27, 2022, including any actions under 11 U.S.C. §§ 544, 547, 548, and any other provision of the Bankruptcy Code, state law, or common law, including any such claims, claims for relief, and causes of action relating to the real property located at 14140 Route 30, North Huntingdon, Pennsylvania ("Real Property"), or any other real or personal property, business, activity, unpaid rents owed to the Debtor, and all intellectual property of the Debtor.

2.    The Debtor's interest in the following tangible assets (collectively,

the "Tangible Assets"):

all right, title, and interest in any and all tangible assets that the Debtor, its bankruptcy estate, and/or the trustee may have in the personal property of the estate listed on Schedules A/B (Exhibit "A" to *Sale Motion*), in additional assets identified on Exhibit "B" to *Sale Motion*, and in the property falling in the "Catch All" provision outlined in Paragraph 5.c. of the *Sale Motion*, including any interest of the Debtor in eight (8) land/sea containers, and any interest in the truck trailers situated in various locations on the Real Property (as referenced on Exhibit "C" to the *Sale Motion*).

3.    Notwithstanding the forgoing, the following tangible and intangible

assets are excluded from the sale and shall not constitute Purchased Assets (collectively, the

"Excluded Assets"):

any cash held by the trustee as well as the bankruptcy estate's possible claim against George Snyder for actions under 11 U.S.C. §§ 546 and 547.

B.    Sufficient notice of the sale hearing and sale was given by the trustee to the

creditors and parties in interest as shown by the certificate of service duly filed and that the named

parties were duly served with the *Sale Motion*.

C.    The said sale hearing was duly advertised on the Court's website pursuant

to W. PA. LBR 6004-1(c) on November 19, 2022 and in the *Tribune Review*, as shown by the

Proof of Publications duly filed at Dkt. No. 223.

3

H.    All objections or responses to the *Sale Motion* and the sale have either been resolved or were overruled by the Court for the reasons stated on the record on December 15, 2022. Accordingly, the Court finds no impediment to proceeding with the sale to the Successful Bidder (or, as applicable, the Back-Up Bidder) based on the terms of the *Sale Motion* as modified by this Order.

I.    That the terms of the sale of the Purchased Assets are fair and reasonable and in the best interest of the bankruptcy estate.

In consideration of the foregoing, it is hereby **ORDERED, ADJUDGED**, and **DECREED**, that:

1.    Pursuant to 11 U.S.C. § 363(b) and (f) and the equitable powers of the Court, the *Sale Motion* is **GRANTED** and the sale of all the right, title, and interest in the Purchased Assets under the terms and conditions of the *Sale Motion* and this *Order* is **APPROVED**.

2.    It is further **ORDERED** that:

(a)    The Successful Bidder shall deposit the Purchase Price (less any deposit previously paid to the trustee) in good funds with the trustee within five (5) days of the date of entry of this Order and upon compliance with her purchase obligations herein, the Successful Bidder shall be deemed the "Purchaser" of the Purchased Assets pursuant to the terms of this Order.

(b)    If the Successful Bidder does not deposit the required Purchase Price (less any deposit previously paid to the trustee) or does not close on the sale as required by this Order, the trustee is authorized and directed to immediately close on the sale and sell the Purchased Assets to the Back-Up Bidder at the Back-Up

Purchase Price (less any deposit made by the Back-Up Bidder). The Back-Up

Bidder shall deposit the required Back-Up Purchase Price and close within five (5)

days of receiving notice from the trustee that the Successful Bidder failed to satisfy

the terms of this Order.  Upon compliance with her purchase obligations herein, the

Back-Up Bidder shall be deemed the "Purchaser" of the Purchased Assets pursuant

to the terms of this Order.

3.      To the extent the Successful Bidder consummates the sale as the Purchaser,

any proceeds, property, and rights resulting from the Intangible Assets acquired by the Successful

Bidder pursuant to the sale shall, upon closing, be property of the Successful Bidder and the trustee,

the bankruptcy estate, and the Debtor shall not have any rights to such proceeds, property, and

rights beyond the following carve-outs for the bankruptcy estate (which amounts shall be

immediately paid to the trustee (on behalf of the bankruptcy estate) in the event any proceeds,

property, and/or rights are recovered on such indicated claims, actions, causes of actions and/or

claims for relief):

(a)      $100,000 of the net proceeds or value of any real property recovered

on any avoidance claims under chapter 5 of the Bankruptcy Code and/or under

applicable non-bankruptcy law or equity;

(b)      Twenty percent (20%) of the net proceeds of recovery on past due

rent claims; and

(c)      Twenty percent (20%) of net proceeds of recovery on any claim

prosecuted that does not result in the recovery of real property.

6

4.      The Court is not determining any current right to possession of the Real Property, and no current right to possession of the Real Property is included in the Purchased Assets or transferred to any purchaser pursuant to this Order.

5.      The Purchaser shall be entitled to copies of any records of the Debtor that are within the possession of the trustee and a written assignment of claims from the trustee with regard to any potential avoidance actions or similar claims included in the Purchased Assets, and the Purchaser will have the right to seek any records from the Debtor in the same manner that the trustee could.

6.      Subject to representations made by the Purchaser in these proceedings, the Purchaser may assign to a third party any of the claims, causes of action, and/or the rights purchased pursuant to this sale that comprise the Intangible Property, and/or any of the Tangible Property purchased pursuant to this sale.

7.      The Purchaser shall be permitted to bring any claims or causes of action included in the Purchased Assets in the Bankruptcy Court and shall have standing to bring such claims or causes of action over which the Bankruptcy Court shall retain jurisdiction, all to the same extent such standing and jurisdiction might exist if the claims or causes of action were held by the trustee.

