# Exhibit 2

```
                    UNITED STATES BANKRUPTCY COURT
                    WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                          .    Case No. 22-20823-GLT
                                .
                                .
U LOCK INC,                     .    5414 U.S. Steel Tower
                                .    600 Grant Street
                                .    Pittsburgh, PA 15219
          Debtor.               .
                                .    December 15, 2022
. . . . . . . . . . . . ..           10:04 a.m.
```

TRANSCRIPT OF [#217] EVIDENTIARY HEARING ON AMENDED MOTION TO
SELL PROPERTY FREE AND CLEAR OF LIENS UNDER SECTION 363(f).
RE: TANGIBLE AND INTANGIBLE PERSONAL PROPERTY OF THE ESTATE
              BEFORE HONORABLE GREGORY L. TADDONIO
              UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Law Office of J. Allen Roth<br>By: J. ALLEN ROTH, ESQ.<br>805 S Alexandria Street<br>Latrobe, PA 15650 |
| For Christine Biros: | Bernstein-Burkley, P.C.<br>By: SARAH ELIZABETH WENRICH, ESQ.<br>    ROBERT S. BERNSTEIN, ESQ.<br>601 Grant Street, 9th Floor<br>Pittsburgh, PA 15219 |
| For Christine Biros,<br>Lead Counsel in the<br>State Court Action: | The Law Firm of William E. Otto<br>By: WILLIAM E. OTTO, ESQ.<br>4027 Old William Penn Highway<br>P.O. Box 701<br>Murrysville, PA 15668 |
| ECRO: | Hayley Smith |

Proceedings recorded by electronic sound recording, transcript
          produced by transcription service.

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail: jjcourt@jjcourt.com

(609) 586-____    (609) 587-3599

**EXHIBIT 2**

APPEARANCES (Cont'd):

| | |
|---|---|
| For Shanni Snyder,<br>Petitioning Creditor: | Grenen & Birsic, P.C.<br>By:  JOHN B. JOYCE, ESQ.<br>      JEREMY J. KOBESKI, ESQ.<br>One Gateway Center, Suite 9W<br>Pittsburgh, PA 15222 |

TELEPHONIC APPEARANCE:

| | |
|---|---|
| Chapter 7 Trustee: | Mahady & Mahady<br>By:  ROBERT H. SLONE, ESQ.<br>223 South Maple Avenue<br>Greensburg, PA 15601 |

- - -

1    MS. WENRICH:  So, Your Honor, with respect to the
2  auction, I think it has been verified or it's in her Affidavit
3  that the money is coming from a loan from USAAG, who was
4  originally a bidder, and had they not been working together
5  now, it's our position that perhaps Ms. Snyder and USAAG could
6  have bid against each other further than my client was willing
7  to bid, which would leave more money for the Estate, and also
8  provide a higher recovery to all admin claims, and perhaps a
9  higher recovery to general -- or any recovery to general
10 unsecured creditors, which based on the sale right now, is not
11 occurring.
12   THE COURT:  Okay.  Well, there's no -- there's no
13 prohibition from parties working together on a bid.
14   MS. WENRICH:  There's not a prohibition, but I think
15 in this case, given the relationship and given the fact that we
16 have not been given a full disclosure, I'm not sure that the
17 evidence on the record establishes any finding of good faith.
18 In fact, I think it questions a lot of the circumstances and
19 would indicate, at least a potential, a high potential of bad
20 faith or lack of good faith for 363(m) purposes.
21   THE COURT:  So, are you prepared to put on evidence
22 of how Ms. Snyder has not acted in good faith in this
23 proceeding here, with respect to the bid?
24   MS. WENRICH:  Yes, I'm -- I'm ready to call her and
25 examine her as to how she obtained the funds and the

1  circumstances surrounding her relationship with USAAG.

2          MR. JOYCE:  And I will note, Your Honor, that she --
3  we're responding -- Ms. Snyder is actually -- the ultimate sale
4  was proffered by them.  Although, USAAG at one time was
5  interested, the ultimate sale that we're responding to and we
6  outbid is the Biros' bid, so they set the terms and the process
7  here, and she's just bidding on funds that she's been loaned.

8          I don't see how there's any bad faith.  She didn't
9  set this up and try to structure it in any way that, you know,
10 slants it.  In fact, if anything, we felt the terms were
11 slanted against her and anybody else, and we raised those
12 objections.  But, I think her -- her Statement and Declaration,
13 under penalty of perjury and Affidavit, addresses very clearly
14 who she's getting the money from, and that it's a loan and, you
15 know, we can -- I mean, it's -- there's -- there's nothing more
16 to it than that.

17         THE COURT:  All right.  Well, here's what I'm going
18 to do first.  I want to give some clarification of where I am
19 on this.  I mean, I'm not sure that the parties are aware, but
20 I have a pretty high sensitivity to any funny business that
21 goes on in my 363 sales.  And as you may have seen, I wrote an
22 opinion on it about a year or two ago in the _Primel_ case where
23 I found that a bidder did not act in good faith, and I actually
24 sanctioned that bidder for their actions.  So, I take that
25 seriously and I -- I certainly will delete a good faith finding

1 where I think it's appropriate. But I can tell you, as I sit
2 here right now, I'm not seeing a colorable allegation that she
3 has acted in bad faith with respect to the auction process.
4 　　　　Again, I think this is coming back to trying to
5 litigate this case like it's a multi-million dollar enterprise
6 and this is, you know, raising issues and creating problems
7 that aren't there. So, as I've gone through this process and
8 we've had three sale hearings and, you know, I've had my own
9 observations about, you know, Ms. Snyder's motivations by
10 commencing this case and what she's done with her own Chapter 7
11 case.
12 　　　　So, I mean, you know, I've made no bones about what
13 my thoughts are on some of those things. But, as we are
14 dealing with the bidding process itself, I have not seen
15 anything to date that would suggest that she was not acting in
16 good faith in bidding for the asset or working with another
17 entity to obtain the funding to make that bid. So, I'm not
18 really inclined to go down this road unless there is a there
19 there, because again we are wasting gobs of attorney time and
20 expense going through these issues for assets that have nominal
21 value here. So --
22 　　　　MR. OTTO: Your Honor?
23 　　　　THE COURT: Yes?
24 　　　　MR. OTTO: Pardon me. Will you indulge me for a
25 moment? I --

1    THE COURT:  I will, and I'll note for the record,
2 this is now a third attorney from Ms. Biros that has spoken at
3 this hearing today, which again underscores my problem with the
4 fact that this is being over lawyered and overmanaged.
5    MR. OTTO:  I understand that, Your Honor, and I
6 apologize for that, but if I -- if you'll indulge me for a
7 moment, I just want to bring a couple things to your attention.
8 First of all, in Ms. Snyder's 341 Hearing for her own
9 Bankruptcy Court, she has no assets, no hard assets.  She has
10 claims to different -- but she has no hard assets.  She has no
11 income.  She has no visible means of support.
12    She now has a 63,500 -- presumably she's going to get
13 enough money to close on the loan.  She has no way to pay that
14 loan, and so she would be in immediate default and USAAG would
15 have the right to come in and take it over.  Your order
16 required a full disclosure of all parties associated with it.
17 Nobody from USAAG is here.  Their mailing address is a drop box
18 in a small town in Connecticut.  We have not been able to find
19 them as an incorporated entity in any of the 50 states.
20 They're not authorized to do business in the Commonwealth of
21 Pennsylvania.
22    So, we have every reason to believe that the real
23 bidder here is not Shanni Snyder, but rather USAAG, and while
24 you can certainly make a decision to award it to Shanni Snyder,
25 what's going on is not necessarily a sale to Shanni Snyder,

1  ultimately.

2  And, in addition, Mr. Joyce has done a very good job
3  of dancing around the facts, but in point of fact, I've been
4  dealing with the Snyder family for five years in this case. It
5  has not been a pleasant experience. My client has expended a
6  tremendous amount in both my fees and Mr. Bernstein's firm's
7  fees. The long and the short of it is, Mr. Roth has admitted
8  in open court that he hasn't been paid a dime for his service
9  to U LOCK. If Shanni Snyder has no way to pay Mr. Joyce, then
10 he's either working for free, or he's being paid by somebody
11 else. He doesn't have to disclose who he is being paid for,
12 and that's not a requirement, but the long and the short of it
13 is, this whole exercise is an exercise intended to force Ms.
14 Biros to continue to defend her property, and that makes this
15 bad faith, if not -- if not in strict construct to the
16 Bankruptcy Code, certainly in terms of reality.

17   MR. JOYCE: Your Honor, may I reply?
18   MR. OTTO: Thank you for your patience, Your Honor.
19   THE COURT: Just a second. I want to pull up the
20 verification.

21              (Pause)

22   THE COURT: All right. Mr. Joyce?
23   MR. JOYCE: Mr. Otto's statement on conjecture, the
24 funds are in my escrow account at my firm to consummate this
25 sale. She has a loan with USAAG. It has -- we have a note and

1  she has terms of that -- of that note that she's got to deal
2  with, but that's her private business, but you know if the
3  Court wanted more information on that, we could give the Court
4  more information on that, but --
5        THE COURT:  Well, who is USAAG?
6        MR. JOYCE:  USAAG is an investment company.  They are
7  -- I can -- I have -- I have a verified, certified under
8  penalty of perjury, certified statement from them if necessary
9  for the Court that I can provide the Court about them.  I can
10 summarize.  Mr. Rick Bowen is the Chief Financial Officer of
11 USAAG.  They maintain offices in Connecticut.  They have no
12 ownership interest in U LOCK.  They don't own stock in U LOCK,
13 and they don't -- they're not a creditor of U LOCK.  They don't
14 have any business activity with U LOCK other than, as the Court
15 knows, at one point they were interested in financing the
16 Chapter 11 and have an interest in developing the property, but
17 they don't have any relationship or affiliation with Ms.
18 Snyder, other than now Debtor-Creditor, or any of the other
19 parties here.
20       And then, you know, they learned about this property
21 back in 2008 from another -- 2018, I'm sorry.  I mean, I can
22 provide this to the Court, but it -- it addresses who they are,
23 and we also have a copy of the redacted note.  I don't want to
24 put the dollar amount in there because I don't want anybody to
25 know how much he had available for bidding, but I mean I think

1  we're -- this goes back to the Court's initial comment, there's
2  nothing colorable here.  This is Mr. Otto raising conjecture,
3  and he has no evidence to the other.  I feel like I'm defending
4  against something that he hasn't, you know, attacked with any
5  concrete evidence.  I'm defending a negative.
6          MR. OTTO:  Your Honor, just advise Your Honor --
7          MR. JOYCE:  I can provide to the Court, Your Honor,
8  under, you know, penalty of perjury, Mr. Rick Bowen, the CFO's
9  statement, for the record.
10         THE COURT:  All right.  Mr. Otto?
11         MR. OTTO:  Your Honor, Mr. Joyce has said they're an
12 investment company.  Where are they?  Number one, why -- are
13 they incorporated anywhere?  Is it a fictitious name?  Are they
14 --
15         THE COURT:  What difference does it make?
16         MR. OTTO:  Because, Your Honor, this is a sham for
17 them not to show up in Court.  We don't know who USAAG is and
18 the fact of the matter is --
19         THE COURT:  Well --
20         MR. OTTO:  -- the way it's set up --
21         THE COURT:  -- if she got the money, though, from a
22 family member, it would be the same question I would have, is
23 what difference does it make?  How is it altering the bidding
24 process here?
25         MR. OTTO:  It would be nice to know who the real

1  parties in interest are, Your Honor, your order requires it.
2      MR. JOYCE:  The real party in interest is Ms. Shanni
3  Snyder, sitting right here, Your Honor.  And lenders, I
4  believe, don't even have to register in the State of
5  Pennsylvania if they're going to do lending.  I've dealt with
6  that issue in the past.  It's not -- I think Mr. Otto may be a
7  little bit off on that, but --
8      THE COURT:  I mean, the bottom line is, again, I have
9  concerns about how the involuntary petition was orchestrated
10 from the beginning, but as to this auction process, it's been
11 exposed to full and fair bidding.  We had the opportunity to
12 have other parties come in.  Your client had the opportunity to
13 bid.  Ms. Snyder had the opportunity to bid.  We exposed the
14 property.  I'm not seeing any collusion or something else that
15 would render this to be a not a good faith bidder based on
16 what's being proposed at this point.  You know, this is -- this
17 is an issue of understanding better more of where the funding
18 is coming from.  I've got disclosures on that, but a lot of
19 that's an issue for her case, as well.  So, I just -- I
20 struggle to see a there there, again.  So, anything else that
21 the parties want to raise at this point?
22              (No audible response)
23     THE COURT:  All right.  I'm going to make some
24 additional findings for the record here.  First is -- I have an
25 objection from U LOCK that I indicated before that I wanted to

1  sale order, and we will move on from there.  Thank you.
2          MR. JOYCE:  Your Honor, thank you.
3          UNIDENTIFIED SPEAKER:  Thank you, Judge.
4                       * * * * *
5                   **C E R T I F I C A T I O N**
6          I, WENDY ANTOSIEWICZ, court approved transcribers,
7  certify that the foregoing is a correct transcript from the
8  official electronic sound recording of the proceedings in the
9  above-entitled matter, and to the best of our ability.
10
11 /s/ Wendy Antosiewicz
12 WENDY ANTOSIEWICZ
13 J&J COURT TRANSCRIBERS, INC.           DATE:  December 28, 2022