# Exhibit 3

FILED
12/20/22 12:43 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 22-20823-GLT |
| U LOCK INC., | Chapter 7 |
| *Debtor.* | |
| ROBERT H. SLONE, in his capacity as chapter 7 trustee of U Lock, Inc., | |
| *Movant,* | |
| v. | Related to Dkt. Nos. 213, 217 |
| CHRISTINE BIROS, GEORGE SNYDER, SHANNI SNYDER, FRED BANKS, RENEE BASISTA, DAVID PERLA, DENNY DULL, JOHN DULL, GLENN MOWRY, INW, JAR COAL COMPANY, JAMES CLAWSON, GARY CHERIPKA, JEFFREY SHAW, JENNIFER VERRICO, MARK MYKA, PA TURNPIKE TOLL BY PLATE, RSS, R.J. ABREU, PETERS PAINTING, R. WOODALL, SARA STUMME, RICOBERTO NEGRETE GALENO, SHARON McCANCE, SHELLY CHABANDE, BEN SHABANDE, TERRY NOLL, TONY DAVIS, UNITED STEEL WORKERS, WEST PENN POWER, WESTMORELAND COUNTY TAX CLAIM BUREAU, DANIELS & MILLER INC., MICHAEL BROTHERS, MON VALLEY RECYCLING, WESTMORELAND IRON & METAL, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, WESTMORELAND COUNTY, U.S. ENVIRONMENTAL PROTECTION AGENCY, NORTH HUNTINGDON TOWNSHIP, U.S. ATTORNEY – WESTERN DISTRICT OF PENNSYLVANIA, ATTORNEY GENERAL FOR COMMONWEALTH OF PENNSYLVANIA, | |
| *Respondents.* | |



EXHIBIT 3

## ORDER CONFIRMING SALE OF TANGIBLE AND INTANGIBLE
## PERSONAL PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 363(f),
## FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

This matter is before the Court upon the *Trustee's Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. § 363(f) Free and Clear of All Liens, Claims, and Encumbrances* [Doc. 217] (the "Sale Motion")[1] wherein the chapter 7 trustee seeks authority to sell a substantial portion of the assets belonging to the Debtor, U Lock, Inc., including certain tangible and intangible property identified in the *Sale Motion*. Despite the modest value of the assets (as reflected on the Debtor's bankruptcy schedules), the proposed sale has drawn various responses and objections which necessitated three separate hearings (conducted on November 10, December 1, and December 15)[2] and prompted the Court to take the unusual step of conducting a site visit with the parties on December 2, 2022 (the "Site Visit") to view the three separate locations where the Debtor's assets are allegedly located. After considering the record made by the parties at the hearings, the Court finds that the relief requested in the *Sale Motion* is in the best interest of the bankruptcy estate and all creditors; and after due deliberation and with good and sufficient cause appearing; it is hereby **FOUND** and **DETERMINED** that:

  A. Subject to the exclusions in paragraph A(3), the trustee requests authority to sell the following assets (collectively, the "Purchased Assets"):[3]

    1. The Debtor's interest in the following intangible assets (collectively, the "Intangible Assets"):

> all right, title, and interest in any and all claims, claims for relief, and causes of action that the Debtor, its bankruptcy estate, and/or

---

[1] The *Sale Motion* amends the *Trustee's Motion for Sale of All Tangible and Intangible Personal Property of the Estate* [Dkt. No. 175].

[2] The latter two hearings were scheduled as evidentiary hearings.

[3] During the sale hearings, the parties raised discrete issues as to the scope and breadth of the assets to be conveyed. In rulings made during the sale hearing, the Court clarified and refined the description of the assets included in any sale. Accordingly, to the extent the definition of "Purchased Assets" differs from any prior iteration compiled by the trustee, the terms of this Order control.

2

the trustee may have had as of the petition date of April 27, 2022, including any actions under 11 U.S.C. §§ 544, 547, 548, and any other provision of the Bankruptcy Code, state law, or common law, including any such claims, claims for relief, and causes of action relating to the real property located at 14140 Route 30, North Huntingdon, Pennsylvania ("Real Property"), or any other real or personal property, business, activity, unpaid rents owed to the Debtor, and all intellectual property of the Debtor.

2. The Debtor's interest in the following tangible assets (collectively, the "Tangible Assets"):

all right, title, and interest in any and all tangible assets that the Debtor, its bankruptcy estate, and/or the trustee may have in the personal property of the estate listed on Schedules A/B (Exhibit "A" to *Sale Motion*), in additional assets identified on Exhibit "B" to *Sale Motion*, and in the property falling in the "Catch All" provision outlined in Paragraph 5.c. of the *Sale Motion*, including any interest of the Debtor in eight (8) land/sea containers, and any interest in the truck trailers situated in various locations on the Real Property (as referenced on Exhibit "C" to the *Sale Motion*).

3. Notwithstanding the forgoing, the following tangible and intangible assets are excluded from the sale and shall not constitute Purchased Assets (collectively, the "Excluded Assets"):

any cash held by the trustee as well as the bankruptcy estate's possible claim against George Snyder for actions under 11 U.S.C. §§ 546 and 547.

B. Sufficient notice of the sale hearing and sale was given by the trustee to the creditors and parties in interest as shown by the certificate of service duly filed and that the named parties were duly served with the *Sale Motion*.

C. The said sale hearing was duly advertised on the Court's website pursuant to W. PA. LBR 6004-1(c) on November 19, 2022 and in the *Tribune Review*, as shown by the Proof of Publications duly filed at Dkt. No. 223.

3

D.  The trustee used reasonable efforts to attract interested parties into making an offer for the Assets.

E.  After consideration of the matters of record as well as the observations made during the Site Visit, the Court concludes that (1) the Tangible Property is in poor condition and given the lack of interest by prospective third-party purchasers, likely has no value beyond salvage value; and (2) the amount of time, effort, and attorneys' fees expended by the parties in connection with the *Sale Motion* likely exceeds the value of Tangible Assets.

F.  The trustee received two Qualified Bids[4] for the Purchased Assets. After entertaining additional competitive bidding during an auction conducted on December 15, 2022, Shanni Snyder made the highest and best bid for the Purchased Assets (the "Successful Bidder") in the amount of $70,000 in cash (the "Purchase Price"). Christine Biros made the next highest bid (the "Back-Up Bidder") in the amount of $65,000 (the "Back-Up Purchase Price"), consisting of $55,000 in cash and a waiver of $10,000 for any administrative claim Biros may assert against the bankruptcy estate for use and occupancy of the Real Property.

G.  The Successful Bidder has acted in good faith with respect to the sale in accordance with In re Abbotts Dairies of Pa. Inc., 788 F.2d 143 (3d Cir. 1986). The Successful Bidder submitted *Shanni Snyder's Verified Disclosure Statement Under 28 U.S.C. § 1746* [Dkt. No. 224-1] and has further demonstrated to the Court that she has no agreements or arrangements with any other party to share in the benefits of the Purchased Assets other than disclosed to the Court.

---

[4] As defined by the Court's *Amended Order* dated November 15, 2022 [Dkt. No. 213].

H.    All objections or responses to the *Sale Motion* and the sale have either been resolved or were overruled by the Court for the reasons stated on the record on December 15, 2022. Accordingly, the Court finds no impediment to proceeding with the sale to the Successful Bidder (or, as applicable, the Back-Up Bidder) based on the terms of the *Sale Motion* as modified by this Order.

I.    That the terms of the sale of the Purchased Assets are fair and reasonable and in the best interest of the bankruptcy estate.

In consideration of the foregoing, it is hereby **ORDERED, ADJUDGED,** and **DECREED**, that:

1.    Pursuant to 11 U.S.C. § 363(b) and (f) and the equitable powers of the Court, the *Sale Motion* is **GRANTED** and the sale of all the right, title, and interest in the Purchased Assets under the terms and conditions of the *Sale Motion* and this *Order* is **APPROVED**.

2.    It is further **ORDERED** that:

(a)    The Successful Bidder shall deposit the Purchase Price (less any deposit previously paid to the trustee) in good funds with the trustee within five (5) days of the date of entry of this Order and upon compliance with her purchase obligations herein, the Successful Bidder shall be deemed the "Purchaser" of the Purchased Assets pursuant to the terms of this Order.

(b)    If the Successful Bidder does not deposit the required Purchase Price (less any deposit previously paid to the trustee) or does not close on the sale as required by this Order, the trustee is authorized and directed to immediately close on the sale and sell the Purchased Assets to the Back-Up Bidder at the Back-Up

Purchase Price (less any deposit made by the Back-Up Bidder). The Back-Up Bidder shall deposit the required Back-Up Purchase Price and close within five (5) days of receiving notice from the trustee that the Successful Bidder failed to satisfy the terms of this Order. Upon compliance with her purchase obligations herein, the Back-Up Bidder shall be deemed the "Purchaser" of the Purchased Assets pursuant to the terms of this Order.

3. To the extent the Successful Bidder consummates the sale as the Purchaser, any proceeds, property, and rights resulting from the Intangible Assets acquired by the Successful Bidder pursuant to the sale shall, upon closing, be property of the Successful Bidder and the trustee, the bankruptcy estate, and the Debtor shall not have any rights to such proceeds, property, and rights beyond the following carve-outs for the bankruptcy estate (which amounts shall be immediately paid to the trustee (on behalf of the bankruptcy estate) in the event any proceeds, property, and/or rights are recovered on such indicated claims, actions, causes of actions and/or claims for relief):

(a) $100,000 of the net proceeds or value of any real property recovered on any avoidance claims under chapter 5 of the Bankruptcy Code and/or under applicable non-bankruptcy law or equity;

(b) Twenty percent (20%) of the net proceeds of recovery on past due rent claims; and

(c) Twenty percent (20%) of net proceeds of recovery on any claim prosecuted that does not result in the recovery of real property.

4. The Court is not determining any current right to possession of the Real Property, and no current right to possession of the Real Property is included in the Purchased Assets or transferred to any purchaser pursuant to this Order.

5. The Purchaser shall be entitled to copies of any records of the Debtor that are within the possession of the trustee and a written assignment of claims from the trustee with regard to any potential avoidance actions or similar claims included in the Purchased Assets, and the Purchaser will have the right to seek any records from the Debtor in the same manner that the trustee could.

6. Subject to representations made by the Purchaser in these proceedings, the Purchaser may assign to a third party any of the claims, causes of action, and/or the rights purchased pursuant to this sale that comprise the Intangible Property, and/or any of the Tangible Property purchased pursuant to this sale.

7. The Purchaser shall be permitted to bring any claims or causes of action included in the Purchased Assets in the Bankruptcy Court and shall have standing to bring such claims or causes of action over which the Bankruptcy Court shall retain jurisdiction, all to the same extent such standing and jurisdiction might exist if the claims or causes of action were held by the trustee.

8. The Purchased Assets are sold to the Purchaser "as-is, where-is, with all faults" and without any representations or warranties from the trustee of any kind, including as to the quality or fitness of such Purchased Assets for either their intended use or any other purpose.

9. Subject to 11 U.S.C. § 363(f), the transfer and assignment of the Purchased Assets to the Purchaser will be, as of the date of Closing (as defined herein), a legal, valid, and effective conveyance of the Purchased Assets, that as of the date of Closing shall vest in the

Purchaser all right, title, and interest in Purchased Assets free and clear of any interest in such Purchased Assets (collectively, the "Interests"), including, without limitation: (a) all liens and encumbrances relating to, attaching, accruing, or arising at any time prior to the Closing (collectively, the "Liens"); and (b) all debts arising under, relating to, or in connection with any act of the Debtor or any claims (as defined in 11 U.S.C. §101(5)), liabilities, obligations, demands, guarantees, options in favor of third parties, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this chapter 7 case, and whether imposed by agreement, understanding, law, equity, or otherwise (collectively, the "Claims").

10. The provisions of this Order authorizing the sale of the Purchased Assets free and clear of liens, claims, and encumbrances shall be self-executing, and the Purchaser shall not be required to execute or file releases, termination statements, assignments, consents, or other documents or instruments in order to effectuate, consummate, and implement the foregoing provisions of this Order, provided, however, that this paragraph shall not excuse any parties from performing any and all of their respective obligations under this Order.

11. The transfer and assignment of the Purchased Assets to the Purchaser constitutes a legal, valid, and effective transfer, assignment, and conveyance of the Purchased Assets, and shall vest the Purchaser with all right, title, and interest of the Debtor, its bankruptcy estate, and the trustee in and to the Purchased Assets.

12. As of the date of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Purchased Assets transferring good and marketable title in and to the Purchased Assets to the Purchaser. Upon request of the Purchaser at Closing or thereafter, the trustee shall execute an

assignment or other necessary documents in order to effectuate this Order. This Order is and shall be effective as a determination that, on the date of Closing, all Liens, Claims, encumbrances, and any and all other Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing date, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have occurred. This Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report any title or state of title in or to any lease; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the *Sale Motion* and this Order. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the *Sale Motion* and this Order. A certified copy of this Order may be filed with the appropriate clerk and/or filed or recorded with any other governmental agency to act to release, waive, extinguish, discharge, terminate or cancel any Liens, Claims, encumbrances, and any other Interests against the Purchased Assets.

13. This Court shall retain jurisdiction to enforce the terms of this Order, regardless of whether this chapter 7 case is closed.

14. This Order shall survive any dismissal or conversion of the within case.

15. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Rules 6004(h) and 6006(d) of the Federal Rules of

Bankruptcy Procedure, the Court expressly finds that there is no reason for delay in the implementation of this Order. This Order shall be effective immediately upon its entry, and the parties may consummate the transaction pursuant to the terms and conditions set forth in the *Sale Motion* and Order. To the extent that there are any discrepancies between the *Sale Motion* and this Order, this Order controls.

16. Within five (5) business days following the consummation of the sale, the trustee shall file a Report of Sale.

17. Closing of the sale shall occur within ten (10) days of the entry of this Order ("Closing").

18. Purchaser must remove all Tangible Property from the Real Property within thirty (30) days from Closing. Likewise, Purchaser is permitted to proceed with removal of any Tangible Property that is located (i) at or near 51 Will Street, McKeesport, Pennsylvania, which real property is owned or controlled by Christine Biros ("Biros Property"), and is the location of certain items of the Tangible Property as observed during the Site Visit, and (ii) at or near the property commonly known as 150 Leger Road, North Huntington, Pennsylvania, which real property is owned or controlled by George Snyder and was the third location of the Site Visit (the "Leger Property"). Purchaser must remove all Tangible Property from the Biros Property within thirty (30) days from Closing. Because the Court has yet to establish why the Debtor's assets were moved to these locations, no claim for rent, storage fees, access fees, or otherwise shall exist nor may such claims be asserted by or on behalf of Biros and/or George Snyder as a result of the presence of Tangible Property on the Biros Property and/or the Leger Property. Any Tangible Property not removed by Purchaser or left behind on the Real Property, the Biros Property, and/or

the Leger Property as of the 31st day after Closing shall be deemed to have been abandoned by the Purchaser.

19. In the event that the date of any act required to be performed by this Order (including, but not limited to, the payment of any money and the removal of Tangible Property) falls on a weekend or a federal holiday, then the same shall not be required to be performed until the next business day thereafter.

20. The automatic stay provisions of 11 U.S.C. § 362 are vacated and modified to the extent necessary to implement the provisions of this Order and the terms and conditions of the sale to Purchaser.

BY THE COURT:

Dated: December 20, 2022

_____
GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE