**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>U LOCK INC,<br><br>        Debtor. | Bankruptcy No. 22-20823<br><br>Chapter 7<br><br>Related Doc. No. 340 |
| CHRISTINE BIROS,<br><br>        Movant,<br><br>        v.<br><br>SHANNI SNYDER,<br><br>        Respondent. | |

## POST-TRIAL BRIEF IN SUPPORT OF CHRISTINE BIROS' OBJECTION TO SHANNI SNYDER'S PROOF OF CLAIM

AND NOW comes Christine Biros ("Ms. Biros"), by and through her undersigned counsel, and files this post-trial brief in support of the *Objection to Claim Number 1 Filed by Shanni Snyder* [Doc. No. 340] (the "Objection") related to the proof of claim [Claim No. 1-1] (the "Claim") filed by Shanni Snyder ("Ms. Snyder") and in support of the Objection, Ms. Biros avers as follows:

### PRELIMINARY STATEMENT

The Claim is incredible on its face. Ms. Snyder alleges that she worked for the Debtor, U Lock Inc., by monitoring a video surveillance system for ten consecutive hours, from 5:00 p.m. to 3:00 a.m., every single day for more than 1,500 straight days. During that time, she gave birth to two children and had a third minor child living with her. She asserts that she took no vacation or sick days at all during that time.

1

Despite both this implausibility and this Court's clear statement that Ms. Snyder has the burden of proof to validate her claim, Ms. Snyder has failed to provide any credible evidence to support her allegations.  Instead, the only evidence before this Court from the claimed work period are Ms. Snyder's own documents, which she created and filed under penalty of perjury, that state that she was unemployed and was not owed unpaid wages from any party.

Ms. Snyder's unsubstantiated and self-serving testimony contradicts documents that were actually created during the relevant time period.  As Ms. Biros has set forth numerous times, it is vastly more likely that the facts surrounding Ms. Snyder's claim against the Debtor were fabricated to harass Ms. Biros and attempt to impede Ms. Biros' ownership and possession of the real property where the Debtor operated (the "<u>Subject Property</u>").

Thus, the Claim must be disallowed.

## **<u>LEGAL STANDARD</u>**

This Court has concluded that there is no presumptive validity to the Claim.  Tr. 11-12.[1]  The Third Circuit has described the burden related to a proof of claim and claim objection under these circumstances:

> The law concerning an objection to a proof of claim is well-settled. The burden of going forward lies with different parties at various stages, The initial burden lies with the claimant, who must allege sufficient facts to establish the prima facie validity of the claim. If the claimant does so, the burden then shifts to the objector to produce evidence which is "equal in force" to the evidence establishing the prima facie validity of the claim. The objector must produce evidence which, if believed, would defeat at least one of the essential elements of the claim. If the objector succeeds in this regard, the burden then shifts to the claimant to prove the validity of the claim by a preponderance of the evidence.

> While the burden of production may shift, the burden of persuasion does not. It lies with the claimant throughout.

---

[1] "Tr. ___" refers to the indicated page of the Transcript of the July 14, 2023 Evidentiary Hearing before this Court.

*In re Wolfe,* 378 B.R. 96, 102 (Bankr. W.D. Pa. 2007) (citing *In re Allegheny Int'l Inc.,* 654 F.2d 165, 173-76 (3d Cir. 1991)). "The ultimate burden of proof always rests upon the claimant." *In re High Std. Mfg. Co.,* No. 15-33794, 2016 Bankr. LEXIS 3701*, at *7 (Bankr. S.D. Tex. Oct. 13, 2016).

With regard to the evidentiary standard, the Third Circuit has made clear that the claimant must prove the validity of the claim by a "preponderance of the evidence" by demonstrating that it is more likely than not that a claim is val*id. See also Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 329 (2007); *Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152 (Bankr. E.D. Pa. 2008) ("preponderance of the evidence standard means that the existence of a fact is more likely than not).

## THE FACTS

### A. Ms. Snyder

Ms. Snyder is the sister of George Snyder ("George") and Kash Snyder ("Kash"). Tr. 18, 30. In filing this involuntary bankruptcy proceeding, Ms. Snyder identified George and Kash, but no one else, as "managing control persons" of U Lock. Tr. 76, BX-10 at 219.[2] U Lock has claimed an ownership interest in the Subject Property, which is real property located on Route 30 in North Huntington Township, Westmoreland County, Pennsylvania. *See generally* BX-5, BX-6.

In January 2016, Ms. Snyder was or would soon become a parent to newborn twins. Tr. 17. At that time, she also still had another minor child who lived with her. That child graduated from high school in 2018. Tr. 23, 76.

---

[2] "BX-__" refers to the corresponding number of the exhibits that Biros offered at that hearing. Where a reference to a "BX" exhibit includes a notation of "at ___," that notation refers to the sequential page number from the exhibits that Biros offered at that hearing." "SX-__" refers to the corresponding letter of the exhibits that Biros offered at that hearing.

Ms. Snyder has, by her own admission, "been in Court for the last 15 years." Tr. 71.

**B.   Ms. Snyder's 2018 Statements to the Court of Common Pleas of Westmoreland County**

In March 2018, Ms. Snyder wanted to commence a proceeding in the Court of Common Pleas of Westmoreland County. Tr. 41-42. When she learned that she would need to pay a filing fee to begin that proceeding, she filed a petition with that court in which she sought leave to proceed *in forma pauperis*. Tr. 42; BX-1. Ms. Snyder intended for that court to rely on those statements and allow her to file her new case without paying the filing fee. Tr. 46. She signed that petition twice. Tr. 43-45; BX-1 at 1, 5. Above both signatures, her petition stated that she was making her statements pursuant to 18 Pa. C.S. § 4904, which provides criminal penalties for unsworn falsification to authorities. *Id.* Ms. Snyder read those statements in her petition before signing it. Tr. 45. She told that court that her verification "fully and truthfully describes [her] current income and financial condition." BX-1 at 1.

In her petition, Ms. Snyder checked a box that stated, "I am unemployed and receive no other income or benefits." Tr. 43; BX-1 at 1. Notwithstanding the form's request to provide information from any employer, she did not provide any information from U Lock. Tr. 43; BX-1 at 1. In the accompanying verification, Ms. Snyder identified her employer as "N/A." Tr. 45; BX-1 at 2. Ms. Snyder also stated that she could not obtain funds to pay that court's filing fee from "family and associates" or from anyone else and that she did not own any sort of property. Tr. 46; BX-1 at 2, 4.

That court did, in fact, rely on Ms. Snyder's statements; it granted her petition and allowed her to proceed without paying filing fees. Tr. 46; BX-1 at 1.

### C. Ms. Snyder's 2018 Statements to This Court

Two months later, on May 15, 2018, Ms. Snyder filed her own voluntary petition with this Court.  In her petition, she sought protection pursuant to Chapter 7 of the Bankruptcy Code.  Tr. 47; BX-2.  Ms. Snyder attempted to tell the truth in completing her petition.  Tr. 48.  She appreciated the need to provide complete information in her petition and its accompanying schedules.  Tr. 49.  Ms. Snyder understands that, at the time she filed her petition, her creditors would have wanted a true and complete statement of her assets.  Tr. 60.

Ms. Snyder signed her filings in at least two places:

- In the petition, Ms. Snyder signed underneath a declaration under penalty of perjury that the information she had provided was "true and correct" and a statement about the potential penalties for bankruptcy fraud.  Tr. 49; BX-2 at 11.

- Ms. Snyder signed underneath a declaration, also under penalty of perjury, that the schedules were "true and correct."  T. 50, BX-2 at 16.  That form also included information about the penalties for bankruptcy fraud.  BX-2 at 16.

Ms. Snyder completed a "Schedule A/B," which asked her to identify her property.  In Question 30 of that form, this Court asked Ms. Snyder to identify "Other amounts someone owes you."  As its first example of the type of information this question sought, this Court's form identified "[u]npaid wages."  For this question, Ms. Snyder checked the box for "No."  BX-2 at 23.[3]  Nothing prevented Ms. Snyder from reading or understanding this question in 2018.  Tr. 52.  She did not list any claim for unpaid wages anywhere else on the schedule.  Tr. 54-55.  She told this Court that she had financial assets of $225.00 and that all of her assets totaled $3,925.00.  BX-2 at 26.

Ms. Snyder's Schedule I, titled "Your Income," advised her to be "as complete and accurate as possible."  In it, Ms. Snyder checked the box stating that she was "Not employed."  She stated

---

[3] By contrast, in responding to this Court's request that she identify "Claims against third parties," Snyder reported a potential claim against a local police department.  BX-2 at 24.

that her occupation was "not applicable."  She provided no information at all in the section of the schedule that asked her for her employer's name and address.  BX-2 at 50.

In June 2018, shortly after signing and filing her petition, Ms. Snyder filed a "Statement of Your Current Monthly Income" with this Court.  *See* BX-3.  As part of that document, Ms. Snyder submitted a signed "Statement of No Payment Advices" that stated in its entirety, "I, Shanni Snyder, declare under the penalty for perjury that I do not have any payment advices from an employer because I was not employed during 2016, 2017, or 2018."  Tr. 63, BX-3 at 82.

This Court discharged Ms. Snyder's debts and terminated her bankruptcy proceeding.  Tr. 65.

Ms. Snyder did not amend any of her schedules until this Court reopened her bankruptcy proceeding in 2022.  *See* Tr. 65.

### D.  The *Biros v. U Lock* Action

In 2017, Ms. Biros commenced an action against U Lock and others in the Court of Common Pleas of Westmoreland County, Pennsylvania.  In her complaint in that action, Ms. Biros claimed that she owns the Subject Property.  Tr. 65.  U Lock authorized its counsel to defend against Ms. Biros's claims.  Tr. 89.  During that action, Ms. Snyder assisted U Lock and its counsel.  BX-5 at 171.  In addition, Ms. Snyder attended either trial or some other in-court proceeding.  Tr. 66-67.

In its verified interrogatory answers submitted in preparation for trial, U Lock stated that it had no employees.  BX-4 at 85.  George signed the verification for those answers.  *Id*. at 95.

The state court held its trial in that matter on April 29, 2019.  *See generally* BX-5.  During that trial, Kash was asked about Ms. Snyder, "What involvement did she have in the company?"  BX-5 at 172.  Kash responded, "None in the company."  BX-5 at 172.

At the conclusion of the trial, the state court held that Ms. Biros owns the Subject Property. Tr. 68; *see generally* BX-6.  U Lock appealed that decision to the Superior Court of Pennsylvania. Tr. 69; BX-20 at 278.  Ms. Snyder knew of that appeal.  Tr. 69.

On May 21, 2021, the Superior Court affirmed the judgment in Ms. Biros's favor.  BX-20 at 281.  That court denied U Lock's motion for reargument on July 28, 2021.  *Id.* at 281.  U Lock subsequently petitioned to the Supreme Court of Pennsylvania for allowance of appeal.  *Id.*

### E.  Ms. Snyder's Claims in the District Court

On July 14, 2021, Ms. Snyder filed an action against U Lock in the U.S. District Court for the Western District of Pennsylvania (the "District Court") at No. 2:21-cv-00904-RJC.  BX-7.  She named only U Lock as a party to that action; she did not file her claim against George or Kash.  *Id.* at 199-200.[4]  Ms. Snyder identified the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, as the only legal basis for her complaint.  BX-7 at 201.

In her complaint, Ms. Snyder claimed that she had worked for U Lock seventy hours per week from January 1, 2016 through February 15, 2020.  BX-7 at 202.  She described her job as "[m]onitor video surveillance remotely."  *Id.* at 201.  She claimed that she had worked ten hours, from 5 p.m. to 3 a.m., for seven nights each week.  *Id.* at 202.  She claimed that she was entitled to the minimum wage of $7.25 per hour and that U Lock had agreed to pay her monthly.  *Id.*

Ms. Snyder served her complaint on U Lock by having a friend deliver a copy of it to her brother George.  Tr. 31.  When U Lock did not respond to her complaint, Ms. Snyder moved for the District Court to enter default judgment in her favor.  SX-D.

---

[4] Given Ms. Snyder's later unsubstantiated assertions about Ms. Biros in this action, it may be worth pointing out that Ms. Snyder did not name Ms. Biros as a party to this action.  BX-7 at 199-200.  She did not serve her complaint on Ms. Biros.  She was not in communication with Ms. Biros in mid-2021, and she did not discuss her complaint against U Lock with Ms. Biros at any time while her action was pending before the District Court.  Tr. 31-32.

The District Court conducted a hearing on Ms. Snyder's motion for default judgment on October 18, 2021. *See generally* BX-8. At that hearing, the District Court placed Ms. Snyder under oath, *id.* at 211, and Ms. Snyder testified that each of the allegations set forth in her complaint was, to her knowledge, "true and factual." *Id.* at 212. When the court asked Ms. Snyder whether she wished to add anything, she volunteered under oath that her claim was based upon her assertion that she had worked for U Lock for seventy hours each week. *Id.*

The District Court then announced that it would enter Ms. Snyder's requested default judgment. It stated that it would do so on the basis of Ms. Snyder's complaint and "upon consideration of your presentation here today and all the evidence that has been submitted here today." BX-8 at 213. It stated that its judgment was based upon its understanding that Ms. Snyder had "monitored video surveillance and cameras from five p.m. until three a.m. each day." *Id.* The District Court determined damages at the $131,304 that Ms. Snyder had calculated in her complaint and doubled that amount to represent liquidated damages. *Id.* at 214-15.

That same day, the District Court entered judgment in favor of Ms. Snyder and against U Lock for $263,104.00. SX-G. In addition to the amounts that the District Court had identified at its hearing, it awarded Ms. Snyder $402.00 in costs. *Id.*

Ms. Snyder transferred her judgment to the Court of Common Pleas of Westmoreland County, *see* SX-A, but did not otherwise attempt to collect this judgment from U Lock during 2021 or into 2022. Tr. 38-39.

### F.  Ms. Snyder's Later Claims and Appeal

On January 19, 2022, the Supreme Court of Pennsylvania denied U Lock's petition for allowance of appeal in the *Biros v. U Lock* matter.  BX-19 at 276.[5]

The following day, the state court in Westmoreland County issued an Order directing delivery to Ms. Biros of deeds to the Subject Property.  U Lock moved for reconsideration of that Order.  *See* BX-11 at 223.

On March 18, 2022, Ms. Snyder commenced an action against Ms. Biros and others – including the state-court trial judge in the *Biros v. U Lock* matter, the Westmoreland County Recorder of Deeds, and the Attorney General of Pennsylvania – by filing a praecipe for writ of summons in the Court of Common Pleas of Westmoreland County.  BX-9.  As part of that filing, Ms. Snyder requested that the Westmoreland County Prothonotary index a *lis pendens* against the Subject Property.  Tr. 72, BX-9 at 218.

### G.  Ms. Snyder's Claims and Testimony Here

This proceeding commenced when Ms. Snyder, claiming to be a creditor of U Lock, filed a petition against U Lock pursuant to Chapter 7 of the Bankruptcy Code.  Doc. No. 1.  When Ms. Snyder amended her petition at the direction of this Court, she identified George and Kash as "managing control persons."  BX-10 at 219.

On May 19, 2022, after the judge in the *Biros v. U Lock* matter had entered an Order that purported to deny U Lock's motion for reconsideration of his January 29 Order, Ms. Snyder filed both an entry of appearance and a notice of appeal in that matter.  BX-12, BX-13.  She filed those documents in person at 10:07 a.m.  Tr. 73-74, BX-12, BX-13.  In the Notice of Appeal, Ms. Snyder

---

[5] That court subsequently granted U Lock's motion to stay remand of the record so that U Lock could file a petition for certiorari to the U.S. Supreme Court.  *Id.*  U Lock never filed such a petition.

complained about "the actions of this Court . . . that eviscerate[ ] and appear[ ] to supersede portions of her judgment lien." BX-13 at 227.

That same day at 10:09 a.m., U Lock filed a "Notice of Bankruptcy" in the *Biros v. U Lock* matter. BX-14. U Lock advised the Westmoreland County court that *this* proceeding "appears to create an automatic stay of" that case. *Id*. at 240.

Ms. Snyder filed the Claim, in which she asserted that U Lock owes her $263,100.00 – *i.e.*, within $4 of the amount of the District Court judgment – on May 27, 2022. BX-15 at 244. She identified her claim as secured by real property, and she identified 28 U.S.C. § 3201 as the reason why her secured claim had been perfected. *Id.* She identified the District Court Judgment as the basis for her claim. Tr. 27; BX-15 at 246. Although she initially asserted that her claim was secured by a lien on property, *see id.*, she has since asserted that she has no secured interest. BX-21 at 286 (citing Doc. No. 228). Ms. Snyder has not amended her claim.

Ms. Biros objected to Ms. Snyder's claim. See Doc. No. 340. Ms. Snyder responded to that objection, Doc. No. 357, and, at a hearing of April 13, 2023, this Court set a hearing on the objection (the "Evidentiary Hearing") for July 14, 2023. Doc. Nos. 365, 368.

At the Evidentiary Hearing, Ms. Snyder testified that the allegations of fact underlying her claim here were the same as the allegations on which she had relied in the District Court. Tr. 27-28. She made clear that she had no basis for her claim against U Lock other than the alleged unpaid wages. Tr. 35.

Ms. Snyder conceded on direct examination that she had not paid constant attention to conditions on the Subject Property throughout her claimed work hours. Instead, she asserted, she had an application on her mobile telephone that alerted her about activity on video cameras pointed at the Subject Property. Tr. 15-16. She testified that. when she received these alerts, she called

George.  Tr. 16.  She did not testify about how many times, or how frequently, she had contacted George about these claimed alerts over the 2016-2020 period.   However, she acknowledged that she had never made any reports about the Subject Property to any law enforcement agency.   Tr. 81.

Ms. Snyder acknowledged that, during almost her entire claimed work period, she had two children between the ages of zero and four with her on most nights.  Tr. 78.  She had no professional childcare assistance.  Tr.78.  She acknowledged that children of that age can require all of a parent's attention for periods of time for which the parent cannot plan.  Tr. 79.

Ms. Snyder testified that, in calculating the amount of the Claim, she had not accounted for any vacation or sick days at all during her four-plus year period of claimed work.  Tr. 35.  She reiterated that she had worked ten hours per night, every night, for 213 straight weeks.  Tr. 36.

Ms. Snyder conceded that if, as she had asserted in her complaint, U Lock had agreed to pay her monthly, then she had known by mid-February 2016 that U Lock owed wages to her.  Tr. 37.  She also claimed that, by some time in that month, U Lock had acknowledged its owing wages to her.  Tr. 37-38.  She further admitted that she, herself, would have known by March 2018, when she filed her motion to proceed *in forma pauperis* before the state court in Westmoreland County that she was working for U Lock.  Tr. 41.  She further conceded that, if her assertions were believed, then, by the time she filed her own bankruptcy petition with this Court in May 2018, she would have known that she had been working for U Lock for more than two years and was already owed more than $50,000.  Tr. 52-53, 61.

Ms. Snyder also conceded that, although she had friends outside of the Snyder family from 2016 to 2020 and interacted regularly during that period with the father of her younger children,

she was not offering any testimony from any of those persons stating that they had seen her perform any of her claimed work.  Tr. 82-84.

U Lock never collected a Form W-9 or an Immigration Form I-9 from Ms. Snyder.  Tr. 92. It never issued a Form W-2 or a Form 1099 to her.  Tr. 92-93.  U Lock has never had any worker's compensation insurance that covered Ms. Snyder.  Tr. 100.

Ms. Snyder offered no statements that were created by anyone else – or even by herself – while she claims to have worked for U Lock that state that U Lock owed her for unpaid wages.  Tr. 60, 80.  She did not have a written agreement of any sort with U Lock.  Tr. 80.  She offered no documentary evidence about the claimed mobile phone app, the claimed cameras, or any other aspect of the surveillance system she claimed to have used.  In fact, she did not offer a single document created between 2016 and 2020 that made any reference to her claimed work.  Tr. 82-83.

### DISCUSSION

**A. This Court Should Reject the Claim Because Ms. Snyder Did Not Perform the Work.**

Ms. Snyder has woefully failed to meet her burden of proof.  The preponderance of the evidence refutes, rather than supports, the Claim.  The evidence makes crystal clear that Ms. Snyder did not work for U Lock between 2016 and 2020 *at all* – let alone for ten hours a day, seven days a week, and more than 1,500 consecutive days.  Other than the pleadings and motions that Ms. Snyder created herself and filed in the District Court, Ms. Snyder was unable to provide a single document to support her allegation that she was ever employed by U Lock.  The only evidence to support Ms. Snyder's claim is her self-serving testimony and the testimony of her siblings.  Of course, that testimony directly contradicts the earlier testimony and statements that

she and her siblings made under penalty of perjury or otherwise under penalty of law when their interests differed from their interests here.  This Court should disallow the Claim in its entirety.

### 1.    *The Claim is Not Supported by Any Contemporaneous Evidence.*

Ms. Snyder claims to have worked for U Lock for more than 15,000 hours spread across more than 1,500 days and more than four years without any payment whatsoever.  She claims that she was actually performing work for U Lock for more than 40 percent of all time – not simply waking hours – during that period.

In support of this assertion, Ms. Snyder does not offer this Court a single document created during that time period.  She does not offer a written agreement.  She does not offer an email.  She does not offer a text message to or from anybody.  She does not offer a date book or a printed or electronic calendar.  She does not offer an IOU, a promissory note, or any other sort of acknowledgement from George, Kash, or anyone else that acknowledges her doing the work that she now claims to have done.  *See* Tr. 79-83.

Ms. Snyder also cannot point any testimony that meaningfully corroborates the Claim.  The only other witnesses who testified, George and Kash, are her siblings and share her interest in using any means necessary to reassert a claim to the Subject Property.  She offered no other testimony.  She claims that she spent considerable time during this period with her younger children's other parent or attending social events with her phone out and ready to monitor.  While it should have been straightforward to provide corroboration of these assertions, she offered none. *See* Tr. 83-84.

This total lack of contemporaneous evidence is jarring.  The *fact* that Ms. Snyder is unable or unwilling to produce a single document, communication, or witness from that time period that even mentions her claimed employment with the Debtor makes it impossible to believe that she was, in fact, working ten hours a day for U Lock on every day through this period (or, frankly, any

number of hours for any single employer throughout this four-year period). This Court should go where this absence of evidence takes it, conclude that Ms. Snyder did not do this work, and reject the Claim.

### 2. *All Contemporaneous Evidence Contradicts the Claim.*

This proceeding is not a case in which a court need only decide whose oral, unsubstantiated testimony it will believe. Instead, there is a trove of documentation from the Time Period which establishes that Ms. Snyder ***did not*** work for the Debtor. Ms. Snyder, herself, is the source of much of this information, and that fact alone is sufficient to doom the Claim. *See United States v. Bedrosian*, 42 F.4th 174, 184 (3d Cir. 2022) ("The District Court has discretion to treat a party's statement as a judicial admission and to bind the party to that admission."); *Kasbee v. Huntington Nat'l Bank*, 466 B.R. 719, 723 (Bankr. W.D. Pa. 2010) (noting that statement of party opponent, even if not binding judicial admission, is evidentiary admission that can be considered against it).

On March 23, 2018, Ms. Snyder filed a *Petition and Verification for In Forma Pauperis* in the Court of Common Pleas of Westmoreland County, Pennsylvania. *See* BX-1. In the Petition and Verification, Ms. Snyder verified under penalty of perjury that she was "unemployed and receive[d] no other income or benefits." *Id.* In response to questions asking about employment and an employer, Ms. Snyder stated "n/a." *Id.* at 2. Ms. Snyder has acknowledged that the Court of Common Pleas of Westmoreland County relied on the statement that Ms. Snyder was unemployed when it granted the Petition and Verification and allowed Ms. Snyder to proceed in that action without paying filing fees. *See* Tr. 46.

Ms. Snyder's assertion here, that she gave these statements under penalty of law because she "didn't consider [her employment with U Lock] income" because it had not paid her, is absurd and, frankly, no more plausible than "I forgot" would have been. The questions on the Petition and Verification were clear. To the extent that Ms. Snyder was actually working 70 hours a week

for the Debtor at that time (and had been doing so for more than two straight years, or more than 800 days straight), the answer to whether she was employed was an obvious "Yes." This was not simply an omission; Ms. Snyder consciously acted by checking that box to state that she was unemployed.

On May 15, 2018, approximately two months after Ms. Snyder filed her Petition and Verification, Ms. Snyder filed a voluntary petition for bankruptcy and related statement of financial affairs in this court. *See* BX-2. In clear language – in fact, almost the simplest terms possible – a schedule to that petition asked her whether she was owed any ***unpaid wages.*** BX-2 at 23. Ms. Snyder checked the box for "No." *Id.*

Ms. Snyder's suggestion at the Evidentiary Hearing that this was an oversight because she was trying to complete the Bankruptcy Petition quickly, *see* Tr. 48, is also nonsense. The language is clear, and Ms. Snyder knew enough in completing the following page to identify the nature and targets of her planned claim against the North Huntingdon police department. BX-2 at 24. Once again, it is unreasonable to believe that Ms. Snyder simply forgot that she worked for the Debtor for ten hours a day. Ms. Snyder knew what she was doing, and she answered truthfully.

As with the petition and verification in state court, Ms. Snyder repeatedly acknowledged that her statements to this Court were true and made under penalty of law:

> By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

BX-2 at 13.

Less than a month later, in June 2018, Ms. Snyder again advised this Court that she had not been "employed during 2016, 2017, or 2018." BX-3 at 82.

Ms. Snyder cannot plead ignorance here. She has been involved in court proceedings for the last fifteen years. Tr. 71. Kash has testified that Ms. Snyder assisted U Lock's attorney in the *Biros v. U Lock* action. BX-5 at 171. She attended court proceedings in that action. Tr. 66-67. Despite a lack of formal legal training, she has consistently represented herself in legal proceedings. Doing so, she has managed to obtain benefits from multiple courts. *See, e.g.,* BX-1 at 1 (state court); BX-2 (this Court); SX-H (District Court). She has drafted and filed documents that make or attempt to make sophisticated legal distinctions. *See, e.g.*, BX-9 at 218 n.1. *See also* Tr. 71-72 (discussing drafting). If Ms. Snyder were actually owed wages and were asked if she was owed any wages, she would be more than smart enough to answer "Yes." If Ms. Snyder were working for a company for ten hours a day, seven days a week and were asked if she had an employer, she would be more than smart enough to answer "Yes."

Ms. Snyder is hardly the only source of evidence that U Lock did ***not*** employ her between 2016 and 2020. U Lock, itself, agreed. U Lock stated in an October 2018 interrogatory answers during the *Biros v. U Lock* action that it did not have employees and had never had any. BX-4 at 85. George signed the verification for those answers. *Id.* at 95. At the trial of that action in April 2019, Kash stated that Ms. Snyder had never had any involvement with U Lock. BX-5 at 172. Both George and Kash were officers of U Lock from its inception in 2015 until Ms. Snyder filed her involuntary petition against the company in 2022.[6]

---

[6] U Lock's giving sworn testimony that is irreconcilable with the Claim has continued even into this bankruptcy proceeding. With Ms. Snyder present at a 341 meeting on September 9, 2022, George testified that U Lock employed people in a "limited" capacity for "just a few hours a year." BX-16 at 251. Similarly, with Ms. Snyder represented by counsel at a 341 meeting on January 6, 2023, Kash testified that U Lock has never had employees. BX-17 at 269. He added that the Debtor "always had people helping us but never anything official or long-term or anything like that." *Id.*

This abundant contemporaneous evidence completely contradicts the Claim. In combination with the lack of any documentary evidence created that supports Ms. Snyder's allegations here, this Court should conclude that Ms. Snyder fabricated her employment to benefit herself and her siblings. Accordingly, this Court should reject the Claim.

### 3.    The Claim Remains Implausible, and Ms. Snyder's Efforts Under Oath to Deal with That Problem Further Undermine Her Credibility.

The essence of the Claim remains that Ms. Snyder seeks compensation for having worked 3,650 hours in each of more than four years and for having worked at that same pace for an additional month and a half. Tr. 27-28; BX-7 at 201-02. This number of hours is extraordinary for anyone.[7] It is even more remarkable for someone dealing with the demands of very young children without professional childcare assistance, no matter how well-behaved those children might be. *See* Tr. 78-79. Ms. Snyder further claims that, during this time, she never missed work time due to illness and never took a vacation. Tr. 35. And the work was remarkably fruitless: During all of the time in which Ms. Snyder claims to have been working as a security monitor, she never made a single report to law enforcement. Tr. 81.

Ms. Snyder's sworn testimony regarding her claimed work has been self-serving. It has varied in accordance with her immediate needs, and it has tended to directly contradict her other statements made under oath and otherwise under penalty of law.

---

[7] While the record here includes no comparison points and few law firms actually publish average hours worked by their attorneys, estimates of hours worked at some of the country's most prestigious firms show that those firms' attorneys' efforts pale next to Ms. Snyder's claims. *See, e.g.,* www.top-law-schools.com/wachtell-lipton-rosen-katz.html (retrieved August 14, 2023) ("Although Wachtell Lipton has no explicit billable hour requirements, expectations reportedly hover around the 2700 mark depending on deal volume, and billing 3000 hours in a year is not uncommon. This number vastly exceeds the already high billable averages of NYC BigLaw, which more often fall in the 2000-2400 range depending on the firm and the associate's ambitions regarding partnership.").

In the action in the District Court, Ms. Snyder adhered closely to these assertions and obtained a judgment based on their express terms.  In her complaint, she alleged that she worked for the Debtor ten hours a day from 5:00 p.m. to 3:00 a.m., seven days a week, for a total of seventy hours a week for more than four years straight. *See* BX-7 at 202.  She offered those allegations in response to a direction to set forth the "[n]umber of hours ***actually*** worked each week in which a violation is claimed." BX-7 at 202 (emphasis added).

When questioned under oath by the District Court about her motion for default judgment against U Lock, Ms. Snyder testified that the allegations in her complaint were "true and factual" and added that she worked "70 hours a week, 30 being overtime at minimum wage."  BX-8 at 212. She did not at any point during that hearing state that 70 hours a week was "general" or that she did not work 5 p.m. to 3 a.m. every single day as she had set forth in her complaint.  Ms. Snyder testified under oath in the District Court that she worked those hours every single day for more than four years straight.  *See id.*

In turn, the District Court stated that it was acting in reliance on Ms. Snyder's representation of "[n]umber of hours **actually** worked each week in which a violation is claimed." BX-8 at 212-214 (emphasis added).

However, at the Evidentiary Hearing here, Ms. Snyder asserted that her claim of "ten hours a day" was not exactly exact.  In fact, during the more than four-year period during which Ms. Snyder claims to have worked ten hours a day, every day, from 5:00 pm to 3:00 pm, Ms. Snyder had two children and was in the hospital for their birth. Tr. at 36.  She testified that, instead of actually tending to a monitor, she simply waited for alerts on her mobile phone. Tr. 16.  She testified that her work sometimes consisted of leaving her phone out and on while at social

gatherings. Tr. 37. She added that, for some of work hours for which she now seeks compensation, she may have been asleep. *Id.*

At the Evidentiary Hearing, Ms. Snyder also mischaracterized the nature of the information that she was asked to provide to the District Court. She asserted that the District Court asked her "for a general statement" regarding how much she worked. Tr. at 36. However, the relevant question on the complaint form specifically requires the plaintiff to identify the "[n]umber of hours ***actually*** worked ***each week in which a violation is claimed***." BX-7 at 202 (emphases added). Ms. Snyder did not respond to the District Court with her current generalities. Instead, she alleged with specificity that she had *actually* worked "70 hours per week from January 1, 2026 through February 15, 2020." *Id.* "Specifically," she added, she had "monitored video surveillance and cameras from 5 p.m. until 3 a.m. each day." *Id.*

Ms. Snyder did little better at the Evidentiary Hearing with other facts. She testified that she had not involved herself in the *Biros v. U Lock* action. Tr. 73. When pressed, however, she acknowledged that she had attended at least one in-person proceeding in that case. Kash testified that she had worked with U Lock's counsel on case documents. She was involved in that action sufficiently to file a notice of appearance as a "non-party appellant" and, in fact, to take her own appeal in it. *See* BX-12, BX-13. She actually took these actions *after* she filed her involuntary bankruptcy petition against U Lock. Her testimony disclaiming any involvement in that action is clearly false and Ms. Snyder's testimony is not credible. For this reason, as well, this Court should reject the Claim and disallow it.

### 4.    *Alternative Explanation for Allegations in Snyder's Claim*

The timing of events in the Pennsylvania state courts, the District Court, and this Court suggests very strongly that the Claim and the allegations of fact that underlie it were fabricated in an attempt to improperly deprive Ms. Biros of her interest in the Subject Property:

- Although Ms. Snyder claims to have been working for U Lock from 2016 to 2020, she waited until July 14, 2021 to file her lawsuit against U Lock in the District Court.

- She filed that action less than eight weeks after the Superior Court of Pennsylvania affirmed the judgment in Ms. Biros's favor in *Biros v. U Lock*.

- Despite using a form that advised her of the potential to file an FLSA claim against individuals as well as companies, Ms. Snyder sued only U Lock but not its managers – *i.e.*, her brothers George and Kash.

- Although Ms. Snyder's brother George had made the decision to engage counsel to defend the company against Ms. Biros's complaint, U Lock made no effort to defend itself against Ms. Synder's claims. U Lock defaulted on Ms. Snyder's complaint, and the company made no effort to contest her damages claims on either substantive grounds or timeliness.

- Once Ms. Snyder obtained her judgment in the District Court, she transferred that judgment to the state court in Westmoreland County. The Subject Property is, of course, located in that county.

- Between filing that judgment in Westmoreland County and filing the Claim, Ms. Snyder made no effort to collect that judgment from U Lock.

- Less than two months after the Supreme Court of Pennsylvania declined to review the *Biros v. U Lock* decision, Ms. Snyder commenced a new proceeding against Ms. Biros and others – not including any of U Lock, George, or Kash – in the state court in Westmoreland County. In commencing that proceeding, she caused a *lis pendens* to be indexed against the Subject Property.

- A month later and approximately three months after the decision of the Supreme Court of Pennsylvania, Ms. Snyder filed the involuntary petition with this Court that commenced this proceeding.

- After filing that involuntary petition, Ms. Snyder filed her own appearance and notice of appeal in the *Biros v. U Lock* action. In the latter, she expressly pointed to a judgment lien that she claimed to have on the Subject Property.

- U Lock did not advise the Westmoreland County court of this proceeding and the automatic stay until *two minutes after* Snyder filed that appearance and her notice of appeal.

This sequence of events suggests – strongly – that Ms. Snyder's action in the District Court and the Claim here are intended to serve some purpose other than compensating Ms. Snyder for the work she claims to have performed. The Snyders' incessant attempts to obtain possession and

ownership of the Subject Property[8] supports the idea that they would do anything – including filing

a fraudulent action and filing a fraudulent proof of claim – to try to get ownership of the Subject

Property.   To any extent that this Court had any inclination to accept the Claim despite its

implausibility, the enormous weight of the evidence against it, and the absence of any credible

evidence for it, these coincidences should dispel that inclination.

**B.**   **The Statute of Limitations for the FLSA Would Bar the Majority of the Claim in Any Event.**

Ms. Snyder sued the Debtor in the Civil Action for violating the FLSA. The FLSA has a

two-year statute of limitations, unless the violation was willful, in which case the statute of

limitations is three years. *See* 29 USCS § 255(a).   Thus, by the time that Ms. Snyder filed her

complaint with the District Court, the statute of limitation had expired on all but about 7 months

of the Claim.   Under the best possible reading for Ms. Snyder, therefore, the Claim could be

worth no more than $18,487.50.[9]   If the limitations period were to be measured from Ms.

Snyder's filing the Claim in May 2022, the Claim would be extinguished completely.

Ms. Snyder addresses the statute of limitations in the Civil Action by stating that "[the

Debtor] tolled any statute of limitations by continually promising that payment would be

forthcoming after it was able to obtain a mortgage on its property. The representations were

made continually up to and through May 2021." *See* BX-7 at 202.   This argument is unavailing.

Ms. Snyder admits that, as of February 2016, she claims to have known of all facts necessary to

make an FLSA claim.   She knew (she claims) that she was working, she knew (she claims) for

---

[8] During the course of this proceeding, Ms. Snyder, George, and U Lock have, separately and in total, filed three adversary proceedings, eight appeals to the District Court, one motion to withdraw the reference, and one appeal to the U.S. Court of Appeals for the Third Circuit.

[9] While the limitations period under the FLSA expands to three years if a violation is "willful," such a finding would still reduce the Claim by well more than half to no more than $50,532.50.

whom she was working, she knew (she claims) that she was supposed to be paid monthly, and

she knew (she claims) that she had not been paid.  Tr. 37; BX-7 at 201-02.  Particularly given this

asserted knowledge, Ms. Snyder has failed to demonstrate how her statements regarding U

Lock's broken promises to pay her might somehow have excused her from not filing an action

based upon U Lock's broken promises to pay her.  *See, e.g., Ruehl v. Viacom, Inc.*, 500 F.3d 375,

383-84 (3d. Cir. 2007) (declining to apply equitable tolling where plaintiff knew of all facts

giving rise to claim).

## <u>CONCLUSION</u>

There is an easy explanation for why Ms. Snyder told courts in 2018 that she was

unemployed but has told courts for the last three years that, during 2018 and the surrounding

years, she was working seventy hours each week:  In 2018, she was telling the truth.  Now, she is

not.  Ms. Biros has put forth a cogent explanation for Ms. Snyder's current falsification.

Regardless of whether or not this Court adopts that explanation, there is not a shred of

documentary evidence – or even of any evidence at all from the claimed work period – that

supports the Claim.  Instead, all of the contemporary evidence from the claimed work period,

including Ms. Snyder's statements made under penalty of law and similar statements from Ms.

Snyder's siblings George and Kash, contradicts the claim.  Ms. Snyder has therefore completely

failed to prove that the Claim is valid.  Accordingly, this Court should disallow the Claim in its

entirety.

Respectfully submitted,

**BERNSTEIN-BURKLEY, P.C.**

By:    */s/ Stuart C. Gaul, Jr.*
          Kirk B. Burkley, Esquire
          PA ID  #89511
          kburkley@bernsteinlaw.com
          Stuart C. Gaul, Jr., Esquire
          PA ID #74529
          sgaul@bernsteinlaw.com
          Sarah E. Wenrich, Esquire
          PA ID #325834
          swenrich@bernsteinlaw.com

          601 Grant Street, 9th Floor
          Pittsburgh, PA  15219
          Telephone: (412) 456-8100

          *Attorneys for Movant, Christine Biros*