8.      The Purchased Assets are sold to the Purchaser "as-is, where-is, with all faults" and without any representations or warranties from the trustee of any kind, including as to the quality or fitness of such Purchased Assets for either their intended use or any other purpose.

9.      Subject to 11 U.S.C. § 363(f), the transfer and assignment of the Purchased Assets to the Purchaser will be, as of the date of Closing (as defined herein), a legal, valid, and effective conveyance of the Purchased Assets, that as of the date of Closing shall vest in the

Purchaser all right, title, and interest in Purchased Assets free and clear of any interest in such Purchased Assets (collectively, the "Interests"), including, without limitation: (a) all liens and encumbrances relating to, attaching, accruing, or arising at any time prior to the Closing (collectively, the "Liens"); and (b) all debts arising under, relating to, or in connection with any act of the Debtor or any claims (as defined in 11 U.S.C. §101(5)), liabilities, obligations, demands, guarantees, options in favor of third parties, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this chapter 7 case, and whether imposed by agreement, understanding, law, equity, or otherwise (collectively, the "Claims").

10.     The provisions of this Order authorizing the sale of the Purchased Assets free and clear of liens, claims, and encumbrances shall be self-executing, and the Purchaser shall not be required to execute or file releases, termination statements, assignments, consents, or other documents or instruments in order to effectuate, consummate, and implement the foregoing provisions of this Order, provided, however, that this paragraph shall not excuse any parties from performing any and all of their respective obligations under this Order.

11.     The transfer and assignment of the Purchased Assets to the Purchaser constitutes a legal, valid, and effective transfer, assignment, and conveyance of the Purchased Assets, and shall vest the Purchaser with all right, title, and interest of the Debtor, its bankruptcy estate, and the trustee in and to the Purchased Assets.

12.     As of the date of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Purchased Assets transferring good and marketable title in and to the Purchased Assets to the Purchaser. Upon request of the Purchaser at Closing or thereafter, the trustee shall execute an

assignment or other necessary documents in order to effectuate this Order. This Order is and shall

be effective as a determination that, on the date of Closing, all Liens, Claims, encumbrances, and

any and all other Interests of any kind or nature whatsoever existing as to the Purchased Assets

prior to the Closing date, shall have been unconditionally released, discharged, and terminated,

and that the conveyances described herein have occurred. This Order is and shall be binding upon

and govern the acts of all persons, including, without limitation, all filing agents, filing officers,

administrative agencies, governmental departments, secretaries of state, federal and local officials,

and all other persons who may be required by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any documents or instruments, or

who may be required to report any title or state of title in or to any lease; and each of the foregoing

persons is hereby directed to accept for filing any and all of the documents and instruments

necessary and appropriate to consummate the transactions contemplated by the *Sale Motion* and

this Order. Each and every federal, state, and local governmental agency or department is hereby

directed to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the *Sale Motion* and this Order. A certified copy of

this Order may be filed with the appropriate clerk and/or filed or recorded with any other

governmental agency to act to release, waive, extinguish, discharge, terminate or cancel any Liens,

Claims, encumbrances, and any other Interests against the Purchased Assets.

13.     This Court shall retain jurisdiction to enforce the terms of this Order,

regardless of whether this chapter 7 case is closed.

14.     This Order shall survive any dismissal or conversion of the within case.

15.     This Order constitutes a final and appealable order within the meaning of

28 U.S.C. § 158(a).   Notwithstanding Rules 6004(h) and 6006(d) of the Federal Rules of

Bankruptcy Procedure, the Court expressly finds that there is no reason for delay in the implementation of this Order. This Order shall be effective immediately upon its entry, and the parties may consummate the transaction pursuant to the terms and conditions set forth in the *Sale Motion* and Order. To the extent that there are any discrepancies between the *Sale Motion* and this Order, this Order controls.

16.    Within five (5) business days following the consummation of the sale, the trustee shall file a Report of Sale.

17.    Closing of the sale shall occur within ten (10) days of the entry of this Order ("Closing").

18.    Purchaser must remove all Tangible Property from the Real Property within thirty (30) days from Closing. Likewise, Purchaser is permitted to proceed with removal of any Tangible Property that is located (i) at or near 51 Will Street, McKeesport, Pennsylvania, which real property is owned or controlled by Christine Biros ("Biros Property"), and is the location of certain items of the Tangible Property as observed during the Site Visit, and (ii) at or near the property commonly known as 150 Leger Road, North Huntington, Pennsylvania, which real property is owned or controlled by George Snyder and was the third location of the Site Visit (the "Leger Property"). Purchaser must remove all Tangible Property from the Biros Property within thirty (30) days from Closing. Because the Court has yet to establish why the Debtor's assets were moved to these locations, no claim for rent, storage fees, access fees, or otherwise shall exist nor may such claims be asserted by or on behalf of Biros and/or George Snyder as a result of the presence of Tangible Property on the Biros Property and/or the Leger Property. Any Tangible Property not removed by Purchaser or left behind on the Real Property, the Biros Property, and/or

10

the Leger Property as of the 31st day after Closing shall be deemed to have been abandoned by the Purchaser.

20. In the event that the date of any act required to be performed by this Order (including, but not limited to, the payment of any money and the removal of Tangible Property) falls on a weekend or a federal holiday, then the same shall not be required to be performed until the next business day thereafter.

20. The automatic stay provisions of 11 U.S.C. § 362 are vacated and modified to the extent necessary to implement the provisions of this Order and the terms and conditions of the sale to Purchaser.

BY THE COURT:

Dated: December 20, 2022

GREGORY TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE